**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **PERSONAL AUDIO, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No. 1:15-cv-350** |
| **v.** | § | |
| | § | **Jury Trial Demanded** |
| **GOOGLE, INC.** | § | |
| | § | |
| *Defendant.* | § | |

## ORIGINAL COMPLAINT

Plaintiff Personal Audio, LLC ("Personal Audio"), by and through its attorneys, for its

Complaint against Google, Inc., (herein, "Defendant" and/or "Google") hereby alleges as follows:

### I.      NATURE OF THE ACTION

1.      This is a patent infringement action to end Defendant's contributory and/or induced

infringement of Plaintiff Personal Audio's patented inventions.

2.      Personal Audio holds all substantial rights and interest in and to United States

Patent No. 6,199,076 (the "'076 patent"), issued on March 6, 2001, for "Audio Program Player

Including A Dynamic Program Selection Controller."

3.      Personal Audio holds all substantial rights and interest in and to United States

Patent No. 7,509,178 entitled "Audio Program Distribution and Playback System" ("the '178

patent")(together the "Asserted Patents").

4.      Plaintiff Personal Audio seeks to prevent Defendant from continuing infringement

of Plaintiff's patent rights.   Plaintiff Personal Audio further seeks monetary damages and

prejudgment interest for Defendant's past infringement of the '076 patent and the '178 patent.

## II.      THE PARTIES

5.      Plaintiff Personal Audio is a limited liability company organized and existing under the laws of the State of Texas, with its corporate office located at 550 Fannin St., Ste. 1313, Beaumont, TX 77701.

6.      Upon information and belief, Defendant Google, Inc. is a Delaware corporation with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, CA 94043.  Google's registered agent for service of process is Corporation Service Company, 2710 Gateway Oaks Dr., Ste. 150N, Sacramento, CA 95833.

## III.      JURISDICTION AND VENUE

7.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§271, 281, 283, 284, and 285.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1338(a).

8.      This Court has personal jurisdiction over Defendant because it has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice because Defendant has established minimum contacts with the forum.  Upon information and belief, Defendant transacts substantial business in the State of Texas and this Judicial District. Further, Defendant has committed acts of infringement in this District, by among other things, knowingly contributing to and/or inducing the infringement of Personal Audio's Asserted Patents knowing that the directly infringing devices are sold in the State of Texas and this Judicial District as well as providing service and support to Defendant's customers in this District.

9.      Venue in the Eastern District of Texas is proper pursuant to 28 U.S.C. §§ 139l (b), (c) and l400(b) because Defendant has committed acts within this judicial district giving rise to

ORIGINAL COMPLAINT

2

this action, and Defendant has and continue to conduct business in this judicial district, including one or more acts of knowingly contributing to and/or inducing the infringement of Personal Audio's Asserted Patents knowing that the directly infringing devices are sold in the State of Texas and this Judicial District as well as providing service and support to Defendant's customers in this District.

10.     Venue in the Eastern District of Texas is proper because this district is centrally located to resolve common issues of fact among Personal Audio and Defendant.

11.     Venue in the Eastern District of Texas is proper because of judicial economy.  This Court has presided over five previous lawsuits involving the same patents at issue.  Initially, the Honorable Chief Judge Ron Clark presided over *Personal Audio, LLC v. Apple Inc. et al*., Civil Action No. 9:09-CV-111 ("Apple Suit").  As part of that action, the Court has construed the claims of the asserted '076 patent and the '178 patent in Memorandum Opinions and Orders dated December 21, 2010 (Apple Suit, Dkt. No. 258), January 31 , 2011 (*Id.,* Dkt. No. 292), and May 18, 2011 (*Id.,* Dkt. No. 358).

12.     On September 9, 2011, Personal Audio filed suit against Samsung, Motorola, HTC, and LG, which was duly assigned to the Honorable Ron Clark. *Personal Audio, LLC, v. Samsung Electronics Co., Ltd. et al,* Civil Action No. 1:11-CV-00432-RC.  The matter against each defendant has since resolved.

13.     On November 22, 2011, Personal Audio filed suit against Amazon, which was duly assigned to the Honorable Ron Clark. *Personal Audio, LLC, v. Amazon Digital Services, Inc. et al,* Civil Action No. 1:11-cv-00655-RC.  The matter against has since resolved.

ORIGINAL COMPLAINT

14.     On August 13, 2013, Personal Audio filed suit against FUHU, Inc., which was also assigned to the Honorable Ron Clark.  *Personal Audio, LLC, v. FUHU, Inc.,* Civil Action No. 1:13-cv-00513-RC.  The matter has since resolved.

15.     On January 10, 2014, Personal Audio filed suit against Acer, Apollo Brands, ASUSTek, Azpen Innovation, Barnes & Noble, Fujitsu, Huawei, Lenovo, Toshiba and ZTE, which was also assigned to Honorable Ron Clark.  *Personal Audio, LLC, v. Acer, Inc., et al.,* Civil Action No. 1:14-cv-00008-RC.  The matter against each defendant has since resolved.

## IV.     BACKGROUND

### Personal Audio

16.     James Logan, the founder of Personal Audio, is a successful businessman and entrepreneur.   In 1982, Logan founded MicroTouch Systems. Under Logan's stewardship, MicroTouch became a leading developer of touch screen technologies used in a variety of consumer and commercial products.  When Logan founded MicroTouch, the majority of touch screens used plastic surfaces for their contact interface.   MicroTouch was one of the first companies to successfully manufacture and market touch screens with glass surfaces.  By the mid-1990s, MicroTouch was the world's leading supplier of touch screen technology.  MicroTouch's technology became the industry standard and was widely used in retail outlets and purchased by large companies.

17.     For fourteen years, from 1982 until 1996, Logan served as MicroTouch's chief executive officer ("CEO").  MicroTouch had a single employee (Logan) when Logan started the company. By 1996, under Logan's leadership, MicroTouch employed over 600 individuals and realized about $95 million in sales.  In 2000, 3M purchased MicroTouch for approximately $160 million.

ORIGINAL COMPLAINT

4

18.     Logan is a prolific inventor.  Logan is listed as an inventor or co-inventor on no fewer than 32 United States patents.

19.     During his time at MicroTouch, Logan had to commute to work every day.  Logan became frustrated with the lack of radio listening options available during his commute. This frustration gave Logan a new idea for presenting audio programs –  an audio player for delivering personalized audio content based on the past listening habits or selections of an  individual user.

20.     In 1996, Logan resigned as CEO of MicroTouch.  Thereafter he started a new company, Personal Audio, Inc., to develop, manufacture, and sell his new idea for an audio player.

21.     From 1996 until 1998, Logan served as the president of Personal Audio, Inc.  One of the first employees he hired was Daniel Goessling.  Goessling is a software developer who had previously worked with Logan on developing a patented invention for pausing live television. Goessling is listed as an inventor or co-inventor on no fewer than 12 United States patents.

22.     In the spring of 1996, Logan also contacted Charles Call for the purpose of obtaining patent protection. Call is a patent attorney. Call has worked as a patent attorney for over fifty years. As a patent attorney, Call has extensive experience with computers and computer-related patents.  Call has drafted over 500 United States patents.  Call is also listed as an inventor or co-inventor on no fewer than 12 United States patents.

### '076 Patent and '178 Patent

23.     By May of 1996, Call began  drafting the application  that  became  United  States Patent Application No. 08/724,813 ("the '813 application"), for the purpose of obtaining patent protection  for  the  personal  audio player  invention.  The '813 application claimed, among other things, an audio player capable of receiving navigable playlists.

24.     On October 2, 1996, the '813 application was filed with the United States Patent & Trademark Office ("PTO").  Logan, Goessling, and Call were listed as co-inventors of the '813 application.

25.     On March 6, 2001, the PTO issued United States Patent No. 6,199,076 (the '076 patent) entitled "Audio Program Player Including A Dynamic Program Selection Controller."

26.     On February 13, 200l, Call filed United States Patent Application No. 091782,546. ("the '546 application").   The '546 application was a division of the previously-filed '813 application. The '546 application claimed, among other inventions, an audio player capable of downloading navigable playlists.

27.     On March 24, 2009, the PTO issued United States Patent No. 7,509,178 (the '178 patent) entitled "Audio Program Distribution and Playback System."

28.     The '076 and '178 patents (collectively "the Asserted Patents") share a common specification.

29.     The '076 patent claims, among other inventions, a player that can reproduce a selection of audio program files, and is further capable of receiving a navigable playlist. The claimed player has the capability of using the received navigable playlist to allow a user to navigate among the audio files identified in the playlist during playback.  *See* '076 patent, 46:13-51 & 47:38-48:29.

30.     The '076 patent specification describes an audio program player in a variety of hardware configurations. These hardware configurations include "an Internet server and PC client player architecture," "PDAs," a "portable computer," and a "simplified player for mobile use." *See* '076 patent, 7:41-66.

31.     The '178 patent claims, among other inventions, an audio program player capable of downloading audio program segments and a sequencing file that specifies the playlist sequence. The claimed player is capable of delivering a succession of audio program segments in a specified sequence and further allows a user to navigate among the audio program segments in the playlist sequence. *See* '178 patent, 45:60-46:33 & 48:1-49:5.

32.     The Asserted Patents' specification describes several ways the player may store data, including data received from outside the player and audio files.  These ways include "high speed RAM storage and a persistent mass storage device" or "replaceable media, such as an optical disk cartridge." *See* '076 patent, 4:33-41 & 7:63-66; '178 patent, 4:43-51 & 8:4-8.

33.     The Asserted Patents' specification describes several ways that the player may reproduce audio signals in an audible form.  These ways include a "sound card," "speakers," and a "headphone-out port." *See* '076 patent, 5:22-25; '178 patent, 5:31-34.

34.     The Asserted Patents' specification describes several types of controls with which the player may accept control commands from a user.  These ways include a "keyboard," a "touchpad," or "a small number of buttons." *See* '076 patent, 5:26-29, 13:49-52 & 36:40-47; Ex. '178 patent, 5:35-38, 13:55-57 & 36:28-36.

35.     The Asserted Patents' specification describes that the player may be "advantageously implemented by… a processor." *See* '076 patent, 4:33-41; '178 patent, 4:43-51.

36.     In addition to hardware components, the Asserted Patents disclose the use of software algorithms.  These software algorithms include continuously playing audio files ('076 patent, 12:16-13:11 & 34:28-35:44; '178 patent, 12:27-13:16 & 34:19-35:34), detecting input commands ('076 patent, Fig. 3, steps 261, 262, 275, and 278; '178 patent, Fig 3, steps 261, 262, 275, and 278), skipping forward to the next audio file in a playlist sequence ('076 patent, 15:21-

25 & 34:28-35:48; '076 patent, 15:25-29 & 34:19-35:37), restarting playback of the currently playing audio file ('076 patent, 15:49-59; '178 patent, 15:53-63), and skipping backward to the previous audio file in a sequence ('076 patent, 15:49-59 & 34:28-35:53; '178 patent, 5:53-63 & 34:19-35:42).

37.     Personal Audio holds all substantial rights in and to the Asserted Patents, including all rights to recover for all past and future infringements thereof.

38.     Upon information and belief, the '076 patent has been cited approximately more than 500 times by other patents and patent applications. Upon information and belief, many of leading technology companies have cited the '076 patent more than once during prosecution of their own patents, including Microsoft (approximately 40 citations), Google (approximately 2 citations), IBM (approximately 15 citations), and Sony (approximately 25 citations). Upon information and belief, the '178 patent has also been cited as prior art by U.S. Patent Examiners approximately more than 25 times during the prosecution of other patents.

## Personal Audio's Lawsuit Against Apple Inc.

39.     On June 25, 2009, Personal Audio sued Apple Inc. ("Apple") in the Eastern District of Texas for infringement of the '076 patent. Personal Audio alleged that Apple infringed the '076 patent by selling the iPod classic generations 1 through 6, the iPod mini generations 1 and 2, iPod nano generations l through 5, iPod touch generations 1 through 3, iPhone, iPhone 3G, iPhone 3GS, and iPad.

40.     The Court, the Honorable Ron Clark presiding, held a jury trial from June 23 until July 8, 2011.

41.     During the trial, Apple asserted that claims 1, 3, and 15 of the '076 patent and claims 1, 6, 13 and 14 of the '178 patent were invalid as anticipated or obvious. For each asserted

claim, Apple argued that it was anticipated by the DAD486x Digital Audio Delivery System Operation Manual ("DAD Manual") and DAD486x Digital Audio Delivery System ("DAD System").  Apple also argued that each of the asserted claims was rendered obvious by various combinations of the DAD Manual, DAD System, Sound Blaster 16 User's Guide for Windows 95, Microsoft Windows 95 Resource Kit manual, "Architecting Personalized Delivery of Multimedia Information" by S. Loeb, Music Shop Reference Manual, Sony Discman player and instructions, and Sony Minidisc player and instructions.

42.     On July 8, 2011, the jury, by unanimous verdict, found that Apple infringed claims 1, 3, and 15 of the '076 patent by selling the iPod classic generations 3 through 6, iPod mini generations 1 and 2, and iPod nano generations 1 through 5 in the United States.  The jury awarded damages to Personal Audio in the amount of $8,000,000.00.

43.     The jury rejected all of Apple's invalidity arguments and found that claims 1, 3, and 15 of the '076 patent and claims 1, 6, 13 and 14 of the '178 patent are not anticipated or obvious.

44.     On August 30, 2011, the Court ordered final judgment in favor of Personal Audio in the amount of $8,000,000.00 in damages, $4,182,331.00 in pre-judgment interest, post-judgment interest calculated at the rate of 0.11 %, and costs of courts.

45.     On January 14, 2010, Apple submitted a request for *inter partes* reexamination of the '178 patent which the PTO granted (Control No.  95/001,295).  During reexamination, the Personal Audio v. Apple lawsuit concluded and the District Court found that Apple had failed to carry its burden of establishing invalidity of the '178 patent claims.  The District Court's decision became final and, as a result, the PTO terminated the reexamination proceedings pursuant to 35 U.S.C. §317(b).  All of the '178 patent's claims remain valid and enforceable.

ORIGINAL COMPLAINT

46.     On March 17, 2011, Apple submitted a request for *ex parte* reexamination of Claims 1-3 and 14-15 the '076 patent which the PTO granted (Control No. 90/011,579).  The PTO confirmed the patentability of Claims 1-3 and 14-15 and rejected Apple's position that prior art rendered the '076 patent claims invalid or obvious.  The PTO issued a Certificate of Reexamination for the '076 patent on November 30, 2012.

### Google's Acts of Infringement

47.     Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

48.     Upon information and belief, Google manufactures, uses, offers and/or sells products and services including, but not limited to its Google Play Music available as a mobile and tablet application, which constitutes a material part of the inventions in the Asserted Patents and which, in combination with a hardware device, such as a smartphone or tablet, infringe the Asserted Patents.   Further, upon information and belief, Google knows its Google Play Music is especially made or especially adapted for use in an infringement of the Asserted Patents and not a staple article or commodity of commerce suitable for substantial non-infringing use.

49.     Upon information and belief, Google's Play Music is offered in conjunction with its Android operating system, and has been incorporated across a multitude of tablets and smartphones that infringe the Asserted Patents.

50.     Upon information and belief, Google has been and continues to indirectly infringe the Asserted Patents in the State of Texas within the judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, inducing and/or contributing to third parties, including without limitation customers, device manufacturers, resellers and/or end users of Google Play Music, infringement of the claims of Plaintiff's patents.

ORIGINAL COMPLAINT

51.     Upon information and belief, direct infringement of the Asserted Patents is the result of third parties incorporating Google Play Music into their hardware devices.  By way of example and based upon information and belief, infringing audio player devices are capable of playing a sequence of selected audio program segments or files (*i.e.* playlists), and accepting commands from the user to skip forward and backward in the sequence.  Upon information and belief, said audio player devices utilize "Google's Play Music," on the device to play and control the sequence of selected audio program segments.  Upon information and belief, by using Google Play Music, the devices at least have the capability to continuously play a playlist of selected audio files without input of a user command; detect a user command to skip forward or backward in the playing playlist sequence; and respond to a command to skip forward by discontinuing playback of the playing audio file and begin playback of the next audio file in the playlist sequence.  Further, upon information and belief, by way of a wireless communications port, such exemplar devices are capable of establishing a data communications link for downloading and receiving a plurality of selected audio program files and a sequencing file that specifics the playlist sequence using Google Play Music.

52.     Upon information and belief, Google provides, makes, sells, and offers Google Play Music with the specific intention that the third party direct infringers use the product in their branded devices.  Upon information and belief, Google provides and instructs third parties to use the aforementioned product in the manner claimed in the Asserted Patents.  Upon information and belief, Google Play Music has no substantial non-infringing uses and is especially made and/or adapted so as to be used in audio player devices, so as to infringe the Asserted Patents.

53.     On approximately September 19, 2012, Plaintiff gave notice to Google of Plaintiff's rights in the Asserted Patents via written correspondence.  Upon information and belief, Google

has had notice and actual knowledge of Plaintiff's rights in the Asserted Patents sent at least September 19, 2012.  Notwithstanding, Google continues to willfully infringe upon and cause others to infringe upon one or more claims of the Asserted Patents.

## COUNT ONE
## PATENT INFRINGEMENT—U.S. PATENT NO. 6,199,076

54.     Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

55.     Defendant indirectly infringes the '076 patent by inducing or contributing to the infringement of the '076 patent in violation of 35 U.S.C. § 271(b)-(c)&(f), including by its customers/consumers.

56.     Defendant does not have a license or permission to use the claimed subject matter in the '076 patent.

57.     As a direct and proximate result of Defendant's induced and/or contributory infringement of the '076 patent, Personal Audio has been injured and has been caused significant financial damage.

58.     Defendant's aforementioned acts have caused damage to Personal Audio and will continue to do so unless and until enjoined.

59.     Personal Audio alleges upon information and belief that Defendant has, knowingly or with willful blindness, willfully infringed one or more claims of the '076 patent.  Defendant had knowledge of the Accused Patents as alleged above, having been advised of the existence and substance of the Accused Patents by the United States Patent & Trademark Office and Personal Audio.  Defendant acted with knowledge of the Accused Patents and, despite its knowledge or

despite that it should have known of an objectively high likelihood that its actions constituted infringement of Personal Audio's valid patent rights, continue to infringe.

60.     This objectively-defined risk was either known or so obvious that it should have been known to Defendant.  Personal Audio seeks enhanced damages pursuant to 35 U.S.C. § 284 from Defendant.

## COUNT TWO
## PATENT INFRINGEMENT—U.S. PATENT NO. 7,509,178

61.     Personal Audio restates and realleges each of the allegations set forth above and incorporates them herein.

62.     Defendant indirectly infringes the '178 patent by inducing or contributing to the infringement of the '178 patent in violation of 35 U.S.C. § 271(b)-(c)&(f), including by its customers/consumers.

63.     Defendant does not have a license or permission to use the claimed subject matter in the '178 patent.

64.     As a direct and proximate result of Defendant's induced and/or contributory infringement of the '178 patent, Personal Audio has been injured and has been caused significant financial damage.

65.     Defendant's aforementioned acts have caused damage to Personal Audio and will continue to do so unless and until enjoined.

66.      Personal Audio alleges upon information and belief that Defendant has, knowingly or with willful blindness, willfully infringed one or more claims of the '178 patent.  Defendant had knowledge of the Accused Patents as alleged above, having been advised of the existence and substance of the Accused Patents by Personal Audio.  Defendant acted with knowledge of the

Accused Patents and, despite its knowledge or despite that it should have known of an objectively high likelihood that its actions constituted infringement of Personal Audio's valid patent rights, continue to infringe.

67.     This objectively-defined risk was either known or so obvious that it should have been known to Defendant.  Personal Audio seeks enhanced damages pursuant to 35 U.S.C. § 284 from Defendant.

## VII.    JURY DEMAND

68.     Plaintiff hereby demands a jury on all issues so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff Personal Audio respectfully requests that the Court:

A.     Enter judgment that Defendant contributes to or induces others to infringe one or more claims of the Accused Patents literally and/or under the doctrine of equivalents;

B.     Permanently enjoin Defendant, their agents, servants, and employees, and all those in privity with Defendant or in active concert and participation with Defendant, from engaging in acts of infringement of the Accused Patents;

C.     Award Plaintiff past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendant of the Accused Patents in accordance with 35 U.S.C. §284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. §284;

D.     Award Plaintiff its costs, disbursements, attorneys' fees;

E.     Award Plaintiff prejudgment and post-judgment interest to the maximum extent provided under the law; and

F.     Award Plaintiff such further and additional relief as is deemed appropriate by this Court.

Respectfully submitted,

Dated:  September 15, 2015                    By:  */s/ William M. Parrish*
                                                  William M. Parrish
                                                  *Lead Attorney*
                                                  Texas State Bar No. 15540325
                                                  bparrish@dpelaw.com
                                                  Nicole E. Glauser
                                                  Texas State Bar No. 24050694
                                                  nglauser@dpelaw.com
                                                  John D. Saba Jr.
                                                  Texas State Bar No. 24037415
                                                  jsaba@dpelaw.com
                                                  **DiNovo Price Ellwanger & Hardy LLP**
                                                  7000 N.  MoPac Expressway, Suite 350
                                                  Austin, Texas  78731
                                                  Telephone:  (512) 539-2626
                                                  Telecopier:  (512) 539-2627

                                                  Charles W. Goehringer, Jr.
                                                  Texas State Bar No. 00793817
                                                  **Germer PLLC**
                                                  P.O. Box 4915
                                                  Beaumont, Texas 77704
                                                  Telephone:  (409) 654-6700
                                                  Telecopier:  (409) 835-2115

                                                  **ATTORNEYS FOR PLAINTIFF**
                                                  **PERSONAL AUDIO, LLC**