IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION No. 1:15-CV-350 |
| v. | § | |
| | § | JUDGE RON CLARK |
| GOOGLE, INC., | § | |
| | § | PRD |
| *Defendant.* | § | |

**ORDER DENYING GOOGLE'S MOTION TO TRANSFER**

Plaintiff Personal Audio, LLC filed suit against Defendant Google, Inc., claiming that the Google Play music application infringes United States Patent Nos. 6,199,076 ("the '076 Patent") and 7,509,178 ("the '178 Patent"). The patents share a common specification. They relate to an audio program player that will automatically play a predetermined schedule of audio program segments, and includes controls that allow the listener to skip forward or backward. Google moves to transfer venue to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a), claiming that the Northern District of California is clearly more convenient than this district.

This court has handled and tried several previous cases in which Personal Audio asserted infringement of the same patents-in-suit against other electronic device manufacturers. The last case proceeded through claim construction, and the parties jointly moved the court to dismiss with prejudice all claims just before the court issued its claim construction order. *See Pers. Audio, LLC v. Acer Am. Corp.*, Case No. 1:14-cv-8 (E.D. Tex.) ("the *Acer* litigation") (Dkt. # 251). The case prior to that proceeded through an eleven-day trial and resulted in an $8 million verdict for Personal Audio against the defendant, Apple, Inc. *See Pers. Audio, LLC v. Apple, Inc.*, No. 9:09-cv-111

1

(E.D. Tex.) ("the *Apple* litigation") (Judgment, Dkt. # 522; Verdict, Dkt. # 470).  Other cases were disposed of prior to trial but required the court to be familiar with the patents-in-suit and the technology at issue.

Based on this court's history with the case, judicial economy and other public and private interest factors steer the transfer analysis in this case.  After careful consideration of all the relevant factors, the court concludes that Google has not met its burden to show that the Northern District of California is "clearly more convenient" than the Eastern District of Texas.  *See In re Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009).  Google's motion to transfer is denied.

## I.     Background

The following facts are undisputed, unless otherwise noted.

Personal Audio is a Texas limited liability company with two offices in the Eastern District of Texas, specifically in Beaumont and Plano, Texas.  Since 2009, Personal Audio has maintained a registered agent for service of process in Texas.  Personal Audio has at least two employees living and working in this district, CEO and General Counsel Mr. Brad Liddle and Office Manager Erin Davis.  Personal Audio also keeps original documentation in its Eastern District of Texas offices.

Personal Audio was organized by two of the co-inventors of  the patents-in-suit, James Logan and Charles Call.  Neither inventor resides in Texas or California.  After the application that led to the patents-in-suit was filed in 1996, Mr. Logan formed a company in Methuen, Massachusetts, called Personal Audio, Inc.  The purpose of this company was to commercialize the technology covered by the patents, but it was ultimately  unsuccessful.  Personal Audio, Inc. ceased operating in 1998.  The chain of title for the patents is as follows: the inventors assigned their rights to Personal Audio, Inc., which assigned its rights to Mr. Logan, who assigned his  rights to a family trust, which then assigned the rights to a limited liability company, Plaintiff Personal Audio, LLC.

Google is a California corporation with its principal place of business in Mountain View, California, which is within the Northern District of California. Google also has offices relevant to this suit in San Bruno, California, and New York, New York that work on Google Play Music, the accused product. Harding Decl. (Dkt. # 41-1) ¶¶ 4–5. According to Google, the design and development of Google Play Music occurred in Google's offices in Mountain View, San Bruno, and to a lesser extent, New York City. Individuals with knowledge about development and design of the accused product reside in all three places. Google alleges that marketing and sales decisions for its U.S. products occur in California and that all relevant documentation resides there. Google does not have any employees, offices, or facilities in the Eastern District of Texas. Harding Decl. (Dkt. # 41-1) ¶ 8. Google is authorized to do business in the State of Texas by the Texas Secretary of State, maintains an agent of service in Texas, and regularly conducts business here by marketing and selling its products.

The patents-in-suit have already been the subject of six cases before this court involving Personal Audio and defendants other than Google. The first case was the *Apple* litigation, which resulted in an eleven-day trial and a judgment favorable to Personal Audio. *Pers. Audio, LLC v. Apple, Inc.*, No. 9:09-cv-111 (E.D. Tex.). The second case was filed against Samsung, Motorola, and LG, and resolved through settlement after a claim construction hearing but before the court issued its claim construction order. *See Pers. Audio, LLC v. Samsung Elec. Co.*, No. 1:11-cv-432 (E.D. Tex.). The third case was filed against Amazon and settled prior to claim construction. *Pers. Audio v. Amazon Digital Servs.*, No. 1:11-cv-655 (E.D. Tex.). The fourth case was filed against FUHU, Inc., and resulted in settlement prior to claim construction. *Pers. Audio v. Fuhu, Inc.*, No. 1:13-cv-513 (E.D. Tex.). The fifth and most recent case, the *Acer* litigation, proceeded through a claim construction hearing but settled shortly before the court issued its order construing claims.

*See Pers. Audio, LLC v. Acer Am. Corp.*, No. 1:14-cv-8 (E.D. Tex.) (Markman hearing held on Apr. 23, 2015).  In sum, this court has held three claim construction hearings regarding terms from the patents-in-suit and issued several claim construction orders in two separate cases regarding those terms.

There is significant subject matter overlap between the prior cases and this one.  In prior cases, Personal Audio alleged infringement against other entities besides Google in part based on the same accused product in this case, Google Play Music, a program for managing audio files.  For instance, in the *Acer* litigation, Personal Audio asserted infringement against ASUS, whose electronic device product line utilizes Google Play Music.  First Amended Complaint, *Acer* litigation (Dkt. # 128), at p. 16.  Google appeared as a third party in at least one of those cases.  As part of the *Acer* litigation, Google served discovery in response to Personal Audio's request.  According to Personal Audio, Google's representative also attended the claim construction hearing in the *Acer* litigation.  Liddle Decl. (Dkt. # 48-1), ¶¶ 17, 18.

## II.     Applicable Law

Google moves to transfer venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a), which permits a district court "[f]or the convenience of the parties and witnesses" to "transfer any civil action to any other district or division where it might have been brought."  The purpose of Section 1404(a) "is to prevent the waste of time, energy and money and to protect the litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 84 S. Ct. 805, 809 (1964) (internal quotations removed).  Because transfer of venue is not a matter of substantive patent law, regional case law from the Fifth Circuit controls. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The threshold inquiry under Section 1404(a) is whether the plaintiff could have brought the action in the jurisdiction to which the defendant seeks transfer.  *In re Horseshoe Entm't*, 337

F.3d 429, 433 (5th Cir. 2003). If so, it is the defendant's burden to demonstrate that the transferee venue is "clearly more convenient than the venue chosen by the plaintiff." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (*Volkswagen II*). As the Fifth Circuit put it: "he who seeks the transfer must show good cause." *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Volkswagen II*, 545 F.3d at 315.

To decide whether a defendant has met its burden of showing that a transferee district is "clearly more convenient," the court must analyze a set of public and private interest factors, none of which is necessarily exhaustive or exclusive. *Volkswagen II*, 545 F.3d at 315 (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*)). The public interest factors are (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems in conflict of laws. *Volkswagen II*, 545 F.3d at 315. The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of the witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id*. "Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer." *Volkswagen II*, 545 F.3d at 314 n.10.

### III.    Analysis

**A.    The Northern District of California is a Proper Venue for this Action.**

Before assessing the public and private interest factors, the threshold question is whether the case could have been brought in the transferee district. *See Volkswagen II*, 545 F.3d at 312. 28 U.S.C. § 1400(b) states that "[a]ny civil action for patent infringement may be brought in the

judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  Neither side argues that this case could not have been brought in the Northern District of California or that the Northern District of California would lack jurisdiction.  This matter therefore does not appear to be in dispute.  The court finds that the action could have been brought in the Northern District of California under the current rules for patent venue (*see* 28 U.S.C. § 1404(a); 28 U.S.C. § 1391), and as such, Google satisfies the threshold inquiry for a transfer of venue analysis.

**B.      The Public Interest Factors**

The court addresses each public interest factor in turn.

### 1.  *The administrative difficulties flowing from court congestion*

The first public interest factor relates to judicial economy and efficient use of public resources—"the administrative difficulties flowing from court congestion."  *Volkswagen I*, 371 F.3d at 203.   The court congestion factor generally favors a district that can bring a case to trial faster.  The Scheduling Order in this case (Dkt. # 52) sets jury selection and trial in this case for July 16, 2018, a setting which the parties have known about since the Order Governing Proceedings (Dkt. # 33 at p. 18) issued in January 2017.  Since there is a firm trial date, and there has been one for at least three months, as well as a detailed Scheduling Order that sets deadlines leading up to trial, the assertion that the Eastern District of Texas is less convenient because of court congestion is weak. This is certainly not a case where the court's docket is too congested to give the parties a firm trial date—they already have one.

Google claims that this factor is neutral because the average times to trial between the Northern District of California and the Eastern District of Texas are "comparable," and this factor should not be given great weight because comparing statistical figures on relative congestion is too speculative.   Both these statements are valid statements concerning "average" time

measurements.  Such statistics are irrelevant when there is a firm trial setting and the Scheduling Order has been issued.  This factor therefore weighs against transfer.

### 2.   *The local interest in adjudicating local disputes*

The second public interest factor is the local interest in having localized interests decided at home.  *Volkswagen II*, 545 F.3d at 315.   "As other district courts have recognized, it is generally a fiction that patent cases give rise to local controversy or interest, particularly without record evidence suggesting otherwise."  *See, e.g. Glob. Equity Mgmt. (SA) Ltd. v. Alibaba.com, Inc.*, Case No. 2:15-cv-1702, 2017 WL 1109865, *3 (E.D. Tex. Mar. 24, 2017) (citing *TS Tech*, 537 F. Supp. 2d at 643 (D. Del. 2008)).  Google appears to confound witness location and location of evidence with "localized interests."   *See* Mtn. (Dkt. # 41) at pp.  9–10.   Absent extenuating circumstances, patent issues are national—not local—interests.

Google has offices in many places, including the Northern District of California.  Personal Audio has an office in the Eastern District of Texas. Without record evidence that the local interests are stronger in either Texas or California, this factor is neutral.

### 3.   *The familiarity of the forum with the law that will govern the case*

The parties do not dispute that courts in both venues are familiar with patent law.  But, Personal Audio contends that this factor weighs against transfer because certain relevant licenses are governed by Texas law, with which this court would be more likely to be familiar.  Opp. (Dkt. # 48) at p. 20.   While the choice of law provisions in those licenses may implicate Texas law, these licenses are not yet before the court.  It is still unclear to what extent the licenses are relevant or what type of contract interpretation would be required.  The court will not engage in guesswork simply to buttress its analysis of this factor.  It would also be improper to assume,  that a California court could not  apply Texas law in interpreting

the licenses.  Courts are routinely called upon to apply different state law in contract interpretation.  On balance, this factor is neutral.

### 4.  *The avoidance of unnecessary problems in conflict of laws*

As this is a patent case arising under federal law, there are no issues relating to conflict of laws.  The court agrees with Google[1] that this factor is neutral.

## C.    The Private Interest Factors

The court next addresses the four private interest factors.

### 1.  *The relative ease of access to the sources of proof*

The first private interest factor is the relative ease of access to the sources of proof.  *Volkswagen I*, 371 F.3d at 203.  Normally, the court's consideration of this factor should focus on the accused infringer, since the "bulk of the evidence" in a patent case will usually come from the accused infringer.  *See Genentech*, 566 F.3d at 1345.  "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Id.* (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).

Google claims that documents "potentially relevant to Google Play Music and Personal Audio's infringement allegations" are located in, or are maintained from and are accessible in, Google's California offices. Mtn. (Dkt. # 41) at p. 10.   Google argues that, because their documents are "accessible by Google employees *with access* permissions," and those employees are located in California, their documents are more easily accessible from California.  Reply (Dkt. # 61) at p. 6 (emphasis added).  Google also claims that Personal Audio's documents are located outside the district or were moved to the district for litigation.  *Id*. at p. 11.  Personal Audio claims

---

[1] Personal Audio did not specifically address this factor in its discussion of the public interest factors.  *See* Opp. (Dkt. # 48) at pp. 19–22.

that, because Google's documents are likely available electronically, the physical location does not matter, and to the extent that physical location is relevant, Personal Audio's records are located in Plano, Texas, within the Eastern District of Texas, and have been there since 2009.  Opp. (Dkt. # 48) at p. 12.

It is generally recognized that in cases involving recently developed products, electronically stored information (ESI) has generally replaced paper.  Format and search methods, not transportation of paper, are the problems to be solved.  *See Effective Use of Courtroom Technology: A Judge's Guide to Pretrial and Trial*, 64–65 (Federal Judicial Center, 2001) (noting even in  2001 that most documents "originate in digital form" and describing the "wasteful and time-consuming paradigm of printing digital material to then scan it and turn it back into digital format").  Assertions about where paper documents are located, without more detail, therefore have become less probative of this factor.

To be clear, the advent of electronic discovery has not rendered this factor superfluous.  *Volkswagen II*, 545 F.3d at 316.[2]   Where physical evidence is located is still relevant.  And physical evidence might include paper copies of documents that are not available electronically.  However, it is incumbent upon a defendant in Google's position to identify specific examples of the physical evidence that would be more convenient to access if the case were handled in California.  *See, e.g.*, *Stingray Music USA, Inc. v. Choice*, Case No. 2:16-cv-964, 2017 WL 1022741, *3 (Mar. 16, 2017) at 5 ("authority does not preclude this Court from diminishing the importance of this factor in the overall transfer analysis, especially where, as is the case here, the

---

[2] When *Volkswagen* and the early cases focusing on the physical location of documents were decided, the courts were not as familiar with e-discovery or even with e-filing of documents, including briefs, which is now the norm in the Fifth Circuit.  As a practical matter, other than disputes over prior art, it has likely been many years since an actual paper "original" has been used at a deposition or a trial in a patent case, especially one involving computer source code.

movant has identified no sources of proof that cannot be transferred electronically."). But Google did not identify a single example of a piece of relevant physical evidence that is located in California and would be more difficult to access from this district. Because Google failed to provide specificity, there is no basis for the court to assign great weight to this factor.

Further, to the extent that it is relevant, Personal Audio has been a legal entity since it was incorporated in Texas in 2009. Personal Audio's only office is located in Plano, which is in the Eastern District of Texas. That office contains the originals of many of its corporate documents, including most of those relating to prosecution and assignment of the patents-in-suit, the original assignment history of the patents, and the remaining documents from Personal Audio, Inc.

Google complains that Personal Audio moved this type of physical evidence to the Eastern District of Texas for the purpose of litigation, in some sort of sham to make it more convenient to litigate here. The court recognizes that a party's manipulation of evidence, such as transfer of the originals of documents, might affect this factor. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009). But choosing to incorporate in a state and to locate the principal office there is a different matter.[3]

Because the court's analysis does not turn on where Personal Audio's documents are located, Google's accusation does not affect the analysis. On balance, Google did not establish that the location of physical sources of proof weighs more than slightly in favor of transfer.

---

[3] It is common, for example, for a business to incorporate in the state of Delaware in order to take advantage of that state's corporate tax laws and its courts' experience in corporate matters. The court has not found any case holding that such a "strategic" incorporation should be held *against* a corporation when analyzing venue or jurisdiction.

## 2. *The availability of compulsory process to secure the attendance of witnesses*

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen I*, 371 F.3d at 203. Under Federal Rule of Civil Procedure 45(b)(2), a court's power to issue a deposition or trial subpoena extends to any witness who resides in the district or within 100 miles of where the deposition or trial is held. While the court's subpoena power is subject to Rule 45(c)(3), a witness can nevertheless be compelled to attend trial from anywhere within the state in which the trial is held. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii); *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000). The court's subpoena powers under Rule 45 are applied specifically to non-party witnesses. *Volkswagen II*, 545 F.3d at 316; *Emanuel v. SPX Corp./OTC Tools Div.*, Civ. Action No. 6:09cv220, 2009 WL 3063322, at *5, n.2 (E.D. Tex. Sept. 21, 2009). Therefore, the court focuses here on non-party witnesses.

Google stated that neither side identified non-party witnesses and argued that the factor is neutral. Reply, Dkt. # 61, at p. 4 n.6. Personal Audio initially agreed with Google's concession and argued that, because Google did not identify any non-party witnesses who would be affected by a transfer, the factor weighs against transfer. This misstates the application of the burden of proof to the factors to be analyzed. This factor would weigh for or against transfer only if one side provided evidence that one district or the other were more convenient for non-party witnesses. *See Volkswagen II*, 545 F.3d at 316 ("the venue transfer analysis is concerned with *convenience*") (emphasis added). Because neither party identified non-party witnesses that would need to be secured for deposition or trial, this factor is neutral.[4]

---

[4] Personal Audio belatedly identified in its sur-reply Mssrs. Logan, Goessling, Call, and Baker, as well as the law firm of Nixon & Vanderhye—the named inventors and other individuals and entities involved with the prosecution of the patents—as non-party witnesses who reside on the

### 3.   *The cost of attendance for willing witnesses*

The third private interest factor is the cost of attendance for willing witnesses.   *Volkswagen I*, 371 F.3d at 203.   In *Volkswagen I*, the Fifth Circuit established the 100-mile rule to determine the convenience of the transferee district to the witnesses and parties.   "When the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled."   *Volkswagen I*, 371 F.3d at 204–05.   The 100-mile rule applies here since the Northern District of California is more than 100 miles from this district.   When inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other is insufficient to affect a transfer of venue analysis.   *In re Google Inc.*, 412 F. App'x 295, 296 (Fed. Cir. 2011).

In this case, both parties claim that their witnesses would be greatly inconvenienced by the other party's chosen venue.   Google's primary claim is that all its relevant party witnesses would have to incur the cost of travel from California.   Personal Audio claims that at least two party witnesses, CEO and General Counsel Mr.   Brad Liddle and Office Manager Ms. Erin Davis reside in Texas, and the cost difference associated with trial in California versus the Eastern District would improperly transfer the inconvenience from Google employees to Personal Audio employees if the case were moved.   Dkt. # 48 at pp. 10–11.

---

East Coast and would find it more convenient to travel to Beaumont rather than California. Dkt. # 64 at 9–11. Personal Audio obtained an affidavit from Mr. Call stating that he would prefer to travel to Beaumont versus San Francisco. *See* Decl. of Charles G. Call, Dkt. # 64-1, at ¶ 5.  But, it is not clear that these witnesses are disinterested non-parties and they seem to have been identified as an after-thought.  To the extent that the court were to consider these witnesses, inconvenience to them would only further weigh against transfer.

On balance, the cost of attendance for willing witnesses favors transfer.  More witnesses would be inconvenienced by not transferring to California.  According to Google, "[n]o Google employees involved in the design, development, operation, finance or marketing of Google Play Music live or work in the Eastern District of Texas."  Harding Decl. (Dkt. # 41-1) ¶¶ 8–10.  The "vast majority of Google employees" involved with the accused product work in Mountain View or San Bruno, California.  *Id*. at ¶ 7.  Google identifies at least four witnesses knowledgeable about Google Play Music—John Evans, Alex Feng, Chris Connelly, and Ms. Robyn Harding herself— that would be inconvenienced.  *Id*. at ¶ 7.  Google states that the various relevant business groups are based in Mountain View, San Bruno, and to some extent, New York.  *Id*. at ¶¶ 4–7.  Personal Audio does not disagree with these facts.

The fact that the key Google business groups and witnesses are in California favors transfer because the Eastern District of Texas is less convenient to those witnesses.  "[I]t is an obvious conclusion that it is more convenient for witnesses to testify at home and that additional distance means additional travel time" and additional monetary burden.  *Sec. & Exch. Comm'n v. Blackburn*, No. 4:14CV812-LG-CMC, 2015 WL 11120724, at *3 (E.D. Tex. June 30, 2015) (quoting *Volkswagen II*, 545 F.3d at 317).  "Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community."  *See Blackburn*, 2015 WL 11120724, at *3.  Google's witnesses will be inconvenienced by a trial in Texas rather than Northern California.

Personal Audio identified only two witnesses who would have to travel from Texas if trial were in California.  Personal Audio claims, however, that the cost of staying in the Northern District of California is generally known to be more than the cost of hosting witnesses in this District based on factors like hotel costs and meals.  It is true that a witness will likely incur higher

subsistence expenses in California. However, Google has identified many more likely party witnesses in California than Personal Audio has identified in Texas, which outweighs the per person cost. Other courts in this District have reached the same conclusion when faced with a similar numerical balance. *See Blackburn*, 2015 WL 11120724 at *2–3.

On balance, consideration of the cost of willing witnesses weighs in favor of transfer.

### 4. *All other practical problems that make trial easy, expeditious, and inexpensive*

Judicial economy in this case weighs heavily against transfer. It has long been held that "judicial economy can be a paramount consideration . . . even if the convenience factors call for a different result." *In re Vistaprint*, 628 F.3d 1342, 1347 (Fed. Cir. 2010); *see also Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("Consideration of the interest of justice, which includes judicial economy, may be determinative of a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.") (citations omitted). In considering judicial economy, a judge's familiarity with the patents-in-suit weighs heavily in favor of maintaining the action in that court. *See Vistaprint*, 628 F.3d at 1344, 1347 n.3 (holding no abuse of discretion to deny transfer despite convenience factors favoring transfer because the trial court became "very familiar with the asserted patent and related technology" and the judge had "a superior opportunity to familiarize himself . . . with the nature of the case and probable testimony at trial, and ultimately [was] better able to dispose of [the] motions.").

This court has extensive prior experience with the patents-in-suit from the prior cases, including most significantly the *Acer* and *Apple* litigations in which the same patents were asserted, similar accused technologies were involved, and the parties proceeded at least through claim

construction.[5]  This court has appointed and consulted extensively with a technical advisor who examined the patents-in-suit and helped the court understand the technical background of the patents and the expert opinions.  The court has also handled several dispositive motions and sat through an eleven-day jury trial in the *Apple* litigation.  In short, this court has probably already dealt with almost every technical and legal issue that is likely to be raised.

At the March 24, 2017 Case Management Conference, Personal Audio stated that the claim construction issues in this case would be similar if not identical to prior cases, but Google vaguely urged that there "may be new issues" when the court inquired.  Tr. at 54:1–55:24.[6]  Personal Audio did state that it might be asserting additional claims with terms that have not been construed by this court depending on which versions of Google Play Music were ultimately accused.  Tr. at 20:19–22:15.  However, this court's analysis cannot be based on speculation or guesswork related to could-be accused products.  *See Core Wireless Licensing S.a.r.l. v. LG Elecs., Inc.*, Case No. 2:14-cv-912, 2016 WL 4265034, at *3 (E.D. Tex. Aug. 12, 2016).  It must be based on what the court currently knows.  Moreover, even if there are new issues, it would be significantly less difficult for the undersigned to address them than it would be for another judge to start from scratch.

Google claims that the judicial economy savings are less because the *Apple* litigation was filed eight years ago and settled five years ago and because the parties have altered their claim construction positions since the prior litigations.  Reply (Dkt. # 61) at pp. 4–5.  However, the

---

[5] At the March 24, 2017 Case Management Conference, the parties appeared to dispute what version or versions of Google Play Music were being accused in the present case.  The marginal differences between various versions, even if they might affect the infringement analysis, do not undermine the more general familiarity with the patents and even Google Play Music that the court developed through prior *Personal Audio* cases.

[6] The official CMC Transcript appears on the CM/ECF docket at Dkt. # 57.

judicial economy savings transcend time; just because the litigations did not occur in the last few years or are not currently ongoing does not undercut the undersigned's familiarity with the patents and the disputes from those prior cases.

The meaning of certain words in a patent is determined from the point of view of a person having ordinary skill in the art at the time of invention, which is marked by the effective filing date of the patent application. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). Claim construction is not based on the trends or current slang popular among a new generation of engineers and lawyers. The shifting litigation positions of the parties, for instance variance in their claim construction positions, does not alter the weight that should be afforded the court's experience with prior litigation over these patents. This court's experience and involvement with the patents-in-suit in this case is substantial and detailed, and strongly favors retaining the case in this district.

The firm July 2018 trial setting also precludes the risk of added expense and delay to the parties, which might be incurred if the case is transferred and a new court in the Northern District of California were forced to initiate case management. On balance, practical considerations and judicial economy weigh heavily against transfer.

## IV.    Conclusion

Here, the judicial economy savings that follows from not transferring the case, which may be properly considered a "paramount consideration" in the analysis of private interest factors, weighs heavily against transfer. This court has extensive experience with the same patents-in-suit and with very similar technology that was the subject of other suits filed in this court.

The only private interest factor that favors transfer is the cost of attendance for willing witnesses, in large part because Google's employees are predominantly located in California. The relative ease of access to sources of proof and the availability of compulsory process for non-party

witnesses are neutral.  Notably, Google did not identify any specific examples of physical evidence or any non-party witnesses that would make the Northern District of California more convenient. The private interest factors, taken collectively, weigh against transfer.

As to the public interest factors, the administrative difficulties factor weighs against transfer, while the local interest, the forum's familiarity with the applicable governing law, and the conflicts-of-law factors are neutral.

On balance, especially in light of the judicial economy reasons for keeping the case in this district, Google did not meet its burden of proving that the Northern District of California is a clearly more convenient forum.  This case shall remain in the Eastern District of Texas.

IT IS THEREFORE ORDERED that Google's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (Dkt. # 41) is DENIED.

IT IS FURTHER ORDERED that Google's Motion for Leave to Exceed Page Limit for Reply Brief by Two Pages (Dkt. # 60) and Personal Audio's Motion for Leave to File Excess Pages in its Sur-Reply (Dkt. # 63) are GRANTED.

So **ORDERED** and **SIGNED** this **20** day of **April, 2017.**

_____

Ron Clark, United States District Judge