# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **PERSONAL AUDIO, LLC,** | |
| **Plaintiff,** | Civil Action No. 17-1751-VAC-CJB |
| **v.** | |
| **GOOGLE LLC,** | Jury Trial Demanded |
| **Defendant.** | |

## PERSONAL AUDIO, LLC'S OPENING CLAIM CONSTRUCTION BRIEF

Dated: April 18, 2018

Of Counsel:

Douglas Q. Hahn
Stradling Yocca Carlson & Rauth, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4138; Fax: 949-823-5138
Email: dhahn@sycr.com

Charles W. Goehringer
GERMER PLLC
550 Fannin, Suite 400
Beaumont, TX 77701
Phone: 409-654-6700
Email: cwgoehringer@germer.com

Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
FARNAN LLP
919 North Market Street, 12th Fl.
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Victor G. Hardy (admitted *pro hac vice*)
William Parrish (admitted *pro hac vice*)
Minghui Yang (admitted *pro hac vice*)
Hardy, Parish, Yang, LLP
Spicewood Business Center
4412 Spicewood Springs Rd.
Suite 202
Austin, Texas 78759
Telephone: (512) 520-9407
vhardy@hpylegal.com
bparrish@hpylegal.com
myang@hpylegal.com

*Attorneys for Plaintiff Personal Audio, LLC*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. TECHNICAL BACKGROUND OF THE INVENTION ......................................... 1

III. CONSTRUCTION OF DISPUTED TERMS ..................................................... 3

    A. "FILE" (all asserted claims) ....................................................................... 3

    B. "SEQUENCING FILE" LIMITATIONS (all asserted claims) ...................... 4

    C. "MEANS RESPONSIVE" TERMS ('076 patent, claims 1-3, 5, 6, 13-15) ......... 6

        1. The Playback Control Features of the Patents-in-Suit Do Not Necessitate the Use of a "Received" Sequencing File or Scanning "the" Received Sequencing File ........................ 7

        2. The Playback Control Features of the Patents-in-Suit Do Not Necessitate the Use of a "Usage Log File" ............................................................................................... 9

        3. Inconsistently Replacing the Previously Construed Term "Predetermined Amount of Time" With "Near the Beginning" Is Improper ................................................. 11

        4. Prosecution History Supports Plaintiff's Proposed Clarification of LocType ............... 11

    D. "MEANS FOR CONTINUOUSLY REPRODUCING" ('076 patent, claims 1-3, 5, 6, 13-15) ................................................................................................. 13

        1. Plaintiff's Modification to Remove the Circular Endless Loop from the Corresponding Structure is Proper ....................................................................... 15

        2. Fig. 3 Discloses the Corresponding Structure for "Continuously Reproducing Said Program Segments in the Order Established by Said Sequence [of the Sequencing File] in the Absence of a Control Command" ......................................................... 13

        3. Defendant's Modifications to the PTO's Construction are Clearly Erroneous .............. 17

        4. The "R" LocType is Further Unnecessary Structure ...................................... 21

    E. "EDITING MEANS FOR MODIFYING SAID DATA ESTABLISHING A SEQUENCE" ('076 patent, claim 5) .................................................................. 22

    F. "PROCESSOR FOR…" TERMS ('076 patent, claims 1-3, 5, 6, 13-15) ............ 25

    G. "MEANS FOR DETECTING…" ('076 patent, claims 1, 2) ........................... 28

    H. "COMMUNICATIONS PORT" TERMS ('076 patent, claims 1, 14) ............... 28

    I. "MEANS FOR TRANSLATING SAID VOICE SIGNALS…" ('076 patent, claim 13) .... 30

    J. "AUDIO PROGRAM PLAYER" AND "SELECTED AUDIO PROGRAM SEGMENTS" (all asserted claims) ..................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
  659 F. 3d 1121 (Fed. Cir. 2011)................................................................. 10

*ACTV, Inc. v. Walt Disney Co.*,
  346 F. 3d 1082 (Fed. Cir. 2003) ................................................................ 4

*Alexam, Inc. v. Best Buy Co.*,
  2012 U.S. Dist. LEXIS 49511 (E.D. Tex. Apr. 9, 2012). ......................... 11

*B. Braun Med., Inc. v. Abbot Labs.*,
  124 F.3d 1419 (Fed. Cir. 1997) ................................................................. 18

*Blackberry Corp. v. MobileMedia Ideas, LLC*,
  IPR2013-00036, Paper 65 (PTAB Mar. 7, 2014)...................................... 25

*Genetics Inst., LLC v. Novartis Vaccines, Inc.*,
  655 F. 3d 1291 (Fed. Cir. 2011)................................................................ 10

*In re Johnston*,
  435 F.3d 1381 (Fed. Cir. 2006).................................................................. 20

*Ishida Co. v. Taylor*,
  221 F.3d 1310 (Fed. Cir. 2000) ................................................................. 22

*Lahoti v. Vericheck, Inc.*,
  636 F.3d 501 (9th Cir. 2011)...................................................................... 24

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004)..................................................................... 25

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
  194 F.3d 1250 (Fed. Cir. 1999) .......................................................... passim

*Personalized Media v. ITC*,
  161 F.3d 696 (Fed. Cir. 1998)..................................................................... 30

*RF Del., Inc. v. Pac. Keystone Techs., Inc.*,
  326 F.3d 1255 (Fed.Cir.2003)..................................................................... 16

**Statutes**

35 U.S.C. §311(b) ........................................................................................ 25

# I. INTRODUCTION

Plaintiff Personal Audio, LLC ("Personal Audio") submits this brief to address the appropriate construction of claim terms in U.S. Patent Nos. 6,199,076 (the "'076 patent") and U.S. Patent 7,509,178 (the "'178 patent") (**Exhibits A & B**) that are significant to the resolution of the dispute between Plaintiff and Defendant Google Inc. ("Google" or "Defendant").

The Eastern District of Texas previously conducted two *Markman* hearings on these terms and already passed negatively on arguments now raised by Google.  Many of these terms included means-plus-function limitations, which the E.D. Tex. provided detailed corresponding algorithmic structures.  **At Google's request**, the prior constructions were largely adopted by the Patent Trial and Appeal Board ("PTAB") in *inter partes* reviews of '076 and '178 patents with only minor modifications.  In the IPRs, Google submitted and successfully relied upon the E.D. Tex.'s prior constructions—inconsistent with its current positions—to invalidate a number of claims. The PTAB further construed several claim terms which were not previously construed. With regard to the prior constructions, Plaintiff generally requests the E.D. Tex.'s constructions as modified by the PTAB be adopted with a few exceptions.  **Appendix A** is a chart of the disputed terms, the previous constructions, and the parties' respective positions.

## II. TECHNICAL BACKGROUND OF THE INVENTION

Section II of the Declaration of Kevin Almeroth goes through in detail as to how one skilled in the art would interpret how the disclosed embodiment uses a downloaded sequencing file to control playback.  The Almeroth Decl. derives from specific text in the patent specification describing the creation and use of sequencing files for playback control. Importantly, the player acts on sequencing file 351 which is not downloaded from a host server but compiled on the player from sequencing file 307:

[T]he sequence of program segments to be presented to the user is formed into a **schedule file (seen at 307 in FIG. 4)** consisting of a sequence of program segment identification numbers which are used **to compile a sequencing file, called the selections file, illustrated at 351 in FIG. 5,** which contains more detailed information about the sequence of events which occur during playback. '076 patent, 12:3-15.



The above diagram shows a user can alter the downloaded recommended sequencing file 307 prior to the creation of the final sequencing file 351 depicted by the upwards arrow. The specification states that after schedule file 307 is downloaded, the user may use the player's editor to alter the downloaded sequence when compiling selections file 351:


The playback operation itself continues from the designated playback point in the **selections file (seen at 351** in FIG. 5) which follows a **program sequence [from downloaded recommended file 307] initially created by the host server and <u>downloaded</u>** with the program segments themselves, and **then** (optionally) **modified** by the addition, deletion and re-sequencing of segment identifiers as discussed earlier in connection with step 211 in FIG. 2. '076 patent, 12:21-34, Fig. 2.

The past tense "downloaded" language makes clear that selections file 351 may contain a sequence "modified" by the player after being "downloaded" from the server. Thus, selections file 351 is compiled on the player and not received from the host server as contended. *See* Almeroth Decl. ¶¶ 28-34.

The disclosed embodiment compiles on the host server a recommended sequencing file (i.e., Recommended Schedule Table 307) based on user preferences. That file is downloaded and referenced to create selections file 351 within the memory of the player which establishes the sequence used for playback control. The user can further alter this sequence using the player's editor after the sequence is downloaded. **Thus, the downloaded sequencing file of the**

2

embodiment of the invention is not continuously referenced for use in playback control, but rather only referenced to provide the initial recommended sequence for playback.  Indeed, the player controls may reference "sequencing files" such as selections file 351 that were not directly downloaded from the host server but rather were compiled on the player from downloaded sequencing files.  This clear disclosure from the patent specification negates a number of Defendant's arguments presented here.

### III. CONSTRUCTION OF DISPUTED TERMS

**A. "FILE" (all asserted claims)**

<u>The differences in competing constructions are shown in **Appendix A** at Ref. 1.</u>

Defendant argues that the term "file" should be construed as "any collection of data that is stored and manipulated as a named unit *by a file management system*." D.I. 76-B at 2.  Plaintiff disagrees because this construction suggests files are limited to only those data structures that are used by a "file management system."  It is anticipated Defendant will argue its system is a database system and the "files" used by that system are not files according to its proposed construction.  Although Plaintiff believes this distinction is irrelevant, Plaintiff seeks a construction that would resolve this issue by either excluding the "by a file management system" language or inserting "…or a database system" at the end of the construction.

At the outset, any construction of file that purports to exclude "files" used by database systems or otherwise limits "file" to only data structures used by file management systems from the claim scope is plain error.  Nowhere does the term "file management system" appear within the patent.  More importantly, the patent discloses the preferred embodiment uses a "database system": "The relational *database system* employed by the preferred embodiment of the invention further includes…" '076 patent, 18:1-2.  Other parts of the specification describe using records and fields commonly used by database management systems. Almeroth Decl. § III(A).

3

Defendant is expected to contend this definition constitutes the ordinary plain meaning of the word "file" based upon a definition in a single, alternative dictionary which sets forth a "file management computer programming" definition.  However, Plaintiff provides no less than four other computer dictionary definitions from the relevant time period for the word "file" which do not require "storage and manipulation by a file management system"—as well as a definition from Defendant's own dictionary—that support Plaintiff's construction. Almeroth Decl. ¶ 38.

Federal Circuit precedent requires claim terms be afforded their broadest meaning consistent with the ordinary and plain meaning, usage in the specification, and file history. *ACTV, Inc. v. Walt Disney Co.*, 346 F. 3d 1082, 1091 (Fed. Cir. 2003) ("Where the written description does not expressly limit the claim term and otherwise supports a broader interpretation, we are constrained to follow the language of the claims and give the claim term its **full breadth** of ordinary meaning as understood by persons skilled in the art.").  Here, Plaintiff has put forth no less than five dictionary definitions from the relevant time that do not contain the requirement that the "file" be "stored and manipulated by a file management system"-- including a definition from the same dictionary Defendant is expected to rely upon.  Neither the patent specification nor the prosecution history refers to a "file management system."  Rather, the patents refer only to a "database system." '076 patent, 5:53-55; 5:66-6:2; 6:38-44.  Defendant ignores that the patents teach storing and accessing files and the data within files without ever teaching that a file-management system is necessary.  Thus, requiring that the claims incorporate a file management system is at odds with the intrinsic and extrinsic evidence.

**B. "SEQUENCING FILE" LIMITATIONS (all asserted claims)**
The differences in competing constructions are shown in **Appendix A** at Ref. 2.

The terms "sequencing file" and "playback session sequencing file" appear in claims 1 and 14 of the '178 patent respectively, while the term "file of data establishing a sequence" is

4

part of the means-plus-function element "a means for receiving and storing a file establishing a sequence" of the independent claims of the '076 patent (collectively, the "sequencing file limitations"). '178 patent, 45:60-64; 48:8-10; '076 patent, 46:18-21.  Defendant seeks to add the following limitations to the construction of the sequencing file limitations: "a file that is [1] **received by the player**, [2] **stored**, and [3] **used by the processor to both control playback of each song** in the recommended order and respond **to control commands**." D.I. 76-B at 2-3.

The dispute here concerns the bolded limitations that specify a particular use for the claimed sequencing file.  Nothing about the inherent claim language "sequencing file" or a "file establishing a sequence" is addressed to any particular use of such a file other than for establishing a sequence. Almeroth Decl. § III(B).  To the extent that any other use of a sequencing file is required by the claims, such use is found explicitly in the remaining claim language.  Indeed, the E.D. Tex. Court specifically rejected the inclusion of Defendant's proposed additional language for these terms, finding that the "use" of a sequencing file (including "received") was addressed "elsewhere in the claim language" and therefore not inherently within the definition of sequencing file. *See* Order Construing Claim Terms at 18, *Personal Audio LLC v. Apple, Inc.*, No. 9-09-cv-111 (E.D. Tex. 2010) (attached as **Exhibit D**).

Further, the specification clearly uses the term "sequencing file" to describe files that are not "received" by the player.  The specification indisputably uses the term "sequencing file" to describe "selections file 351":

> [T]he sequence of program segments to be presented to the user is formed into a **schedule file (seen at 307 in FIG. 4) consisting of a sequence of program segment identification numbers which are used to compile a sequencing file, called the selections file, illustrated at 351 in FIG. 5**, which contains more detailed information about the sequence of events which occur during playback."). '076 patent, 12:4-10.

As explicitly stated above, sequencing file 351 is not "received by the player" but rather is "compiled" on the player from Schedule Table 307 which was downloaded from the server. *Id.*,

*see also* Almeroth Decl. § III(B); '076 patent, 18:21-34.  This clearly demonstrates there are disclosed "sequencing files" that are not "received by the player" and the use elements are not inherent qualities of the naked term "sequencing file." Almeroth Decl. ¶ 50.  Nowhere in the patents is the sequencing file "selections file 351" described as being downloaded from a server. Furthermore, these terms appear in means-plus-function limitations and Defendant's construction is inconsistent with the corresponding structure disclosed for these limitations. *See supra* at II.

Finally, Google never submitted the use limitations as part of its proposed constructions relied upon by the PTAB to invalidate claims of the patents. *See, e.g.,* Institution of Inter Partes Review at 8-9, *Google, Inc. v. Personal Audio LLC*, IPR2015-00845 (PTAB 2015) (attached as **Exhibit E**) (reciting Google's construction for "file of data establishing a sequence").  At no time in the IPRs did Google argue that the proper construction of these terms required the additional limitations sought here, nor did it disclose that it believed the E.D. Tex.'s constructions were in error.  Google should not be able have it both ways by seeking drastically different constructions before the PTAB for invalidity and then here.

## C. "MEANS RESPONSIVE" TERMS ('076 patent, claims 1-3)
<u>The differences in competing constructions are shown in **Appendix A** at Ref. 3-5.</u>

The "means responsive" terms are three means plus function limitations appearing in claims 1- 3 of the '076 patent.  These three limitations include a "first command for discontinuing the reproduction of the currently playing program segment [and] continuing at the beginning of a program segment which follows said currently playing program in said sequence," a single second command "for discontinuing the reproduction of the currently playing program segment [and] continuing the reproduction at the beginning of said currently playing program segment," and two consecutive second commands "for discontinuing the reproduction

of the currently playing program segment [and] continuing the reproduction at the beginning of the program segment which precedes the currently playing program segment." D.I. 76-B at 9-12.

Plaintiff has largely adopted the prior constructions and seeks only two clarifications. Plaintiff ask this Court to clarify that (1) contrary to Defendant's position that the algorithm must use the "received" sequencing file, the scanning forward or backward step merely requires scanning the sequence established by the received file rather than scanning the file itself, and (2) that a LocType is "an identifier that indicates a characteristic of a selection record, for example, a playable content selection record." D.I. 76-B at 9-12.  Defendant improperly seeks to insert "received" and "time recorded in a usage log" as additional limiting structure, as well as replace the "predetermined amount of time" of the previous construction with "near the beginning." *Id*.

### 1. The Playback Control Features of the Patents-in-Suit Do Not Necessitate the Use of a "Received" Sequencing File or Scanning "the" Received Sequencing File

Google seeks to insert "received" into the corresponding structure of the first and two consecutive second commands of claims 1 and 3 (Appendix A at Ref. 3 & 5) to argue that the same "received sequencing file" must be continuously used for playback control, rather than used only to obtain a "sequence" to create selections file 351 that is further acted on by the controls.  Plaintiff seeks a construction rejecting the insertion of "received" and instead inserting the word "a" to clarify that scanning does not require scanning the "received" sequencing file: "scanning forward in a sequencing file."  Alternatively, Plaintiff seeks the following: "scanning forward in the sequence established by the sequencing file."

The previously identified corresponding structure shows the error of Defendant's proposed changes.  The E.D. Tex.'s prior construction order explicitly identified and relied upon the following as setting forth corresponding structure to the "first command" limitation:

FIG. 5 shows an illustrative sequence of Selection_ Records making up a selection file indicated generally at 351 which illustrates the manner in which the user may navigate

> the playback session between playback positions designated by the selection file. …If the user issues a skip command during or shortly after the time when subject announcement is played, the player executes a skip to the next subject, which is accomplished by scanning the selection file 351 until the next subject Selection_Record seen at 360 is located, and then performing a jump…

'076 patent, 34:24-44. This passage clearly identifies the scanning of selections file 351 as corresponding structure for the skip function. As discussed previously in Sections II and III(B) with respect to the sequencing file limitations, sequencing file "selections file 351" is disclosed as compiled by the player from a downloaded schedule file 307 and not itself downloaded or received from outside the player. '076 patent, 34:24-44. Nowhere is selections file 351 described as being created outside the player. Thus, the corresponding structure does not support any limitation of only scanning a "received" sequencing file but explicitly discloses using one "compiled" on the player. Almeroth Decl. ¶¶ 58-60.

Furthermore, corresponding structure "selections file 351" clearly discloses "bookmarked" selection records that were made on the player, not the host server. '076 patent, 16:7-45. Bookmarks are disclosed as being created by utility programs that are on the player. *Id.*, 8:45-53; 11:41-52. Thus, the player controls are necessarily scan a file created on the player rather than one "received" by the player. Nothing in the explicit language of the claims otherwise mandates only scanning a "received sequencing file." Indeed, the language of the playback control limitations only refers to using the "sequence" from the received sequencing file and never requires only scanning or using the "received sequencing file": "means responsive to … continuing the reproduction at the beginning of a program segment which follows said currently playing program in said sequence." '076 patent, 46:29-33.

Still further, the E.D. Tex. has already considered this issue of whether the (persistently stored) received sequencing file must be continuously referenced (*i.e.*, scanned) by the playback algorithms in a prior case and resolved against the construction proffered by Defendant here:

Apple's third argument is that the accused products are noninfringing because during playback they access playlists from working memory rather than from persistent storage [i.e., the same location where initially stored]… However, **nothing in the language of the "means responsive" limitations or in the court's constructions of those limitations requires that, after being stored persistently in the player's memory unit, <u>the sequencing file must always be accessed from persistent storage during playback</u>**.

Order Re: Apple's Motions for JMOL at 9-10, *Personal Audio LLC v. Apple, Inc.*, No. 9-09-cv-111 (E.D. Tex. 2010) (attached as **Exhibit C**).  Defendant's proposed construction to include "received" before every instance of sequencing file flies in the face of the prior analysis and should be rejected for the same reasons.

Finally, none of the constructions submitted by Defendant to the PTO and adopted at its urging in the IPRs contained these limitations.  Defendant relied upon its previously proposed construction to invalidate claim 1 and never argued the proper construction of this limitation required scanning the received sequencing file. Defendant should not be able to propose one construction before the PTO to invalidate the patents and an entirely different construction here.

**2. The Playback Control Features Do Not Necessitate the Use of a "Usage Log File"**

Google seeks to modify the "predetermined time" of the back functionality of claims 2 and 3 to include a "start time recorded in a usage log file." D.I. 76-B at 10-11.  It is well settled that it is error to import structures from the specification that are not necessary to perform the recited function. *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).  Usage logging is intended to provide a record of listener behavior for future recommendations and not for the claimed functions of  "discontinuing the reproduction of the currently playing program segment [and] continuing the reproduction at the beginning of said currently playing program segment" or "discontinuing the reproduction of the currently playing program segment [and] continuing the reproduction at the beginning of the program segment which precedes the currently playing program segment" or otherwise for execution of playback

9

controls. '076 patent, 6:40-50, 6:62-67.  The E.D. Tex. Court previously considered this exact

argument and rejected it because "usage logging" is not necessary algorithmic structure to

perform the recited functions:

> [T]he usage logging step… is not necessary for the player to perform the claimed functions of reproducing audio program segments in the order established by the sequencing file and in response to "Skip," "Back," and "Go" commands. Although the specification describes that the player stores certain data in the usage log file each time it begins a new program segment, the usage logging step is not clearly linked or associated with the function of program segment reproduction.

> Rather, the storage of data in the usage log is necessary to perform other functions that are described in the specification but not claimed in the limitations at issue here. The patents' specification describes that the usage log file is maintained by the player for uploading to the host server, which can then use the data in the log file to perform accounting and billing functions and to select new programming based on the user's preferences. Nowhere does the specification indicate that usage logging is necessary for playback or reproduction of an audio program segment, or for navigating among segments in the sequencing file.

Order on Reconsideration at 8-11, *Personal Audio LLC v. Apple, Inc.*, No. 9-09-cv-111 (E.D.

Tex. 2010) (attached as **Exhibit Y**). Defendant's proposed modification, in addition to being

unnecessary to the claimed function, improperly attempts to import a limitation into the claim

language in an effort to rewrite the claim.  The specification describes the usage log file as an

optional feature that may be "advantageously included" and further describes other advantages of

the features of the optional usage log file. Almeroth Decl. ¶¶ 61-63.  It is error to limit the claims

based on features described as optional. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F. 3d

1121, 1137 (Fed. Cir. 2011).  Further, at no time does the specification describe the player

controls using data recorded in the usage log file.  Rather, the usage log is described as a record

of user activities to be subsequently uploaded to the server and processed to suggest future

recommended programming. '076 patent, 6:40-50, 6:62-67.  It is further error to import

limitations into the claims based on undisclosed functionality. *Genetics Inst., LLC v. Novartis*

*Vaccines, Inc.*, 655 F. 3d 1291, 1316 (Fed. Cir. 2011).

### 3. Inconsistently Replacing the Previously Construed Term "Predetermined Amount of Time" With "Near the Beginning" Is Improper

Defendant's proposed construction relating to the "means responsive to two consecutive 'Back' commands" further alters the prior construction by replacing "if the currently playing program segment has not yet played for said predetermined amount of time…" with "if the currently playing program segment is near its beginning…" D.I. 76-B at 10-11.  This alteration is inappropriate because the corresponding structure agreed by the parties explicitly describes the algorithm using a predestined amount of time: "Note that, after any given segment has played for a predetermined amount of time." '076 patent, 15:49-50.  Furthermore, the alteration creates ambiguity likely to confuse the jury.  Despite this alteration in step two, step one of the same proposed algorithm continues to use the original "played for a predetermined amount of time…" construction. D.I. 76-B at 10-11.  Both of these steps are within the same algorithm, are used together to accomplish a single function, and reference the same unit of time.  Using disparate language to refer to the same algorithmic element creates an ambiguity within the construction.  "The purpose of claim construction is to clarify ambiguities, not to simply rewrite the claims using different words." *Alexam, Inc. v. Best Buy Co.*, 2012 U.S. Dist. LEXIS 49511 (E.D. Tex. Apr. 9, 2012).  Defendant's proposed alteration to the prior construction does nothing but rewrite one portion of the algorithm using different words that are internally inconsistent.  The new words create additional uncertainty as there is no objective means to determine what constitutes "near its beginning."  By contrast, a "predetermined amount of time" is definite and can be objectively set.  Given the inherent ambiguity introduced by Defendant's construction, Plaintiff respectfully requests the Court reject such wordsmithing and adopt the prior construction.

### 4. Prosecution History Supports Plaintiff's Proposed Clarification of LocType

Plaintiff requests construction of the term "LocType" as used in the algorithmic structure of the means plus function claims as follows:

> a LocType is an identifier that indicates a characteristic of a selection record, for example, a playable content selection record.

The meaning of LocType is not readily ascertainable by its plain language and must be defined for purposes of this litigation.  "LocType" is not a term of art in the industry but rather a coined term where the patentee acted as its own lexicographer.  Both the specification and the prosecution history supports Plaintiff's proffered construction.

Section III(C)(3) of the Almeroth Decl. explains the patent discloses a LocType to be a character identifier (numbers or letters) that identifies the characteristics of a given selection record pertaining to a program segment.  The pseudo-code at '076 patent, col. 32 describes LocType as comprising characters ("char"):

```
type Selection_Record = record
              LocType: Char;
              Location: Integer;
          end;
```

Col. 32 further gives examples of the meaning of the LocType character identifier, such as LocType "P" indicating playable "program content segments" or LocType "Q" indicating "advertising segments."  The examples given by the patent show that LocType is structurally an identifier that indicates a type or characteristic of a given selection record and accordingly support Plaintiff's proffered construction. *See* Almeroth Decl. ¶¶ 64-68.

The prosecution history further supports this construction.  Google represented in its IPRs that a LocType indicates a characteristic of "a playable object": "the [prior art] function rPlayer:FindNextElement scans backward in the play list to find the next playable element including advancing the element pointer backward until it finds the first playable object (a track, play list, or cart) (a "LocType")." IPR Petition at 48, *Google, Inc. v. Personal Audio LLC*, IPR2015-00845 (PTAB 2015) (attached as **Exhibit Z**).  Based on Google's representation, the PTAB determined that scanning forward in a play list to find the next playable element teaches the 'GO' command as claimed, including a LocType, which is merely a "variable name"

indicating a selection record of a "Playable object." Institution of Inter Partes Review at 30,

*Google, Inc. v. Personal Audio LLC*, IPR2015-00845 (PTAB 2015) (attached as **Exhibit E**).

The PTAB invalidated claim 1 based on this analysis of LocType. Because Google succeeded in

invalidating claim 1 based on these representations, Plaintiff's proposed clarification—consistent

with Google's representations to the PTAB—should be at a minimum adopted based on fairness

to the Parties, if not collateral estoppel.

### D. "MEANS FOR CONTINUOUSLY REPRODUCING" ('076 patent, claim 1)

The differences in competing constructions are shown in **Appendix A** at Ref. 6.

'076 patent, claim 1 recites "means for continuously reproducing said program segments

in the order established by said sequence in the absence of a control command." *Id*. at 46:24-26.

The E.D. Tex. found and the parties agree Fig. 3 of the patent discloses the algorithm

corresponding to the claimed function. D.I. 76-B at 7.  Specifically, for each segment in the

sequence, item 235 "continues playback," item 237 determines if a new segment has started

("Segment Start"), and if so, item 239 starts the new segment ("Handle New Segment").  If at

any time a command is received at item 261 (marked "Command?"), the algorithm proceeds to

the branch logic of item 262 to determine the type of command received and respond

accordingly.  However, if no command is received ("the absence of a control command"), the

algorithm returns to 235 and continues playback. "Continuously reproducing" refers to this

repeating of step 235 in the absence of a control command. Almeroth Decl. ¶ 86.

#### 1. Fig. 3 Discloses the Corresponding Structure for "Continuously Reproducing Said Program Segments in the Order Established by Said Sequence [of the Sequencing File] in the Absence of a Control Command"

The explicitly recited function of '076 patent, claim 1 is "continuously reproducing said

program segments in the order established by said sequence [of the sequencing file] in the

absence of a control command." '076 patent, 46:24-26.  Importantly, the recited function has two

explicit requirements: (1) playing the program segments in the order of the sequence provided by

a sequencing file and (2) continuously playing those segments in the absence of a control

command.  The E.D. Tex. Court correctly identified steps 235, 237, 239, and 261 of Fig. 3 (and

the description of these items in the specification) as corresponding structure to the above recited

function. Order Re: Apple's Motions for JMOL at 2-3, *Personal Audio LLC v. Apple, Inc.*, No. 9-

09-cv-111 (E.D. Tex. 2010) (attached as **Exhibit C**).



Steps 235, 237 and 239 of Fig 3 meet the first requirement of the function and describe the programming for serially playing audio programs in the sequence.  As is shown in Fig. 3, the algorithm advances through the specified sequence at step 235 (Continue Playback) and determines if a new segment has started at step 237. The algorithm proceeds to step 237 (Segment Start?) each time a new segment is reached during playback and the algorithm then handles the new segment in step 239.  It should be noted the claim requires "reproducing said program segments in the order established by said sequence."  The specification repeatedly describes the player as playing program segments in the order determined by the sequencing file:

> According to a further feature of the invention, the audio program player plays program segments **in an order determined by a session schedule** which identifies an ordered sequence of program segments.
>
> ***
>
> As indicated at 237 in FIG. 3, each time a new program segment is started, a new segment handling procedure is executed at 239… **the next program segment in the program sequence 214 is played**.

'076 patent, 2:44-47; 13:1-8.  As a result, the patent is clear the algorithm advances through the specified sequence and does not depart from it during continuous reproduction.

The branch logic of step 261 that returns to step 235 meets the second requirement of the

recited function and ensures that the playing of segments in the sequence is done in continuous

fashion without the need of control commands to initiate playback of the next segment in the sequence.  The final step of the algorithm is the branch logic at 261 which checks for whether a control command has been received and corresponds to the "in the absence of a control command" portion of the recited function.  In the absence of a control command (indicated by "No" on the left of "Command?"), the algorithm proceeds back to step 235 ("Continue Playback").  Thus, the recited function of "continuously reproducing said program segments in the order established by said sequence in the absence of a control command" is completely embodied within these steps shown in Fig. 3. *See* Almeroth Decl. ¶¶ 84-86.

### 2. Plaintiff's Modification Removing the Circular Endless Loop is Proper

Plaintiff proposes modifying the E.D. Tex.'s construction to clarify that "continuously reproducing said program segments… in the absence of a control command" does not require the sequence to be repeated in a circular endless loop.  Plaintiff's proposed modification is necessary because the prior construction requiring the algorithm's last step to include an endless loop is (1) contrary to the meaning of the term "continuously reproducing"; (2) in error based on claim differentiation because claims 1 and 4 cannot be coterminous in scope; (3) not necessary to the claimed function; and (4) not disclosed by the patent to be a step of continuous reproduction.

"Continuous reproduction" is a term of art that refers to playing successive tracks in a playlist continuously without interruption or having to press play to advance to the next program in the sequence.  One of ordinary skill at the time of invention would understand "continuous playback" to merely require the reproduction of programs absent a control command and does not further include playback in an endless loop. Almeroth Decl. ¶¶ 71-83.  Dr. Almeroth's testimony cites as supporting extrinsic evidence no less than 6 definitions and prior art examples showing this was the understanding of the art at the time of invention. *Id.*  The continuous

reproduction of each audio segment in a playlist absent a control command without repeating any segment in a loop is sufficient to fall within the recited function.

This understanding is further reflected in the dependent claims because claim 4 explicitly recites "wherein said sequence established by said data forms an endless circular sequence of program segments." '076 patent, 46:49-51. This claim clearly requires the sequence to be an endless loop, and indeed the prosecution history specifically identified this claim as directed to sequencing files that "form[] an endless loop of programming." Almeroth Decl. ¶ 82. Under the doctrine of claim differentiation, it is well settled a dependent claim must be narrower than an independent claim. *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1264 (Fed.Cir.2003). As claim 4 explicitly requires the sequence to form an endless loop, claim 1 must encompass sequences that both form and do not form endless loops. Accordingly, to distinguish the scopes of claims 1 and 4, it would be in error to read the endless loop requirement of claim 4 into the structure of claim 1.

Plaintiff's construction is also consistent with the language of the claim. The recited function is "reproducing said program segments *in the order established by said sequence* in the absence of a control command." All that is required by this function is reproducing program segments *in the order of the sequence* in the absence of a control command. The explicit functional language of the function does not require that the sequence to be repeated and this limitation is met if the audio files of the sequence are continuously played through once without repetition absent a control command. Indeed, the function explicitly recites that the program segments must be reproduced "in the order established by [the] sequence." '076 patent, 46:25. Playback of program segments in a loop necessarily involves reproduction of the audio files in a manner that departs from the order of the sequence and therefore is not part of the explicitly

16

recited function.  For example, going from program 100 to program 1 departs from the order of the sequence, which requires producing the segments in the order 1→100.  Since those parts of the disclosed continuous playback algorithm related to playback in a loop do not perform the explicitly recited function, it would be error to include them in the corresponding structure of the claim. *Micro Chem.*, 194 F.3d at 1258-59 (refusing to import structures related to "sequential weighing" because the function only explicitly required "weighing").

In *Micro Chem.*, the District Court was required to construe the means-plus-function term "weighing means for determining the weights of selected additives..." *Id*. at 1254.  The District Court identified specialized structures related to "sequential and cumulative" weighing such as "weigh towers…and a partitioned, inverting hopper" as corresponding structure. The Federal Circuit reversed, finding the District Court erroneously included structures that limited the claim to "sequential and cumulative weighing" because the Court is not permitted to incorporate "structure from the written description beyond that necessary to perform the claimed function." *Id*.  The Court noted that "The claim…does not limit the function of the 'weighing means' to cumulative weighing.  Rather, the claim language identifies the function of the 'weighing means' in each claim as simply weighing the microingredients." *Id*.

As the case of the weighing means, the prior construction imports structures not necessary to perform the explicitly recited function.  The function "continuously reproducing the audio files in order of the sequence" does not require structures used to repeat the sequence or depart from the order of sequence.  These are separately claimed in dependent claim 4.

### 3. Defendant's Modifications to the PTO's Construction are Clearly Erroneous

Google proposes very substantial changes to the prior algorithm including (1) insertion of the "received sequencing file" into the control algorithm; (2) scanning for a LocType; and (3) separate programming for recognizing and handling topic and subject manner announcements.

The "received sequencing file" modifications are error as discussed *supra* at § III(C)(1). Similarly, "scanning for a LocType" and the separate logic for "topic and subject matter announcements" are error because they relate to optional skipping features of the preferred embodiment and do not represent corresponding structure to the explicitly recited functions.



First, performance of the recited function "continuously reproducing said program segments in the order established by said sequence in the absence of a control command" is completely embodied within steps 235, 237, 239, and 261 as shown in Fig. 3. "Continuously reproducing" refers to the repetition of step 235 ("Continue Playback") through the program segments in the order of the sequence absent a control command (if step 261 is "No"). Nowhere in these steps is there any mention of scanning for particular LocTypes or additional logic steps differentiating topic or subject announcements from other program segments. These modifications are not clearly linked in the specification to the performance of the recited function but rather represent an algorithm wholly made up by Defendant based upon conjecture as to what would be required to implement optional features not called for by the claim. Since Defendant's modifications are not clearly linked to the performance of the recited function, they are not corresponding structure. *B. Braun Med., Inc. v. Abbot Labs.*, 124 F.3d 1419, 1423 (Fed. Cir. 1997) (holding "structure disclosed in the specification is corresponding structure only if the specification… clearly links… that structure to the [recited] function").

Equally important, the steps of Fig. 3 identified by the E.D. Tex. as clearly linked to the function are capable of performing the explicit function without the proposed modifications.

18

Using the steps of Fig. 3, one can play a program sequence continuously in order absent a control command.  Thus, the modifications are not necessary to perform the claimed function and must be excluded from the corresponding structure. *Micro Chem.*, 194 F.3d at 1258 (stating it is not permitted to incorporate "structure from the written description beyond that necessary to perform the claimed function").  Defendant may argue that because Fig 5 discloses subject and topic announcements, the "continuously reproducing" algorithm must be modified to accommodate such functionality.  However, as stated above, such modifications are not clearly linked to the recited function and are not necessary to perform that function.

Further, the specification discloses that subject and topic announcements and subject and topic skipping are optional features used only when the program segments have been subdivided to include subject and topic announcements.  The specification makes clear by using the words "if", "if desired" and "when" that one does not have to subdivide the program segments to include such announcements and such functionality:

> The third command, the SKIP command indicated at 275 in Fig. 3, causes the player to advance to the beginning of the next program segment in the program sequence... **If the program segement[sic] has been subdivided** (e.g. into paragraphs), the SKIP command causes the player to skip forward to beginning of the next subdivision within that segment. **If desired, SKIP commands may be subdivided into two types, a SKIP TOPIC command and a SKIP SUBJECT command. When** programming material such as news reports are grouped into topics within subject categories… a SKIP SUBJECT command allows the user to skip over all program segments within that subject and resume playback at the leading description of the next subject. In contrast, the SKIP TOPIC command always advances to the next topic… in the sequence.

'076 patent, 15:21-42.  Since the specification makes clear that subdivision of program segments by subject and topic announcements is an optional embodiment, the inclusion of programming to accommodate these announcements and subject/topic skip functions are not necessary to the recited function and should not be included in the corresponding structure. *In re Johnston*, 435

F.3d 1381, 1384 (Fed. Cir. 2006).  The law is well settled that optional features do not narrow

claim scope and thus cannot be read into the corresponding structure. *Id.*

Defendant's inclusion of "scanning forward in the received sequencing file to locate the

next Selection_Record containing the appropriate LocType" is particularly inappropriate.  The

explicitly recited function requires that the program segments be reproduced "**in the order**

established by the sequence."  Google's proposed algorithm however skips forward in the

sequence to play the selection record of a program segment of "the appropriate LocType" rather

than the **next** program segment in the sequence, and thus, this step is used to **depart** from

playing the segments "**in the order** established by the sequence."[1]  Thus, the "scanning forward"

step is not corresponding structure necessary to perform the recited function. *Micro Chem.*, 194

F.3d at 1258 (stating it is not permitted to incorporate "structure from the written description

beyond that necessary to perform the claimed function").

Furthermore, the algorithmic components of the topic and subject skipping features relied

upon for the proposed modifications are performed in response to a control command of "SKIP

SUBJECT" or "SKIP TOPIC"  and clearly do not perform the function of "continuously

reproducing said program segments in the order established by said sequence in *the absence of a*

*control command*."  As these features do not perform the recited function, they are not

corresponding structure. *Micro Chem.*, 194 F.3d at 1258-59 (refusing to import structures related

to "sequential weighing" because the function only explicitly required "weighing").

---

[1] The '076 patent at 15:28-38 makes clear that the purpose of Defendant's proposed step
"scanning forward…to locate…the appropriate LocType" is to skip over program segments in
the sequence file that are not related to a specific subject or topic:

> If desired, SKIP commands may be subdivided into two types, a SKIP TOPIC command
> and a SKIP SUBJECT command. When programming material such as news reports are
> grouped into topics within subject categories… **a SKIP SUBJECT command allows the**
> **user to skip over all program segments within that subject and resume playback at**
> **the leading description of the next subject**. In contrast, the SKIP TOPIC command
> **always advances to the next topic…** in the sequence.

Finally, Google submitted the E.D. Tex.'s construction to the PTO and relied upon it to invalidate claim 1.  None of the features Google now seeks to incorporate into the corresponding structure was ever before the PTO or indeed even taught by the prior art.  The PTO could not have invalidated claim 1 based on the constructions Google now seeks to advance.  Google should not use one construction to invalidate claim 1 but then propose a vastly different construction later.  Google's proposed modification is improper for this further reason.

### 4. The "R" LocType is Further Unnecessary Structure

Google further seeks to modify the algorithm of the "means for continuously reproducing" limitation to include the rewind "R" LocType.  The corresponding structure of steps 235, 237, 239, and 261 of Fig. 3 clearly linked to reproduction "absent a control command" however makes no mention of the use of a R LocType, and, accordingly, discloses an algorithm capable of performing the recited function without such a structure.  Accordingly, the R LocType is not clearly linked to the recited function or necessary to its performance and should not be included as corresponding structure. *Micro Chem.*, 194 F.3d at 1258 (stating it is not permitted to incorporate "structure from the written description beyond that necessary to perform the claimed function" and refusing to import structures related to "sequential weighing" because the function only explicitly required "weighing").

Furthermore, the R LocType is an implementation of the endless loop and should not be included as corresponding structure of the "continuously reproducing" limitation because the endless loop is not part of the recited function, as discussed *supra* at Section III(D)(1).  Moreover, even if the limitation required an endless loop, the "R" LocType still would not be corresponding structure because the endless loop could also be implemented using the hyperlink functionality disclosed (Almeroth Decl. ¶ 96) or resetting the CurrentPlay variable to 1 as set forth in the current construction.  Since there are alternate structures disclosed for performing the

recited function, the specific implementation of the R LocType is not necessary to perform the recited function. *See Ishida Co. v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000) (error to limit the structure corresponding to the claimed function to only one of the alternative structures disclosed by the specification).  Indeed, the specification explicitly teaches that the particular formats regarding LocType described in the Selections File 351 also depicted in Fig. 5 are merely "preferable" and not necessary: "[t]o control subject and topic skipping, as well as hyperlink jumps, the selections file seen generally at 301 in FIG. 4 **preferably** takes the form of a sequence of records." '076 patent, 31:63-67.

Finally, Google successfully invalidated claim 1 of the '076 patent without any showing of the presence of the R LocType in the prior art. Institution of Inter Partes Review at 30, *Google, Inc. v. Personal Audio LLC*, IPR2015-00845 (PTAB 2015) (attached as **Exhibit E**). Indeed, the PTAB explicitly found the R LocType was merely a "variable name" that may be implemented using a variety of data structures, including a linked-list pointer as taught by the prior art. *Id*.  Defendant relied upon its previously proposed construction to invalidate the patents and never argued the proper construction of this limitation required the R LocType. Accordingly, Defendant should not be able to propose one construction before the PTO to invalidate the patents and an entirely different construction here.

**E. "EDITING MEANS FOR MODIFYING SAID DATA ESTABLISHING A SEQUENCE" ('076 patent, claim 5)**
The differences in competing constructions are shown in **Appendix A** at Ref. 7.

Plaintiff proposes the same construction for this term as adopted by the PTAB in the *inter partes* reviews at Defendant's urging.  Alternatively, Plaintiff proposes including additional steps to "access selections file 351" and "alter identifies of program segments within the selections file" prior to the steps identified by the PTAB.  Defendant erroneously contends that this claim limitation is indefinite. D.I. 76-B at 20. Defendant's assertion of indefiniteness should be

rejected and the PTAB's construction should be adopted because the specification clearly links

the programming of a player client disclosed in steps 213 and 211 in Fig. 2 to the recited

function of editing the sequence.  The patent describes this programming as a "utility program"

supplied by the server to the player.  *See* '076 patent, 8:45-51 ("Utilizing the programming data

and a utility program previously supplied by the server, the subscriber may alter the selection and

sequence of program materials to be played…").  The specification states that this utility

program is responsive to inputs on the player from a user. *Id.*, 2:55-58 ("[T]he player subsystem

includes a control mechanism responsive to commands received from a listener to dynamically

alter the sequence and content of the programming material actually presented").



Fig. 2

Steps 211 and 213 providing the necessary algorithmic corresponding

structure for performance of the recited functions.  The first algorithmic step

213 of the means for editing is to access the sequencing file that contains the

playback sequence.  This is disclosed as occurring at any time before a

playback session in step 213. '076 patent, 9:4-10 ("**As indicated at 213** in

FIG. 2, the listener may at any time return to the sequence editing step 211 to

manually reorder the playing sequence...").  At step 211, the algorithm's next

step, the user many modify the programmer identifiers in the accessed

sequencing file by: (1) adding a program identifier; (2) deleting a program identifier or (3)

reordering the sequence of the program identifiers in the sequencing file. *Id.* at 12:21-27 ("The

playback operation… continues from the designated playback point in the selections file (seen at

351 in FIG. 5) which follows a program sequence initially created by the host server and

downloaded with the program segments… and then… **modified by the addition, deletion and**

**re-sequencing of <u>segment identifiers</u> as discussed earlier in connection with step 211 in FIG.**

23

**2**.").[2]  Importantly, steps 213 and 212 of Fig. 3 not only describe the performance of the function, it describes the technical means for implementation by one of ordinary skill.  Step 213 identifies and allows the user to access the necessary data structure for controlling the sequence (i.e., selections file 351).  By adding or deleting the "segment identifiers" in selections file 351 shown in Fig. 5 in step 211, the playback session can be modified or resequenced.  Thus, by including programming for adding, deleting or reordering the "segment identifiers" in the accessed sequencing file, the patent discloses sufficient structure to perform the recited functions of modifying or reordering the "sequence." Almeroth Decl. ¶¶ 111-114.

In addition to the fact that the patent in FIG. 3 (and accompanying text) discloses programming clearly linked to the recited function, Google's assertion of indefiniteness should be rejected because the PTAB accepted Google's then-proffered construction for the "editing means" which gave Google jurisdiction to challenge the claims in the IPR. Institution of Inter Partes Review at 23-24, *Google, Inc. v. Personal Audio LLC*, IPR2015-00845 (PTAB 2015) (attached as **Exhibit E**).  After having won the issue that the claims are definite enough for construction and review by the PTAB, Google's assertion of indefiniteness to the contrary here should not be accepted, especially given the fact that the adoption of the prior construction is now part of the intrinsic record that guides the interpretation of the patents.

The IPR decisions adopting the construction for these terms is part of the interpretive prosecution history that must be used to construe this claim language in this Court.  *See Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 506 n. 1 (9th Cir. 2011) (holding "[d]ecisions of the Patent

---

[2] *See* '076 patent, 8:45-51 ("Before a playback session begins, as indicated at 211, the subscriber has the opportunity to review and alter the provisional program selections and sequence established as a default by the downloaded information from the server. Utilizing the programming data and a utility program previously supplied by the server, the subscriber may alter the selection and sequence of program materials to be played…").

Trademark Office… Trial and Appeal Board… are to be given great weight"). One skilled interpreting the patent is presumed to have read the constructions adopted by the PTAB and thus would be guided to the constructions adopted there. Further, the PTAB will not accept for review any claim that is indefinite. *See* 35 U.S.C. §311(b) (limiting scope of IPR *o*nly to anticipation and obviousness). If a claim is indefinite and incapable of construction, the PTAB lacks jurisdiction to review that claim and will decline institution on the basis that the proper scope of the claims cannot be established without speculation. *See, e.g., Blackberry Corp. v. MobileMedia Ideas, LLC*, IPR2013-00036, Paper 65 (PTAB Mar. 7, 2014). In such a case, the PTAB will not attempt to determine if the prior art teaches all the limitations of the claims because it "cannot conduct a necessary factual inquiry for determining obviousness-ascertaining differences between the claimed subject matter and the prior art." *Id*. at *20.

That is not the case here. Google explicitly proffered the construction (offered by the Plaintiff now) of these terms in order to meet the prerequisites of IPR review. On this basis, Google's challenge to claims 5 and 6 (as well as other claims of the patents) was accepted for institution and Google's arguments were reviewed to final decision. Just because ultimately Defendant did not prevail in the IPR does not give Defendant an excuse to take a contrary position to an issue that it previously prevailed upon. Nor does the broadest reasonable standard give an excuse for these contrary positions, because a district court is required to accept a reasonable construction that upholds the validity of a patent. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911 (Fed. Cir. 2004).

### F. "PROCESSOR FOR… DISCONTINUING" ('178 patent, claim 1)

The differences in competing constructions are shown in **Appendix A** at Ref. 10.

The recited function is "discontinuing the reproduction of the currently playing audio program file and instead continuing the reproduction at the beginning of a listener-selected one

of said audio program files… in response to a program selection command from said listener."
D.I. 76-B at 14-15.  The function thus requires (1) stopping play of the currently playing
program segment in response to a command from the listener and (2) instead continuing play at
the beginning of the program segment selected by the listener. The E.D. Tex. Court identified the
algorithm corresponding to this function as the GO command described in col. 13 ln. 20-34 of
the '076 patent and shown in steps 269, 235, and 265 of Fig. 3. *Id.*



These three steps correctly describe the entire claimed
function.  The Go command at 265 is one of the
commands available from branch logic 262, and in
response to this command the player immediately
discontinues reproduction of the current segment and
resets the playback position to the listener selected
segment at 269 and continues playback of the new
segment at 235. The patent further describes at col. 14

ln. 20-34 the Go command simply as receiving the identification of the segment from the listener

using a "menu" or a "hand controller" and then playing that segment:

> A first command, "Go" indicated at 265, causes the player to make an **immediate shift** to
> a different program segment. **For example, the spoken voice command "FIVE" can
> indicate a request to go to a predetermined numbered program segment [i.e.,
> segment number 5]** while the spoken command "NEWS" could switch to the subject
> announcement segment for news programs… **In such cases, the system records the
> start of the new segment on the log file (seen at 215 in FIG. 2) at 267 and switches
> the current playback position in the program sequence file 214 to the new setting at
> 269, and the playback continues at 235**.

Defendant seeks to modify this algorithm by requiring the following pertaining to the use

of an L selection record: "identifying the listener-selected Selection_Record identified by the

offset within the "L" Selection_Record of the hyperlink passage in the received sequencing file."

D.I. 76-B at 14-15.  This is clearly erroneous.  The recited function of "discontinuing the

reproduction of the currently playing audio program file and instead continuing the reproduction at the beginning of a listener-selected… program file… in response to a program selection command from said listener" is completely performed by steps 265, 269, and 235 of Fig. 3. Nowhere in these steps or in the associated description of the Go command (*see* '076 patent, 13:20-34) is there any discussion or disclosure of using an L LocType to perform the recited function. Since the specification shows an algorithm and menu capable of performing the recited function without an L LocType, it is not necessary corresponding structure and the claim should not be so limited. *Micro Chem.*, 194 F.3d at 1258 (stating it is not permitted to incorporate "structure from the written description beyond that necessary to perform the claimed function").

Defendant may rely on the following alternative disclosed embodiment where in a special case the Go command is used to fetch segments associated with a hyperlink embedded in the sequence in response to a voice cue:

> Hyperlinks are implemented by means of anchor passage identifiers, the "A" and "B" Selection records which respectively identify the anchor passage, and a "L" link identifier which holds the location of a subject, topic or highlight Selection_Record. **The "A" and "B" selection records enable the player to add <u>an audio cue</u>… to the beginning, end, or during any passage. Whenever the user issues a "Go" command (seen at 265 in FIG. 3), the player will execute a hyperlink jump to the location indicated by the last "L" record in the selection file.**

'076 patent, 35:54-63. When the player reaches a hyperlink Selection_Record embedded in the sequence, it plays an audio cue signaling the user the option to "Go" to the hyperlinked program segment. If the user speaks the word "Go" in response to the cue, then it will retrieve the linked Selection_Record to play a related passage. However, this is only one disclosed use of the Go command limited to a situation when an "A" or "B" Selection_Record is encountered in the sequencing file and when one responds to a prepared voice cue notifying the user of such a command. Because there is also a "Go" command performed in response to a command given using the menu or hand controller whose programming (steps 269, 235, and 265 of Fig. 3) have

27

nothing to do with an A or L selection that has been correctly identified by the court as corresponding structure, the claim should not be limited to the embodiment pertaining to hyperlinked passages having an L selection record. *Ishida*, 221 F.3d at 1316.  Accordingly, it is error to identify the L LocType as corresponding structure.

### G. "MEANS FOR DETECTING A FIRST COMMAND…" ('076 patent, claim 1)

The differences in competing constructions are shown in **Appendix A** at Ref. 11.

Plaintiff requests the same modification to the E.D. Tex.'s construction as made by the PTAB.  The E.D. Tex. and PTAB (and the parties) agree the corresponding structure includes items 261 (Command?), 262 (Branch), and 275 (Skip) or 278 (Back) of Fig. 3, but while the E.D. Tex. referred to box 261 and the corresponding branch as indicating an "if-then-else" programming construct, the PTAB determined such constructs are more properly termed "conditional" programming constructs because "if-then-else" is a specific term of art used in particular programming languages while the logical operator generally is referred to as a "conditional" programming construct. Almeroth Decl. § III(F). One skilled would understand the term "conditional programming construct" is more appropriate without limiting the term to a specific program language. *Id.*  This is further supported by contemporaneous dictionaries. *Id.*

### H. "COMMUNICATIONS PORT" TERMS ('076 patent, claims 1, 14)

The differences in competing constructions are shown in **Appendix A** at Ref. 9.

Claims 1 and 14 of the '178 patent recite "a communication port for establishing a data communications link for downloading" and "a communications port for downloading," respectively.  The E.D. Tex. Court previously construed a "communications port" as "a port for establishing a connection between the player and a network." D.I. 76-B at 3-5.  The parties agree to this portion of the construction but disagree over the meaning of the term "downloading." *Id.* Plaintiff seeks clarification of the previous construction such that is clear that the connection between the player and network must be from a remote computer (i.e. host) to the player via a modem or network and not just between local disk drives.  Plaintiff's proposed construction is

based on the plain and ordinary meaning of the term "downloading" at the time of invention. The Almeroth Decl. at ¶ 101 includes numerous examples showing that download was well understood at the time of invention to require a transfer of files from a **remote** server to a **local** player **via a modem or network**, as evidenced by Fig. 1.

Plaintiff's construction of download is further supported by the specification, which includes numerous statements affirming that downloading occurs between a remote server (i.e. host) and the player. For example, the specification states:

> The download operation preferably occurs at a time established by the player which establishes **a dial up connection** via the SLIP/PPP serial connection 117 **to the local Internet service provider 121 which provides an Internet connection to the host FTP server 125**.

'076 patent, 8:24-44.  Accordingly, the specification is clear that the download operation transfers the program files and the sequencing file from a remote host server to local storage via an Internet connection.

Defendant proposes a very different construction over the prior construction by including the additional unsupported limitation that "a request by the player **identif[ies] said digital compressed audio program files** and said separate sequencing file." D.I. 76-B at 4.  This construction fails for several reasons. First, Defendant has failed to provide any evidence, either intrinsic or extrinsic, that suggests the mere term "downloading" means that the requestor has to identify the **files** to be downloaded.  Nothing in the term "download" is directed to who or what identifies or determines the files for downloading.  In ordinary experience, one can simply press a button to initiate a download without identifying or even knowing the files one will receive (for example, Microsoft updates).

Indeed, the dictionaries relied upon by Defendant do not specify that the requesting computer must identify the files to be downloaded. Almeroth Decl. ¶ 103.



Furthermore, Defendant ignores key passages of the specification that explicitly state that the program files and sequencing file can be identified by the host server. For example:

> As indicated at 203, an interested subscriber invokes programming services by first supplying personal information … Based on the information supplied by the user, **the server then compiles one or more files for downloading** to the subscriber at step 207 which include programming and advertising segments...

'076 patent, 8:12-24; *see also* '076 patent, 7:24-31, 12:21-28, 19:52-56.  Accordingly, the Court should adopt Plaintiff's construction for downloading.

## I. "MEANS FOR TRANSLATING SAID VOICE SIGNALS…" ('076 patent, claim 13)

The differences in competing constructions are shown in **Appendix A** at Ref. 8.

The specification identifies a "voice command system" and/or "voice recognition system" as performing the recited function:

> "Using a hands free *voice command system*, the player may reproduce…. By providing the voice command "Go"… the user may cause the system to branch to that selection." Id. at 16:50-56.  Voice responses are recorded and converted by a *voice recognition system*. Id. at 16:21-45.

As stated in the Almeroth Decl., these terms define a variety of specific structures or devices known in the art as "voice command systems" for performing the recited function and therefore represent sufficiently definite structure for this means element. *Personalized Media v. ITC*, 161 F.3d 696, 704 (Fed. Cir. 1998) ("Even though the term "detector" does not specifically evoke a particular structure, it does convey to one knowledgeable in the art a variety of structures known as "detectors." We therefore conclude that the term "detector" is a sufficiently definite structural term…"). The Almeroth Decl. ¶ 131 recites specific examples from the relevant time period.

## J. "PLAYER" AND "AUDIO PROGRAM SEGMENTS" (Appendix A at Ref. 12 & 13)

Plaintiff requests the Court adopt the E.D. Tex. Court's prior constructions with one minor modification clarifying that a player may be a device or a program.  Plaintiff requests this modification because in the past, the parties have disputed the scope of the term "player."  The modification is proper because the patents clearly disclose one embodiment of the invention is a software player. Almeroth Decl. § III(H), III(I).

Dated: April 18, 2018

Of Counsel:

Douglas Q. Hahn
Stradling Yocca Carlson & Rauth, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4138; Fax: 949-823-5138
Email: dhahn@sycr.com

Charles W. Goehringer
GERMER PLLC
550 Fannin, Suite 400
Beaumont, TX 77701
Phone: 409-654-6700
Email: cwgoehringer@germer.com

Respectfully submitted,

FARNAN LLP

 _/s/ Brian E. Farnan_____
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Fl.
Wilmington, DE  19801
Tel:  (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Victor G. Hardy (admitted *pro hac vice*)
William Parrish (admitted *pro hac vice*)
Minghui Yang (admitted *pro hac vice*)
Hardy, Parish, Yang, LLP
Spicewood Business Center
4412 Spicewood Springs Rd.
Suite 202
Austin, Texas 78759
Telephone: (512) 520-9407
vhardy@hpylegal.com
bparrish@hpylegal.com
myang@hpylegal.com

*Attorneys for Plaintiff  Personal Audio, LLC*