## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERSONAL AUDIO, LLC, | |
| **Plaintiff,** | Civil Action No. 17-1751-VAC-CJB |
| **v.** | |
| **GOOGLE LLC,** | Jury Trial Demanded |
| **Defendant.** | |

## PERSONAL AUDIO, LLC'S REPLY CLAIM CONSTRUCTION BRIEF

Dated: June 25, 2018

Of Counsel:

Douglas Q. Hahn
Stradling Yocca Carlson & Rauth, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4138; Fax: 949-823-5138
Email: dhahn@sycr.com

Charles W. Goehringer
GERMER PLLC
550 Fannin, Suite 400
Beaumont, TX 77701
Phone: 409-654-6700
Email: cwgoehringer@germer.com

Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
FARNAN LLP
919 North Market Street, 12th Fl.
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Victor G. Hardy (admitted *pro hac vice*)
William Parrish (admitted *pro hac vice*)
Minghui Yang (admitted *pro hac vice*)
Henning Schmidt (admitted *pro hac vice*)
R. Floyd Walker (admitted *pro hac vice*)
Hardy, Parrish, Yang, LLP
Spicewood Business Center
4412 Spicewood Springs Rd.
Suite 202
Austin, Texas 78759
Telephone: (512) 520-9407
vhardy@hpylegal.com
bparrish@hpylegal.com
myang@hpylegal.com
hscmidt@hpylegal.com
fwalker@hpylegal.com

*Attorneys for Plaintiff Personal Audio, LLC*

## <u>**TABLE OF CONTENTS**</u>

I.   "SEQUENCING FILE" DISPUTES ........................................................................ 1

    A.   "Scanning… the Receive Sequencing File" in "Means Responsive" Skip Terms and
        "Means for Continuously Reproducing"..............................................................1

    B.   Defendant's Reliance on Prosecution History Disclaimer to Define all Sequencing
        Files Also Fails..................................................................................................5

    C.   Defendant Should Be Bound to its Earlier Constructions and Representations....................8

II.  "MEANS FOR CONTINUOUSLY REPRODUCING" ('076 patent, claim 1)........................ 9

III. "MEANS RESPONSIVE TO [ONE/TWO CONSECUTIVE] SECOND
     COMMANDS" (Skip Back Commands)................................................................. 11

IV. "PROCESSOR… FOR DISCONTINUING THE [CURRENT AUDIO PROGRAM
     AND CONTINUING] A  LISTENER SELECTED PROGRAM" ("Go" Command) ........... 12

V.  OTHER TERMS AND ISSUES............................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Arendi S.A.R.L. v. Google LLC,*
    882 F.3d 1132 (Fed. Cir. 2018) ...............................................................9

*B & B Hardware, Inc. v. Hargis Indus., Inc.,*
    575 U.S. ___, 135 S. Ct. 1293, 191 L.Ed.2d 222 (2015)............................8

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,*
    145 F.3d 1303 (Fed. Cir. 1998) ...............................................................12

*Eon Corp. IP Holdings LLC v. AT & T Mobility LLC,*
    785 F.3d 616 (Fed. Cir. 2015) .................................................................15

*Facebook, Inc. v. Pragmatus AV, LLC,*
    582 F. App'x 864 (Fed. Cir. 2014)............................................................9

*Georgia Pacific Corp. v. US Gypsum Co.,*
    195 F.3d 1322 (Fed. Cir. 1999) .................................................................8

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
    355 F.3d 1327 (Fed. Cir. 2004) .................................................................7

*Intuitive Surgical, Inc. v. Computer Motion, Inc.,*
    214 F. Supp. 2d 433 (D. Del. 2002) ........................................................15

*Lampi Corp. v. Am. Power Prods., Inc.,*
    228 F.3d 1365 (Fed. Cir. 2000) .................................................................8

*Lucent Tech., Inc. v. Gateway, Inc.,*
    525 F.3d 1200 (Fed. Cir. 2008) .................................................................6

*Med. Instrumentation and Diagnostics Corp. v. Elekta AB,*
    344 F.3d 1205 (Fed. Cir. 2003) ...............................................................15

*Micro Chem., Inc. v. Great Plains Chem. Co.,*
    194 F.3d 1250 (Fed. Cir. 1999) ....................................................4, 11, 12

*Omega Eng'g v. Raytek Corp.,*
    334 F.3d 1314 (Fed. Cir. 2003) .................................................................6

*Power Integrations, Inc. v. Lee,*
    797 F.3d 1318 (Fed Cir. 2015). ................................................................9

*Rambus Inc. v. Infineon Techs., AG,*
    318 F.3d 1081 (Fed. Cir. 2003) .............................................................6, 7

*SkyHawke Tech., LLC v. DECA Int'l. Corp.,*
    828 F.3d 1373 (Fed. Cir. 2016) .................................................................8

*Sorensen v. Int'l Trade Comm'n,*
    427 F.3d 1375 (Fed. Cir. 2005) .................................................................9

*Tech. Props. Ltd. v. Huawei Techs. Co.*,
    849 F.3d 1349 (Fed. Cir. 2017) ...............................................................................6, 9

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F. 3d 1362 (Fed. Cir. 2012) ....................................................................................9

**Other Authorities**

Manual of Patent Examining Procedure § 2111 .................................................................9

Memorandum Opinion, *Lochner Techs. LLC v. Lenovo (U.S.) Inc.*,
    No. 2:10-CV-430-JRG, ECF No. 174 (E.D. Tex. Jan. 21, 2015).....................................8

Memorandum Opinion, *McKesson Info. Solutions LLC v. Trizetto Group, Inc.*,
    No. 1:04-cv-01258-SLR, ECF No. 307 (D. Del. April 5, 2006) ...................................15

Order Denying Summary Judgment, *Alcohol Monitoring Sys. Inc., v. Actsoft, Inc.,*
    No. 07-cv-02261-PAB, ECF No. 335 (D. Colo. Oct. 25, 2011) .....................................8

## I.     "SEQUENCING FILE" DISPUTES[1]

Defendant's construction defining all sequencing files to be (1) downloaded, (2) stored, and (3) used by the player to control playback relies upon failed interpretations of the specification and prosecution history.  Defendant fails to acknowledge that the specification explicitly discloses at least four different "sequencing files" – each performing different functions: (1) Requested Table 301/Selections file 470; (2) Recommended Schedule Table 307; and (3) Selections File 351. Almeroth Reply Dec. ¶¶ 5-22. Only <u>one</u> of the three sequencing files, Recommended Schedule Table 307, is disclosed as being downloaded to the player.  Selections File 470 is only disclosed as uploaded. *Id.* The clear usage to refer to sequencing files not received from outside the player clearly demonstrates that the naked term "sequencing file" by itself does not have these limitations.

### A.   "Scanning… the Receive Sequencing File" in "Means Responsive" Skip Terms and "Means for Continuously Reproducing"

This section pertains to Defendant's modification of its prior constructions adopted by the PTO in the IPRs for the means limitations directed to playback control. Defendant seeks to insert the word "received" to modify "sequencing file" so as to require the control algorithms to only "scan" the *received* sequencing file for the next "selection record of a particular LocType." The parties agree that the corresponding structure to these means limitations includes Selections File 351 but disagree that such file was compiled on the server and received from outside the player. Defendant's proposed modification would erroneously exclude *all* embodiments of the claimed invention, which scan only Selections File 351 for this algorithmic step—a file that was not received from outside the player.

On page 5, Defendant argues "nothing in the specification discloses compiling a new sequencing file on the player…" because there is "no discussion of where such compilation occurs." It is Defendant, however, that seeks to limit the corresponding structure of the control algorithms to only scanning a "received" sequencing file.  Therefore, it is Defendant that bears the burden of demonstrating that scanned Selections File 351 was downloaded to the player—not Plaintiff's burden to disprove. Nothing in the specification affirmatively supports this limitation to Selections File 351

---

[1] Unless otherwise stated, all [column]:[line number] citations will be to the '178 Patent, which shares a common specification with the '076 Patent.

urged by Defendant and the specification indicates that such an interpretation is in error.

Defendant's contention that Selections File 351 is compiled on the server and then downloaded along with Recommended Schedule Table 307 is completely unsupported and contradictory to numerous disclosures in the specification. Fig. 4 and the accompanying text (17:1-19:38) describe in detail the various data structures created on the host. Fig. 4 and the text explicitly discloses both sequencing files Requested Table 301 and Recommended Schedule Table 307 as being compiled on the server. Critically, Selections File 351 is not shown among the data structures created on the server in Fig. 4 or described as being downloaded (Almeroth Reply Dec. ¶¶ 7, 18, 20-21) and only Recommended Schedule Table 307 is disclosed as being downloaded. *Id.*; 18:31-34.

Furthermore, the specification repeatedly (no less than five times) and explicitly details the exact content downloaded during the download transfer process. Almeroth Reply Dec. ¶ 21. Selections File 351 is never listed among the files that are downloaded, nor is there any mention of multiple sequencing files being downloaded. Indeed, the specification explicitly states that a single sequencing file is downloaded, and that file is described either specifically as Schedule Table 307 or as a "recommended" file that can only refer to recommended Schedule Table 307:

> The data downloaded includes **a recommended** program sequence file which provisionally identifies the order in which downloaded program segments are to be played, with the initial selection and sequence being established based on user preference data by the download compilation processing mechanism…. (8:48-53)

> [T]he host server receives and supplements the user's initial selection of a sequence of desired programs, first by adding the program selections …and then by adding advertisements, announcements and additional program segments tailored to the subscriber's known preferences as indicated at **340** in FIG. 4, thereby producing **the recommended Schedule Table 307 which is transferred to the subscriber, along with program segments, during the download transfer.** (18:24-34)

> Each Compilation record describes the download requirements for a specific day of the week . . . . In this regard, it should be noted that playback and download can occur concurrently, with **the Schedule Table being downloaded first**, the NewCatalog Table being downloaded second, program segments specified in the Schedule Table which have not previously been downloaded being transferred third (in the order of the expected presentation as stated in the Sequence Table), with program segments selected by the subscriber for future sessions being downloaded last as download time permits. (23:47-60)

> **The Schedule 307 downloaded to the player, and the associated programming, announcement and advertising segments** sufficient to provide a complete program sequence . . . . (27:13-15)

> As described in more detail later in connection with FIGS. 4 and 5, **the** sequence of program segments **to be presented to the user** is formed into **a schedule file (seen at 307 in FIG. 4)** consisting of a sequence of program segment identification numbers which are used to compile a sequencing file, called the selections file, illustrated at **351** in FIG. 5 . . . . (12:9-14)

Almeroth Reply Dec. ¶ 21. The only disclosed purpose of Recommended Schedule Table 307 is to provide the recommended sequence used to compile final Selections File 351 used during playback. *Id.* If final Selections File 351 was downloaded, as contended by Defendant, there would be no reason to also redundantly download a separate Recommended Schedule Table 307. One skilled in the art would not interpret the specification to have meaningless operations.

Furthermore, the patent specification describes a "selections file compiler" on the player. *Id.* ¶ 11. Selections File 351 is disclosed as containing programming choices that are added by the player's listener or subscriber using utility programs on the player. *Id.* ¶¶ 16-22. Selections File 351 contains a final sequence that is disclosed as being edited after Schedule Table 307 is downloaded. *See* Step 211 of Fig. 2, (8:54-57). Selections File 351 also contains bookmarks, topics, comments, annotations, subjects of interest, and other programming guidance explicitly disclosed as being inputted by the listener using the player's utility programs. Almeroth Reply Dec. ¶¶ 16-18, 22. Thus, the contents of Fig. 5, including information inputted by the user using the player, demonstrate that Selections File 351 was compiled on the player after the download of Schedule Table 307. *Id.*

Defendant suggests this information was merely added to Selections File 351 after it was previously created and downloaded. Both sequencing files, however, are disclosed as using the format of Fig. 5. 8:63-65; 12:9-16. The only disclosed difference between file 307 and file 351 is the additional programming explicitly identified as being added after the download by the player subsystem in Step 211 of Fig. 2—thus, Defendant's interpretation would mean that the player downloads two copies of the same thing. Almeroth Reply Dec. ¶¶ 18-22. One skilled clearly would not interpret the specification to include redundant operations of downloading two files of identical content—especially in light of the fact that the specification only states that one sequencing file is downloaded -- that file being Recommended Schedule Table 307. *Id.* In any event, it is Defendant's burden affirmatively to show that Selections File 351 is disclosed as being downloaded to justify its additional limitations and Defendant fails to do so.

3

Even if the specification did disclose that Selections File 351 was downloaded—which it does not—this would not justify inclusion of the "received" limitation in the control algorithms. Section 112, ¶ 6 requires the claim to cover "structure, material or acts" that "correspond[]" to the recited function. Similarly, "the statute [does not] permit incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998) ("structural aspects" that are not necessary to the function are not limitations). The non-structural preprocessing steps of how and where Selection File 351 was created are completely irrelevant to the performance of the recited functions of "continuously reproducing" and skipping back. Nor do these represent "acts or materials" that are "necessary to perform the claimed function." The hypothetical act of downloading file 351 would not be necessary or even correspond to performing the recited functions of the claim. As such, it would be error to incorporate the limitations urged by Defendant. *Id.*

Prosecution disclaimer cannot justify limiting sequencing file algorithms in the manner requested by Defendant in the control algorithms. Defendant's construction with respect to the control algorithms goes beyond simply requiring the player's processor to use a received sequencing file to control playback. Rather, it seeks to specify the particular "use" of a received sequencing file to perform a particularized algorithmic step: "scanning… to locate the next Selection_Record of the appropriate LocType." Section I(B) *infra* addresses why there is no prosecution disclaimer defining the naked term "sequencing file". Even if there was a surrender of claim scope requiring a received sequencing file to be "used by the processor to both control playback… and respond to control commands," none of the statements relied upon by Defendant come close to specifying the "use" of a "received sequencing file" for the specific algorithmic step of Defendant's modification. Paragraphs 40 to 45 of the Almeroth Reply Declaration describe how the prosecution history statements pertain to other uses of the received sequencing file to respond to commands other than the "scanning… for the next selection record of the appropriate LocType" within the context of the claim. It also describes how the specification discusses other uses to control playback other than for this algorithmic step.

Therefore, there is not a clear and unambiguous disclaimer for the modification requested by Defendant. The Almeroth Reply Declaration also describes how the invalidating prior art did not contain this algorithmic step as modified by Defendant. *Id.* ¶¶ 44-45.

### B. Defendant's Reliance on Prosecution History Disclaimer to Define all Sequencing Files Also Fails

Defendant erroneously argues that Patent Owner during prosecution defined the naked term "sequencing file" inherently to require -- independent from any other explicit limitation -- that all such files must be: (1) received; (2) stored in persistent memory; and (3) used by the processor to control playback and respond to commands. The purpose of Defendant's alleged general definition of the term "sequencing file" is to create a backdoor to import these limitations into other claim limitations or different patents expressly not so limited, particularly the control algorithms, as discussed above. The explicit limitations of the claims directed to receipt, storage, and use by the processor to respond to commands govern the scope of the claims and are not an alleged disclaimer as to a general definition of "sequencing file" mandating all sequencing files to have these attributes.

At the outset, it should be known that the specific prosecution history relied upon by Defendant contains an explicit definition by the PTO of the naked term "sequencing file" that contains none of the limitations now sought by Defendant: "A file of data that identifies the order in which audio program segments chosen by or for a user are to be played." *Id.* ¶ 24. This explicit claim construction in the intrinsic record demonstrates that there was no surrender as to the limitations sought by Defendant. The PTO's decision and review of the prosecution history found no disclaimer with respect to the naked term "sequencing file."

Defendant's argument repeatedly attempts to erroneously conflate argument characterizing the use of a particular claimed sequencing file as dictated by explicit limitations of a specific claim with a proffer of a lexicographic definition for the naked term "sequencing file." However, *in each and every case*, the language relied upon by Defendant does not purport to provide a general definition to the naked language "sequencing file" that should be imported to other claims. Rather, the relied upon statements merely characterize how a particular claimed sequencing file is used in the context of the explicit limitations of a particular claim when read in light of the specification. Indeed, the prosecution

history uses explicit language to make this clear no less than 15 times. *Id.* ¶ 29.

For purposes of determining a disclaimer, prosecution statements "must be read in the context of [the] overall argument distinguishing the claimed method from the method disclosed [by the prior art.]." *Lucent Tech., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1211-12 (Fed. Cir. 2008).  The repeated references in the argument and headnotes to "combinations" "of claim 1 and 14 [of the '178 patent]" and "claimed sequencing file" make clear that the statements were directed to the combination of explicit limitations directed to the sequencing file found in the claims—not a general definition of sequencing file. The Almeroth Reply Decl. at paragraphs 24 to 38 sets forth each of the relied upon statements in their entirety (marked in red) in the order they appear in each document. The declaration also marks with underline the quotes relied upon here that demonstrate the statements were directed sequencing files as claimed in claims 1 and 14 of the 178 patent, including the explicit limitations found in the actual text of these claims. Finally, the declaration addresses how one skilled would understand these statements in the context of the overall argument.  *Id.* ¶ 24-38.

A prosecution history disclaimer requires the "high bar" of a "clear" and "unambiguous" disavowal of claim scope. *Omega Eng'g v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003).  There must be a "clear intention" and clear "deliberateness" to surrender subject matter. *Id*. Mere loose language or inaccurate characterization or argument does not give rise to a prosecution disclaimer to wholly new limitations not present in the claim. *Rambus Inc. v. Infineon Techs*, 318 F.3d 1081, 1090 (Fed. Cir. 2003).

"If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established." *Tech. Props. Ltd. v. Huawei Techs. Co.*, 849 F.3d 1349, 1358 (Fed. Cir. 2017). Here, one can reasonably understand that the relied upon statements' repeated reference to a "claimed sequencing file" and claimed "combinations" and the like were not announcing a general definition for all "sequencing files," but rather were characterizing the "sequencing file" as claimed in the explicit limitations of the '178 patent. Almeroth Reply Dec. ¶¶ 28-38.  The (1) ordinary and plain language of the claim term, (2) the statements' repeated reference to a "claimed" sequencing file and "combinations," (3) the repeated references to explicit limitations that

appear in the claims, (4) the specification's explicit disclosure of sequencing files that do not have the characteristics (*e.g.*, Requested Table 301, Selections File 351, and Selections File 470) (*Id.* ¶ 38), (5) and the fact that the PTO, who had the prosecution history and directly received some of the statements, explicitly defined the naked claim term "sequencing file" without the limitations urged by Defendant, all support the reasonable understanding that the Patent Owner had not proffered a general definition for all sequencing files containing Defendant's limitations. *Id.* ¶¶ 31, 38. As such, prosecution history disclaimer has not been established. *Id.*; *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1332 (Fed. Cir. 2004) (finding no disclaimer for the naked term "rotating" because "the statements… can also be reasonably understood as applying only to those claims (such as issued claim 5) that explicitly recite that rotation must be 'through greater than 360°.'").

Even if the Court found that the remarks suggested a definition for the naked term "sequencing file,"—which they do not—there still would not be a prosecution disclaimer to support Defendant's construction. In *Rambus*, the Federal Circuit reversed the district court's construction of "integrated circuit device" which appended new limitations concerning a register and circuitry unsupported by the naked term based upon remarks in prosecution. In reversing, the Court stated:

> The district court's construction did not merely clarify or construe the actual words of the claim. Without any claim language addressing comparison circuitry or a device identification register, the court's construction reads into the claim two new limitations not required by the claim language.
> The district court erred by placing too much emphasis on a single introductory comment in the prosecution history…..This incorrect statement in the prosecution history does not govern the meaning of the claims. . . . [T]he imprecise statement in the prosecution history does not limit claim 26. The claim language itself controls the bounds of the claim, not a facially inaccurate remark during prosecution.

*Rambus*, 318 F.3d at 1089-90. Here, the plain language of the term "sequencing file" does not support the limitations sought by Defendant and the specification clearly uses the term to describe sequencing files that do not have these limitations. Any such hypothetical characterization of the naked term would be facially inaccurate and could not support wholly new limitations.

Finally, none of the statements relied upon by Defendant alleged to be definitions make any mention of "persistent storage" or storing in "non-volatile memory" on the player and these limitations were gratuitously added to the alleged definition with no basis. Almeroth Reply Dec. ¶ 39.

Defendant's construction also requests that "file establishing a sequence"—a different term in a different patent—be so defined. There is no mention of this term in any of the relied upon statements and therefore, there is no colorable argument that Plaintiff so defined this term. *Id.* It is well settled that statements in one prosecution do not support disclaimer in another. *Georgia Pacific Corp. v. US Gypsum Co.*, 195 F.3d 1322, 1333 (Fed. Cir. 1999) ("[T]o be bound by the statement made to the PTO in connection with a later prosecution of a different patent, the statement would have to be one that the examiner relied upon in allowing the claims in the patent at issue"); *Lochner Techs. LLC v. Lenovo (U.S.) Inc.*, 2015 WL 293625, at \*7 (E.D. Tex. Jan. 21, 2015).

## C. Defendant Should Be Bound to its Earlier Constructions and Representations

Decisions of and statements to the PTO may give rise to a preclusive effect in subsequent litigation. *B & B Hardware, Inc. v. Hargis Indus., Inc.,* 575 U.S. ___, 135 S. Ct. 1293, 1302-10, 191 L. Ed. 2d 222 (2015); *SkyHawke Tech., LLC v. DECA Int'l. Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016) (holding that "administrative decisions by the U.S. Patent and Trademark Office can ground issue preclusion in district court when the ordinary elements of issue preclusion are met"); *Lampi Corp. v. Am. Power Prods., Inc*., 228 F.3d 1365, 1377 (Fed. Cir. 2000); *Alcohol Monitoring Sys. Inc., v. Actsoft, Inc.*, 2011 WL 5075619, at \*6 (D. Colo. Oct. 25, 2011) (applying judicial estoppel to inconsistent claim construction positions with the PTO).

Here, each of the elements of judicial estoppel, collateral estoppel, res judicata, and law of the case are present, including a complete identify of parties, inconsistent construction statements and factual positions, a final, appealable decision after a full and fair opportunity to litigate, and no other remedy that would protect the Court and the parties. Defendant's sole response for offering wildly different constructions that would have altered the outcome of its successful IPRs is that the PTO applies a different claim construction standard than a District Court. The general use by the PTO of a different claim construction standard however cannot justify the difference in claim constructions on the subsidiary question resolved by the adopted constructions of whether there was a prosecution disclaimer. Both the PTO's and the District Court's standards for disclaimer are identical and they both require "clear and unmistakable" statements of disclaimer. *Arendi S.A.R.L. v. Google LLC*, 882 F.3d

1132, 1135 (Fed. Cir. 2018) (PTO standard); *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) (district court standard); MPEP § 2111 (PTO standard).

A statement is either a "clear and unmistakable disclaimer" or not. There are not differing degrees of "unmistakable" that could reconcile differing constructions. A statement is ambiguous when it is reasonably amendable to two different interpretations. *Huawei*, 849 F.3d at 1358-59. Any statement that reasonably supports two different constructions is by definition "ambiguous" and therefore cannot support a prosecution disclaimer. Thus, the same issue and standard was before the PTO and Defendant's current position is irreconcilable with its earlier position.

With respect to the remaining limitations, the fact that different claim construction in theory could exist between the PTO and the District Court does not necessarily mean that the proffered constructions are not inconsistent. It is reversible error for the PTO not to explain why its standard produces a different construction from a previous district court construction. *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed Cir. 2015).

Defendant has failed to articulate any reason why the BRI standard would result in a different construction than a district court so as to reconcile its inconsistent positions. The issues of the current dispute, such as whether Selections File 351 was downloaded or not; or whether the "Go" command embodiment always use a "LocType  L" or not; or whether a claim is indefinite or not; or whether there is a single embodiment with a LocType R or not cannot be explained by the fact that the PTO in certain circumstances may adopt a broader construction. None of the issues here turn merely on the discretion to use a broader interpretation among reasonable interpretations but rather on hard factual questions as to what the specification explicitly discloses. The differences in the standards cannot reconcile the differences in the constructions.

Even if Defendant is not estopped from advancing conflicting positions in this Court, it should still be bound to its prior constructions. The PTO's construction represents highly persuasive intrinsic evidence of the correct constructions of these claim terms—absent a demonstration of error.

## II.     "MEANS FOR CONTINUOUSLY REPRODUCING" ('076 patent, claim 1)

In its Opening Brief, Plaintiff put forth specification support, expert testimony and multiple

contemporaneous sources from the relevant time period showing that the term "continuously reproducing" is a term of art that merely requires playing successive audio segments without requiring that the sequence be repeated in a loop. Pl.'s Br. at 15-16. Not only does dependent claim 4 of the '076 Patent separately claim reproduction of the sequence in a loop (Pl.'s Br. at 16), the usage of the language in claim 1 of the '178 Patent also supports this interpretation:

> a processor for … discontinuing the reproduction of the currently playing audio program file and **instead continuing the reproduction at the beginning of a listener-selected one of said audio program files in said collection in response to a program selection command from said listener**

Almeroth Reply Dec. ¶ 53. As indicated by the usage above, one can "continue[] the reproduction" of an "audio file" by merely advancing to another audio segment in the sequence without repeating the sequence. This interpretation is further supported by the "continue playback" Step 235 in Fig. 3 (14:25-39) which states that the "continue playback" step is performed merely by advancing to the next program segment irrespective of whether the entire sequence is repeated or the presence of a loop.

Defendant's response does not contradict the understanding of the meaning of the term "continuous reproduction" with any evidence or argument. As such, it is established that the recited function does not require a loop. As set forth at Pl. Br. at 21-22, the proper corresponding structure to the recited function is met by the algorithm established in steps 235, 237, 239, and 261 without reference to a LocType R or a loop. Plaintiff's modification without a loop or LocType R accurately reflects the structure necessary to perform the recited function. Almeroth Reply Dec. ¶¶ 52 and 55.

Defendant's sole argument in response is that the only disclosed embodiment necessarily uses LocType R and therefore must be included in the corresponding structure. First, LocType R is not mentioned in the "continuous playback" of Fig. 3 identified as corresponding structure, but rather is described only as a potential way to configure an endless loop when used by the player's continuous playback algorithm several pages later.  The patents explicitly state that the particular configuration in Fig. 5 (using a LocType R) is only "illustrative." 34:13-19; Almeroth Reply Dec. ¶ 56  One skilled would understand that the particular configuration of a sequencing file may vary depending upon the desire of the listener and that the disclosure as a whole contemplates that one could choose to use a LocType R to implement a loop or not. *Id.* Moreover, Fig. 7 depicts a sequencing file 470 that does not

| 470 | | |
|---|---|---|
| I | ImageID | 472 |
| J | ImgStart | |
| H | StartLoc | 475 |
| E | EndLoc | |
| H | StartLoc | 476 |
| E | EndLoc | |
| A | Anchor | 478 |
| B | EndAnchor | |
| L | ProgramID | |
| I | ImageID | 473 |
| J | ImgStart | 474 |
| K | ImgOff | |

contain a LocType R—indisputably contradicting Defendant's claim that one embodiment using a loop exists. *Id. at* ¶ 56

Regardless of whether the disclosed embodiment discloses optional use of LocType R or not, the LocType R structure is not required to perform the explicitly recited function, which does not require a loop. Indeed, LocType R was not in the PTO's construction. It is reversible error to incorporate structures not necessary to perform the recited function into the corresponding structure. *Micro Chem.*, 194 F.3d at 1258-59; *see* Pl.'s Br. at 17, 19-20. Since the endless loop is not required to perform the recited function, the configuration of a sequencing file mandating LocType R to implement a loop is not necessary corresponding structure to claim 1. The endless loop is instead separately claimed in dependent claim 4 of the '076 patent. Reply Dec. ¶¶ 56, 57.

Finally, Defendant's page 26 argument that scanning for a LocType and LocType R is required to skip subject and topic announcements fails, among other things, because the recited function requires playing the audio files in order of the sequence (without skipping) and there are disclosed embodiments that do not have these subdivisions. Almeroth Reply Dec. ¶ 58.

## III.    "MEANS RESPONSIVE TO [ONE/TWO CONSECUTIVE] SECOND COMMANDS" (Skip Back Commands)

On page 19, Defendant argues "near the beginning" should be read into the corresponding structure because the disclosed embodiment does this. Defendant's construction erroneously implies that the predetermined time must be a short interval. The relied upon language merely identifies the time interval from the beginning of the audio segment to the predetermined time, hence the time period "near the beginning," and does not represent an additional limitation as to the length of the predetermined time. Almeroth Reply Dec. ¶¶ 60-69. Second, the particular length of the time interval of predetermined time used in the embodiment is not a structure to perform the function (any time interval meets the explicit function) and should not be incorporated as a limitation. Such incorporation erroneously rewrites the recited function based upon the embodiment and incorporates descriptive details unnecessary to the claimed function. *Chiuminatta,* 145 F.3d at 1308 ("These structural aspects are thus not the means by which the saw 'supports the surface of the concrete' and accordingly are not

to be read as limiting the scope of the means clause."); *Micro Chem., Inc.*, 194 F.3d at 1258 ("[T]he district court erred both by incorporating structure beyond that necessary [and] by incorporating *unrecited functional limitations* into the claims."); Almeroth Reply Dec. ¶¶ 64.

One skilled in the art would understand that any hypothetical disclosure of a setting of the "predetermined time" "near the beginning" would be illustrative of one example setting. The specification states that there is a "control mechanism" for skipping "at any time" (*Id.* ¶ 65) and discloses "predetermined" times that are not short intervals "near the beginning." *Id.* ¶ 66. Finally, Defendant's own construction of this term submitted to and adopted by the PTO lacked this modification and was not limited to "near the beginning." *Id.* ¶ 67.

The specification also does not link the usage logs to the recited function at all but rather discloses that usage logs are for the recommendation and accounting algorithms; therefore, they are not corresponding structure. Id. ¶ 68. Defendant argues "determining whether playback is near the beginning… can only be done by using the start time in the usage log." Def.'s Br. at 20. This is clearly contradicted by the specification, which discloses "a variety of means" including an "indicator" showing the elapsed time of the program. Almeroth Reply Dec. ¶ 69. Such programming was common among those skilled in the art and needs no further elaboration. *Id.* Playable media also during this period had internal time sequence information that may be used to perform the function. A start time is not necessary to determine the elapsed time. *Id.* ¶ 69. The start time in a usage log is used to determine the duration of whole session lengths used in the recommendation and accounting functions. *Id.* ¶ 68.

## IV.    "PROCESSOR… FOR DISCONTINUING THE [CURRENT AUDIO PROGRAM AND CONTINUING] A  LISTENER SELECTED PROGRAM" ("Go" Command)

Defendant erroneously argues on page 15 that its proposed structure for responding to the "Go" command matches the only disclosure in the specification concerning fetching linked passages. The specification indisputably discloses an embodiment of "Go" using a "menu" on a visible display and then playing that segment (as indicated at step 265 of Fig. 3) that does not use a LocType L as urged by Defendant. 12:49-60; 14:30-49; Almeroth Reply Dec. ¶ 71-72. This embodiment makes no mention of "linked passages," a voice prompt, or a selection record "L." *Id.*

Defendant argues the phrase "[w]henever the user issues a 'Go' command (seen at 265 in Fig.

3), the player will execute a hyperlink jump to the location indicated by the last 'L' record" indicates that an "L" Selection_Record is required for all "Go" commands. When this quote is seen in full context however, the "whenever" remark is clearly discussing an alternative use of the "Go" command in the special cases of fetching linked passages and is not in reference generally to "Go" commands by a user using the visual display, as recited by the claims. Almeroth Reply Dec. ¶¶ 73, 74.

Moreover, the fetching of linked passages relied upon by Defendant is not corresponding structure at all as the recited function requires (1) "discontinuing" the current playing file and (2) jumping to a user *selected* file on a *visual menu display*. The relied upon fetching passage refers to issuing a "Go" command in response to a voice prompt with no discussion of a visual menu. Almeroth Reply Dec. ¶ 75. Second, the fetching of hyperlinks only discusses jumping to a predetermined linked passage in the sequencing file--not a user inputted one on a visual menu display, as explicitly claimed. *Id.* Finally, the fetching quote occurs when the player advances to a selection record A or B in the sequencing file and a voice prompt was made, which would mean that playback of the previous selection record has completed and there is no "discontinuing" of a currently playing audio file when the "Go" command was issued, as required by the explicit function. *Id.* ¶ 75. Further, the construction urged by Google and adopted by the PTO makes no mention of a selection record "L." *Id.* ¶ 76. Finally, the relied upon invalidating art merely disclosed a skip to the next segment element (a basic skip button) that had no mention of a linked passage or a L Selection_Record. *Id.*

## V.   OTHER TERMS AND ISSUES

**"DOWNLOADING":** Contrary to pages 11 to 14 of Defendant's brief, the specification discloses that identification by the player of files to download is only "preferably" done (not required) (7:10-22) and that "the host will prepare a Schedule Table 307 containing program segment[s] selected entirely by the host on the subscriber's behalf." 18:34-37. Clearly, the subscriber could not have identified the files in such a case.  Almeroth Reply Dec. ¶ 67.

**"EDITING MEANS":** Contrary to Defendant's brief at 28-29, the specification does not merely recite functional language. It describes a specific table data structures (*i.e.*, Selections File 351) with fields containing "segment identifiers" that can be modified so that when the identifiers change,

the sequence for playback changes.  Almeroth Reply Dec. ¶¶ 79-80.  The patent further describes four operational steps using a "utility program" on the player, and Fig. 2 further discloses an algorithm that sets forth the steps and timing of modifying the sequencing file. Almeroth Reply Dec. ¶ 80.

**"LOCTYPE":** Defendant's response does not contest the merits of Plaintiff's construction. LocType as a term is used throughout the corresponding structure, but its meaning is not readily ascertainable by its plain language because it is a term specifically coined by the inventors. The jury must know what this term means to apply the claim.

**"PLAYER":** The specification discloses small device players. *Id.* ¶ 85. Plaintiff notes that the hardware is separately claimed and is not attempting to read out any requirements. *Id.*

**"SELECTED AUDIO PROGRAM SEGMENTS":** Further, while the naked term "audio program segments" may be construed generically, the term chosen by the parties for construction is "selected audio program segments." Both the E.D. Tex. and the PTO concluded that the word "selected" before "audio program segments" in the context of claim 1 of the '076 Patent (among other claims) requires that the segments be selected (*i.e.*, chosen by or for a user). D.I. 147, Ex. D at 44, 48, Ex. E at 8; '178 Patent, 8:48-53, 29:22-30. The issue of whether the preamble is limiting is not joined by the term selection "selected audio program segments" and is not addressed in Defendant's brief.

**"FILE":** Plaintiff's construction does not read file out the construction as it requires that the "data" of a file must be "stored and manipulated as a unit" which clearly distinguishes it from unstructured raw "data" found in the prosecution history and contains the same language as Defendant as to this issue. D.I. 76-B at 2; Almeroth Reply Dec. ¶¶ 46-50. The specification explicitly discloses that the sequencing file is a database table. *Id.* Alternatively, Plaintiff would accept: A collection of data that is stored and manipulated as a unit by a file management *or database* system.

**"MEANS FOR TRANSLATING":** The reference to "voice recognition software" and "voice command system" in the specification that were well known in the art at filing to perform the function and generic recitals of known software are sufficient structure under § 112 ¶ 6. *Eon Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 623 (Fed. Cir. 2015) ("[T]he district court erred in holding that "special programming" does not encompass *commercially available off-the-shelf software*.");

14

*Med. Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1213-14 (Fed. Cir. 2003) ("we have been generous in finding something to be a corresponding structure when the specification contained a generic reference to structure that would be known to those in the art. . . [H]ere there would be no need for a disclosure of the specific program code if software were linked to the converting function and one skilled in the art would know the kind of program to use); *McKesson Info. Solutions LLC v. Trizetto Group, Inc.*, 2006 WL 891048, at *1 (D. Del. Apr. 05, 2006) ("means for operating…" was "data processing capabilities, memory and software capable of managing a database."); *Intuitive Surgical, Inc. v. Computer Motion, Inc.*, 214 F. Supp. 2d 433, 441 (D. Del. 2002) (construing "voice recognition system" generically and not confined to its embodiments in the specification as would be required under § 112,¶ 6 if it was a purely functional).

**"MEANS FOR DETECTING":** One skilled would understand step 237 as a "conditional programing construct" and not limited to a specific programming language. Almeroth Reply Dec. ¶ 77.

**MISQUOTES BY DEFENDANT:** On page 25, Defendant misleadingly suggests that the E.D. Tex. found prosecution disclaimer in the prior *Acer* case that supports Defendant's modifications to include "scanning a *received* sequencing file … for appropriate LocType" in the "continuously reproducing" term. This plainly is not true as none of Defendant's new modifications (including the modification to this term) at issue here were ever submitted to the PTO by either party. The cited comment was directed to the skip forward command—not "continuously reproducing." Plaintiff has included a reference to "scanning the sequencing file for… LocType" in its construction of the skip forward command (excluding the modification of received) but contest the new modification of adding "received" as well as scanning for a LocType in the "continuously reproducing" term. The E.D. Tex. did not issue a final claim construction order in *Acer* and the IPRs subsequently issued constructions and invalidated claims without those modifications. The IPRs represent new and contrary prosecution history that must be considered. On page 8, Defendant improperly attempts to characterize an introductory question during the *Acer* oral argument as a ruling. The question was answered at the hearing, and the only actual ruling concerning "sequencing file" rejected Defendant's position. D.I. 147-4, Exhibit D at 18.

Dated: June 25, 2018

Of Counsel:

Douglas Q. Hahn
Stradling Yocca Carlson & Rauth, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4138; Fax: 949-823-5138
Email: dhahn@sycr.com

Charles W. Goehringer
GERMER PLLC
550 Fannin, Suite 400
Beaumont, TX  77701
Phone:  409-654-6700
Email:  cwgoehringer@germer.com

Respectfully submitted,

FARNAN LLP

 /s/ Brian E. Farnan
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Fl.
Wilmington, DE  19801
Tel:  (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Victor G. Hardy (admitted *pro hac vice*)
William Parrish (admitted *pro hac vice*)
Minghui Yang (admitted *pro hac vice*)
Hardy, Parish, Yang, LLP
Spicewood Business Center
4412 Spicewood Springs Rd.
Suite 202
Austin, Texas 78759
Telephone: (512) 520-9407
vhardy@hpylegal.com
bparrish@hpylegal.com
myang@hpylegal.com

*Attorneys for Plaintiff  Personal Audio, LLC*