IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PERSONAL AUDIO, LLC,           )
                               )
               Plaintiff,      )
                               )
       v.                      )   C.A. No. 17-1751 (VAC) (CJB)
                               )
GOOGLE LLC,                    )
                               )
               Defendant.      )

## GOOGLE'S SUR-REPLY CLAIM CONSTRUCTION BRIEF

Morris, Nichols, Arsht & Tunnell LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Melissa J. Baily
David A. Perlson
Antonio R. Sistos
Quinn Emanuel Urquhart
  & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600

July 18, 2018

# TABLE OF CONTENTS

I.      SEQUENCING FILE ............................................................................................... 1

      A.     Consistent with the Claim Language, All Embodiments in the Specification Download, Store, and Use the Same "Sequencing File" on the Player. ................. 2

      B.     PA Does Not Dispute That Their Prosecution History Statements Define Claim Scope ......................................................................................................... 4

      C.     The Parties Are Not "Bound" to Their Proposed Constructions in the IPRs .......... 6

II.     MEANS FOR CONTINUOUSLY REPRODUCING ........................................................ 7

III.    "MEANS RESPONSIVE" (SKIP BACK) ........................................................................ 9

IV.    PROCESSOR . . . FOR DISCONTINUING / SELECTING  (GO COMMAND) ........... 10

V.     DOWNLOADING ............................................................................................................. 11

VI.    LOCTYPE ........................................................................................................................ 12

VII.   [AUDIO PROGRAM] PLAYER / PROGRAMMED DIGITAL COMPUTER .............. 13

VIII.  [SELECTED] [AUDIO] PROGRAM SEGMENTS ........................................................ 13

IX.    FILE ................................................................................................................................. 13

X.     MEANS FOR DETECTING .............................................................................................. 14

XI.    INDEFINITE TERMS ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*ACTV, Inc. v. Walt Disney Co.*,
  346 F.3d 1082 (Fed. Cir. 2003)...................................................................................5

*Alcohol Monitoring Sys., Inc. v. ActSoft, Inc.*,
  2011 WL 5075619 (D. Colo. Oct. 25, 2011) ...............................................................6

*Aristocrat Tech. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008)...............................................................10, 11, 15

*Eon Corp. v. AT&T Mobility LLC*,
  785 F.3d 616 (Fed. Cir. 2015)......................................................................14, 15

*Facebook, Inc. v. Pragmatus AV, LLC*,
  582 F. App'x 864 (Fed. Cir. 2014) ...........................................................................6

*Intuitive Surgical, Inc. v. Computer Motion, Inc.*,
  214 F. Supp. 2d 433 (D. Del. 2002)..........................................................................15

*Lampi Corp. v. Am. Power Prods., Inc.*,
  228 F.3d 1365 (Fed. Cir. 2000).................................................................................6

*McKesson Inf. Solutions LLC v. The Trizetto Group, Inc.*,
  2006 WL 891048 (D. Del. Apr. 5, 2006)...................................................................15

*Med. Instr. & Diagnostics Corp. v. Elekta AB*,
  344 F.3d 1205 (Fed. Cir. 2003).................................................................................15

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
  800 F.3d 1366 (Fed. Cir. 2015).................................................................................14

*Microprocessor Enhancement Corp. v. Texas Instr. Inc.*,
  520 F.3d 1367 (Fed. Cir. 2008)...................................................................................1

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
  357 F.3d 1340 (Fed. Cir. 2004)...................................................................................5

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)..........................................................................1, 5, 6

*Power Integrations, Inc. v. Lee*,
  797 F.3d 1318 (Fed. Cir. 2015)...................................................................................7

*SkyHawke Tech., LLC v. DECA Int'l Corp.*,
  828 F.3d 1373 (Fed. Cir. 2016)...................................................................................6

*TorPharm v. Ranbaxy*,
    336 F.3d 1322 (Fed. Cir. 2003).............................................................................................4

*Twin Peaks Software Inc. v. IBM Corp.*,
    690 F. App'x 656 (Fed. Cir. 2017) .....................................................................................14

*Wi-Lan USA, Inc. v. Apple Inc.*,
    830 F.3d 1374 (Fed. Cir. 2016)...........................................................................................7

In its Reply, PA continues to mischaracterize the specification of the asserted patents and ignores basic, controlling principles of law (such as the rule that means-plus-function claims are limited to disclosed structures).  Moreover, despite PA's improper reliance on a 60-page reply declaration from its expert,[1] PA actually ignores most of the evidence and arguments presented in Google's responsive brief.  The evidence and the law support Google's proposed constructions, and those constructions should be adopted.

## I.   <u>SEQUENCING FILE</u>

The parties dispute whether the same "sequencing file" received by the player must be (i) stored by the player, (ii) used to control playback of each song in the ordered sequence, and (iii) used to respond to control commands.  As detailed in Google's responsive brief (at 4-5), the claims themselves resolve these issues by reciting "sequencing file" the first time the term appears in the claims, and then reciting "*said* [] sequencing file" in every other instance.  Accordingly, each "sequencing file" in the claims refers to the *same* "sequencing file." (*Id*.)  Since the claims require that the "sequencing file" be downloaded (45:61-64, 48:11-13), stored (45:65-67, 48:8-10), and used to control playback with and without user commands (46:9-18, 48:28-32, 48:43-49, 48:58-67), Google's proposed construction is required.

PA presents no rebuttal to this outcome-determinative point.  Its Reply does not even mention the surrounding claim language.  (Reply 1-9.)  Instead, PA goes to great lengths to manufacture a new embodiment involving multiple sequencing files.  (*Id*.)  There is no such

---

[1] On many points, PA's reply hardly articulates any argument at all but simply cites to the declaration (which, in turn, contains attorney-like argument rather than expert opinions). Presumably, this was done as an end-run around page limits.  But even if the declaration were proper extrinsic evidence, it could not trump the intrinsic evidence in this case. *Microprocessor Enhancement Corp. v. Texas Instr. Inc.*, 520 F.3d 1367, 1373 (Fed. Cir. 2008) ("Because extrinsic evidence is less significant than the intrinsic record in determining the legally operative meaning of claim language . . .our decision herein rests primarily on the intrinsic record of the ′593 patent.") (*citing Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

"multiple sequencing file" embodiment in the specification.   And even if there were, the plain language of the claims cannot be rewritten to accommodate unclaimed embodiments.

### A.   Consistent with the Claim Language, All Embodiments in the Specification Download, Store, and Use the Same "Sequencing File" on the Player.

PA now asserts that the patent somehow uses "sequencing file" to refer to four different structures each performing different functions.[2]   (Reply 1.)   But the specification makes clear that PA's characterization of these structures is incorrect.

"Requested Table 301" is "a relational database" (17:18-22), not a file.   While that table is populated with data from a "file of integers" representing "selections made by and uploaded from the subscriber" (17:15-18), that list is "indicative of the requested content of a future planned playback session and not necessarily a listing of programs to be downloaded" (19:9-12).

"Selections File 470" is only mentioned twice in the specification[3] and relates to an "interactive, multimedia format" used to present programs to the user, not to represent selections from the user.   (43:56-63; 44:47-56.)

"Recommended Schedule Table 307" is a relational database (17:55-18:14), not a file.   While it contains "the recommended sequence of program segments for the next playback session" (17:62-64), it resides on the server (Fig. 4) and is not downloaded, stored, or used on the player.   The "schedule file (seen at 307 in FIG. 4)" consists "of a sequence of program segment identification numbers which are used to compile a sequencing file, called the selections file, illustrated at 351 in FIG. 5, which contains more detailed information about the sequence of events which occur during

---

[2]   PA's argument would render "sequencing file" indefinite, as one could not know which of the four "*sequencing* files" meets the claim language with reasonable certainty.

[3]   PA's expert *asserts*—without any evidence—that the "Selections File 470" "is a requested sequence created on the player" and "uploaded from the player."   (Almeroth Reply Declaration ("Almeroth") ¶¶ 8-9.)   But Fig. 7 reveals that Selections File 470 is derived from a "narrative text file" (4:27-32) describing forms of multimedia (Fig. 7, Item 450), and is not used to upload user-selected program files.

playback." (12:9-16.)[4]  That "sequencing file" or "selections file" 351 depicted in Fig. 5 (not Recommended Schedule Table 307) is in turn "downloaded with the program segments themselves" (12:27-31, 7:13-22), used to reproduce "the sequence of programming [] for the listener" (8:63-65, 34:19-23), and "make[s] it possible to perform jumps to different predetermined locations in the program sequence" (29:7-12, 34:15-19, 34:25-34), in accordance with the claim language and with Google's proposed construction.

PA acknowledges that the Recommended Schedule Table 307 is compiled into "Selections File 351 used during playback" but asserts that compilation occurs on the player, not the server, and that the server instead downloads Table 307 to the player.[5]  (Reply 3.)  PA further asserts that the Selections File 351 is not "described as being downloaded." (*Id.* 2.)  The specification makes clear that PA is wrong:

- "***the selections file (seen at 351 in FIG. 5)*** which follows a program sequence initially created by the host server and ***downloaded*** with the program segments themselves";

- "the recommended order and the identification of the program files making up an individual playback session are stored in a ***session schedule file*** (to be described in detail in connection with ***FIG. 5***) which contains program identifiers of the program segments to be played during an upcoming session. ***The player 103 downloads the session schedule file***…"

(12:28-31, 7:13-19.)  As PA itself acknowledges, there is no need to download both Table 307 and Selections File 351.  (Reply 3.)  Selections File 351 is plainly downloaded; Table 307 is not.[6]

---

[4]    PA asserts that this citation somehow shows that schedule file 307 also uses the format of Fig. 5.  (Reply 3.)  As the quote plainly indicates, however, schedule file 307 is <u>compiled</u> into Fig. 5's format; schedule file 307 itself is not disclosed as using the format of Fig. 5.

[5]    PA's expert asserts—again without any evidence—that the "selections file compiler" recited in 44:57-45:3 resides on the player.  (Almeroth ¶ 11.)  The specification never expressly indicates where that "compiler" resides, but it later describes uploading "user input" in a "usage log file (containing responses to radio and checkbox input tags)" (45:4-6, 45:23-27) in connection with Fig. 7.  It makes little sense for the player to upload to a server raw log files if it is capable of compiling a "selections file" itself as PA's expert claims.

[6]    The specification does describe the data in Schedule Table 301 being downloaded (*e.g.*, 18:24-34, 23:47-60) by first compiling the data into the downloaded Selections File 351 (12:9-16).

At no point during the extensive prosecution of the '076 and '178 patents did the Applicants even suggest that the "sequencing file" is compiled on the player from a different downloaded "sequencing file."   Rather, as PA did during the IPRs, the Applicants asserted that the same "downloaded sequencing file" controls playback no less than 15 times:

- In claims 1-17, as amended, applicants set forth **an audio program player which** stores a collection of individual program segments and which further **receives and stores a file of data which specifies the order in which those program segments are scheduled to be reproduced by the player**. (Baily Decl. Exh. A at 2 (emphasis added); *see also id.* at 3.)

- Claim 1 makes it clear that the stored "program segments" are different from the "file of data " which is **received and stored** and which establishes a sequence in which the **separately claimed program segments** are scheduled to be reproduced.  (Baily Decl. Exh. B at 3 (emphasis in original); *see also id.* at 4, 5.)

(*See also* Baily Decl. Exh. C at 2, 5, 6, 7; Baily Decl. Exh. D at 14, 16-17, 17, 18-19, 24.)

PA's assertion that "**all** embodiments of the claimed invention [] scan only [] a file that was not received from outside the player" is thus contradicted by its own statements to the PTO.  (Reply 1.)  A patentee may not "adopt a position contradictory to that adopted before the PTO and expect to be believed." *TorPharm v. Ranbaxy*, 336 F.3d 1322, 1329 (Fed. Cir. 2003).[7]

### B.   PA Does Not Dispute That Their Prosecution History Statements Define Claim Scope

PA urges the Court to address "the naked term 'sequencing file,'" "independent from any other express limitation."  (Reply 5.)  PA implies this analysis-in-a-vacuum is needed because of hypothetical "other claim limitations or different patents expressly not so limited" to requiring that the same sequencing file be received, stored, and used.[8]  (*Id.*)

---

[7]     Should the Court wish to consider extrinsic evidence, *see also* Mayer-Patel Sur-Reply Declaration ("Mayer-Patel") ¶¶ 3-9.

[8]     Significantly, PA acknowledges that "sequencing files as claimed in claims 1 and 14 of the 178 patent"—its only independent claims—have the elements Google urges.  (Reply 6; *see also* Almeroth ¶¶ 32-33.)  PA's theory that these limitations are nowhere found in the specification (Reply 1-4) would thus render all '178 claims invalid for lack of written description.

4

PA's argument is a red herring.  *Every* claim at issue in ***this*** litigation explicitly requires that the same "sequencing file," "playback session sequencing file," or "file of data establishing a sequence" be downloaded, stored, and used.  (Resp. 4-5.)  Moreover, PA's argument that the Court should not consider the surrounding claim language, but should only consider the "naked" versions of the "sequencing file" terms, is wrong as a matter of law.  *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1314 (Fed. Cir. 2005) ("the claims themselves provide substantial guidance as to the meaning of particular claim terms"); *ACTV, Inc. v. Walt Disney Co.,* 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered").  By not accounting for surrounding claim language, PA dooms its proposals.

PA attempts to salvage the '076 patent claims by asserting that "[t]here is no mention of ['file establishing a sequence'] in any relied upon [prosecution history] statements and therefore, there is no colorable argument that Plaintiff so defined this term."  (Reply 8.)  That is not so.  Google has already cited the patentee's argument that cited prior art did not disclose "a file of data establishing a sequence" because it failed to disclose that a command operation "references a file of data establishing a sequence ***that was received from outside the player.***"  (Resp. 7.)

PA further relies on *Georgia Pacific* to attempt to limit the application of statements during the '178 re-examination to the '076 patent.  (Reply 8.)  But as the Federal Circuit explained in *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (citations omitted), *Georgia Pacific* precludes estoppel but not consideration of such statements:

> We also reject Multi-Tech's argument, based on *Georgia-Pacific* [], that the statements made during prosecution of the [later] patent should not be applied to the [earlier] patent…. We have stated on numerous occasions that a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation. *Georgia-Pacific* is not to the contrary.

PA has not disputed and cannot dispute that its repeated and unambiguous prosecution statements show that the "sequencing file," "playback session sequencing file," or "file of data

establishing a sequence" *in the asserted claims* must be "a file that is received by the player, stored, and used by the processor to both control playback of each song in the ordered sequence and respond to control command." (Resp. 6-8.) To the extent the specification disclosed any other embodiments—and they do not—the claim language does not cover them.

### C.   The Parties Are Not "Bound" to Their Proposed Constructions in the IPRs

PA's attempt to bind Google to PTAB arguments made under a different standard while simultaneously asserting that it is not bound to the PTAB arguments that it made to secure the patents (*see, e.g.*, *supra* Part A & Baily Decl. Exhs. A-D) does not stand. (Reply 8-9.) PA's own cited case, *SkyHawke Tech., LLC v. DECA Int'l Corp.*, 828 F.3d 1373 (Fed. Cir. 2016), confirms that Google can advance different constructions in this forum: "[I]ssue preclusion requires that the issues were actually litigated. Because the Board applies the broadest reasonable construction of the claims while the district courts apply a different standard of claim construction as explored in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), the issue of claim construction under *Phillips* to be determined by the district court has not been actually litigated." *Id*. at 1377. This different standard of review—which Google cites and PA apparently acknowledges (Resp. 29; Reply 8)—forecloses estoppel.[9]

PA asserts that Google has failed to account for the purported differences between its PTAB constructions and its constructions in this forum. However, it is *not* "reversible error for the PTO

---

[9]    PA's other cases fare no better. *Lampi Corp. v. Am. Power Prods.*, *Inc*., 228 F.3d 1365, 1377-77 (Fed. Cir. 2000) discussed a patent holder withdrawing its prior statements regarding the date of first commercial use when registering a trademark, and the district court's finding that judicial estoppel did not apply was *affirmed*. *Alcohol Monitoring Sys., Inc. v. ActSoft, Inc*., 2011 WL 5075619, at *6 (D. Colo. Oct. 25, 2011), precluded the *patentee* from offering a broader claim interpretation in the district court than it offered to the PTO to obtain the patent, not an accused infringer from offering a narrower construction in the district court than it offered to the PTAB. As the Federal Circuit has repeatedly noted, "[t]he broadest reasonable interpretation of a claim term may be the same as or broader than the construction of a term under the *Phillips* standard." *Facebook, Inc. v. Pragmatus AV, LLC*, 582 F. App'x 864, 869 (Fed. Cir. 2014).

not to explain why its standard produces a different construction from a previous district court construction" as PA alleges.  (Reply 9.)  Again, PA's own cited case finds otherwise: "We do not hold that the board must in all cases assess a previous judicial interpretation of a disputed claim term." *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1327 (Fed. Cir. 2015).[10]  And Google ***did*** account for why "whether a claim is indefinite or not" (Reply 9) was not before the PTAB: because the PTAB was statutorily barred from considering the issue (Resp. 29).

At bottom, there is no legal or logical reason precluding a party from advancing a ***narrower*** construction in a forum that interprets claims using a narrower standard.  In contrast, there is both legal and logical cause to preclude a party from advancing a ***broader*** construction in a forum that interprets claims using a narrower standard, as PA attempts to do.  *Wi-Lan USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1390 (Fed. Cir. 2016).

## II.   MEANS FOR CONTINUOUSLY REPRODUCING

PA does not dispute that, in the Joint Claim Construction Statement, PA agreed that the structure for "means for continuously producing . . . program segments" requires an endless loop (Resp. 23).  And PA does not dispute that it is collaterally estopped from arguing otherwise in light of its prior litigation of this issue in Texas (*id.* 23-24).  Instead, PA offers new citations to the specification, but none supports PA's position.

PA contends that claim 1 of the '178 patent suggests that an endless loop is not required because that claim provides for "continuing the reproduction at the beginning of a listener-selected" audio segment "without repeating the sequence." (Reply 10.)  But the portion of the claim that PA recites concerns responding to "a program selection command from said listener." (*Id.*)  The portion

---

10      *Power Integrations* limited its ruling to an instance where one party's "principal argument to the board about the proper interpretation of the term []" was expressly tied to the district court's claim construction," yet the Board "declined to address—or even acknowledge—the district court's claim construction."  *Id.* at 1326-27.

of the claim to be construed (and the agreed function for which structure is required) concerns something different: "continuously delivering a succession of said audio program files . . . in the <u>absence</u> of a program selection command from said listener." (46:9-13; D.I. 76-2 at 13, 22.) The portion of the claim relied on by PA is thus irrelevant. The same is true for PA's citation to 14:25-39 (Reply 10), which describes responding to a listener's Go Command rather than an algorithm that applies "in the <u>absence</u> of" a listener command.

PA's argument that Figure 7 depicts "a sequencing file 470" that does not contain a LocType R, "indisputably contradicting Defendant's claim that one embodiment using a loop exists" (Reply 10-11) is similarly unavailing. The specification explicitly indicates that the sequencing file of Figure 7 corresponds only to "a portion of an illustrative HTML test file." (43:60-63.) In other words, sequencing file 470 does not represent an entire sequence, and Figure 7 has nothing to do with "continuously reproducing." (*See also* Mayer-Patel ¶ 10.)

PA also contends that "[t]he patents explicitly state that the particular configuration in Fig. 5 (using a LocType R) is only 'illustrative'" and that "one skilled would understand that the particular configuration of a sequencing file may vary." (Reply 10.) But this is a means-plus-function term, so PA's claims must be limited to algorithms disclosed in the specification. PA has pointed to no algorithm other than the one that requires an endless loop. (*See* Resp. 22-24.)

Separately, PA disputes that LocType scanning is necessary to accomplish continuous reproduction, arguing that the structure corresponding to the function of "continuously reproducing said program segments" must "reproduce audio program segments, including topic and subject audio announcements, highlighted passages, and other program segments in the specified order and does not allow for skipping." (Almeroth ¶ 58.) But this argument implies that "program segments" generically refers to any LocType. That is incorrect. The specification defines "program segments"

("P", "p") as distinct from topic announcements ("T", "t"), subject announcements ("S", "s"), highlighted passages ("H", "E"), and other LocTypes. (31:56-32:25.) The only algorithm disclosed for continuously reproducing <u>only</u> "program" segments requires scanning LocType. (Resp. 24-26.)[11] (*See also* Mayer-Patel ¶ 11.)

## III.   "MEANS RESPONSIVE" (SKIP BACK)

PA contends that the algorithm for responding to a user's "skip back" command should not include a reference to "the start time recorded in a usage log file." (Reply 11-12.) PA implicitly acknowledges that responding to a user's "skip back" command requires measuring the amount of time that a song has been playing (in order to determine whether a Skip Back should restart the currently playing segment or start the prior segment). But PA contends (i) that the specification discloses "a variety of means" (beyond referencing the usage log file) to perform that function and (ii) that "determining the amount of time an audio file has played . . . is well within the normal programming abilities of one skilled in the art." (Reply 12.) Neither argument suggests that PA's proposed algorithm – which says nothing about how to measure the amount of time a song has been playing – should be adopted.

In seeking to avoid a structure that requires a usage log file, PA points to one paragraph in column 12 of the specification, which starts "[a]s playing progresses, the current playback position may be advantageously indicated by a variety of means." (Reply 12 (citing Almeroth ¶ 69 (citing

---

[11]   At the end of its Reply (at 15), PA asserts that Google's discussion of the *Acer* case in the context of its argument regarding scanning for LocType is misleading. That is not true. At pages 25-26 of its Response:  Google quotes an exchange between PA and the *Acer* court regarding PA's "position before the PTO in reexamination with respect to the 'skip command'"; points out that PA has now "conced[ed] that skip command processing requires LocType in the 'means responsive' terms"; and argues that PA's "conflicting position that the 'continuously reproducing' algorithm . . . does not require LocType" cannot be supported. PA has no response to the substance of this argument; PA simply reiterates without explanation the inconsistent position that it "has included a reference to 'scanning the sequencing file for . . . LocType' in its construction for the skip forward command . . . but contest[s] the new modification of . . . scanning for a LocType in the 'continuously reproducing' term." (Reply 15.)

12:43-58).)  But this paragraph describes how a player displays playback position to a user and focuses on the time "remaining to be played" so that a user can determine when he might want to skip the remainder of the current segment.  Such disclosures do not suggest any algorithm for responding to a user's skip back command.  (*See* Mayer-Patel ¶ 12.)

PA next argues that usage logs are used in "the recommendation and accounting algorithms." (Reply 12.)  But this simply ignores the additional references to logging start time in the context of the operation of the user commands (Fig. 3, 15:55-59).

Because PA seeks to avoid the only disclosed algorithm for determining whether a Skip Back command should restart the current segment or start the prior segment, PA argues that no algorithm is required.  PA contends instead that "determining the amount of time an audio file has played . . . is well within the normal programming abilities of one skilled in the art."  (Reply 12 (citing Almeroth ¶ 69).)  But it is not enough "that devising an algorithm to perform [a] function would be within the capability of one of skill in the art"; the patent must "recite the particular structure that performs the function and to which the means-plus function claim is necessarily limited."  *Aristocrat Tech. v. Int'l Game Tech.*, 521 F.3d 1328, 1334, 1336 (Fed. Cir. 2008).  Either the structure for determining whether a Skip Back should restart the current segment or start the prior segment uses "the start time recorded in a usage log file" (as proposed by Google) or there is no structure for that function disclosed in the patents (as confirmed by the absence of such an algorithm from PA's proposal) and the relevant claims are indefinite.

## IV.   PROCESSOR . . . FOR DISCONTINUING / SELECTING  (GO COMMAND)

With respect to the Go Command, PA contends that Google's proposed structure for identifying a listener-selected file before "going" to that file is drawn from a paragraph in the specification that relates only to "the special cases of fetching [hyper]linked passages" in response to

a "voice prompt" and <u>not</u> to "jumping to a user selected file on a <u>visual menu display</u>." (Reply 12-13 (emphasis in original), citing 35:43-63.) But that is not true. In the sentence that immediately follows the cited language, the specification states: "The hyperlink capability described above may be used to implement a program menu of the type described earlier in connection with FIG 3." (35:64-66.) What is "described earlier in connection with FIG 3," is that "the playback session begins with the presentation of an audio (and/or <u>displayed</u>) <u>menu which allows the user to jump</u> to any program segment within that sequence . . ." (12:22-25 (emphasis added).) In other words, not only does the specification state that the algorithm cited by Google is used "[w]henever the user issues a "Go" command" (*see* Resp. 15-16, discussing 35:61-66), but – contrary to PA's assertions – it also explicitly states that the algorithm is used in the context of jumping to a user selected file on a visual menu display.

PA cites nothing that provides an alternative algorithm for this 112(6) claim limitation. PA points to 14:30-49, but that language describes how a user might *initiate* a Go command (*i.e.*, a mouse-click or a push-button); it provides no algorithm for *responding* to a Go command. PA also points to 12:49-60, but that language simply reiterates the claimed function – "[w]hen such a concurrent visual display is available, means may also be included to respond to the user's selection of a given program . . ." – rather than providing a means for achieving that function. *Aristrocrat*, 521 F.3d at 1334-35 (finding that descriptions of functions and outcomes of functions are not descriptions of structure required by 112(6)). (*See also* Mayer-Patel ¶¶ 14-16.)

## V.    <u>DOWNLOADING</u>

With respect to the downloading terms, PA has no response to Google's arguments (i) that file transfers need not be from a "remote server" and (ii) that "modem" should not be included in the

construction. Thus, the only issue still in dispute is whether "a request by the player" to download files must identify the files to be downloaded (as Google contends).

PA states that the identification of files to be downloaded "is only 'preferably' done," citing 7:10-22. (Reply 13.) But the "preferably" in the cited paragraph refers to the *form* of the download compilation file ("The download compilation file . . . preferably takes the form of one or more subscriber and session specific files . . ."), not to whether or how the player must identify the files to be downloaded. Moreover, the very language PA cites confirms that the "player . . issues <u>download requests for those identified program segment files</u> which are not already available in the player's local storage unit" (7:19-21) (emphasis added) – *i.e.*, the player identifies the files to be downloaded, as Google's construction provides. (*See* Mayer-Patel ¶ 18.)

PA also quotes specification language that "the host will prepare a Schedule Table 307 containing program segment[s] selected entirely by the host on the subscriber's behalf," contending that "the subscriber could not have identified the files in such a case." (Reply 13.) But the Schedule Table 307 is not equivalent to the downloaded program files themselves; the Schedule Table 307 is just "a sequence of program segment identification numbers" (12:11-12). (*See* Mayer-Patel ¶ 19.)

## VI.   <u>LOCTYPE</u>

PA disingenuously contends that Google "does not contest the merits" of PA's construction of LocType, a term that appears in the structure of the "means responsive" terms. (Reply 14.) While Google does not dispute that LocType indicates a characteristic of a selection record, the specification *defines* "LocType" as "a single byte character," having the values and meanings of several types of records outlined in the specification. *E.g.*, 31:63-33:29, 34:24-35:3, 35:40-36:2. Thus, to the extent "LocType" is construed at all, it should include the definitional structural limitation of "single byte character." PA has offered no argument to the contrary.

## VII.    [AUDIO PROGRAM] PLAYER / PROGRAMMED DIGITAL COMPUTER

PA offers nothing to support its proposed construction for these terms, which includes a software program with no associated hardware ("a device _or_ program . . ."). PA's statement that the specification discloses "small device players" (Reply 14) does not suggest that a player/computer could be a software program alone. And PA's concession that hardware is required by the claims (_id._) should preclude PA's proposal to construe a player/computer as software alone, which will unnecessarily and inevitably confuse the jury.

## VIII.   [SELECTED] [AUDIO] PROGRAM SEGMENTS

PA has never articulated any basis for construing "[audio] program segment(s)" to be "audio program segments that have been chosen by or for a user" (JCCS Ref. 2). (_See_ Opening 30, Reply 14.) PA now seems to concede that those terms need not be construed. (Reply 14.) There is similarly no reason to construe "selected audio program segments" -- a term that will be easily understood by the jury -- as anything other than its plain and ordinary meaning.

## IX.    FILE

PA does not dispute that the term "file" must be something more than "data." PA simply argues without explanation that its construction of "file" as "any collection of data _**that is stored and manipulated as a unit**_" is sufficient to distinguish a file from data. (Reply 14.) But that is not the case – any data (from a single byte to several terabytes) can be characterized as being "stored and manipulated as a unit." (_See_ Mayer-Patel ¶ 20.) PA has provided no response to the extensive evidence that Google cited establishing that "files" must be identified by name (Resp. 10-11) or to the point that the server-side "database" of 32-bit integers relied on by PA has nothing to do with the "files" that are received and stored by the player. Google's construction should be adopted.

## X.    MEANS FOR DETECTING

The issue is whether the "command ?" diamond in Item 261 of Figure 3 corresponds to an "if-then-else" programming construct or any conditional programming construct.  Neither party has cited intrinsic evidence on this point.  PA has cited its expert; Google has cited an IEEE dictionary and its expert.  But the key here is that the relevant claims will be rendered indefinite under PA's proposal.  Indeed, PA's own expert does not dispute that, if PA's position is adopted, then the specification does not identify any structure for the first part of the function ("detecting a first command") (Almeroth ¶ 78).  PA's expert's argument that the disclosure of structure for the second part of the function is sufficient to save the claim (an argument that is not even cited by PA in its Reply) is wrong as a matter of law.  *E.g.*, *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1374 (Fed. Cir. 2015) (where a disputed term encompasses four functions, disclosure of an algorithm for only three is insufficient); *Twin Peaks Software Inc. v. IBM Corp.,* 690 F. App'x 656, 665 (Fed. Cir. 2017) (finding claim indefinite where specification included only partial disclosure of the full scope of the claimed function).

## XI.    INDEFINITE TERMS

*Means for Translating.*  PA contends that "generic recitals of known software" – including the specification's references to "voice recognition software" and a "voice command system" – are "sufficient structure under 112(6)."  (Reply 14.)  The cases cited by PA do not stand for this proposition.  For example, in *Eon Corp. v. AT&T Mobility LLC*, 785 F.3d 616, 623 (Fed. Cir. 2015), the Federal Circuit considered the applicability of the "exception to the algorithm rule created by *In re Katz*."  *Id.* at 621.  That exception provides that "a standard microprocessor can serve as sufficient structure for functions that can be achieved by any general purpose computer without special programming," such as "basic" receiving and storing functions.  *Id.* at 621, 622-23.  There, the

Federal Circuit made clear that:  "A microprocessor or general purpose computer lends sufficient structure only to basic functions of a microprocessor.  All other computer-implemented functions require disclosure of an algorithm."  *Id.* at 623.  Here, of course, the claimed function – means for translating said voice signals into said control commands – is not a "basic" function associated with a microprocessor, and the limited *Katz* exception does not apply.  The other cases cited by PA are similarly distinguishable.[12]

*Editing Means.*  PA has pointed to nothing in the specification that actually performs the function of "modifying said data establishing said sequence."  While PA points to language in the specification stating that Selections File 251 "can be modified so that when the identifiers change, the sequence for playback changes" (Reply 13-14), this is simply a recitation of the claimed function ("modifying") and a description of the outcome (changing the identifiers and playback), neither of which is a means for achieving that function or outcome.  Aristocrat, 521 F.3d at 1334.  PA further argues that "[t]he specification further describes four operational steps (access file, add identifiers, delete identifiers, and resequence identifiers) using a 'utility program' . . . that allows for modification."  (Almeroth ¶ 80.)  But here again, the language simply recites the function (adding, deleting, and resequencing are just examples of modifying) without any structure ("utility programs" are defined by function, not structure, see 10:30-33).  PA's final cite is to Step 211 of Figure 2, which, yet again, just recites the function – "edit downloaded program sequence" – without identifying any means.  The patents provide no structure or algorithm; the relevant claims are indefinite.

---

[12]   *Med. Instr. & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205 (Fed. Cir. 2003) (finding disclosure of "Image Format Conversion" insufficient structure for "the function of converting images into a selected digital format"); *Intuitive Surgical, Inc. v. Computer Motion, Inc.*, 214 F. Supp. 2d 433, 441 (D. Del. 2002) (referring to a previously construed term not governed by 112(6) in an infringement analysis); *McKesson Inf. Solutions LLC v. The Trizetto Group, Inc.*, 2006 WL 891048, at *1 (D. Del. Apr. 5, 2006) (finding the specification's identification of the "well-known IBM 'personal computer'" sufficient structure for performing basic functions).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Melissa J. Baily
David A. Perlson
Antonio R. Sistos
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600

July 18, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 18, 2018, upon the following at the email addresses indicated below:

Brian E. Farnan, Esquire, Esquire            *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Victor G. Hardy, Esquire            *VIA ELECTRONIC MAIL*
William Parrish, Esquire
Minghui Yang, Esquire
Henning Schmidt, Esquire
Floyd Walker, Esquire
HARDY, PARISH, YANG, LLP
Spicewood Business Center
4412 Spicewood Springs Road, Suite 202
Austin, TX  78759
*Attorneys for Plaintiff*

Douglas Q. Hahn, Esquire            *VIA ELECTRONIC MAIL*
Salil Bali, Esquire
STRADLING YOCCA CARLSON & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
*Attorneys for Plaintiff*

*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)