### Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200
(302) 658-3989 Fax

**Brian P. Egan**
(302) 351-9454
(302) 425-3012 FAX
began@mnat.com

Original Filing Date: September 11, 2018
Redacted Filing Date: September 18, 2018

The Honorable Christopher J. Burke                                   *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware                                       REDACTED - PUBLIC VERSION
844 North King Street
Wilmington, DE 19801

      Re:    *Personal Audio, LLC v. Google LLC*
             C.A. No. 17-1751 (VAC) (CJB)

Dear Judge Burke:

      Google LLC ("Google") respectfully requests an order compelling Plaintiff Personal Audio LLC ("PA") (i) to produce all documents related to the patents-in-suit, including draft license agreements and licensing correspondence; and (ii) to provide substantive responses to Google's interrogatories seeking information regarding PA's damages contentions in this case.

**I.  PA Should Be Compelled To Produce All Documents Regarding The Patents-In-Suit**

      On May 16, 2018, Google served the following request for production on PA:

> **Request for Production No. 56:** All agreements, correspondence, drafts, negotiations, and any other communications between Plaintiff (or any third party acting on behalf of Plaintiff) and Acer, Aluratek, Amazon Digital Services, Apollo Brands, Apple, Archos, ASUSTek, Azpen Innovation, Barnes & Noble, Coby Electronics, FUHU, Fujitsu, HTC, Huawei, Lenovo, LG, Motorola, Microsoft, Philips, RIM, Samsung, Sandisk, Sirius XM Radio, Toshiba, Voxx, ZTE, and any other former defendants, licensees, or potential licensees relating to negotiations of conditions for dismissals, covenants not to sue, licenses, settlements, or any other legal or financial interest involving the patents-in-suit.

(Ex. A at 1.)  This request is limited on its face to documents <u>related to the patents-in-suit</u>, including documents and correspondence regarding licensing the patents-in-suit, settling litigation related to the patents-in-suit, and other legal or financial interests in the patents-in-suit.

      In its response to Google's request, PA refused to produce any responsive documents except for executed license agreements:

The Honorable Christopher J. Burke
September 11, 2018
Page 2

> **Response to Request for Production No. 56:** Plaintiff has produced all of its license agreements except for Microsoft and will not produce additional documents.

(Ex. B at 4.) In response to Google's position that all non-privileged documents related to the patents-in-suit should be produced, PA initially stated that it was "looking into this issue." (Ex. C.) More than a week later, PA stated that "it does not believe it is obligated to produce such documents under applicable law." (Ex. D.) PA never provided any legal citation or authority to support its belief.

PA has not offered any justification for refusing to produce <u>documents about the very patents that are at issue in this case</u>. There is no viable justification for it. Google is entitled to discovery of all of PA's statements and all of PA's documents and correspondence regarding the patents-in-suit.

As an initial matter, such statements, documents, and correspondence may well contain PA admissions regarding all sorts of issues, including infringement and validity. *See e.g.*, *Conopco, Inc. v. Warner-Lambert Co.*, Case No. 99-cv-101, 2000 WL 342872, *5, *6 (D.N.J. Jan. 26, 2000) (ordering patentee to produce "all documents . . . which constitute, refer or relate to licensing, or attempts to license, the patents-in-suit and related patents, including all correspondence . . ." because such documents and correspondence could contain admissions against the patentee's interest with respect to infringement and validity; string citing cases reaching the same conclusion from various jurisdictions).

Perhaps more importantly here, such statements, documents, and correspondence are likely to contain important evidence related to damages, particularly given that PA's business is to litigate and license. PA has produced nearly two dozen agreements to license the patents-in-suit. The licenses vary in scope and in consideration paid. "The draft versions of these license agreements as well as the underlying negotiations will help to clarify these discrepancies and, in truth, are probably the only source from which such clarity might come." *Charles E. Hill & Associates, Inc. v. ABT Electronics, Inc.*, 854 F. Supp. 2d 427, 429-30 (E.D. Tex. 2012) (ordering the production of "draft license agreements and communications . . . relating to the negotiation of license agreements entered into to resolve past claims under the patents-in-suit"). Obtaining such clarity with respect to the patentee's license agreements is especially important here, because the parties dispute which products have already been licensed under the patents-in-suit and should therefore be excluded from any "royalty base" in this case. Draft agreements and correspondence related to these license agreements are likely to shed light on this issue.

Moreover, Google is "entitled to show whether and to what extent the rate from a prior license agreement is the result of a compromise or reflects a desire to avoid litigation." *See, e.g.*, *Tyco Healthcare Group LP v. E-Z-EM, Inc.*, No. 2:07-CV-262 (TJW), 2010 WL 774878, *2 (E.D. Tex. Mar. 2, 2010). Materials reflecting license negotiations (including correspondence and draft agreements) are likely to be the only evidence available on that issue. *See id.* at *1, *2 (ordering the production of "communications . . . that culminated in a license agreement" "in light of the admissibility and importance of prior related settlement agreements" and in light of the Federal Circuit's decision in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010), which "suggests that the underlying negotiations are relevant").

The Honorable Christopher J. Burke
September 11, 2018
Page 3

In sum, all of PA's documents and correspondence regarding the patents-in-suit are highly relevant to the issues in this case. PA's belief that "it is not obligated to produce such documents under applicable law" is meritless. PA should be compelled to produce all documents responsive to Google's Request For Production No. 56 that are not covered by the attorney-client privilege (and to log any responsive documents that are purportedly covered by that privilege).

II. **PA SHOULD BE COMPELLED TO PROVIDE INFORMATION REGARDING ITS DAMAGES CONTENTIONS IN RESPONSE TO GOOGLE'S INTERROGATORIES**

On May 16, 2018, Google served Interrogatory Nos. 6 and 7, which asked PA to identify its contentions regarding damages (including, for example, the identification of any facts and documents that PA contends are relevant to a *Georgia-Pacific* analysis):

> **Interrogatory No. 6:** Identify Plaintiff's contentions regarding the total amount of damages sought from Google based on the damages model Plaintiff purports to have identified in its March 26, 2018 Disclosure of Damages Theory, including the claimed royalty rate and royalty base and what types of apportionment were applied and the reasons, and all facts and documents considered in determining the amount of damages sought, including all *Georgia-Pacific* factors.
>
> **Interrogatory No. 7:** State whether Plaintiff is asserting any theory of damages other than reasonable royalty damages, and for each of Plaintiff's alleged theory of damages, including reasonable royalty, identify the computation of damages and identify all documents and factual support for each alleged theory and computation of damages.

(Ex. E at 2.) PA has provided no substantive response to these interrogatories, offering only the following generic statement with respect to each:

> Plaintiff seeks damages adequate to compensate it for Google's infringement in an amount that is no less than a reasonable royalty, together with interest and costs as fixed by the court. Plaintiff's response is subject to the final opinions of its experts and it reserves the right to supplement its response accordingly.

(Ex. F at 5-7.) During the parties' discussion of these interrogatories, PA took the position that it will not provide any substantive responses until Google produces additional documents, stating that "Personal Audio would welcome Google to prepare and send it a joint discovery dispute letter" on this issue. (Ex. C; Ex. D.) PA should be compelled to provide full substantive responses to Google's Interrogatory Nos. 6 and 7 based on the information currently in its possession.

PA does not dispute that it has information that is relevant to the damages it is purportedly seeking in this case. Indeed, PA was required to have some basis for the damages allegations recited in its complaint. *See* Fed. R. Civ. P. 11. And PA's March 26, 2018 Initial Disclosure Of Damages Theory ("Initial Disclosure") makes reference to "multiple damages models," states that those "damages models" take into account "elements . . . addressed in the

The Honorable Christopher J. Burke
September 11, 2018
Page 4

Georgia Pacific Factors," and further states that those "damages models" take into account other unidentified "elements in determining a reasonable royalty rate to be applied to the base." (Ex. G at 2, 3.) Yet PA has provided no information regarding these vague allegations and contentions in response to Google's interrogatories.

For example, PA has refused to "state whether [it] is asserting any theory of damages other than reasonable royalty damages," even though its own Initial Disclosure implies that it is. (*Id.* at 2, 3 (referring to "multiple damages models").) PA has refused to provide any information regarding "the reasonable royalty calculation" referenced in its Initial Disclosure (*id.* at 2). With respect to that calculation, PA is the party with all of the documents and information related to at least *Georgia-Pacific* factor number 1, "[t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty"; yet PA has refused to disclose whether it will rely on any of its nearly two dozen agreements to license the patents-in-suit, whether it will contend that those agreements prove an established royalty, and so on. PA has also refused to disclose any of the unidentified "other elements" (beyond the "Georgia Pacific Factors") that it referenced as relevant to its "multiple damages models" in its Initial Disclosure (*id.* at 3).

PA does not need information from Google[1] to provide a substantive response to Google's interrogatories. Instead, PA must provide full interrogatory responses based on the information it currently has in its possession. *See, e.g., Anesta AG v. Mylan Pharms.*, Case No. 08-cv-00889-SLR, Memorandum Order, D.I. 453 at 3 (D. Del. Oct. 22, 2013) (ordering plaintiffs to supplement responses to defendants' damages contentions interrogatories, finding that the "plaintiffs at bar have an obligation to provide their good faith bases for electing their theories of recovery, consistent with Fed. R. Civ. P. 11"); *SPH America, LLC v. Research in Motion, Ltd.*, 2016 WL 6305414, at *4 (S.D. Cal. Aug. 16, 2016) (granting motion to compel full response to damages contentions interrogatory because, "[a]s a sophisticated patent holder that routinely licenses its patents and who certified under Rule 11 that a diligent pre-trial investigation was performed, plaintiff cannot reasonably claim that it has not yet formulated a position regarding this issue, or that it does not have the tools to do so"); *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276 (N.D. Cal. 2015) (compelling full substantive response regarding damages contentions); *Mobile Storage Tech., Inc. v. Fujitsu Ltd.*, 2010 WL 1292545, *1 (N.D. Cal. Mar. 31, 2010) (same). PA should be ordered to provide such responses within seven days, so that Google has a fair opportunity to test PA's damages contentions during fact discovery, which closes on October 19.

---

[1] Among other financial information, Google has already produced revenue and cost information related to Google Play Music song purchases and subscriptions on a monthly basis. PA should answer the interrogatories at issue based on the information it has in its possession, including information already produced by Google.

The Honorable Christopher J. Burke
September 11, 2018
Page 5

                                                          Respectfully,

                                                          */s/ Brian P. Egan*

                                                          Brian P. Egan (#6227)

BPE/rah
cc:    Clerk of Court (Via Hand Delivery)
        All Counsel of Record (Via Electronic Mail)