

September 14, 2018

**VIA E-FILING**
The Honorable Christopher J. Burke
United States District Court
844 North King Street, Unit 28
Wilmington, DE 19801

**FILED UNDER SEAL**

Re:   *Personal Audio, LLC v. Google, Inc.*, C.A. No. 17-cv-1751-VAC-CJB

Dear Judge Burke:

Plaintiff Personal Audio, LLC ("PA") respectfully submits this response to Google, Inc.'s ("Google") September 11, 2018 opening discovery dispute letter (D.I. 225).

### I.   The Court Should Deny Google's Unreasonably Broad Request To Produce "All Documents Regarding The Patents-In-Suit"

Google's RFP 56 seeks all documents regarding the patents-in-suit, including settlement negotiations documents and drafts license agreements. The request for all documents regarding the patents is clearly over broad. Even if a more limited request for settlement negotiations was for arguably relevant documents, relevancy does not in itself warrant production of documents that are unduly burdensome, prejudicial and that "primarily add heat and not light to an already difficult judicial chore." *Sciele Pharma, Inc. v. Lupin, Ltd.*, 1:09-cv-00037, D.I. 611 (D. Del. Jan. 31, 2013) at 10; *accord Collabo Innovations, Inc. v. OmniVision Techs., Inc.*, 16-cv-197, D.I. 216 (D. Del. June 4, 2018) at 4. PA has already produced all of its executed licensed agreements. Thus, PA objected to Google's Request No. 56 on the grounds that it is "unduly burdensome" … and not "proportional to the needs of the case." (D.I. 225 at Ex. B.)

Google broadly claims that it "is entitled to discovery of all of [PA]'s statements and all of [PA]'s documents and correspondence regarding the patents-in-suit." D.I. 225 at 2. That assertion is not supported by any authority from this Court. Indeed, this Court generally has not compelled production of settlement negotiation documents and drafts license agreements, especially where fully-executed settlement agreements were produced as is the case here. *See, e.g.*, *TQ Delta, LLC v. Zyxel Communications, Inc.*, 13-cv-2013, D.I. 470 (D. Del. Jan. 31, 2018) at 6 ("'For the avoidance of doubt, TQ Delta **shall not be compelled to produce the drafts of any** demand letters, claim charts, **licenses, settlement agreements**, or consent agreements.'" (emphasis added)) (quoting *TQ Delta, LLC v. 2Wire, Inc.*, 13-cv-1835, D.I. 376 (D. Del. Sept. 29, 2017) at 7); *see also Sciele Pharma*, D.I. 611 at 10 ("[A]s a general rule license negotiations are less probative and more prejudicial than the license themselves.") (citation omitted); *Intellectual Ventures I, LLC v. Check Point Software Techs. Ltd.*, 10-cv-1067 (D. Del. Aug. 31, 2012), Tr. at 26:15-27:1 ("Trend Micro's request to compel additional communications, really negotiations regarding licenses to the patents in suit, the second issue Trend Micro raises, that request is denied. I'm not persuaded that Trend Micro needs this information for its damages analysis as, of course, they do have the licenses themselves. But in any event, whatever relevance there may be to it, it is in the Court's view outweighed by the burden here particularly given the prior proceedings to which Trend Micro had access relating to what was going to be produced regarding licenses from the plaintiff, so that request is denied.").

Google does not dispute that it already has fully-executed license agreements. *See* D.I. 225 at 2. Thus, Google already has information for its damages analysis. *See Intellectual Ventures I*, Tr. at 26:19-21. Indeed, what it might need for its damages analysis is the royalty rates that are "actually paid," "as opposed to rates that may be paid, rates that could have been paid, or rates that should have been paid." *Zyxel Communications*, D.I. 470 at 6-7 (discussing evidence of settlement negotiations and the second *Georgia Pacific* factor).

Google's conclusory assertion that the settlement negotiation documents or the drafts license agreements may contain PA's "admission regarding all sorts of issues, including infringement and validity" is merely speculative and demonstrates this is a mere fishing expedition. *See* D.I. 225 at 2. Google assertion that the drafts it seeks are not merely cumulative is unsupported and Google makes no showing of (1) the relevance of these settlement negotiation documents or (2) that production is necessary as to outweigh the undue burden placed on PA. *See Intellectual Ventures I*, Tr. at 26:21-27:1.

Google also speculates that the settlement negotiation documents and draft license agreements would clarify PA's license agreements because they "are likely to shed light" on what products have or have not already been licensed under the patents-in-suit. D.I. 225 at 2. But, Google does not explain how the draft agreements and correspondence could shed light on that issue, which the finalized, fully-executed license agreements could not. Relying on *Tyco Healthcare*, Google claims that it is "entitled to show whether and to what extent the rate from a prior license agreement is the result of a compromise or reflects a desired to avoid litigation." *Id.* at 2. However, the exact information it seeks could be derived from the fully-executed license agreements by comparing, *inter alia*, whether a counterparty to the license was sued or not, and, if sued, at what stages of the litigation license agreement was executed, and at what royalty rates.

The documents requested by Google cover a period of years and negotiations with parties, conducted by multiple lawyers from multiple law firms. The communications are contained in email form and are ESI, in some cases in archived servers. At least two of the law firms no longer represent PA. Google has not followed the governing ESI order on this. Each communication would have to be reviewed to determine whether it contains confidential information of third parties, all of which would be irrelevant to this case. It would be extremely burdensome for PA to have to search for and produce all the documents requested. Given that PA has already produced all of its fully-executed license agreements, Google already has all the relevant information it attempts to seek by unduly burdening PA. Thus, the Court should deny Google's motion to compel production of further documents for its RFP 56.

## II.   PA Should Be Allowed To Complete Discovery On Its Damages Model Before Supplementing Its Responses To Interrogatories 6 And 7

Google's second request highlights the need for the discovery requested in PA's letter brief (D.I. 226) to this Court. In Interrogatories 6 and 7, Google has requested "Plaintiff's contentions regarding the total amount of damages sought from Google…and all facts and documents considered in determining the amount of damages sought, including all *Georgia-Pacific* factors …and for each of Plaintiff's alleged theory of damages, including reasonable royalty, identify the computation of damages and identify all documents and factual support for each alleged theory and computation of damages."

In response to these requests, PA objected, *inter alia*, that they were "premature, particularly in light of the fact that Google has not produced documents requested by plaintiff,

and particularly those documents concerning damages and those documents that would inform the total amount of damages sought." PA also objected that "it has requested documents concerning the subject matter of this Interrogatory and documents that may further inform PA's response, but Google has yet to produce them." Here, PA is unable to flesh out its selected Damages Model until Google provides the documents that PA has been demanding since April 13, 2018.



By its requests, Google is asking PA for its analysis of the very documents that Google is simultaneously withholding.

Not one of Google's cited cases support the notion that a defendant can refuse to provide requested damages discovery yet compel a Plaintiff to guess what that discovery might hold. Unlike the instant case, there was no claim that Research in Motion failed to produce damages documents in the first place. *SPH Am., LLC v. Research in Motion, Ltd.*, 13cv2320, 2016 U.S. Dist. LEXIS 195034, at *10 (S.D. Cal. Aug. 16, 2016). Rather, SPH objected to the interrogatory as premature, arguing that an expert opinion is required for the response. *Id.* Here, PA cannot give full answers to these interrogatories, not only because an expert opinion is required, but primarily because Google has yet to produce the very documents PA must "consider[] in determining the amount of damages sought." *See* Interrogatory No. 6. In any event, to the extent that PA intends to rely on experts for the damages calculations, those calculations need not be turned over until the expert report deadline. *See Greenkeepers, Inc. v. Nike, Inc.*, 04-3747, 2009 U.S. Dist. LEXIS 101101, *18-19 (E.D. Pa. Oct. 29, 2009).

*Mobile Storage* is likewise inapposite because there is no claim that the accused infringer withheld damages documents in the first place. *Mobile Storage Tech., Inc. v. Fujitsu Ltd.*, C 09-03342, 2010 U.S. Dist. LEXIS 44578, at *2-3 (N.D. Cal. Mar. 31, 2010). Similarly, Corning Optical was compelled to supplement its response for the damages contentions because the court needed to know "what the case is worth" after the parties "have exchanged reams of data." *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 277-79 (N.D. Cal. 2015). Here, Google's act of withholding these damages documents to the last minute is the very reason preventing PA from fully responding to the interrogatories.

Similarly, *Anesta* does not support Google because, immediately after stating what Google quotes in its letter, the court noted that such information is required because "plaintiffs must have some underlying data that (at a minimum) reflects the fact that their profits have decreased . . . during the period of time related to defendants' infringing conduct." *Anesta AG v. Mylan Pharms.*, 08-cv-889, Memorandum Order, D.I. 311, at *3 (D. Del. Oct. 22, 2013). As a non-practicing entity, PA here does not contend that it lost profits due to Google's infringement

of the patents-in-suit. As noted above, PA has produced all of the fully-executed license agreements that relate to the same patents-in-suit.

Finally, PA objected that these requests "seek[] disclosure of expert testimony before the time specified in the Court's Scheduling Order." Courts looking at this issue have concluded that to the extent that a party intends to rely on experts for their damages calculations, those calculations prepared by experts need not be turned over until the expert reports are required. *E.g.*, *Greenkeepers*, 2009 U.S. Dist. LEXIS 101101, *18-19; *see also Robert Bosch LLC v. Snap-On Inc.*, 12-11503, 2013 U.S. Dist. LEXIS 56093, at *10 (E.D. Mich. Apr. 19, 2013). In *Robert Bosch*, the court agreed with Bosch's argument that "calculating damages based on a reasonable royalty . . . involves a complex, multi-factor analysis that should be addressed in expert discovery instead of fact discovery." *Robert Bosch LLC v. Snap-On Inc.*, 12-11503, 2013 U.S. Dist. LEXIS 56093, at *10 (E.D. Mich. Apr. 19, 2013). Indeed, as the *Robert Bosch* court noted, "[d]isclosing damages amounts and the manner in which those amounts were calculated requires too detailed of an analysis and explanation for an interrogatory response." *Id.* (denying defendants' motion to compel an interrogatory response).

In *Greenkeepers*, defendants sought discovery for Greenkeepers' lost profits theories. 2009 U.S. Dist. LEXIS 101101, *12-20. Greenkeepers responded that it would set forth its damage theory in its expert report and reasserted that discovery was premature because "Greenkeepers neither has received the discovery from Defendants that it needs to form such damage theories." *Id.* at *15. The court agreed with Greenkeepers and denied defendants' motion to compel. While the party should produce documents which reflect infernal computations of damages "that have not then been the subject of expert work [or privileges]..., to the extent that either party intends to rely on experts for their damages calculations, based on the underlying facts, the Court agrees with Greenkeepers that those calculations, as prepared by experts, need not be turned over until the expert reports are required." *Id.* at *19.

Thus, even if Google had fully produced the documents concerning PA's damages contentions (it certainly has not), explaining PA's damages theories and calculations, "including all *Georgia-Pacific* factors," (Rog. No. 6) "requires too detailed of an analysis and explanation for an interrogatory response." *Robert Bosch*, 2013 U.S. Dist. LEXIS 56093 at *10. Regardless, given that Google has not yet produced most of the documents necessary for PA's Damages Model, it does not make sense to compel PA to supplement the interrogatories before it first considers such documents. *See* Rog. No. 6 asking PA to identify "all facts and documents considered in determining the amount of damages sought, including all *Georgia-Pacific* factors."

In sum, Google has failed to produce the documents PA has been requesting since at least April 13, 2018. Without the documents that directly concern Google's damages exposure, PA cannot fully conduct a *Georgia-Pacific* analysis, nor complete its identified Damages Model, nor provide substantive answers to the questions Google propounded. In any event, such highly detailed analysis is more appropriate for a damages expert report. Thus, the Court should deny Google's second request.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (via E-File)