IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERSONAL AUDIO, LLC, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|   v. | )   C.A. No. 17-1751 (CFC) (CJB) |
| | ) |
| GOOGLE LLC, | ) |
| | ) |
|        Defendant. | ) |

**GOOGLE'S OBJECTIONS TO THE MAGISTRATE JUDGE'S JANUARY 16, 2019
REPORT AND RECOMMENDATIONS REGARDING CLAIM CONSTRUCTION**

OF COUNSEL:

Melissa J. Baily
David A. Perlson
Antonio R. Sistos
Jeff Nardinelli
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

February 5, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

Pursuant to Rules 72(a) and 72(b) of the Federal Rules of Civil Procedure and D. Del. LR 72.1, Defendant Google LLC ("Google") respectfully submits its Objections to the Report and Recommendations of Magistrate Judge Burke, issued January 16, 2019 ("Report") (D.I. 331).

**I.    OBJECTION 1 – "sequencing file" ('178 patent claims 1-13)/ "playback session sequencing file" ('178 patent claims 14-21, 28, 29)/ "file of data establishing a sequence" ('076 patent all asserted claims).**

| The Court's (and Plaintiff's Proposed) Construction | Google's Proposed Construction |
|---|---|
| a file of data that identifies the order in which audio program segments chosen by or for a user are to be | a file that is received by the player, stored, and used by the processor to both control playback of each song in the ordered sequence and respond to control commands |

The parties' dispute as to these terms was whether, as Google's construction provided, the same "sequencing file" received by the player must be (i) stored by the player, (ii) used to control playback of each song in the ordered sequence, and (iii) used to respond to control commands. In rejecting Google's proposal, the Report improperly ignores the claims themselves and misinterprets the teachings of the specification. Moreover, the Report disregards the explicit contradictions between PA's statements to the Patent Office—wherein PA urged a narrow construction so as to obtain its patents—and PA's proposal in this proceeding—wherein PA advances a significantly broader construction to maintain its infringement case against Google.

A.    The Plain Language of All Claims Require That the Same "Sequencing File" Received by the Player Also Be Stored and Used by the Player.

As detailed in Google's briefings (D.I. 159 at 4-5, 186 at 1-2), the claims recite a "sequencing file" the first time the term appears in the claims, and thereafter recite "*said* [] sequencing file" that is downloaded ('178 patent at 45:61-64, 48:11-13), stored (*id*. at 45:65-67, 48:8-10), and used to control playback with and without user commands (*id.* at 46:9-18, 48:28-32, 48:43-49, 48:58-67). Thus, as a matter of law (and common English), these sequencing files must all be the same sequencing file. *Warsaw Orthopedic, Inc. v. Nuvasive, Inc.*, 824 F.3d 1344, 1349 (Fed. Cir. 2016) ("said signal" referred back to particular signal previously mentioned and

did not apply to all possible signals). The Report does not address *Warsaw* or the commonsense reading of the claims in Google's construction.[1]

Instead, the Report points to language in the claims reciting an "ordered sequence"—a term *other* than "sequencing file" and "said sequencing file"—to find that the "said sequencing file" does not need to be the same as the antecedent "sequencing file." (Report at 21-22.) The Report thus concludes that only the same "sequence" found in the "sequencing file" need be used. (*Id.*; *see also id*. at 34.) This approach is wrong because it focuses on a *different* term not in dispute rather than the plain language of the terms actually at issue.

Further, the Report ignores the import of the limitations that refer to "storing" the same "sequencing file" recited in the downloading/receiving limitations—none of which suggest that a "sequence" be stored separately from the "sequencing file." As Google noted in its briefing (D.I.159 at 4-5; D.I. 186 at 1), all independent claims explicitly require that the downloaded or received "file" itself be "stored": "*receiving and storing **a file*** of data establishing a sequence" ('076 patent at 46:18-19, 47:44 to 48:1); "downloading [] a separate sequencing file from one or more server computers" and "persistently *storing* [] *said separate **sequencing file***" ('178 patent at 45:61-67); "at least one separately stored playback session sequencing file" and "*downloading [] said playback session **sequencing file*** from said one or more server computers." (*Id*. at 48:8-13.) The Report does not point to any basis or reason how or why the claims could be interpreted to suggest that a sequence contained within the file be separately stored from the "sequencing file" itself. Rather, it simply assumes that whether the same "sequencing file" must be stored rises and falls with its inapplicable (and inaccurate) interpretation of the separate "used to control playback" and "used to respond to control commands" limitations.

While the Report does discuss the "use" of the "sequencing file" recited in the claims, its conclusion that the same "sequencing file" need not be "used" is also incorrect. The Report correctly notes that the claims recite "an ordered sequence" contained within the "sequencing

---

[1] As discussed below, the '076 claims are drafted in means-plus-function format and further constrained to structures recited in the specification.

file," and later use "said ordered sequence" to refer back to that same sequence. ('178 patent at 46:1-3, 46:11; *id*. at 48:8-10, 48:30, 48:40-41, 48:48, 48:66; *see also* Report at 21.) However, the claims also require that "said ordered sequence [be] *specified by said sequencing file*." ('178 patent at 46:11-12, 48:30-31, 48:48-49, 48:66-67.) That is, the plain language of the claims requires **both** that the original sequence be used **and** that said sequence be specified by the same sequencing *file*. Yet, the Report interprets "said ordered sequence specified by said sequencing *file*" to simply mean "said ordered sequence." (Report at 21-22.) This is legal error. *In re Power Integrations, Inc.*, 884 F.3d 1370, 1376 (Fed. Cir. 2018) (rejecting a "claim construction [] that [] renders claim language meaningless").

    B. <u>The Report Erroneously Equates the "Schedule File" in the Specification with the Required "Sequencing File" in the Claims.</u>

The Report also adopts PA's argument that the specification teaches downloading one "sequencing file" yet using a different, separate "sequencing file." (Report at 22-27.) As a threshold matter, since the claims are clear that each recited "sequencing file" being download, stored, and used refers to the same "sequencing file," the specification cannot be used to rewrite the claims. *Lucent Techs., Inc. v. Gateway, Inc.,* 525 F.3d 1200, 1215–16 (Fed. Cir. 2008).

In any event, the specification does not support rewriting the unambiguous claim language in the manner adopted by the Report. First, the Report errs in finding that the "schedule file" in 307 of Fig. 4 depicts a "sequencing file" that is downloaded to the player. (Report at 23-28.) To the contrary, the specification actually calls the separately illustrated and described "selections file" in 351 of Fig. 5 the "sequencing file." ('178 patent at 12:9-16.) The specification also describes "sequencing file" 351 as being compiled *from* "schedule file" 307. (*Id.*) The specification additionally recites that, unlike the "schedule file" 307, the "sequencing file" 351 contains "more

> As described in more detail later in connection with FIGS. 4 and 5, the sequence of program segments to be presented to the user is formed into a schedule file (seen at 307 in FIG. 4) consisting of a sequence of program segment identification numbers which are used to compile a sequencing file, called the selections file, illustrated at 351 in FIG. 5, which contains more detailed information about the sequence of events which occur during playback.

detailed information about the sequence of events which occur during playback." (*Id.*)  It then exclusively uses "sequencing file" 351 to describe files actually used during playback.  ('178 patent at 4:27-32, 6:22-28, 12:9-16; *see also id*. at 8:48-65, 14:25-39, 15:7-13.)  In contrast, the specification ***never*** refers to the "schedule file" 307 as a "sequencing file."

Especially in the context of this clear disclosure in the specification, nothing in the Report supports its conclusion that the "schedule file" 307 is the sequencing file in the claims.  (Report at 23-27.)  For example, the Report states that that item 307 is a "file." (*Id.* at 23.)  But that does not address whether it is the "*sequencing* file" recited in the claims.  The Report similarly points to portions of the specification that it concludes show that the "schedule file" is downloaded.  (Report at 24-25.)  Even if somehow true—and it is not (D.I. 159 at 5-6, D.I. 186 at 2-3)—that is immaterial as to the claims' requirement that "*sequencing* files" be downloaded.  And while the Report notes that the specification does not expressly state where the compilation of the sequencing file controlling playback occurs (Report at 25-27), the ***claims*** require that a "sequencing file" be downloaded to the player.  Since it is the compilation that generates the sequencing file ('178 patent at 12:9-16), compilation necessarily occurs prior to downloading the sequencing file, *i.e.* on the server.  (D.I. 159 at 5.)  The Report's observation that the sequencing file follows a sequence created by the host server and downloaded with the program segments (Report at 25-27) does not show otherwise.  The schedule file 307 and downloaded sequencing file 351 share the same order of program segments, so the content of those segments does not inform the order of their creation.

        C.    <u>The Report Improperly Disregards the Prosecution History by Applying the Incorrect Legal Standard.</u>

Initially, the Report applied the incorrect standard in analyzing the applicants' statements as to the meaning of the "sequencing file."  The Report found that "for a statement to constitute prosecution history disclaimer, it must amount to a *clear and unmistakable* disclaimer." (Report at 32 (emphasis in original).)  But as Google noted, and as the Report quotes, the prosecution history itself asserts "sequencing file" was not a "term of art" in 1996.  (D.I. 160-1 at 194

(*quoted at* Report 28).) Thus, there was no plain meaning of the term to one skilled in the art to "disclaim." And as noted below, the claims are consistent with the prosecution history statements, while the specification only uses "sequencing file" to refer to files actually used to control playback, not schedule file 307. There is thus no disclosure in the intrinsic evidence that would encompass schedule file 307 absent a disclaimer. The Report committed legal error by disregarding the prosecution history for failing to meet an inapplicable legal standard. *Vehicle IP, LLC v. Cellco P'ship,* No. 2017-2511, 2019 WL 277442, at *4 (Fed. Cir. Jan. 22, 2019).

Regardless of whether the prosecution history statements must constitute a "disclaimer" to be relevant, the Report improperly discounted their import by ignoring what they actually say. The prosecution history does not merely describe the attributes of the "sequencing files" only according to other limitations recited in independent claims 1 and 14 of the '178 patent. (Report at 30.) It explicitly *defines* sequencing file "in light of the specification and file history":

> In light of the specification and file history excerpts quoted above, the claim term "sequencing file" (which appears in all '178 patent claims and was not a term of art in 1996) is readily understandable to one of skill in the art as a file that is received by the player, stored, and used by the processor to both control playback of each song in the ordered sequence and respond to control commands. [12:16-19; 12:27-28; 34:17-19].

(D.I. 160-1 at 194.) This explicit statement is in no way qualified to be limited to one claim or another.[2] Nor does the fact that "the use attributes identified in Google's proposed construction" are, as the Report acknowledges, "expressly found in surrounding limitations," make this explicit definition wrong or irrelevant.[3] (Report at 19-20.) Because PA asserts that different sequencing

---

[2] The Report's discussion of what PA may have "intended" to mean by its statements is irrelevant. (Report at 30-31.) *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1375 (Fed. Cir. 2005) ("[Patent holder] inappropriately emphasizes Applicant's subjective intent. Courts must view the prosecution history not for applicant's subjective intent, but as an official record that is created in the knowledge that its audience is not only the patent examining officials and the applicant, but the interested public.") (internal quotations omitted).

[3] *Compare Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir. 2004) (cited at Report 31), finding that the statements in the prosecution history did not apply to the claim-at-issue. *Id* at 1332: "The statements in the prosecution history relied on by Wal–Mart, while arguably subject to the interpretation Wal–Mart gives them, can also be reasonably understood as

files can infringe the claims notwithstanding their "expressly found [] surrounding limitations" (Report at 19-20), adopting Google's construction is necessary to resolve the dispute between the parties while remaining consistent with the intrinsic evidence. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1360 (Fed. Cir. 2008).[4]

The Report also condemns Google's proffered construction during the IPR proceeding for being broader than Google's proposed construction in this proceeding. (Report at 31-33.) But as the Report acknowledges, the PTAB employed the "broadest reasonable interpretation" claim construction standard, rather than the narrower *Phillips* standard used in this proceeding. (*Id*. at 32.) Accordingly, a party may justifiably offer a broader construction to the PTAB than it offers to the district court. *In re CSB-Sys. Int'l, Inc.,* 832 F.3d 1335, 1341 (Fed. Cir. 2016) ("The broadest reasonable interpretation of a claim term may be the same as ***or broader than*** the construction of a term under the *Phillips* standard.") (emphasis added; citation omitted). This finding is further improper in that it holds Google, as petitioner before the PTAB, to its prior statements made under a different standard that has no special significance in claim construction,[5] while exempting the patent holder from its statements in the prosecution history that ***are*** explicitly relevant as a matter of law.[6]

---

applying only to those claims (such as issued claim 5) that explicitly recite that rotation must be 'through greater than 360°.' ***Claim 11 is not one of those claims***." (emphasis added)

[4] As to the '076 claims, statements made during the prosecution of a later patent in a patent family limit the scope of similar terms in patents of the same family that issued prior to the statements. *Microsoft Corp. v. Multi-Tech Systems, Inc*., 357 F. 3d 1340, 1350 (Fed. Cir. 2004) (holding that "Multi-Tech's statements made during the prosecution of the '627 patent with regard to the scope of its inventions as disclosed in the common specification are relevant not only to the '627 and '532 patents, but also to the earlier issued '649 patent")

[5] The Report implicitly acknowledges that Google's PTAB arguments are ordinarily of little import by analyzing them via the "clear and unmistakable" disclaimer standard, rather than the "broadest reasonable interpretation" standard that ordinarily governs. (Report 32-33.) Since the disclaimer standard is inapplicable (*see supra*), the Report's justification misses the mark.

[6] Google noted that PA's construction of "sequencing file" would render the term indefinite. (Sur-Reply at 2 n.2; Tr. At 83.) The Report disregards this argument as "not yet ripe for resolution." (Report 34 n.21.) But since "claims should be construed to preserve their validity," Google's argument should have been addressed at claim construction. *Phillips*, 415 F.3d 1327.

## II.     OBJECTION 2 – ["means responsive" terms]

### A.     The Report's Supposition of a Second, Duplicate Sequencing File Is Not Supported by the Intrinsic Evidence.

The Report finds that the structure for the "skip command" need not involve scanning forward "in the received sequence file," as Google had proposed, and instead adopts PA's position that said scanning can be done in a "sequence established by the sequence file." (Report at 40-44.)  As with the "sequencing file" terms discussed above, the Report repeats its error in concluding that the *schedule file* depicted in Item 307 of Fig. 4 is somehow a *sequencing file*.[7]

The Report's further observation that the language of claim 1 of the '076 patent "never requires only scanning or using the 'received sequencing file' and instead simply refers to using the 'sequence' from that file" (Report at 41) is irrelevant as a matter of law.  As a means-plus-function term, the scope of claim 1 is limited to structures described in the specification and their equivalents.  (35 U.S.C. § 112/6.)  The relevant inquiry is therefore what structures are in the specification for the claimed function.  As the Report acknowledges (Report at 25), the specification never describes compiling the sequence file on the player.  Nor does the specification ever describe the player copying the sequence of program segments from one sequencing file to another sequencing file, to which it then refers during playback.  Yet the Report relies on both of these theoretical possibilities to reject Google's proposed construction.  (Report at 40-43.)  Construing a means-plus-function limitation to capture hypothetical, undisclosed embodiments that might or might not perform the recited function, as opposed to structures actually disclosed in the specification, is legal error.

The Report also incorrectly disregards the applicants' repeated and explicit representations to the USPTO that the downloaded sequencing "file" itself is used, and instead

---

[7]    While the specification does state that "the recommended Schedule Table 307 [] is transferred to the subscriber" ('178 patent at 18:24-34), this can be readily interpreted as the sequence *within* the schedule file being transferred in the form of the compiled sequencing file.  ('178 patent 12:9-16; *see also* Report 42-43, finding that intrinsic evidence describing using a sequencing file may refer to using the data within the file, rather than the file itself.)  Alternately, the schedule file may be redundantly transmitted to the player along with the sequencing file.

adopts PA's theory that the prosecution history only requires using data copied from the sequencing file. (Report at 42-43.) This is simply factually incorrect: in attempting to evade prior art, PA explicitly argued that the claims do *not* encompass copied sequences:

> The DAD Manual describes the IMPORT function as taking data from a file located on the server, and transferring that data across the network to the memory of another computer for conversion into a new DAD playlist database file…. The DAD Manual thus makes it clear that the "source file" is only a starting point and that "conversion" utilities must convert data from the source file into a new file. ***That newly created file is no longer "said sequencing file" as claimed.***

(D.I. 160-1 at 201.) Throughout the prosecution and re-examinations of its patents, PA repeatedly described the purported invention as using the *same* file it received and stored:

- D.I. 160-1 at 182: "[T]he '*file of data*' [] *is received and stored and [] establishes a sequence* in which the separately claimed program segments are scheduled to be reproduced."

- *Id*: "Neither Fisch et al nor the Okada patent anywhere disclose or suggest *the use of such a received and stored file of data for scheduling the playback* of the separately stored program segments."

- *Id*. at 191: "The claimed *sequencing file* is *received by the player and used by the processor* to both control playback of each song in the ordered sequence and respond to control commands."

- *Id*. at 193: "The quoted passages make clear that *the 'downloaded sequencing file' is what 'allows the listener to jump.'* The file history makes it unmistakable that the sequencing file is *used to respond to control commands* like jump, skip, and skip backwards."

- *Id*. at 199 (underlining in original): "A careful review of the technical teachings of the DAD Manual demonstrate that *the DAD Manual does not disclose that the <u>same</u> "play list" the Examiner equates with the claimed "sequencing file" is downloaded, persistently stored and used to playback* similarly downloaded and persistently stored audio files in the way claim 1 requires."

These statements are unequivocal: the claimed invention uses the sequence within the sequencing file by using the "file" itself, not merely data copied therefrom.

The Report, however, addresses only a single prosecution excerpt that states: "The '178 specification describes . . . *how* the exemplary preferred embodiment . . . *uses* the sequence file's *ordered sequence* of program segment identifiers to sequence events which occur during playback . . . [and] how the audio player *uses* the downloaded sequencing file *format* and

associated player process to permit the listener to skip forward, backward, etc." (Report at 42-43 (quoting D.I. 177 Ex. 3 at 6) (emphasis in Report).) But even this excerpt does not support the § 112 structure adopted by the Report in which "a processor can use the received sequencing file . . . to obtain the sequence used for control and playback *but not continue to reference only that file*." (Report at 42 (emphasis added).) Nor does the portion of the specification ("34:14 et seq.") cited in the excerpt. Rather, the cited portion of the specification merely provides that the player refers to the data within the selections file, which the specification explicitly says is a "sequencing file" ('178 patent, 12:13-14), to control playback.

Moreover, the only intrinsic evidence the Report cites while considering the file history actually supports Google's construction. (Report at 43 n.24 (quoting '178 patent, 12:27-33).) Here, the specification states that the sequencing file 351 is "downloaded with the program segments themselves, and then (optionally) modified by the addition, deletion, and re-sequencing of segment identifiers." (*Id.*) If the downloaded sequence file were copied over to another sequence file that actually controlled playback, as the Report finds, then there would be no reason to optionally modify the original downloaded file. Rather, those modifications would be made to the hypothetical second sequence file, as it supposedly controls playback.[8]

Finally, the Report again relies on the supposed disconnect between Google's IPR and district court arguments. (Report at 43-44.) But while Google's different arguments are consistent with the different standards of claim construction in each proceeding, as explained above, PA's different arguments are not. The Report thus fails to hold PA to its unquestionably relevant prosecution statements by relying on Google's far less relevant statements.

B. The Report Improperly Rejects The Only Possible Structure In the Specification for Distinguishing the "Single Skip Back" and "Double Skip Back" Commands.

Claim 2 recites a "means responsive to a single one of said second commands" (single skip back) so as to restart the *current* program. Claim 3 recites another "means responsive to the

---

[8] *See also* '076 Claim 1: "means for receiving and storing *a file of data establishing a sequence* in which said program segments are scheduled to be reproduced by said player," claim 5: "means for *modifying said data establishing said sequence.*"

- 9 -

detection of two consecutive ones of said second commands" (double skip back) so as to restart the *previous* program. The parties dispute what algorithmic structure, if any, the specification discloses for distinguishing two "single skip backs" from one "double skip back."[9]

As Google observed, the specification only describes one structure that could perform that function: "The system responds to BACK commands by resetting the playback point to the desired point in the sequence and *recording the start time*, volume setting and new program segment ID *in the log file* as indicated at 267."[10] ('178 patent at 15:59-63; *see also* Report at 50.) A person of skill would accordingly compare the current time with the recorded start time to assess whether a second "back" command was sufficiently close to the prior one to be considered a "double skip back" as opposed to two "single skip backs."

The Report dismisses this disclosure by noting that "resetting the playback point to the desired point" (*i.e.*, implementing the command) and "recording the start time" are two separate actions, implying that the latter is not necessary for the former. (Report at 51.) It is true that *implementing* the command—whether single skip back or double skip back—may not rely on a recorded log time. However, determining *which* "skip back" command should be implemented requires some means of measuring time so as to distinguish a "double skip back" from two "single skip backs." It is for that purpose (among others) that the specification records the start time: to determine whether the *next* press of the "back" button calls for restarting the current song ("single back") or restarting the previous song ("double back"). In failing to consider how the algorithm interprets the subsequent press, the Report committed clear error.[11]

---

[9] In other words, how "consecutive" need the "second commands" (backs) be to trigger claim 3 rather than claim 2? If the algorithm finds that the two "backs" are sufficiently close in time, it will play the prior song in the sequence. If not, it will restart the current song, twice.

[10] The Report correctly notes that the specification does not recite any other "structure for measuring whether the segment is within the predetermined amount of time when a back command is received." (Report 52.)

[11] To the extent the Court adopts the Report's conclusion as to this term, Google reserves the right to move for summary judgment of indefiniteness. (Report 52.)

|  |  |
|---|---|
| OF COUNSEL:<br><br>Melissa J. Baily<br>David A. Perlson<br>Antonio R. Sistos<br>Jeff Nardinelli<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600<br><br>February 5, 2019 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Brian P. Egan*<br>_____<br>Jack B. Blumenfeld (#1014)<br>Brian P. Egan (#6227)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>began@mnat.com<br><br>*Attorneys for Defendant* |

- 11 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 5, 2019, upon the following at the email addresses indicated below:

| | |
|---|---|
| Brian E. Farnan, Esquire, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Victor G. Hardy, Esquire<br>William Parrish, Esquire<br>Minghui Yang, Esquire<br>Henning Schmidt, Esquire<br>Floyd Walker, Esquire<br>HARDY, PARISH, YANG, LLP<br>Spicewood Business Center<br>4412 Spicewood Springs Road, Suite 202<br>Austin, TX 78759<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Douglas Q. Hahn, Esquire<br>Salil Bali, Esquire<br>Steven M. Hanle, Esquire<br>STRADLING YOCCA CARLSON & RAUTH, P.C.<br>660 Newport Center Drive, Suite 1600<br>Newport Beach, CA 92660<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ *Brian P. Egan*
_____
Brian P. Egan (#6227)