# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 17-1751-CFC-CJB |
| GOOGLE LLC, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

At Wilmington, Delaware this 19th day of March, 2019.

**WHEREAS**, Plaintiff Personal Audio, LLC ("Plaintiff" or "PA") has moved to strike certain information disclosed in Defendant Google LLC's ("Defendant" or "Google") Supplemental Mandatory Disclosures pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, (D.I. 355; D.I. 356 at 1), and the Court[1] has considered the parties' letter briefs, (D.I. 356, 360, 362), and heard argument during a teleconference on March 11, 2019, (D.I. 373 (hereinafter, "Tr."));

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1. Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26[](e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In considering whether to exclude evidence relating to an untimely or otherwise improper disclosure, the United States Court of Appeals for the Third

---

[1] This case has been referred to the Court to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. (Docket Items, December 13, 2017 and September 10, 2018)

Circuit has directed district courts to weigh certain factors, known as "the *Pennypack* factors": (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply; and (5) the importance of the testimony sought to be excluded. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). Because "[t]he exclusion of critical evidence is an extreme sanction," the Third Circuit has explained that it should be reserved for circumstances amounting to "willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citations omitted).

2. On April 27, 2017, Google served its Mandatory Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1), and on December 14, 2018, Google served Supplemental Mandatory Disclosures ("Supplemental Disclosures"). (D.I. 356 at 1 & ex. 1) In its Supplemental Disclosures, Google identified additional "[n]ame[s] . . . of [p]ersons [h]aving [k]nowledge of [f]acts [r]elevant to the [c]laim or [d]efense of [a]ny [p]arty[.]" (*Id.*, ex. 1 at 2) By its Motion, PA seeks to strike these newly-identified witnesses, (D.I. 356 at 1), who fall into three categories: (1) nine individually-named witnesses with alleged knowledge relevant to "prior art"; (2) Samsung Electronics Co., Ltd. ("Samsung") and LG Electronics Inc. ("LG"), which have alleged knowledge relevant to use of Samsung/LG components in the accused devices; and (3) "all manufacturers and sellers of accused devices other than the Pixel C[,]" (*id.*, ex. 1). PA argues that Google's Supplemental Disclosures were served on the last day of fact discovery, and therefore the new witnesses must be excluded because there is "no justification"

2

for Google's delay and the late disclosure is "severely prejudicial to PA" as it has "deprived [PA] of its ability to conduct any discovery whatsoever regarding any relevant information these witnesses may possess." (D.I. 356 at 2-3)

3. As an initial matter, the Court considers the timeliness of Google's Supplemental Disclosures. It finds those disclosures were untimely. Indeed, even Google acknowledged during the teleconference that it could have (and probably should have) formally supplemented the information at issue (particularly the first and second categories of information) earlier than it did. (Tr. at 21-22, 26-27, 32)[2] To be sure, Google has an explanation for its lack of urgency. It notes that the December 14, 2018 fact discovery deadline set out in the amended Scheduling Order, (*see* D.I. 280), has been extended as to various types of discovery, (D.I. 360 at 2-3; Tr. at 19-21, 41 (PA's counsel acknowledging that "significant discovery has taken place" after December 14, 2018); *see also* D.I. 303; D.I. 325), and so it did not see the harm in supplementing its witness disclosures when it did, (Tr. at 26-27). The Court will take into account "the state of discovery at the time of the supplementation[,]" (*id.* at 21), in its consideration of the *Pennypack* factors below.[3] But that does not mean that the disclosures were timely.

---

[2] With respect to the third category of witnesses, the manufacturers and sellers of the accused devices, Google pointed out that it served its Supplemental Disclosures a week before PA served its final infringement contentions, and that "PA's argument that Google should have 'disclosed' the manufacturers and sellers of accused devices before PA even served its final contentions identifying those devices is nonsensical." (D.I. 360 at 2 n.2; *see also* Tr. at 32) In the Court's view, Google surely could have earlier referenced this blanket category of manufacturers and sellers. But the Court also believes that Google has a valid point when it asserts that it seems unfair for PA "to say to [Google] which one do you think you want to call at trial when [PA] didn't even give us a final list until after [we] supplement[ed] our disclosures." (Tr. at 32)

[3] The Court is also mindful of the fact that PA filed its motion to strike *two months* after Google served the Supplemental Disclosures at the heart of PA's motion. (D.I. 355) If

3

4. In examining the *Pennypack* factors, the Court will first consider the category of individually-named witnesses with alleged knowledge relevant to "prior art." As to the first *Pennypack* factor, it seems that the disclosure of these witnesses could have clearly surprised PA. PA asserts that, prior to its receipt of the supplemental disclosures, the only "notice" it had as to the existence of these witnesses was the fact that their names were "buried in many thousands of pages of invalidity contentions including hundreds of authors and inventors"—contentions that "cover 51 patents, 7 foreign patent documents, 64 publications, and 26 prior art software systems and related documentation." (D.I. 356 at 2-3) Google retorts that PA could not have been surprised by the disclosure of these witnesses since these prior artists are associated with: (1) references that the United States Court of Appeals for the Federal Circuit relied on in its August 1, 2018 opinion affirming the invalidity of several claims of the patents-in-suit; and (2) systems that have been "the subject of extensive document discovery." (D.I. 360 at 2) But as for the artists falling into the first group, PA persuasively responds that it would still have been surprised to see the witnesses on Google's new list, since "[at least in PA's view,] based on IPR estoppel the[ witnesses] would not be able to testify at trial." (Tr. at 6)[4] And as for the artists falling into the second group, with 26 prior art software systems at issue in Google's contentions, and without more detailed information regarding how many of those systems have actually been the subject of "extensive" discovery, the Court agrees with PA that it is not fair to have expected PA to guess which of those systems Google deems most relevant to its defenses. (D.I. 356 at 3)

---

these disclosures were "highly prejudicial" to PA, why would it not have moved to strike them sooner?

[4] The Court comes to no conclusion here regarding the ultimate merit of PA's position about IPR estoppel.

4

5. However, a greater number of *Pennypack* factors redound in Google's favor with regard to this first category of witnesses. As for the second *Pennypack* factor, for example, the Court agrees that any prejudice to PA could be cured here. "Google has repeatedly made clear to PA that it would stipulate to an extension of [the discovery] deadline for the additional purpose of allowing PA to conduct discovery of the third parties that Google included in its supplemental disclosure." (D.I. 360 at 3) And with regard to the third factor, there would be little impact on the orderly and efficient trial of this case, because there is no trial date set, and the deadlines for expert discovery and dispositive motions have been vacated pending additional rulings regarding claim construction. (*Id.*; D.I. 325) As for the fourth *Pennypack* factor, Google itself has acknowledged that it could have and should have served its Supplemental Disclosures earlier. Yet there is not the record to conclude that this was the result of a willful intent to sandbag PA (as opposed to a mere oversight), especially given the state of discovery at the time that Google did serve the Supplemental Disclosures. (*See* Tr. at 34-35) With regard to the final *Pennypack* factor, Google has stressed (and it seems correct to the Court) that the witnesses relating to system prior art are "extremely critical to Google's [invalidity] case." (*Id.* at 24; *see also id.* at 36) With most of the *Pennypack* factors militating against the "extreme sanction" called for by PA's motion, the Court ORDERS that PA's Motion is DENIED as to this first category of witnesses.

6. Next, the Court considers Google's identification of Samsung and LG in the Supplemental Disclosures. All of the *Pennypack* factors favor Google's position with respect to this category of witnesses. With respect to the first *Pennypack* factor, the Court agrees with Google that PA could not have been very surprised by this disclosure. (D.I. 360 at 2) As Google explained during the teleconference, the parties have had multiple discovery disputes relating to

licensing issues, and "Samsung and LG have formed the heart of the [parties' licensing-related] dispute for a long time." (Tr. at 32; *see also* D.I. 360 at 2) For example, in a September 28, 2018 letter relating to a discovery dispute, Google noted that "[t]he resolution of the parties' dispute with respect to the disputed licenses—*especially the Samsung and LG licenses*—may significantly impact the calculation of any purported damages." (D.I. 254 at 2 (emphasis added)) On January 3, 2019, Google filed a discovery dispute letter seeking, *inter alia*, ESI relating to the disputed Samsung and LG licenses, (D.I. 319 at 1-2), and the parties had been meeting and conferring regarding the issue for some time prior to this submission, (*see* D.I. 305). During the January 28, 2019 teleconference regarding that dispute, Google's counsel noted that Samsung was "one of the key agreements that we *repeatedly identified*" and that LG "is another key agreement." (D.I. 353 at 74 (emphasis added)) As for the second, third and fourth *Pennypack* factors, the same analysis applies to this category of witnesses as discussed above in connection with the prior art-related witnesses. And with respect to the final *Pennypack* factor, in light of the above, "Samsung and LG are [clearly] key to the case." (Tr. at 31) With all of the *Pennypack* factors militating against the "extreme sanction" called for by PA's motion in regard to Samsung and LG, the Court ORDERS that PA's Motion is DENIED as to this second category of witnesses.

7. Finally, the Court considers Google's identification of "all manufacturers and sellers of accused devices other than the Pixel C" in the Supplemental Disclosures. All of the *Pennypack* factors again favor Google's position with respect to this category of witnesses. With respect to the first *Pennypack* factor, the Court agrees with Google that PA could not have been too surprised by this disclosure, since these are witnesses associated with the third-party devices that PA has accused of direct infringement in this case. (D.I. 360 at 2; Tr. at 32) As for the

second, third and fourth *Pennypack* factors, the same analysis applies to this category of witnesses as discussed above in connection with the other witnesses. And with respect to the final *Pennypack* factor, the direct infringers are clearly important to the case. (Tr. at 32) With all of the *Pennypack* factors militating against the "extreme sanction" called for by PA's motion in regard to the manufacturers and sellers of the third-party devices, the Court ORDERS that PA's Motion is DENIED as to this third category of witnesses.

8. Therefore, for the reasons set out above, the Court hereby ORDERS that PA's Motion is DENIED. The witnesses at issue in PA's Motion will not be stricken from Google's Supplemental Disclosures. However, PA may take discovery with respect to these additional witnesses, and the Court expects that the parties will work cooperatively to complete this discovery as expeditiously as possible.

9. Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the document. Any such redacted version shall be submitted by no later than **March 22, 2019** for review by the Court, along with a motion for redaction that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE