IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1751 (CFC) (CJB) |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**GOOGLE'S STATEMENT OF OBJECTIONS TO THE MAGISTRATE JUDGE'S**
**<u>06/07/19 MARKMAN REPORT AND RECOMMENDATIONS</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Melissa J. Baily
David A. Perlson
Antonio R. Sistos
Jeff Nardinelli
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

July 2, 2019

Pursuant to Rules 72(a) and 72(b) of the Federal Rules of Civil Procedure and D. Del. LR 72.1, Defendant Google LLC ("Google") respectfully submits its Objections to the Report and Recommendations of Magistrate Judge Burke, issued June 7, 2019 ("Report") (D.I. 406).

## I. OBJECTION 1 – "means for translating said voice signals…" ('076 patent claim 13).

| The Court's (and Plaintiff's Proposed) Construction | Google's Proposed Construction |
|---|---|
| Function: "translating said voice signals into said control commands"<br>Structure: "a microphone and voice recognition software (i.e., a voice command system)." | Function: "translating said voice signals into said control commands"<br>Structure: Indefinite |

In rejecting Google's proposal, the Report states the legal question at hand to be whether the "voice command system" was "well known in the art at [the time] to perform the function." (Report at 20.) That is neither the relevant dispute nor the proper legal framework by which to resolve the parties' dispute. Rather, the question before the Court is whether the specification discloses an ***algorithm*** sufficient to perform the undisputed function of "translating said voice signals into said control commands." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) ("A computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm."); *see also* D.I. 159 (Google Resp.) at 29-30 ("The specification does not disclose any algorithm that constitutes a structure corresponding to the function of 'translating said voice signals into said voice control commands,' as required for a computer-implemented means-plus-function term"); D.I. 186 (Google Sur-Reply) at 14-15. If there is no such ***algorithm*** recited in the specification, then the term is indefinite. *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337–38 (Fed. Cir. 2008). It is not enough for the patentee to later argue that skilled artisans would know what

structures existed in the art to accomplished the claimed function. *Id.* By directing its attention to the wrong inquiry, the Report errs as a matter of law.

The Federal Circuit has consistently held that "[t]he point of the requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming." *Aristocrat*, 521 F.3d at 1333; *see also Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383 (Fed. Cir. 2009). Since "general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim" as required under § 112(6). *Aristocrat*, 521 F.3d at 1333; *see also WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999). Accordingly, § 112(6) claims "in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *Aristocrat*, 521 F.3d at 1333.

Here, the structure identified by PA and adopted by the Report, "voice recognition software," does not disclose an algorithm,[1] as "[s]imply reciting 'software' without providing some detail about the means to accomplish the function is not enough" to meet the requirements of § 112(6). *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340–41 (Fed. Cir. 2008); *see also Ergo Licensing, LLC v. CareFusion 303, Inc.* 673 F.3d 1361, 1364 (Fed. Cir. 2012) (reciting "control device" in the specification provides no more structure than the term "control means" in the claims). Rather, such a recitation "simply references a computer that is programmed so that it performs the function in

[1] While PA includes a "microphone" as part of its recited structure for "translating said voice signals into said control commands," neither the Report nor PA itself asserts that a microphone is capable of performing the "translating" function. (Report 19-25; D.I. 146 (PA Opening) at 30; D.I. 176 (PA Reply) at 14-15.)

question," in this case "translating said voice signals into said control commands." *Aristocrat*, 521 F.3d at 1334; *see also Blackboard*, 574 F.3d at 1383 ("The ACM is essentially a black box that performs a recited function. But how it does so is left undisclosed."). Critically, PA makes no effort to limit "voice recognition software" to commercial algorithms supposedly available in 1996, let alone to identify the ***specific*** algorithms to which the "means for translating" element is purportedly limited—because no such algorithms, commercial or otherwise, are disclosed in the specification. (D.I. 146 (PA Opening) at 30; D.I. 176 (PA Reply) at 14-15.) Rather, PA's argument seems to be that ***any*** computer that executes "software" to perform "voice recognition"—that is, that performs the function of "translating said voice signals into said control commands"—would meet the structural limitation. The Federal Circuit has flatly rejected such efforts to "read[] on any means for performing the recited function." *WMS Gaming*, 184 F.3d at 1348; *see also Aristocrat*, 521 F.3d at 1336 ("Aristocrat's counsel contended that, in light of the breadth of the disclosure in the specification, any microprocessor, regardless of how it was programmed, would infringe claim 1 if it performed the claimed functions …. This court's cases flatly reject that position.").

The lack of a ***specific*** algorithm encompassed by "voice recognition software" renders the cases cited in the Report inapposite. (Report at 20-21.) In *Med. Instrumentation & Diagnostics* Corp. *v. Elekta AB*, the Federal Circuit ***agreed*** that a box reciting "Image Format Conversion" merely referenced a step in the claimed method and thus rejected it as providing the required structure. 344 F.3d 1205, 1213-14 (Fed. Cir. 2003). In *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, the specification recited ***specific*** software for performing the required functions—the "GL software library and the Fakespace, Inc. VLIB Virtual Reality software package"— and Judge Burke limited the corresponding structure to that software alone. 2017 WL

2615739 at *10-11 (D. Del. June 16, 2017).[2] Similarly, the patent in *Thought, Inc. v. Oracle Corp.* recited ***specific*** software for performing the agreed-upon function of "persisting an indicated object or sets of objects": the "Java Data Base Connectivity application programming interface" and the "CocoBase" product including "CocoNavigator API." 2014 WL 5408179, at *20 (N.D. Cal. Oct. 22, 2014). Accordingly, none of these cases support PA's argument that ***any*** "software" that performs "voice recognition" can provide the required structure, regardless of the algorithm employed within that software.

The Report next discusses the opinion of PA's expert that a person of skill in the art would understand the scope of the term "voice command system." (Report at 21-23.) As an initial matter, the "consideration of the understanding of one skilled in the art in no way relieves the patentee of adequately disclosing sufficient structure in the specification." *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1380 (Fed. Cir. 1999); *see also Aristocrat*, 521 F.3d at 1337 ("It is not enough for the patentee simply to state or later argue that persons of ordinary skill in the art would know what structures to use to accomplish the claimed function."). Moreover, the systems identified by PA's expert and cited by the Report would be unable to translate voice commands for the claimed audio player without additional software to understand the specific commands required by that player. (D.I. 159 (Google Resp.) at 30; D.I. 162 (Mayer-Patel Decl.) at ¶ 37.) Notably, none of the passages relied upon by the Report indicate that the software is able to perform the ***agreed*** function of "translating said voice signals into ***said*** control commands," *i.e.* the specific commands required by the claimed audio player. (Report at 21-22.) And while the Report found that "Google did not rely on this argument in its briefing" and thus found it "waived" (Report at 24 n. 13), Google explicitly argued that it "is not the case" that "systems that could accomplish these functions were

[2] Notably, *Princeton Digital* acknowledges that "the Federal Circuit has held that reciting 'software' alone is not sufficient to disclose structure." *Id*. at 10.

generally known," citing to the same paragraph in Dr. Mayer-Patel's declaration noted by the Report. (D.I. 159 (Google Resp.) at 30.)

In any event, even if the Court were to (incorrectly) rely on the understanding of a person of skill to provide the missing structure, the result would limit the "means for translating said voice signals" to those specific structures or algorithms, *e.g.* the specific commercial systems known in the art at the time of the alleged invention. *Princeton Digital*, 2017 WL 2615739 at *10-11; *Thought, Inc.*, 2014 WL 5408179 at *20. PA tellingly did not urge for such an interpretation, revealing its efforts to claim ***any*** structure or algorithm that performs the function of "translating said voice signals into said control commands." But "[a] patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function. To allow that form of claiming under section 112, paragraph 6, would allow the patentee to claim all possible means of achieving a function." *Blackboard*, 574 F.3d at 1385.

The Report also cites to *Pers. Audio, LLC v. Apple, Inc.*, 2011 WL 11757163, at *6-7 as supporting its conclusion.[3] (E.D. Tex. Jan. 31, 2011) (Report at 25 n. 14.) However, that case involved a dispute as to the structure for the "means for accepting control commands," not the "means for translating said voice signals." Critically, Judge Clark ***rejected*** Apple's argument that the "means for accepting" was software-implemented, and thus found that no algorithm was needed to satisfy § 112(6). *Id*. at 5. Accordingly, Judge Clark found that hardware components such as a "keyboard," a "pointing device," and a "hand controller" provided the requisite structure. *Id*. at *8. The passage upon which the Report relies relates to whether the "microphone" component was

[3] Notably, PA did not refer to or rely on *Pers. Audio* in its briefings. (D.I. 146 (PA Opening) at 30; D.I. 176 (PA Reply) at 14-15.) These Objections are thus Google's first chance to meaningfully address the case.

***enabled***. *Id*. at *7. It is accordingly irrelevant to the question of whether a different limitation passes muster under § 112(6). *Aristocrat*, 521 F.3d at 1336.

At bottom, the Federal Circuit has squarely addressed the Report's error in directing its inquiry to whether the "software" referred to in the specification was "well known in the art at [the time] to perform the function" (Report 20), rather than focusing on whether the specification discloses an algorithm:

> It is certainly true that the sufficiency of the disclosure of algorithmic structure must be judged in light of what one of ordinary skill in the art would understand the disclosure to impart. *See, e.g., Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1367 (Fed.Cir.2003) (knowledge of a person of ordinary skill in the art can be used to make clear how to implement a disclosed algorithm); *Atmel Corp.*, 198 F.3d at 1379 ("[T]he 'one skilled in the art' analysis should apply in determining whether sufficient structure has been disclosed to support a means-plus-function limitation."). That principle, however, has no application here, because in this case ***there was no algorithm at all disclosed in the specification. The question thus is not whether the algorithm that was disclosed was described with sufficient specificity, but whether an algorithm was disclosed at all.***

*Aristocrat*, 521 F.3d at 1337 (emphasis added). As the '076 patent does not disclose any algorithm or even recite any specific software for performing the function of "translating said voice signals into said control commands," the term is indefinite.

## II. <u>OBJECTION 2 – "editing means for modifying said data establishing said sequence" ('076 patent claims 5 and 6).</u>

| The Court's (and Plaintiff's Proposed) Construction | Google's Proposed Construction |
|---|---|
| <u>Function</u>: "modifying said data establishing said sequence"<br><u>Structure</u>: "A player client programmed to: 1) Access selections file 351; and 2) Alter identifiers of program segments within the selections file, including the following operations:<br>a. Add a program segment; and/or<br>b. Delete a program segment; and/or<br>c. Assign a new or different order to a given program segment; and update the order for the program segments in the serialized sequence." | <u>Function</u>: "modifying said data establishing said sequence"<br><u>Structure</u>: Indefinite |

The Report's recommendation with regard to the "editing means for modifying said data establishing said sequence" merely restates the function "modifying" as adding, deleting, and/or reordering. While the Report is correct that the specification need not provide "a complex algorithm or specific code that would be utilized" (Report at 17), the specification does need to provide ***some*** algorithm or "step-by-step procedure," whether in the form of a "mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015). Thus, an "algorithm" consisting of a single step rephrasing that function cannot be a step-***by-step*** procedure, for the same reasons that a "flow chart" consisting of a single box reciting the function does not pass muster. *Blackboard,* 574 F.3d at 1383. In construing a means plus function claim requiring "modifying" to be met by adding, deleting, or reordering, the Report thus commits legal error in failing to hold PA to the "reciprocal obligation of disclosing a sufficient algorithm as corresponding structure." *EON Corp. IP Holdings LLC v. AT & T Mobility LLC*, 785 F.3d 616, 623 (Fed. Cir. 2015).

As discussed is Section I, "[t]he point of the requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming." *Aristocrat*, 521 F.3d at 1333; *Blackboard*, 574 F.3d at 1383. Construing a function requiring "modifying" to require the "structure" of adding, deleting, and/or reordering merely restates the function. PA's proposal would presumably encompass ***any*** computer-implemented system that adds, deletes, and/or reorders program segments, regardless of the process by which that system accomplishes those functions. Indeed, PA's structure seems to exhaust the universe of what "modifying said data establishing said sequence" entails, as there is no "modifying" that does not involve any of adding, deleting, or reordering. "[P]urely functional language, which simply restates the function associated with the means-plus-function

limitation, is insufficient to provide the required corresponding structure." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1317 (Fed. Cir. 2012).

The Federal Circuit squarely addressed this issue in *Triton Tech of Texas, LLC v. Nintendo of Am., Inc.,* 753 F.3d 1375, 1378–79 (Fed. Cir. 2014). There, the claims recited an "integrator means associated with said input device for integrating said acceleration signals over time." *Id*. at 1377. The patent holder claimed that the specification's recitation of "numerical integration"—which is "a whole class of algorithms that can be used to calculate definite integrals"—provided the required structure. *Id*. at 1378. The Federal Circuit disagreed, finding that

> [M]erely using the term "numerical integration" does not disclose an algorithm—i.e., a step-by-step procedure—for performing the claimed function. As the district court correctly determined, ***numerical integration is not an algorithm but is instead an entire class of different possible algorithms*** used to perform integration. Disclosing the broad class of "numerical integration" does not limit the scope of the claim to the "corresponding structure, material, or acts" that perform the function, as required by section 112. Indeed, ***it is hardly more than a restatement of the integrating function itself.***

*Id.* at 1378–79 (citations omitted; emphasis added). As in *Triton Tech*, "limiting" a means-plus-function claim requiring "modifying said data establishing said sequence" to the class of algorithms by which a computer may add to, delete from, or reorder the data establishing that sequence does not limit the scope of the claim as required by § 112(6).

In dismissing Google's argument, the Report incorrectly finds that adding, deleting, and reordering "*is* an articulation of the 'how' that Google says is missing from the patent, i.e. 'how' to do the modifying at issue." (Report at 17 (emphasis in original).) But the "how" question refers to the algorithmic requirement, *i.e.* the "step-by-step procedure for performing the claimed function," not merely a recitation of a subclass of algorithms. *Triton Tech*, 753 F.3d at 1378–79. Merely replacing the word "modifying" with different words reciting the same function ("adding," "deleting," or "reordering") accordingly does not detail the required step-***by-step*** procedure. Under

the Report's logic, the recitation of "numerical integration" techniques would detail the "how" for the "integrator means for [] integrating said acceleration signals over time" at issue in *Triton Tech*. Yet the Federal Circuit rejected this logic.

The Report's reliance on *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1386 (Fed. Cir. 2011) (cited at Report 17-18) is also misplaced. There, "[t]he specifications state that cross-referencing entails the ***steps*** of data entry, then storage of data in memory, then the search in a library of responses, then the determination if a match exists, and then reporting action if a match is found." *Id*. (emphasis added). Similarly, the specification in *StrikeForce Techs. Inc. v. PhoneFactor Inc.*, 2015 WL 5708577, at *1 (D. Del. Sept. 29, 2015) provided multiple ***steps*** for each of the disputed terms: "[t]he security computer gets a demand for access [and then] goes through a procedure that authenticates the password and voice identification of the user" for the "comparator means" and "authentication program mechanism," and "monitoring the particular parameter of the individual person; including (sic) the parameter to a mathematical representation or algorithm therefore (sic); retrieving a previously stored sample (biometric data), (sic) thereof from a database and comparing the stored sample with the input of the accessor" for the "biometric analyzer," "transmitting means," "voice recognition means" and "voice sampling means" terms. *Id*. at *1-2. Neither stands for the proposition PA urges here: that the structure for a computer-implemented means-plus-function term can be provided by merely restating that function.

Moreover, the Report relies on PA's expert's opinion that a person of skill in the art would understand the algorithmic structure of the "editing means" function. (Report 18.) However, "[w]here the specification discloses no algorithm, the skilled artisan's knowledge is irrelevant." *EON Corp. IP Holdings LLC v. AT & T Mobility LLC*, 785 F.3d 616, 624 (Fed. Cir. 2015). So PA's

expert's opinion was simply irrelevant, and it matters not whether Google provided a response to it, and certainly provides no basis to adopt Plaintiff's proposal.

Finally, while the Report mentions the "utility program" recited in the specification in passing, e.g. at Report 15 and 17, it does not appear to rely on that "utility program" as providing part of the requisite structure. (Report 17-18.) Nor does the structure adopted by the Report include a "utility program." To the extent the Court considers otherwise, the mere recitation of a "utility program"[4] cannot provide the required structure for this claim term for the same reasons that the mere recitation of "voice recognition software" cannot provide the structure for the "means for translating." *See* Section I.

At bottom, a patent holder cannot evade § 112(6)'s structural requirements by merely replacing a function with the same function described in different words. The Court should reject PA's efforts to claim every algorithm that adds to, deletes from, or reorders data establishing said sequence—that is, every algorithm that modifies data establishing said sequence—and find the term indefinite.

4 As with the "voice recognition software," the specification does not indicate an algorithm or step-by-step process by which the "utility program" edits the "data establishing said sequence." (*See, e.g.*, '076 patent at 8:49-53; *see also* D.I. 159 (Google Resp.) at 28-29; D.I. 186 (Google Sur-Reply) at 15.)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Melissa J. Baily
David A. Perlson
Antonio R. Sistos
Jeff Nardinelli
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

July 2, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 2, 2019, upon the following at the email addresses indicated below:

Brian E. Farnan, Esquire, Esquire
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

*VIA ELECTRONIC MAIL*

Victor G. Hardy, Esquire
William Parrish, Esquire
Minghui Yang, Esquire
Henning Schmidt, Esquire
Floyd Walker, Esquire
HARDY, PARISH, YANG, LLP
Spicewood Business Center
4412 Spicewood Springs Road, Suite 202
Austin, TX 78759
*Attorneys for Plaintiff*

*VIA ELECTRONIC MAIL*

Douglas Q. Hahn, Esquire
Salil Bali, Esquire
Steven M. Hanle, Esquire
STRADLING YOCCA CARLSON & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
*Attorneys for Plaintiff*

*VIA ELECTRONIC MAIL*

*/s/ Brian P. Egan*

Brian P. Egan (#6227)