IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERSONAL AUDIO, LLC,<br><br>               Plaintiff,<br><br>      v.<br><br>GOOGLE, INC.,<br><br>               Defendant. | Civil Action No. 17-1751-CFC-CJB |

Brian Farnan, Michael Farnan, FARNAN LLP, Wilmington, Delaware; Douglas Hahn, Salil Bali, STRADLING YOCCA CARLSON & RAUTH, P.C., Newport Beach, California; Henning Schmidt, Minghui Yang, R. Floyd Walker, Victor Hardy, William Parrish, HARDY, PARISH, YANG, LLP, Austin, Texas

*Counsel for Plaintiff*

Brian Egan, Jack Blumenfeld, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Antonia Sistos, David Perlson, Melissa Baily, QUINN EMANUAL, URQUHART & SULLIVAN, LLP, San Francisco, California

*Counsel for Defendant*

**<u>MEMORANDUM OPINION</u>**

January 6, 2020
Wilmington, Delaware

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff Personal Audio, LLC (PA) has sued Google, Inc. for infringement of two patents: U.S. Patent Nos. 6,199,076 BI (the #076 patent) and 7,509,178 B2 (the #178 patent). D.I. 38. Claim construction was referred to the Magistrate Judge, who held a *Markman* hearing and issued three Reports and Recommendations (Reports) recommending that I adopt constructions for ten disputed terms. D.I. 331; D.I. 372; D.I. 406. The parties have filed objections to five of the Magistrate Judge's recommended constructions. D.I. 350; D.I. 380; D.I. 409. I review de novo the Magistrate Judge's conclusions. *See St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 691 F. Supp. 2d 538, 541–42 (D. Del. 2010) ("Objections to the magistrate judge's conclusions with regard to the legal issue of claim construction are reviewed *de novo*."); Fed. R. Civ. P. 72(b)(3).

## I.  DISCUSSION

### A.  January 16, 2019 Report and Recommendation

In his first Report, dated January 16, 2019, the Magistrate Judge recommended constructions for three of the disputed claim terms. D.I. 331. Google objects to the January Report's constructions of the "sequencing file" and "means responsive" terms.

### 1. Sequencing file

| |
|---|
| **Term:** sequencing file (#178 patent, claims 1–13); file of data establishing a sequence (#076 patent, all asserted claims); playback session sequencing file (#178 patent, claims 14–21, 28, 29). |
| **PA's Proposed Construction:** a file of data that identifies the order in which audio program segments chosen by or for a user are to be played |
| **Google's Proposed Construction:** a file that is received by the player, stored, and used by the processor to both control playback of each song in the ordered sequence and respond to control commands |
| **Report's Construction:** a file of data that identifies the order in which audio program segments chosen by or for a user are to be played |
| **The Court's Construction:** a file that is received by the player, stored, and used by the processor to both control playback of each song in the ordered sequence and respond to control commands |

Like the Magistrate Judge, I reject Google's argument that the claim language imposes the three use limitations for the term "sequencing file" in Google's proposed construction. It is true that the claim language literally requires that a single sequencing file be downloaded and stored, but the claim language does not literally require that the same sequencing file be used by the processor. Rather, the literal language states only that the processor "continuously deliver[ ] a succession of said audio program files . . . in *said ordered sequence* specified by the said sequencing file." #178 patent at claim 1 (46:9–13). Thus, the claim language *by itself* allows for, but does not require, a single sequencing file to be used by the processor.

I disagree, however, with the Magistrate Judge's conclusion that Google's proposed construction of the term is not set forth clearly and unequivocally in the

prosecution history. In my view, the following excerpt from the prosecution

constitutes a clear and unequivocal definition of the term "sequencing file":

### G. Proper Interpretation of "Sequencing File" In Light of Specification and Prosecution History

In light of the specification and file history excerpts quoted above, the claim *term* "sequencing file" (which appears in all [#]178 patent claims and was not a term of art in 1996) is readily understandable to one of skill in the art as a file that is received by the player, stored, and used by the processor to both control playback of each song in the ordered sequence and respond to control commands. [12:16-19; 12:27-28; 34:17-19] It is used to determine, for instance, what song is to be played next if the user wishes to skip forward or back or select a specific song. It is not simply a playlist, but rather a file of data that the player references when the player is deciding what audio segment to play in response to the presence or absence of a control command.

D.I. 160, Ex. 11 at 8 (emphasis added) (second set of brackets in original). This

definition is consistent with another clear and unequivocal instance of

lexicography in the prosecution history:

As discussed below, *the term* "sequencing file" of independent claim 1 and *the term* "playback session sequencing file" of independent claim 14, when interpreted in light of the [#]178 patent specification and file history, should be interpreted to mean "a file that is received by the player and used by the processor to both control playback of each song in the ordered sequence and respond to control commands." The claimed sequencing file is received by the player and used by the processor to both control playback of each song in the ordered sequence and respond to control commands. [12:16-19; 34:17-23]. . . . The downloaded, locally-stored sequencing

> file thus specifies an ordered sequence of audio files to
> play (e.g., in case the listener wants to just listen such as
> while driving) . . . .

D.I. 160, Ex. 11 at 5 (emphasis added) (second set of brackets in original).

The Magistrate Judge found that "[t]hese statements may well not have been intended to define a 'sequencing file' generally" because "one could also reasonably interpret [them] in line with PA's explanation" that the statements "could be reasonably seen as being 'directed to the combination of explicit limitations directed to the sequencing file found in the claims.'" D.I. 331 at 31 (quoting D.I. 176 at 6). I disagree with this finding because (1) the statements expressly define "the term" sequencing file, not the claimed sequencing file; and (2) as the Magistrate Judge also found earlier in his Report (and correctly in my view), the claim language does *not* include the combination of the explicit limitations set forth in the statements from the prosecution, *see* D.I. 331 at 21–22 (noting that the claims "do not explicitly require that the sequence may be found only on that sequencing file at the time the sequence is used" but "simply require that the sequence itself is *originally found* on the sequencing file referenced in the claims" (emphasis in original)).

"Applicants can define (lexicography), explain, or disavow claim scope during prosecution." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342–43 (Fed. Cir. 2015). "To act as a lexicographer, a patentee must 'clearly set forth a

definition of the disputed claim term' and 'clearly express an intent to redefine the term.'" *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). Here, the above-quoted excerpts from the prosecution history clearly set forth the definition of "sequencing file" proposed by Google and therefore I will adopt that definition and reject the Magistrate Judge's recommendation with respect to that term.

### 2. "means responsive" terms

The "means responsive" terms are three terms found in three claims of the #076 patent. The first term is a means responsive to a user's "skip command" and the second two terms are a means responsive to a user's single and double "back commands." The parties agree that these limitations are means-plus-function limitations governed by 35 U.S.C. § 112(6), and they agree on the functions corresponding to those limitations. D.I. 331 at 34. They dispute, however, how to construe the structure corresponding to those functions. *See id.* at 35–39.

### a. Skip Command in Claim 1 of the #076 Patent

| |
|---|
| **Term:** means responsive to said first command for discontinuing the reproduction of the currently playing program segment and instead continuing the reproduction at the beginning of a program segment which follows said currently playing program in said sequence (#076 patent, claim 1) |
| **PA's Proposed Construction of Step 1 of the Corresponding Structure:**<br><br>scanning forward **in the sequence established by the sequencing file** to locate the next Selection_Record of the appropriate LocType; |

| |
|---|
| or, alternatively, |
| scanning forward **in a sequencing file** to locate the next Selection_Record of the appropriate LocType |
| **Google's Proposed Construction of Step 1 of the Corresponding Structure:** scanning forward **in the received sequencing file** to locate the next Selection_Record of the appropriate LocType |
| **Report's Construction of Step 1 of the Corresponding Structure:** scanning forward **in the sequence established by the sequencing file** to locate the next Selection_Record of the appropriate LocType |
| **The Court's Construction of Step 1 of the Corresponding Structure:** scanning forward **in the received sequencing file** to locate the next Selection_Record of the appropriate LocType |

For the structure corresponding to the skip command term, the parties

dispute whether, as Google argues, the player must scan the *received* sequencing

file when responding to a user's skip command or whether, as PA proposes, it can

scan either of (1) any sequencing file or (2) the sequence established by a single

sequencing file (as PA proposes).  D.I. 331 at 39–40.  I disagree with the

Magistrate Judge's conclusion that the player must only scan the sequence

established by a sequencing file.  As explained above, during the prosecution of the

#076 patent, the patentee's clear and unequivocal lexicography established that the

player must use the same sequencing file that it downloaded (i.e., received) when

responding to user commands.  "Statements made during the prosecution relating

to structures disclosed in the specification are certainly relevant to determining the

meaning of the means-plus-function limitations of the claims at issue." *Alpex*

*Comput. Corp. v. Nintendo Co.*, 102 F.3d 1214, 1220 (Fed. Cir. 1996); *see also*

*Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 942 (Fed. Cir. 2013)

("[P]ositions taken before the PTO may bar an inconsistent position on claim

construction under § 112, ¶ 6."). Here, the patentee limited the structure that

corresponds to the function of responding to a user's skip command with the

following statement in the prosecution history:

> [T]he claim term "sequencing file" . . . is readily understandable to one of skill in the art as a file that is received by the player, stored, and used by the processor to both control playback of each song in the ordered sequence and *respond to control commands*. It is used to determine, for instance, what song is to be played next *if the user wishes to skip forward* or back or select a specific song.

D.I. 160, Ex. 11 at 8 (emphasis added) (citations omitted). Accordingly, I will

adopt Google's proposed construction of the means responsive to a user's skip

command and reject the Magistrate Judge's recommendation with respect to that

term.[1]

---

[1] The Magistrate Judge based his recommendation in part on his conclusion that an embodiment described in the written description of the patent "teaches that a sequencing file with a recommended sequence (Table 307) is created on the host server and downloaded to the player—and that another sequencing file containing the final sequence (Se[lections] File 351) is created on the player, using the data of the received sequencing file to control playback." D.I. 331 at 41. In my view, the language used to describe Table 307 and Selections File 351 in the written description lacks clarity and consistency. I do not think the written description shows unambiguously that Table 307 is a sequencing file or that Selection File 351 is created on the player.

### b. Single Skip Back Command and Double Skip Back Command in Claims 2 and 3 of the #076 Patent

| |
|---|
| **Terms:** (1) means responsive to a single one of said second commands for discontinuing the reproduction of the currently playing program segment and instead continuing the reproduction at the beginning of said currently playing program (#076 patent, claim 2); and (2) means responsive to the detection of two consecutive ones of said second commands for discontinuing the reproduction of the currently playing program segment and instead continuing the reproduction at the beginning of a program segment which precedes the currently playing program segment (#076 patent, claim 3) |
| **PA's Proposed Construction of Step 1 of the Corresponding Structure:** if the currently playing program segment has played for a predetermined amount of time, resetting the playback position to the beginning of the programming segment |
| **Google's Proposed Construction of Step 1 of the Corresponding Structure:** if the currently playing program segment has played for a predetermined amount of time **after the start time recorded in a usage log file**, resetting the playback position to the beginning of the programming segment |
| **Report's Construction of Step 1 of the Corresponding Structure:** if the currently playing program segment has played for a predetermined amount of time, resetting the playback position to the beginning of the programming segment |
| **The Court's Construction of Step 1 of the Corresponding Structure:** if the currently playing program segment has played for a predetermined amount of time, resetting the playback position to the beginning of the programming segment |

For the structure corresponding to the back command terms, the parties dispute whether the predetermined amount of time must be measured using a "start time recorded in a usage log file" as Google proposes. D.I. 331 at 37. I agree with the Magistrate Judge and will adopt his recommendation that the structure be construed as not requiring the player to measure the predetermined time using a start time recorded in a usage log file.

In its objections, Google argues that "the specification only describes one structure that could perform [the] function: The system responds to BACK commands by resetting the playback point to the desired point in the sequence and *recording the start time*." D.I. 350 at 10. But the written description never states that the player records the start time to determine if the predetermined amount of time has passed, as Google's proposed construction would require. To constitute corresponding structure, "the intrinsic evidence [must] clearly link[] or associate[] that structure to the function recited in the claim." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015). Yet nothing in the specification links "recording the start time" to determining whether the predetermined amount of time has passed.

Google reasonably argues that "determining *which* 'skip back' command should be implemented requires some means of measuring time so as to distinguish a 'double skip back' from two 'single skip backs.'" D.I. 350 at 10 (emphasis in original). As the Magistrate Judge noted, "[i]t seems problematic that the specification does not appear to recite structure for measuring whether the segment is within the predetermined amount of time when a back command is received." D.I. 331 at 52. But, as the Magistrate Judge, also noted, that issue goes to indefiniteness and can be raised by Google at the summary judgment phase of the case.

## B. March 13, 2019 Report and Recommendation

On March 13, 2019, the Magistrate Judge issued his second report, recommending constructions for three more of the disputed claim terms. D.I. 372. PA objects to the March Report's construction of the "means for continuously reproducing" term.

### 1. "means for continuously reproducing . . ." in Claim 1 of the #076 Patent

| |
|---|
| **Term:** means for continuously reproducing said program segments in the order established by said sequence in the absence of a control command (#076 patent, claim 1) |
| **PA's Proposed Construction:**<br><br>Function: continuously reproducing said program segments in the order established by said sequence in the absence of a control command<br><br>Steps 2 and 3 of the Structure:<br><br>(2) when the currently playing program segment concludes, incrementing the CurrentPlay variable by one and fetching and playing the program segment identified by the ProgramID contained in the next Selection_Record in the sequencing file;<br><br>(3) repeating step (2) until a command is issued **or that the sequence is completed** |
| **Google's Proposed Construction:**<br><br>Function: continuously reproducing said program segments in the order established by said sequence in the absence of a control command<br><br>Steps 2 and 3 of the Structure:<br><br>(2) when the currently playing program segment concludes, |

**(a) if the concluded segment is a topic or subject announcement,** incrementing the CurrentPlay variable by one and fetching and playing the program segment identified by the ProgramID contained in the next Selection_Record in the received sequencing file, and

**(b) if the conclude segment is a program segment, (i) scanning forward in the received sequencing file to locate the next Selection_Record containing the appropriate LocType; (ii) resetting the CurrentPlay variable to the record number of that Selection_Record; and (iii) fetching and playing the program segment identified by the ProgramID contained in the new Selection_Record (LocType: R);**

(3) repeating step (2) until a rewind Selection_Record **(LocType: R)** in the **received** sequencing file is reached, which resets the CurrentPlay variable to the location value contained in the rewind Selection_Record which is set to "1" to begin the playing sequence again with the first Selection_Record in the received sequencing file

**Report's Construction:**

Function: continuously reproducing said program segments in the order established by said sequence in the absence of a control command

Steps 2 and 3 of the Structure:

(2) when the currently playing program segment concludes, incrementing the CurrentPlay variable by one and fetching and playing the program segment identified by the ProgramID contained in the next Selection_Record in the sequencing file;

(3) repeating step (2) until a rewind Selection_Record (LocType: R) in the sequencing file is reached, which resets the CurrentPlay variable to the location value contained in the rewind Selection_Record which is set to "1" to begin the playing sequence again with the first Selection_Record in the received sequencing file

**The Court's Construction:**

Function: continuously reproducing said program segments in the order established by said sequence in the absence of a control command

Steps 2 and 3 of the Structure:

(2) when the currently playing program segment concludes, incrementing the CurrentPlay variable by one and fetching and playing the program segment identified by the ProgramID contained in the next Selection_Record in the sequencing file;

(3) repeating step (2) until a rewind Selection_Record (LocType: R) in the sequencing file is reached, which resets the CurrentPlay variable to the location value contained in the rewind Selection_Record which is set to "1" to begin the playing sequence again with the first Selection_Record in the received sequencing file

The parties agree that "means for continuously reproducing" is a means-plus-function limitation, governed by 35 U.S.C. § 112(6), D.I. 372 at 2, and they agree on the limitation's function: "continuously reproducing said program segments in the order established by said sequence in the absence of a control command," *see id.* at 3. The parties dispute two issues: "whether the corresponding algorithmic structure requires (1) the sequence to be repeated in an endless loop; and (2) scanning for the next record of appropriate LocType." *Id.* at 5 (citations omitted). PA objects to the Magistrate Judge's recommendations with respect to both issues.

I will adopt the Magistrate Judge's recommendation that the structure be construed to include an endless loop. The portion of the #076 patent's written description that the parties agree sets out the term's structure describes an algorithm that, in the absence of a user command, runs through the sequence and then starts the sequence again. #076 patent at Figure 3, 12:16–13:11, 34:28–35:44.

That "arrangement creates in effect, an endless loop, allowing the user to skip forward in circular fashion through the entire program selection to locate desired programming, regardless of where the CurrentPlay register is set." *Id.* at 35:44–48.

In its objections, PA argues that although one may configure the sequencing file to play programs in an endless loop, Figure 7 of the patent "explicitly discloses sequencing files that do not do so." D.I. 380 at 3. But I agree with the Magistrate Judge that Figure 7 does not "shed[ ] light on the appropriate corresponding structure for this term." D.I. 372 at 9 n.2. Figure 7 displays only a portion of a selections file—a portion that does not include the end of the file, where the variable for the endless loop would appear.[2] Figure 7 shows only that portion of the selection file that corresponds to displaying an image of text, and the Figure's depiction of the file ends at the point where the algorithm turns the image off. #076 patent at Figure 7, 44:59–64. Also, Figure 7 displays the selections file's interaction with just a single audio file. *Id.* at Figure 7. It thus does not reveal how the player continuously reproduces playback of the sequence because it does not show how the player transitions from one audio file to the next audio file.

PA also argues in its objections that the Magistrate Judge "clearly and

---

[2] I also note that Figure 7 was not part of PA's proposed structure for this term. D.I. 372 at 3.

indisputably err[ed] by completely failing . . . to identify the explicitly recited function." D.I. 380 at 1. The parties, however, had agreed on the construed function for this term. D.I. 372 at 3. Thus, the Magistrate Judge did not need to decide that issue and PA cannot now raise an issue that was not before the Magistrate Judge.

PA also argues that, under the doctrine of claim differentiation, claim 4 shows the distinction between continuously reproducing and looping because claim 4 expressly claims an endless loop and claim 1 does not. D.I. 380 at 6. But I agree with the Magistrate Judge's conclusion that "PA's claim differentiation argument . . . is not dispositive on the question of whether the corresponding structure for the continuously reproducing term requires an endless loop," D.I. 372 at 9 (internal quotation marks omitted), because "the judicially developed guide to claim interpretation known as 'claim differentiation' cannot override [35 U.S.C. § 112(6)]," *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991).

As to the second issue—whether the algorithm requires scanning for the next record of appropriate LocType—"the parties dispute: (1) whether the LocType R structure is required to perform the recited function . . .; and (2) whether scanning the file to locate the next record using LocType is required for advancing to the record representing the next program segment in the sequencing file in the course of continuously reproducing." D.I. 372 at 9 (internal quotation marks omitted).

I agree with the Magistrate Judge that the R LocType should be included in the corresponding structure. A portion of the written description that the parties agree contains corresponding structure states: "The end of the selections file 351 is marked with an R Selection_Record . . . . When the player encounters this record, it resets the CurrentPlay register to 1, and the playing sequence begins again." #076 patent at 35:40–44.

I also agree with the Magistrate Judge's recommendation that the structure does not require LocType scanning. Nothing in the written description shows that LocType scanning is the necessary structure for the function of continuously reproducing the program segments in the absence of a user command. The portions of the patent that Google points to in support of its construction link scanning the LocType to responding to a specific user command, *see id.* at 32:24–50, 34:32–44, not continuing the playback *in the absence* of a command.

## C.    June 7, 2019 Report and Recommendation

On June 7, 2019, the Magistrate Judge issued his third report, recommending constructions for four of the disputed terms. D.I. 406. Google objects to the June Report's constructions of "editing means for modifying said data sequence" in claims 5 and 6 of the #076 patent and "means for translating said voice signals into said control commands" in claim 13 of the #076 patent. D.I. 409. The parties agree on the function for both terms. Google, however, argues that both terms are

indefinite because the specification lacks sufficient structure.

### 1. "editing means for modifying said data sequence" in Claims 5 and 6 of the #076 Patent

| |
|---|
| **Term:** editing means for modifying said data sequence (claims 5 and 6 of the #076 patent) |
| **PA's Proposed Construction:**<br><br>Function: modifying said data establishing said sequence<br><br>Structure:<br><br>a player client programmed to:<br><br>1. Add a program segment; and/or<br>2. Delete a program segment; and/or<br>3. Assign a new or different order to a given program segment; and update the order for the program segments in the serialized sequence;<br><br>or, alternatively,<br><br>a player client programmed to:<br><br>1. Access selections file 351; and<br>2. Alter identifiers of program segments within the selections file, including the following operations:<br>    a. Add a program segment; and/or<br>    b. Delete a program segment; and/or<br>    c. Assign a new or different order to a given program segment; and update the order for the program segments in the serialized sequence |
| **Google's Proposed Construction:**<br><br>Function: modifying said data establishing said sequence<br><br>Structure: no disclosure of corresponding structure in the patent specification. |
| **Report's Construction:**<br><br>Function: modifying said data establishing said sequence |

Structure: a player client programmed to:

1. Access selections file 351; and
2. Alter identifiers of program segments within the selections file, including the following operations:
    a. Add a program segment; and/or
    b. Delete a program segment; and/or
    c. Assign a new or different order to a given program segment; and update the order for the program segments in the serialized sequence

**The Court's Construction:**

Function: modifying said data establishing said sequence

Structure: a player client programmed to:

1. Access selections file 351; and
2. Alter identifiers of program segments within the selections file, including the following operations:
    a. Add a program segment; and/or
    b. Delete a program segment; and/or
    c. Assign a new or different order to a given program segment; and update the order for the program segments in the serialized sequence

"[A] challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function." *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003). Here, I agree with the Magistrate Judge's conclusion that Google has not met its burden to show by clear and convincing evidence that the "editing means" limitation is indefinite for failing to disclose sufficient structure. I

will thus adopt the Magistrate Judge's recommendation that I construe the structure according to PA's alternative construction.

Because the "editing means" term is a computer-implemented means-plus-function limitation, the specification must disclose an algorithm or procedure for performing the claimed-function. *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008). In its objections, Google argues that the Magistrate Judge's construction "merely restates the function 'modifying' as adding, deleting, and/or reordering" and thus does not provide an algorithm for performing the modifying function. D.I. 409 at 7. I find, however, that the written description does provide, in the form of words, a procedure for performing the function. *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1386 (Fed. Cir. 2011) ("A description of the function in words may disclose, at least to the satisfaction of one of ordinary skill in the art, enough of an algorithm to provide the necessary structure under § 112, ¶ 6." (internal quotation marks and citation omitted)). Specifically, the written description states that the user can "[u]tiliz[e] the programming data and a utility program previously supplied by the server," #076 patent at 8:49–50, to add, delete, and re-sequence segment identifiers found in selection file 351, *id.* at 12:21–26. The procedure disclosed is thus: (1) accessing selections file 351 and (2) modifying the identifiers linked to each segment in the

file by adding, deleting, or reordering them. That disclosed procedure is sufficient

structure for the editing means term.

### 2. "means for translating said voice signals . . ." in Claim 13 of the #076 Patent

| |
|---|
| **Term:** means for translating said voice signals into said voice control commands |
| **PA's Proposed Construction:**<br>Function: translating said voice signals into said control commands<br>Structure: a microphone and voice recognition software (i.e., a voice command system) |
| **Google's Proposed Construction:**<br>Function: translating said voice signals into said control commands<br>Structure: no disclosure of corresponding structure in the patent specification |
| **Report's Construction:**<br>Function: translating said voice signals into said control commands<br>Structure: a microphone and voice recognition software (i.e., a voice command system) |
| **The Court's Construction:**<br>Function: translating said voice signals into said control commands<br>Structure: a microphone and voice recognition software (i.e., a voice command system) |

I agree with the Magistrate Judge's conclusion that "Google has not

demonstrated by clear and convincing evidence that the 'means for translating said

voice signals into said voice control commands' limitation is indefinite for failing

to disclos[e] sufficient structure." D.I. 406 at 24. I will thus adopt the Magistrate

Judge's recommendation that the corresponding structure be construed as: "a

microphone and voice recognition software (i.e., a voice command system)."

In its objections, Google argues that the specification does not disclose an

algorithm corresponding to the claimed function. D.I. 409 at 2. But I agree with

the Magistrate Judge's finding that the patent discloses an algorithm that is linked to the function at issue, and "PA has pointed to evidence sufficiently demonstrating that such structure was known at the time of the invention." D.I. 406 at 24.

First, the written description discloses a voice command system as the algorithm for performing the function. The written description explains that a user can use its voice to choose a program segment by "[u]sing a hands free voice command system." #076 patent at 16:50–56. The written description also states that the "player **103** further includes a sound card **110** which receives audio input from a microphone input device **111** for accepting voice dictations and commands from a user." *Id.* at 4:41–44.

Second, although the above structure does not provide an algorithm regarding how the player translates voice signals into control commands, the Federal Circuit has "been generous in finding something to be a corresponding structure when the [written description] contained a generic reference to structure that would be known to those in the art and that structure was clearly associated with performance of the claimed function." *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1213–14 (Fed. Cir. 2003). PA has provided sufficient evidence to "make it reasonable to conclude that a 'voice command system' was indeed a known structure in the art at the time of the invention." D.I. 406 at 23. PA's evidence shows that voice command systems were in use at the

20

time of the patent "with commercial options available." *Id.* at 23. Because the patent linked known systems to the translating function, a person of ordinary skill in the art would have known what kinds of programs to use. *See Elekta*, 344 F.3d at 1214 ("[H]ere there would be no need for a disclosure of the specific program code if software were linked to the converting function and one skilled in the art would know the kind of program to use.").

Google argues that the Magistrate Judge erred "in directing [his] inquiry to whether the software referred to in the specification was well known in the art at the time to perform the function, rather than focusing on whether the specification discloses an algorithm." D.I. 409 at 6. I agree that Google's assertion finds support in certain Federal Circuit decisions. *See, e.g.*, *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337 (Fed. Cir. 2008) ("It is not enough for the patentee simply to state or later argue that persons of ordinary skill in the art would know what structures to use to accomplish the claimed function. . . . The inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing that structure."); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340–41 (Fed. Cir. 2008) ("Simply reciting 'software' without providing some detail about the means to accomplish the function is not enough."). But given the language from *Elekta* cited above, and the clear and convincing evidence

21

standard for indefiniteness, I find that the written description contains sufficient structure and will adopt PA's construction for the term.

## II.     CONCLUSION

For the foregoing reasons, I will sustain-in-part and overrule-in-part Google's objections to the Magistrate Judge's Report and Recommendations and I will overrule PA's objections to the Magistrate Judge's Report and Recommendations.  I will sustain Google's objections regarding the construction of the term "sequencing file" and will construe the term as: "a file that is received by the player, stored, and used by the processor to both control playback of each song in the ordered sequence and respond to control commands."  I will also sustain Google's objections regarding the construction of the term "means responsive to said first command for discontinuing the reproduction of the currently playing program segment and instead continuing the reproduction at the beginning of a program segment which follows said currently playing program in said sequence" and will construe the first step for the structure corresponding to that term as: "scanning forward in the received sequencing file to locate the next Selection_Record of the appropriate LocType."  I will overrule all other objections and will adopt the Magistrate Judge's recommended constructions for the remaining disputed terms.

The Court will enter an order consistent with this Memorandum Opinion.