IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERSONAL AUDIO, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Civil Action No. 17-cv-1751-CFC-CJB<br><br>JURY TRIAL DEMANDED<br><br>**FILED UNDER SEAL** |

### **LETTER BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE**

Dated: September 22, 2020

Of Counsel:

Douglas Q. Hahn
Stradling Yocca Carlson & Rauth, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4138
 Fax: 949-823-5138
Email: dhahn@sycr.com

Charles W. Goehringer
GERMER PLLC
550 Fannin, Suite 400
Beaumont, TX  77701
Phone:  409-654-6700
Email:  cwgoehringer@germer.com

Brian E. Farnan (Bar No.4089)
Michael J. Farnan (Bar No. 5165)
Rosemary J. Piergiovanni (Bar No. 3655)
FARNAN LLP
919 North Market Street, 12th Fl.
Wilmington, DE  19801
Telephone:  (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com
rpiergiovanni@farnanlaw.com

Victor G. Hardy (admitted *pro hac vice*)
Hardy, Parish, Yang, LLP
Spicewood Business Center
4412 Spicewood Springs Rd.
Suite 202
Austin, Texas 78759
Telephone: (512) 520-9407
vhardy@hpylegal.com

*Attorneys for Plaintiff  Personal Audio, LLC*

Personal Audio ("PA") moves this Court to strike ¶ 47 and Exs. B-L of the Reply Expert Report of Schuyler Quackenbush (the "Reply Report"). Relevant portions of that Reply Report are Ex. 1. In his *Reply* Expert Report, Dr. Quackenbush discloses for the *first time* Google's possession of actual physical alleged prior art system and experiments using that system (the "New Prior Art Device"), which Dr. Quackenbush operates in the movie files attached as Exs. B-L to his Reply Report. Prior to the Reply Report, Google's Invalidity Contentions, responses to requests for production and even its Opening Expert Report made no mention that Google possessed or intended to rely upon any actual physical device to prove its invalidity claims. No prior art device was produced despite being explicitly requested by PA. Ex. 2, Requests for Production Nos. 11 and 18. Rather, its invalidity charts listed only publications and source code to prove its system defenses. Ex. 3. This new prior art product should have been presented during discovery as part of Google's Invalidity Contentions or in response to discovery requests. Ex. 4, Interrogatory Resp. No. 7 and Ex. 2, Requests for Production Nos. 11 and 18.

The last-minute introduction of this New Prior Art Device threatens to irreparably and unfairly prejudice PA. Google is attempting to exploit system latency and inaccuracies in measurement in responding to control commands to allege that the control algorithms of CD95 work differently ███████████████████████████████████████████. Although the condition for determining the reset point for a skip back claim is explicitly set to ███████████████, Dr. Quackenbush alleges that the reset point is conditioned upon a predetermined time period that includes an amount of time the song is playing. To prove this, Dr. Quackenbush's videos of the experiment purport to show that the player plays a CD while the counter ███████ and resets the player to the previous track. See Ex. 1.

PA asserts that reliance on these videos is unfair and this behavior is not indicative of use of any predetermined amount of time by algorithm of CD95, but rather the direct result of certain system latencies and measurement inaccuracies caused by the circuitry of the computer and the operation of particular drives. Stephen Estrop, the creator at Microsoft of the CD95 software testified about latency in the CD95 system relevant to the behavior shown in the video:

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

Of course, because PA was never notified of this device, it was therefore deprived of an opportunity to inspect the device or to further question Estrop on this issue. Moreover, Google did not identify the videos or the observed behavior in their contentions or Opening Report. This failure to disclose during discovery imposed very specific and severe irreparable injury upon PA. PA could not seek third party discovery into the latency issue with CD95 and/or the messaging of the cd drives that are directly relevant to the behavior shown in the video. Indeed, had this art and argument been properly disclosed, PA could have followed up and further developed Mr. Estrop's testimony on latency with respect to the specific

1

behavior shown on the videos at the deposition. To further compound prejudice, Dr. Quackenbush's report did not disclose the specific drive or other components used in its system and Dr. Quackenbush himself did not know them or could even assert that they were prior art— thereby preventing effective questioning on this subject. Ex. 6, Quackenbush Depo., pp. 208 and 210. Despite being requested in a meet and confer, Google still has not provided this information. Further, while Google contends the New Prior Art Device is "representative" of those from 1995, it could not confirm whether the components were original or even identify them so that Quackenbush could be questioned.

The law is well settled that Courts should strike expert reports presenting new invalidity theories or new testing that was not disclosed before the close of fact discovery. *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463-64 (D. Del. 2005), *rev'd on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008) (excluding prior art references and new invalidity defenses disclosed for the first time in expert reports after the close of fact discovery); *Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269 (Fed. Cir. 2011); *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 U.S. Dist. LEXIS 11370, *15 (D. Del. 2007) (precluding use of prior art references that were available to defendant prior to the close of fact discovery and the deadline for final invalidity contentions); *Vehicle IP v. Wener Enters.*, Civ. No. 10-503-SLR, 2013 U.S. Dist. LEXIS 127816, at *8-11 (excluding expert testimony regarding an invalidity theory due to prejudice caused by the lack of a full opportunity to take discovery). It is generally understood that "a party may not use an expert report to introduce … new prior art references not disclosed in the parties' … invalidity contentions." *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 U.S. Dist. LEXIS 116382, at *3 (N.D. Cal. Aug. 20, 2014). *Merck Sharp & Dohme Corp. v. Sandoz*, Inc., 2014 WL 1494592, at *11-12 (D.N.J. Apr. 16, 2014) ("[P]ermitting Sandoz to assert new bases for its obviousness defense for the first time in its expert report, approximately seven months after its Invalidity Contentions had been served, would cause prejudice to Merck.").

*The Siemens Medical.* case is particularly instructive here. 637 F.2d 1269. In that case, the Federal Circuit held that the district court did not abuse its discretion in excluding certain testimony of the defendant's expert. *Id.* at 1286. In his testimony, the defendant's expert relied on tests that were never disclosed to the plaintiff during fact discovery. The district court "expressed concern that, without any ability for Siemens to examine the studies that formed the basis of Dr. McClellan's opinions, there is clearly no principled way to test his recollection and opinion." *Id.* at 1286. The district court held that the expert "could not rely on testing that was not disclosed to Siemens during discovery." *Id.* The Federal Circuit affirmed, finding that the expert's failure to disclose this testing during discovery violated Fed. R. Civ. P. 26(a), and was therefore properly excluded under Fed. R. Civ. P. 37(c)(1). *Id.* at 1287.

In considering whether to exclude evidence under Rule 37, Courts in the Third Circuit consider the "*Pennypack* factors": "(1) the prejudice or surprise to a party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood of disruption of the trial schedule; (4) bad faith or willfulness involved in not complying with the disclosure rule; and (5) the importance of the evidence to the party offering it." *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977). Here, application of the *Pennypack* factors dictates that all of the New Physical Product that was not

identified by Google in its Final Invalidity Contentions or in the Opening Quackenbush Report should be stricken from Dr. Quackenbush's Invalidity Rebuttal Report.

**PA Has Been Prejudiced And Surprised By The New Physical Product.** This has prejudiced PA in irreparable ways. First, PA was unable to request inspection of the New Prior Art Device to determine components of the device and experiment with its operation. The New Prior Art Device is known to have a problem with delay in responding to drive queries. ████ ██████████████████████ PA was also deprived of the opportunity to conduct third-party discovery (Estrop and drive manufacturers of the device for the APIs and the causes and scope of the delay in drive responses) into the cause of the delay and the ways that API queries are handled. These are directly relevant to the behavior relied upon by Dr. Quackenbush in his experiments using a device. As PA was denied discovery of the device as well as third-party discovery, it has no way to test Dr. Quackenbush's experiment. *See Siemens Med.*, 637 F.2d at 1286. PA also did not perform its own experiments because they were not needed to address the documentation and actual source code relied upon in the contentions. Without a device, PA was deprived of an opportunity to question Dr. Quackenbush effectively during deposition or have its expert address arguments in his report. Given the extreme prejudice to PA, this factor weighs in favor of striking Dr. Quackenbush's references to the New Prior Art Device.

**The Ability of The Injured Party To Cure The Prejudice.** Fact discovery is long closed in this case. As such, PA has no ability to cure the prejudice caused by Google's late identification of the New Prior Art Device. PA and its experts have been prevented from inspecting Google's New Prior Art Device, determining what components are present or analyze the source code and detailed technical documentation for that device. In fact, PA is not even able to investigate or verify if or when it was on sale. Given that the prejudice to PA cannot be cured, striking Dr. Quackenbush's experiment is the only relief that will remove the prejudice to PA. Given the extreme prejudice to PA, this factor also weighs in favor of striking.

**The Likelihood of Disruption of the Trial Schedule.** This factor also weighs in favor of striking Dr. Quackenbush's references to the New Prior Art Device. Here, it is not a simple matter of a short delay for a new expert report. In order to fully investigate Dr. Quackenbush's experiment, discovery would have to be re-opened and substantial third-party discovery would need to be taken. This would represent a very substantial interruption in an already delayed case.

**Bad Faith or Willfulness Involved In Not Complying With The Disclosure Rule.** Here, Google withheld its experiment during discovery and failed to disclose it in its Non-infringement contentions. Instead, Google presented its New Prior Art Device for the first time in its reply expert report. This effectively denied PA even the chance to respond. Whether intentional or not, the timing of this disclosure served to maximize the prejudice to PA.

**The Importance of The Evidence To The Party Offering It.** The newly-identified Prior Art Device was apparently not important enough to Google to put it in its Final Invalidity Contentions after more than four years of litigation. Further, the actual source code of the system was the subject of discovery and is available for use. ████████████████████ Accordingly, PA submits that each of the *Pennyback* factors weigh in favor of striking ¶ 47 and Exs. B-L of Dr. Quackenbush's Reply Report and requests the Court order that relief.

3

                                                                                  Respectfully submitted,

                                                                                  /s/ Rosemary J. Piergiovanni

                                                                                  Rosemary J. Piergiovanni

cc: Counsel of Record (Via E-Mail)