IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERSONAL AUDIO, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 17-1751 (CFC) (CJB) |
| v. | ) |
| | ) REDACTED - PUBLIC VERSION |
| | ) |
| GOOGLE LLC, | ) |
| | ) |
| Defendant. | ) |

**LETTER BRIEF IN OPPOSITION TO PERSONAL AUDIO'S
<u>MOTION TO STRIKE</u>**

OF COUNSEL:

Melissa J. Baily
David A. Perlson
Antonio R. Sistos
Jeff Nardinelli
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600

Patrick Stafford
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I St. NW, Suite 900
Washington, D.C. 20005
(202) 538-8000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

Original filing date: September 29, 2020
Redacted filing date: October 5, 2020

Dear Judge Burke:

PA's motion to strike should be denied.

## BACKGROUND

A. <u>Google's Invalidity Contentions</u>

Google timely served its invalidity contentions on October 5, 2018. In those contentions, Google identified "Computer with Windows 95" as a relevant prior art system. (Ex. A at 14.)[1] In the same contentions, Google explained how the "Conventional Computer Running Windows 95" taught the "predetermined amount of time" limitation recited in nine of the asserted claims.[2] (Exs. B, C.) Among other things, Google specified in its contentions that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆:



Google also cited "MS_PA_SCODE000173-178" as exemplary source code reflecting ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆: that code demonstrates that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. (Ex. B at 20, 24, 55, 60; Ex. C at 19, 22, 34, 37.)

B. <u>Google's Opening Report On Invalidity (March 27, 2020)</u>

In Google's opening report on invalidity, Dr. Schuyler Quackenbush offered opinions consistent with what Google had disclosed in its invalidity contentions. Dr. Quackenbush opined that the Conventional Computer Running Windows 95—which he shorthanded as the "Windows CD Player system"—▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (*E.g.*, Ex. D ¶ 440; *see also id.* ¶¶ 207, 214, 266, 316, 320, 385, 389, 445, 487, 492, 592, 596, 645, 650, 689, 695, 738, 742, 785, 789, 888, 892, and 894.) Dr. Quackenbush also identified, among other things, the same source code cited in Google's contentions (MS_PA_SCODE000173-178) to support his opinions regarding this aspect of the operation of the

---

[1] Google had previously identified this prior art system on April 27, 2017. (*E.g.*, Ex. I, at 16.)
[2] Specifically, those claims require an "audio program player" in which a "processor responds to a skip backward program selection command accepted from said listener at a time when said currently playing audio program file has played for at least a predetermined amount of time by discontinuing the reproduction of said currently playing audio program file and instead continuing the reproduction at the beginning of said currently playing audio program file."

The Honorable Christopher J. Burke                                      September 29, 2020

prior art system—namely, that ██████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████ (*See id.*)

### C. PA's Rebuttal Report (June 19, 2020)

In PA's rebuttal report, Dr. Kevin Almeroth purported to dispute that the Conventional Computer Running Windows 95 system operates as Google had described in its contentions and as Dr. Quackenbush had described in his opening report. Dr. Almeroth's opinion was that ██████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████ (Ex. E ¶ 172.)

In so opining, Dr. Almeroth identified the same source code that Google had disclosed in its contentions and that Dr. Quackenbush had cited in his opening report. Dr. Almeroth opined that: ██
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████ (*Id.* ¶ 171.)

But beyond putting forward this description of the operation of the source code, Dr. Almeroth also pointed to <u>what a user purportedly sees and hears during the operation of the prior art system</u> to support his conclusion. For example, Dr. Almeroth's rebuttal report states:

> The way the back button controls worked for CD 95 <u>as seen by the user</u> is if the back button is pushed <u>before the audio track is playing</u>, it would skip back to the beginning of the preceding audio file. If the button is played [sic] <u>while the track is playing</u> it will skip back to the beginning of the file.

(*Id.* ¶ 168 (emphasis added).) Dr. Almeroth also states:

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████████.

(*Id.* ¶ 177 (emphasis added).) In other words, Dr. Almeroth goes beyond an analysis of the source code underlying the Conventional Computer Running Windows 95 prior art system; he also opines that <u>the user experience</u> of the prior art system demonstrates that the "previous track" command restarts the currently playing track if that track has played for "any amount of time."

### D. Google's Reply Reports (August 7, 2020)

In his reply report, Dr. Quackenbush responded to both of Dr. Almeroth's arguments regarding the "predetermined amount of time" limitation as it relates to the Conventional Computer Running

2

The Honorable Christopher J. Burke                                                     September 29, 2020

Windows 95 prior art system.³

    With respect to Dr. Almeroth's description of the code, Dr. Quackenbush demonstrated how that description is misleading. He explained that the code  (*E.g.*, PA Ex. 1 at ¶¶ 48, 50.) (*See id.* ¶ 48.)

    But Dr. Quackenbush also had to respond to Dr. Almeroth's arguments about <u>the user experience</u>—*i.e.*, what the user sees and hears during the operation of the prior art system. In order for Dr. Quackenbush to do that, Dr. Ketan Mayer-Patel, another qualified technical expert, purchased and analyzed certain hardware representative of the Conventional Computer Running Windows 95 prior art system. (*See id.* ¶ 47.) Dr. Quackenbush then used that hardware to evaluate the representations made by Dr. Almeroth about the user experience when operating the Conventional Computer Running Windows 95. (*Id.*) Dr. Mayer-Patel submitted a reply report documenting his hardware purchase and setting out his opinion that the hardware was representative of the prior art system. (Ex. F.) And Dr. Quackenbush submitted a reply report setting out (in paragraph 47) his response to Dr. Almeroth's assertions about the user experience of the prior art system.

    Among other things, Dr. Quackenbush opines:

> Dr. Almeroth's assertions are an inaccurate description of the 'user' experience. I have personally used the Microsoft Windows CD Player system and confirmed that, if a user selects the back button within the period of zero to one second—<u>while the audio track is playing</u>—the Microsoft Windows CD Player system will skip back to the previous track.

(PA Ex. 1 at ¶ 47.) With his reply report, Dr. Quackenbush submitted videos that support his description of—and opinions regarding—the user experience. (*Id.*; D.I. 497.) As one example, Dr. Quackenbush submitted a video that shows:

> When I pressed the back button after the track started playing (e.g., <u>after I heard the song start</u>) but before one full second of the track had elapsed, the Microsoft Windows CD Player skipped back to the beginning of the previous track. . . . Each time I pressed the back button within this predetermined period of time between zero and one second of the track being played, the Microsoft Windows CD Player skipped back to the beginning of the previous track.

(PA Ex. 1 at ¶ 47; D.I. 497 at Exhibit B.)

---

³ Prior to receiving Dr. Almeroth's rebuttal report, neither Google nor Dr. Quackenbush was on notice that there was any dispute about the operation of the source code underlying the Conventional Computer Running Windows 95. Although Google had propounded interrogatories seeking PA's validity contentions, PA served only perfunctory responses that incorporated by reference PA's to-be-served expert reports. (Ex. H.)

The Honorable Christopher J. Burke                                September 29, 2020

The opinions Dr. Quackenbush set out in paragraph 47 of his reply report are thus a necessary response to Dr. Almeroth's erroneous description of the user experience: whereas Dr. Almeroth asserted that a back command entered at any time at which a user hears a track playing always restarts the currently playing track, Dr. Quackenbush demonstrated that a back command entered during the first second of the track playing actually restarts the preceding track. And of course Dr. Quackenbush's demonstration is entirely consistent with both Google's invalidity contentions and the opinions set out in Dr. Quackenbush's opening report.

E. Expert Depositions

On August 27, 2020, PA proceeded with Dr. Quackenbush's deposition. PA questioned Dr. Quackenbush for well over an hour regarding . (Ex. G at 199:19-239:25, 255:17-268:25.) Among other things, PA asked Dr. Quackenbush about . (*Id.* at 225:16-236:4.)

PA has not taken Dr. Mayer-Patel's deposition, and that deposition will not even be scheduled until after the Court decides the parties' pending motions. (D.I. 477 ("So Ordered" on Sept. 11, 2020).) In the nearly two months since Google served Dr. Mayer-Patel's reply report, PA has never requested to inspect the hardware Dr. Mayer-Patel described in his report. That hardware remains available for inspection and there is ample time for PA to inspect the hardware before Dr. Mayer-Patel's deposition is scheduled. And when PA does take Dr. Mayer-Patel's deposition, PA will have the opportunity to question him regarding his hardware purchase as well as his opinion that the hardware is representative of the Conventional Computer Running Windows 95 prior art system.

## ARGUMENT

The *Pennypack* factors do not support PA's request to strike paragraph 47 of Dr. Quackenbush's reply report or the exhibits cited therein.

**No Prejudice Or Surprise.** PA has not suffered any prejudice or surprise here. In its invalidity contentions, Google not only identified the Conventional Computer Running Windows 95 as a prior art system but it described how a specific portion of that system's source code operated to meet the "predetermined amount of time" limitation of the asserted claims.[4] If PA thought that the that Google identified as the "predetermined amount of time" in its contentions was due not to the operation of the source code (as Google contended) but instead to some "system latency" or "inaccuracies in measurement," PA had every opportunity to conduct fact discovery on those issues. But PA chose not to do that: PA did not pose a single question to the Microsoft witness who was deposed on the operation of the "Conventional Computer Running Windows 95"; and PA did not conduct any other third-party discovery regarding that prior art system (or any other issue).

---

[4] Five of the six cases cited by PA (*Praxair*, *Bridgestone*, *Vehicle IP*, *Verinata*, and *Merck*) dealt with the disclosure of <u>new prior art references</u> after the relevant deadline. The sixth case, *Siemens*, dealt with expert testing that formed the basis for expert opinions but could not be disclosed to the opposing party because of national security concerns. None of those cases is relevant here, as Google identified and described the Conventional Computer Running Windows 95 in its invalidity contentions, and all of the bases for Dr. Quackenbush's opinions have been disclosed to PA.

4

The Honorable Christopher J. Burke                                                    September 29, 2020

 Instead, in PA's rebuttal report, Dr. Almeroth offered a misleading description of the prior art system's source code <u>and then made baseless assertions about a user's experience of the prior art system</u> to support this misleading description.  Dr. Almeroth's assertions about what a user sees and hears during the operation of the Conventional Computer Running Windows 95—apparently made without actually witnessing the operation of that system—are wrong and cannot be left unchecked.  PA elected to offer previously undisclosed contentions about the "user experience" of the prior art system in its rebuttal report, and Dr. Quackenbush was entitled to respond to those opinions.  *See, e.g.*, *MobileMedia Ideas, LLC v. Apple Inc.*, 907 F. Supp. 2d 570, 610 n.22 (D. Del. 2012).

 **No Bad Faith.**  Google did not fail to comply with any "disclosure rule" or other discovery obligations.  Google could not have been more precise in its disclosure of how the Conventional Computer Running Windows 95 meets the "predetermined amount of time" limitation of the asserted claims.  (Exs. B, C.)  Nor has Google "withheld" anything during fact discovery.  Dr. Quackenbush's analysis is properly within the purview of <u>expert discovery</u>, not fact discovery.  And conventional computers running Windows 95 were available on the market to PA and its experts during the entire pendency of this case.  When Dr. Almeroth offered assertions about the user experience of such systems without obtaining one, Dr. Quackenbush properly responded by obtaining such a system and proving those assertions wrong.

 **No Prejudice Or Trial Disruption.**  PA has the time and opportunity to (i) inspect the hardware purchased for Dr. Quackenbush's evaluation of Dr. Almeroth's assertions regarding the "user experience" of the prior art system and (ii) depose Dr. Mayer-Patel regarding his opinion that the hardware is representative of a "Conventional Computer Running Windows 95."  Indeed, although PA complains that it has been "prevented from" inspecting the hardware, PA has never asked to inspect the hardware (which is available for inspection).  And although PA complains that it could not ask Dr. Quackenbush about the hardware "components," Dr. Mayer-Patel is the expert who offered opinions about the hardware components (Ex. F), and his deposition has yet to be scheduled.  All PA needs to do to avoid so-called "prejudice" is complete the expert discovery process; no further delay (beyond that caused by the stay of expert depositions already in place) need be incurred.

 **Importance.**  The Conventional Computer Running Windows 95 prior art system is perhaps the most important element of Google's invalidity case.  In the context of reviewing IPR decisions related to the patents-in-suit, the Federal Circuit has found that the "predetermined amount of time" limitation is the <u>only</u> limitation not taught by the prior art printed publications considered by the PTAB.  *Google v. Personal Audio*, 743 F. App'x 978, 981-82 (Fed. Cir. 2018).  The Conventional Computer Running Windows 95 (i) is a prior art system not eligible for consideration by the PTAB and (ii) conclusively demonstrates the obviousness of that very limitation.

 Given the importance of the prior art system to the case, the detailed disclosures regarding that system provided during fact discovery, the full opportunity PA had to conduct fact discovery regarding that system, the full opportunity PA has to finish its expert discovery regarding the reply opinions at issue, the consistency of those opinions with the disclosures in Google's invalidity contentions, and the erroneous assertions in Dr. Almeroth's report that would be left unchecked but for the reply opinions at issue, PA's motion to strike should be denied.

5

The Honorable Christopher J. Burke　　　　　　　　　　　　　　　　　　　September 29, 2020

                                            Respectfully,

                                            */s/ Brian P. Egan*

                                            Brian P. Egan (#6227)

BPE/rah  
Enclosures  
cc:    All Counsel of Record (Via Electronic Mail)