# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERSONAL AUDIO, LLC,<br><br>               Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>               Defendant. | C.A. No. 17-1751 (CFC) (CJB) |

## INVALIDITY CONTENTIONS

Pursuant to the Court's scheduling order, Google LLC ("Google") hereby submits these Invalidity Contentions. These disclosures, including the accompanying claim charts, set forth Google's invalidity contentions with respect to the claims of U.S. Patent No. 6,199,076 ("'076 patent") and U.S. Patent No. 7,509,178 ("'178 patent") (collectively "patents-in-suit") currently at issue, which are claims 1-3, 5, 6, 13-15 of the '076 patent and claims 1-21, 28-29 of the '178 patent according to Plaintiff Personal Audio, LLC's ("Plaintiff" or "PA") September 7, 2018 Infringement Contentions.

Google reserves the right to amend these Invalidity Contentions should Plaintiff provide additional information or if Plaintiff is permitted to amend or supplement its infringement contentions in any way.

The following disclosures, including the accompanying claim charts, were prepared prior to the Court's claim construction ruling. As such, these disclosures are based on the claim constructions currently briefed by the parties. These disclosures are not, and nothing in these disclosures should be seen as, an endorsement, acquiescence, or acceptance of any of Plaintiff's claim constructions. Further, in addition to invalidity under 35 U.S.C. §§ 102 and/or 103, Google

contends that one or more of the claims of the patents-in-suit are invalid under 35 U.S.C. § 112. Google reserves the right to amend and/or supplement these Invalidity Contentions based on information learned through further discovery, including for example, information pertaining to the development and description of the claimed subject matter by the named inventors (and assigns thereof) listed on the patents-in-suit. Google's positions on the invalidity of particular claims will also depend on how those claims are construed by the Court. In the absence of a claim construction ruling, these Invalidity Contentions are made in the alternative and are not necessarily intended to be consistent with each other and other contentions. Google reserves the right to amend these Invalidity Contentions upon receipt of the Court's claim construction order.

Prior art not included in these contentions, whether or not known to Google at this time, may become relevant depending on the positions Plaintiff asserts and the claim constructions the Court adopts. Google's ongoing investigations may also uncover additional prior art, including responses to pending third party subpoenas. For example, for any given company's commercial products, Google expects that additional documentation relating to these products will be discovered, and Google reserves the right to rely on such documentation to further support these Invalidity Contentions. Google accordingly reserves the right to modify these Invalidity Contentions by adding or withdrawing prior art and/or modifying any of the referenced claim charts in light of the Court's claim construction ruling, any amended or supplemental infringement contentions by Plaintiff, any party admissions or admissions by any named inventor concerning the scope of the claims or teachings of the prior art, or any positions taken by Plaintiff in this or related litigation, reexamination, or other proceeding, or to avoid unfair prejudice from Plaintiff's failure to timely comply with its disclosure obligations. Additional obviousness combinations of the references identified in these disclosures are possible, and

Google reserves the right to use any such combination(s) in these actions. In particular, Google is currently unaware of the extent, if any, to which Plaintiff will contend that limitations of the claims at issue are not disclosed in the art identified by Plaintiff as anticipatory, and the extent to which Plaintiff will contend that elements not disclosed in the asserted patent specification and related applications would have been known to persons of ordinary skill in the art at the relevant time. To the extent that an issue arises with any such limitations, Google reserves the right to identify other references that would have made such limitations obvious in view of the relevant disclosures.

Plaintiff states in its P.R. 3-1 disclosures that "[e]ach asserted claim in the '076 patent is entitled to a priority date no later than May 20, 1996, with the exception of claim 4, which is entitled to a priority date no later than June 18, 1996. Each asserted claim in the '178 patent is entitled to a priority date no later than May 20, 1996, with the exception of claims 2, 3, 4, 5, 6, and 7, which are entitled to a priority date no later than August 2, 1996."[1] Google reserves the right to challenge any priority date and any alleged date of conception and to amend these contentions upon the Court's determination of the priority date(s) of the asserted claims. Further, discovery is ongoing regarding the alleged conception and reduction to practice dates to determine earlier invention by other parties under 35 U.S.C. § 102(g). Discovery and investigation as to public use or on-sale bar under 35 U.S.C. § 102(b) or the Applicant's failure to comply with 35 U.S.C. § 112 are also ongoing. Google therefore reserves the right to further supplement or amend these Invalidity Contentions if and when such further information becomes available.

---

[1]   Google objects to the inclusion of "no later than" with respect to these dates as improper in view of Plaintiff's failure to specify an earlier date or identify any support for any earlier date.

The identity of each item of prior art relied upon in this disclosure is listed below and in the attached claim charts, including prior art systems, publications, and patents. Each prior art publication/patent is identified. Except for copies of prior art already in Plaintiff's possession, custody, or control, the publications and/or source code describing the prior art systems have been produced to Plaintiff to the extent located, and to the extent that such systems and/source code are in Google's possession, they have been produced and/or made available for inspection. Subject to the foregoing, the references cited in Exhibits 1-195 disclose the elements of the asserted claims (either explicitly and/or inherently) and may be relied upon to show the state of the art in the relevant time frames. Further, the suggested obviousness combinations are in addition to Google's anticipation contentions and are not to be construed to suggest that any reference included in the combinations is not anticipatory on its own. Google has endeavored to identify exemplary portions of the references based on presently available information and Plaintiff's Infringement Contentions. The references, however, may contain additional support for particular claim limitations. Google expressly reserves the right to rely on uncited portions of the prior art references, other documents, and expert testimony to provide context and/or to aid in understanding the cited portions of the references. In instances of cumulative disclosure within a particular prior art reference, Google may have cited a subset of those instances as opposed to citing each instance, and Google reserves the right to rely on uncited instances of cumulative disclosure. Where Google cites to a particular figure in a reference, the citation should be understood to encompass the caption and description of the figure and any text relating to or discussing the figure. Conversely, where Google cites to particular text referring to a figure, the citation should be understood to include the figure as well.

Google also incorporates by reference all assertions made by any party at any time that one or more of the asserted claims of the patents-in-suit are invalid or unenforceable for any reason, including without limitation all invalidity contentions asserted during prior litigations, reexaminations, and original prosecution of the patents-in-suit, including the Invalidity Contentions served in *Personal Audio v. Apple, Inc. et al.*, No. 9:09-CV-00111, *Personal Audio v. Samsung Electronics et al.*, No. 1:14-CV-00008, and *Personal Audio v. Acer Inc. et al.*, No. 1:11-CV-00432. The fact that Google may specifically list herein certain prior art references or systems that have been listed in the invalidity contentions from prior lawsuits, the current pending lawsuit, or asserted in reexamination proceedings is not a waiver of Google's right to assert the invalidity or unenforceability of the asserted patents based on any of the other references included in the reexaminations or prior invalidity contentions which are not separately additionally identified herein but nonetheless incorporated by reference.

## I.    PRIOR ART

Google identifies below the prior art presently known to Google that anticipates and/or renders obvious the asserted claims of the patents-in-suit. In these Invalidity Contentions, including the exhibits, any citation to a printed publication or other reference describing a prior art system should also be construed to include a reference to the prior art system itself. Each listed document or item became prior art at least as early as the dates set forth herein. Google reserves the right to rely upon foreign counterparts of the U.S. Patents identified in these invalidity contentions, U.S. counterparts of foreign patents and foreign patent applications identified in these invalidity contentions, U.S. and foreign patents and patent applications corresponding to articles and publications identified in these invalidity contentions, and any systems, products, or prior inventions related to any of the references identified in these

Invalidity Contentions. The following patents and publications are prior art under at least 35 U.S.C. §§ 102(a), (b), (e), (f), and/or (g). The claim charts enclosed as Exhibits 1-195 identify specifically where each element of each asserted claim is disclosed in the prior art.[2]

|  | U.S. PATENT DOCUMENTS | Filing Date | Issue Date |
|---|---|---|---|
| 1. | U.S. Patent No. 5,132,992 to Yurt, et al. | Jan. 7, 1991 | July 21, 1992 |
| 2. | U.S. Patent No. 5,819,160 to Foladare, et al. | Sept. 18, 1996 | Oct. 6, 1998 |
| 3. | U.S. Patent No. 5,914,941 to Janky | May 25, 1995 | June 22, 1999 |
| 4. | U.S. Patent No. 5,966,440 to Hair | June 6, 1995 | Oct. 12, 1999 |
| 5. | U.S. Patent No. 5,557,541 to Schulhof, et al. | July 21, 1994 | Sept. 17, 1996 |
| 6. | U.S. Patent No. 5,864,868 to Contois | Feb. 13, 1996 | Jan. 26, 1999 |
| 7. | U.S. Patent No. 5,616,876 to Cluts | Apr. 19, 1995 | Apr. 1, 1997 |
| 8. | U.S. Patent No. 5,572,442 to Schulhof, et al. | July 21, 1994 | Nov. 5, 1996 |
| 9. | U.S. Patent No. 5,640,590 to Luther | Nov. 18, 1992 | June 17, 1997 |
| 10. | U.S. Patent No. 5,168,481 to Culbertson, et al. | Dec. 29, 1989 | Dec. 1, 1992 |
| 11. | U.S. Patent No. 5,347,082 to Ojima | Feb. 28, 1992 | Sept. 13, 1994 |
| 12. | U.S. Patent No. 5,355,302 to Martin, et al. | Mar. 6, 1992 | Oct. 11, 1994 |
| 13. | U.S. Patent No. 5,371,316 to Eitaki, et al. | May 5, 1993 | Dec. 6, 1994 |
| 14. | U.S. Patent No. 5,386,081 to Nakada, et al. | Jan. 14, 1993 | Jan. 31, 1995 |
| 15. | U.S. Patent No. 5,418,622 to Takeuchi | Oct. 27, 1993 | May 23, 1995 |
| 16. | U.S. Patent No. 5,481,509 to Knowles | Sept. 19, 1994 | Jan. 2, 1996 |
| 17. | U.S. Patent No. 5,524,051 to Ryan | Apr. 6, 1994 | June 4, 1996 |
| 18. | U.S. Patent No. 5,541,638 to Story | June 28, 1994 | July 30, 1996 |
| 19. | U.S. Patent No. 5,555,098 to Parulski | Apr. 26, 1994 | Sept. 10, 1996 |
| 20. | U.S. Patent No. 5,661,787 to Pocock | Oct. 27, 1994 | Aug. 26, 1997 |
| 21. | U.S. Patent No. 5,687,160, to Aotake, et al. | Aug. 8, 1995 | Nov. 11, 1997 |
| 22. | U.S. Patent No. 5,721,951 to DorEl | Feb. 24, 1995 | Feb. 24, 1998 |
| 23. | U.S. Patent No. 5,726,909 to Krikorian | Dec. 8, 1995 | Mar. 10, 1998 |

---

[2] With respect to the prior art produced under P.R. 3-4(b), some of the listed prior art materials are in the possession, custody, or control of third parties subject to subpoena and will be produced upon production.

| | U.S. PATENT DOCUMENTS | Filing Date | Issue Date |
|---|---|---|---|
| 24. | U.S. Patent No. 5,751,672 to Yankowski | July 26, 1995 | May 12, 1998 |
| 25. | U.S. Patent No. 5,754,784 to Garland, et al. | Aug. 15, 1996 | May 19, 1998 |
| 26. | U.S. Patent No. 5,774,859 to Houser, et al. | Jan. 3, 1995 | June 30, 1998 |
| 27. | U.S. Patent No. 5,798,921 to Johnson, et al. | May 5, 1995 | Aug. 25, 1998 |
| 28. | U.S. Patent No. 5,841,979 to Schulhof, et al. | May 7, 1996 | Nov. 24, 1998 |
| 29. | U.S. Patent No. 5,949,951 to Sklar, et al. | Nov. 8, 1996 | Sept. 7, 1999 |
| 30. | U.S. Patent No. 6,182,126 to Nathan, et al. | June 12, 1997 | Jan. 30, 2001 |
| 31. | U.S. Patent No. 6,392,633 to Leiper | Aug. 30, 2000 | May 21, 2002 |
| 32. | U.S. Patent No. 5,668,788 to Allison | June 10, 1996 | Sept. 16, 1997 |
| 33. | U.S. Patent No. 5,296,848 to Witheridge, et al. | Oct. 1, 1991 | Mar. 22, 1994 |
| 34. | U.S. Patent No. 5,428,732 to Hancock, et al. | Sept. 9, 1994 | June 27, 1995 |
| 35. | U.S. Patent No. 5,341,350 to Frank, et al. | Jan. 7, 1993 | Aug. 23, 1994 |
| 36. | U.S. Patent No. 5,781,889 to Martin, et al. | Jan. 11, 1996 | July 14, 1998 |
| 37. | U.S. Patent No. 5,793,980 to Glaser, et al. | Nov. 30, 1994 | Aug. 11, 1998 |
| 38. | U.S. Patent No. 5,594,601 to Mimick, et al. | May 3, 1995 | Jan. 14, 1997 |
| 39. | U.S. Patent No. 5,499,316 to Sudoh, et al. | June 24, 1992 | Mar. 12, 1996 |
| 40. | U.S. Patent No. 5,815,671 to Morrison | June 11, 1996 | Sept. 29, 1998 |
| 41. | U.S. Patent No. 5,740,134 to Peterson | Aug. 13, 1996 | Apr. 14, 1998 |
| 42. | U.S. Patent No. 5,583,560 to Florin, et al. | June 22, 1993 | Dec. 10, 1996 |
| 43. | U.S. Patent No. 5,404,505 to Levinson | Nov. 1, 1991 | Apr. 4, 1995 |
| 44. | U.S. Patent No. 6,453,281 to Walters, et al. | July 30, 1996 | Sept. 17, 2002 |
| 45. | U.S. Patent No. 5,712,949 to Kato, et al. | Jan. 24,1992 | Jan. 27, 1998 |
| 46. | U.S. Patent No. 8,769,297 to Rhoads | Sep. 8, 2003 | Jul. 1, 2014 |
| 47. | U.S. Patent No. 5,721,815 to Ottesen, et al. | Jun. 7, 1995 | Feb. 24, 1998 |
| 48. | U.S. Patent No. 5,924,624 to Katz, et al. | Sep. 12, 1996 | Jul. 20, 1999 |
| 49. | U.S. Patent No. 7,047,241 to Erickson | Oct. 11, 1996 | May 16, 2006 |
| 50. | U.S. Patent No. 5,638,443 to Stefik, et al. | Nov. 23,1994 | Jun. 10, 1997 |
| 51. | U.S. Patent No. 5,953,005 to Liu | Jun. 28, 1996 | Sep. 14,1999 |

| | FOREIGN PATENT DOCUMENTS | Country of Origin | Publication Date |
|---|---|---|---|
| 1. | FR 2714760[3] | France | July 7, 1995 |
| 2. | PCT Publication WO 95/10833 | U.S. | Apr. 20, 1995 |
| 3. | European Patent Application No. 0625771A2 to Tuttle ("Tuttle") | EP | Nov. 23, 1994 |
| 4. | UK Patent Application No. 2281434A to Sone ("Sone") | UK | Mar. 1, 1995 |
| 5. | European Patent Application Publication No. 0 548 597 A1 to Pascoe ("Pascoe") | EP | June 30, 1993 |
| 6. | PCT Publication 95/28701 to Labrosse ("Labrosse") | U.S. | Oct. 26, 1995 |
| 7. | PCT Publication WO 98/29835 to Kunkel, et al. ("Kunkel") | U.S. | July 9, 1998 |

Each of the following publications discloses and describes particular products and/or software programs that were publicly known and/or in public use prior to the filing dates of the patents-in-suit. Thus, in addition to each publication itself serving as a prior art reference under 35 U.S.C. § 102, the various products and/or software programs described in the publications may also serve as grounds for invalidity under 35 U.S.C. § 102 because they were in public use, in which case it would have been obvious to a person of ordinary skill in the art to combine the actual systems in public use with the published documents describing those systems because the documents described the systems in public use and refer to them throughout. In some of these cases, Google has obtained such products and/or software programs. In other cases, Google has served subpoenas and/or otherwise requested information pertaining to the products and/or software programs (and/or obtained the actual products and/or software programs themselves).

---

[3]   A translation of FR 2714760 was produced to Plaintiff at APP-PA00006605 in Plaintiff's prior litigation against Apple.

To the extent necessary, Google will amend and/or supplement these Invalidity Contentions based on information received in response.

| | PRIOR ART PUBLICATIONS | Publication Date |
|---|---|---|
| 1. | DAD486x Digital Audio Delivery System Operation Manual, version 6.0A, ENCO Systems, Inc. ("DAD Manual v6.0A") | June 30, 1995 |
| 2. | Sound Blaster 16 User's Guide for Windows 95, Creative Technology Ltd. ("Sound Blaster 16 User Guide") | Sept. 1995 |
| 3. | DADpro Digital Audio Delivery System (7 unnumbered pages), ENCO Systems, March 1996 ("DAD Brochure") | Mar. 1996 |
| 4. | Sound Blaster: Making WAVes with Multimedia, D. Day, et al., Prima Publishing ("Sound Blaster 'Making WAVes' Book") | 1995 |
| 5. | Loeb, S., "Architecting Personalized Delivery of Multimedia Information," Communications of the ACM, Vol. 35, No. 12 ("Loeb Article") | Dec. 1992 |
| 6. | Microsoft Windows 95 Resource Kit, Chapter 7, Microsoft Press ("Microsoft Windows 95 Resource Kit") | 1995 |
| 7. | Audioshop Manual, by Opcode Systems, Inc. ("Opcode Audioshop Manual") | 1991-1992 |
| 8. | "NewsComm: A Hand-Held Device For Interactive Access To Structured Audio" (82 pages), by Deb Kumar Roy ("Roy NewsComm Thesis") | May 12, 1995 |
| 9. | "NewsComm: A Hand-Held Interface For Interactive Access To Structured Audio" (9 pages), by Deb K. Roy, et al., Proceedings of the SIGCHI conference on Human factors in computing systems: common ground, Vancouver, British Columbia, Canada ("NewsComm presentation") | Apr. 13-18, 1996 (conference dates) |
| 10. | "Using Acoustic Structure In A Hand-Held Audio Playback Device," C. Schmandt, et al., IBM Systems Journal, vol. 35, nos. 3&4 ("NewsComm Journal Article") | accepted for publication June 14, 1996 |
| 11. | Voyetra AudioStation 2 User Manual ("Voyetra AudioStation User Manual")[4] | 1992-1996 |

---

[4]   According to information available at http://www.turtlebeach.com/company.aspx, AudioStation software was available beginning in 1992 ("As part of its multimedia initiative, in

|  | PRIOR ART PUBLICATIONS | Publication Date |
|---|---|---|
| 12. | Microsoft Windows Sound System, Software User's Guide, version 2 ("Microsoft Windows Sound System User Guide") | 1993 |
| 13. | "Comparative Design Review: An Exercise in Parallel Design," by Nielsen, J., et al., INTERCHI '93, pp. 414-417, ACM, U.S.A. ("Comparative Design Review Article" or "Nielsen Article")) | Apr. 24-29, 1993 |
| 14. | "VoiceNotes: A Speech Interface for a Hand-Held Voice Notetaker," by Stifelman, L., et al., INTERCHI '93, pp. 179-186, CM, U.S.A. ("VoiceNotes Article") | Apr. 24-29, 1993 |
| 15. | Sony Discman Operating Instructions for D-240, D-242CK, D-242SK, D-245, D-247 ("Sony D-240 Discman User Manual") | 1995 |
| 16. | Sony MDS-B1 MD Recorder Operation Manual, Revision 3, Sony Corporation Audio Group ("Sony MDS-B1 User Manual") | June 13, 1993 |
| 17. | Sony Discman Operating Instructions for D-232 / D-235 ("Sony D- 232 Discman User Manual") | 1994 |
| 18. | Sony MZ-1 Portable Minidisc Recorder Operating Instructions, Sony Corporation ("Sony MZ-1 User Manual") | 1992 |
| 19. | Sony MZ-1 Service Manual, published by Sony Home A&V Products Div. Quality Engineering Dept. ("Sony MZ-1 Service Manual") | Dec. 1992 |
| 20. | Sony MZ-B3 Portable Minidisc Recorder Operating Instructions, Sony Corporation ("Sony MZ-B3 User Manual") | 1995 |
| 21. | Sony MZ-R2 Portable Minidisc Recorder Operating Instructions, Sony Corporation ("Sony MZ-R2 User Manual") | 1993 |
| 22. | Sony MZ-R3 Portable Minidisc Recorder Operating Instructions, Sony Corporation ("Sony MZ-R3 User Manual") | 1995 |
| 23. | Using Director, by Macromedia, version 4, 2nd ed. ("Macromedia Director User Manual") | 1994 |
| 24. | "Audio Highway Announces The Listen Up Player – A New Device That Delivers Personalized Audio Content to | Sept. 23, 1996 |

---

1992 Voyetra developed AudioStation, which helps set the standard for today's PC jukebox programs.").

| | PRIOR ART PUBLICATIONS | Publication Date |
|---|---|---|
| | Information-Hungry, On-the-Go Consumers," press release ("Listen Up Player press release")[5] | |
| 25. | Using Windows Sound System 2, by Moore, M., et al., Que Corporation ("Windows Sound System Manual") | 1994 |
| 26. | U.S. Patent Application No. 10/083,902 to Chase (Publication No. 2002/0177914) ("Chase '914") | Nov. 28, 2002 |
| 27. | U.S. Provisional Patent Application No. 60/003,164 to Chase ("Chase '164") | Nov. 28, 2002 |
| 28. | Matthew Lake & Yael Li-Ron, Sight and Sound: Multimedia, PC Computing ("Lake") | Sept. 30, 1995 |
| 29. | Richard J. Beaton & Peter Wong, A Disk-Based System for the Subjective Assessment of High Quality Audio ("Beaton") | Mar. 19, 1993 |
| 30. | Ron Person, Special Edition Using Windows 95 ("Person Book") | Dec. 31, 1995 |
| 31. | Debby Hindus, Semi-Structured Capture and Display of Telephone Conversations ("Hindus Thesis") | Apr. 28, 1992 |
| 32. | Lisa Joy Stifelman, VoiceNotes: An Application for a Voice-Controlled Hand-Held Computer ("Stifelman Thesis") | May 8, 1992 |
| 33. | Christopher Horner, NewsTime: A Graphical User Interface to Audio News ("Horner Thesis") | July 12, 1993 |
| 34. | Thorsten Petrowski and Axel Stolz, Wicked Sounds for Windows ("Petrowski") | Dec. 31, 1992 |
| 35. | Bjørn Aarseth, The All-Digital Radio Station, Audio Engineering Society Preprint ("Aarseth") | May 14, 1996 |
| 36. | Sony HCD-241 Compact Disc Deck Receiver Operating Instructions ("Sony HCD-241 Manual") | 1994 |
| 37. | Andy Rathbone, "Dummies 101: Windows 95," ("Rathbone"), IDG Books | Mar. 26, 1996 |
| 38. | RealAudio Content Creation Guide, RealAudio Encoder Release 2.0, Progressive Networks Inc. | 1995-1996 |

---

[5]   Since the Listen Up Player press release and the publications disclosing the Listen Up Player device constitute a single prior art reference, these materials are collectively referred to herein as the "Listen Up Player Publication." Even if the documents regarding the Listen Up Player were not deemed to be a single reference, it would have been obvious to a person of ordinary skill in the art at the relevant time to combine them because they all describe the same system.

| | PRIOR ART PUBLICATIONS | Publication Date |
|---|---|---|
| 39. | The RealAudio Player Guide Version 2.0, Progressive Networks Inc. | 1996 |
| 40. | UNIX Quick Reference Guide | Sept. 1, 1995 |
| 41. | Macworld Music & Sound Bible | 1992 |
| 42. | Kan, Ti, *XMCD_1.2–X11/Motif CD Player (*"Kan") | Nov. 30, 1994 |
| 43. | Harold Davis, *Visual Basic 4 Secrets* | June 1996 |
| 44. | Robert Arnson*, The Waite Group's Visual Basic How-To* | 1992 |
| 45. | Gregory A. Wolking, *Edit Windows Recorder Macros,* PC Mag | Oct 24, 1995 |
| 46. | JSInc Help File ("JSInc") | Aug. 1995 |
| 47. | Sparkes, Dominic, *Cerberus Advances Online Audio; Service Says It Delivers CD Quality Fast,* Billboard | Aug. 6, 1994 |
| 48. | Pride, Dominic, *U.K. Bands Attach Convention Thru Internet; Cerberus Allows Unsigned Acts Exposure on System,* Billboard | Aug. 6, 1994 |
| 49. | Rosen, Nick, *Internet gives a break to budding pop stars,* The Sunday Times (London) | Aug. 7, 1994 |
| 50. | Watts, Susan, *Music industry faces up to computer rival; Susan Watts reports on a company offering music down the telephone line,* The Independent (London) | Aug. 20, 1994 |
| 51. | Bloom, James, *Playing at Musical Shares,* The Guardian (London) | Sept. 8, 1994 |
| 52. | Rosen, Nick, *Royalties Boost for Internet Music,* The Guardian (London) | Nov. 14, 1994 |
| 53. | Rawsthorn, Alice, *Wired for sound; On-line distribution of recordings puts the music industry in a quandary,* The Dallas Morning News | Nov. 27, 1994 |
| 54. | Watts, Susan, *Sound idea wins backing of IBM,* The Independent (London) | Dec. 22, 1994 |
| 55. | McClellan, Jim, *Cyberspace: On the Byte Tracks,* The Observer | Jan. 15, 1995 |
| 56. | James, Cooper, *Dawn of the electronic Our Price,* The Independent (London) | June 9, 1995 |
| 57. | *Cerberus Sound & Vision Reckons it has System for Offering Downloadable Music on the Internet,* Computergram International | Sept. 15, 1995 |

| | PRIOR ART PUBLICATIONS | Publication Date |
|---|---|---|
| 58. | *Online music distribution now a reality,* Pro Sound News Europe | Oct. 1995 |
| 59. | *Comment: Tapping to the Beat of a Digital Drummer: Fine Tuning U.S. Copyright Law for Music Distribution on the Internet,* 59 Alb. L. Rev. 789 | 1995 |
| 60. | *Comments: Dissemination of Digitized Music on the Internet: A Challenge to the Copyright Act,* Santa Clara Comp. & High Tech. L.J. 97 | Feb. 1996 |
| 61. | Austin, Marcus, *Special Report on the Internet: Selling with the personal touch - The Internet has become an effective marketing and sales tool, with operators able to build Web sites around individual users' needs and interests,* Marketing | June 27, 1996 |
| 62. | *Cercure ATM dispenses music online,* Pro Sound News Europe | Dec. 1996 |
| 63. | Cerberus Help Pages, available at https://cordis.europa.eu/infowin/acts/analysys/products/themat ic/multimed/clipdemo/cerberus/help.htm | 1995 |
| 64. | The Birth of MP3s? 1995, available at https://youtube/ZULzDuAkf_c | 1995 |

The following systems or software products are prior art under at least 35 U.S.C. §§ 102(a), (b), (f), and/or (g). Although Google's investigation continues, information available to date indicates that each system or software product was (i) known or used in this country before the alleged invention of the claimed subject matter of the asserted claims; (ii) was in public use and/or on sale in this country and/or was the subject of a printed publication more than one year before the filing date of the patent; and/or (iii) was invented by another who did not abandon, suppress, or conceal, before the alleged invention of the claimed subject matter of the asserted claims. The charts enclosed as Exhibits 1-195 specify where the limitations of the asserted claims in the patents-in-suit are disclosed in the prior art.

| | PRIOR ART SOFTWARE/SYSTEMS |
|---|---|
| 1. | DAD system |

| | PRIOR ART SOFTWARE/SYSTEMS |
|---|---|
| 2. | Opcode Audioshop |
| 3. | Sound Blaster 16 |
| 4. | Gravis Windecks[6] |
| 5. | Sony D-245 "Discman" Compact Disc Compact Player[7] |
| 6. | Sony D-121 "Discman" Compact Disc Compact Player |
| 7. | Sony D-2 "Discman" Compact Disc Compact Player |
| 8. | Sony D-11 "Discman" Compact Disc Compact Player |
| 9. | Sony D-141 "Discman" Compact Disc Compact Player |
| 10. | Sony D-143 "Discman" Compact Disc Compact Player |
| 11. | Sony HCD-241 Compact Disc Deck Receiver ("Sony HCD-241") |
| 12. | Sony MZ-1 Portable Minidisc Recorder[8] |
| 13. | NewsComm device[9] |
| 14. | Sony MDS-B1 MD Recorder[10] |
| 15. | Voyetra AudioStation[11] |
| 16. | Audio Highway Listen Up Player[12] |
| 17. | Computer with Windows 95 ("Windows 95") (Aug. 24, 1995) |
| 18. | Computer with WinPlay3, *e.g., v* 1.4 ("WinPlay3") (Mar. 31, 1996) |

---

[6]   Gravis Windecks version 1.12 (1995, 1996) runs on a PC with the Microsoft Windows 95 operating system.

[7]   The use and operation of the Sony D-245, D-121, D-2, D-11, D-141, and D-143 devices are similar to that described in the Sony D-232 Discman User Manual and the Sony D-240 Discman User Manual.

[8]   The Sony MZ-1 Portable Minidisc Recorder is described in the Sony MZ-1 User Manual.

[9]   The NewsComm device, which was publicly known and/or used prior to the filing dates of the patents-in-suit, is described in the Roy NewsComm Thesis and also described in the NewsComm presentation and the NewsComm Journal Article.

[10]   The Sony MDS-B1 MD Recorder is described in the Sony MDS-B1 User Manual.

[11]   The Voyetra AudioStation program is described in the Voyetra AudioStation 2 User Manual.

[12]   The Listen Up Player device is described in the Listen Up Player Publication.

|     | PRIOR ART SOFTWARE/SYSTEMS |
| --- | --- |
| 19. | Computer with Wicked Sounds software ("Wicked Sounds") (Dec. 31, 1992) [*see, e.g.*, Petrowski] |
| 20. | Computer with Creative EnsembleAV and associated SoundBlaster 16 software ("Creative EnsembleAV") (Dec. 31, 1995) [*see, e.g., S*ound Blaster "Making WAVes" Book] |
| 21. | Computer with admitted "conventional" hardware and software components (Dec. 31, 1995) |
| 22. | Sun Microsystems SparcStation 2 (described in SparcStation 2 Service Manual) (Dec. 31, 1991) |
| 23. | Computer with RealAudio Player, *e.g., v* 2.0 ("RealAudio 2.0")[13] |
| 24. | Computer with Unix (Sept. 1, 1995) |
| 25. | System with *XMCD_1.2–X11/Motif CD Player (*Nov. 30. 1994) |
| 26. | Cerberus System (1995) |
| 27. | Mod4Win 2.2 ("Mod4Win")[14] |

The claim charts attached as Exhibits 1-195 specify where the limitations of the asserted claims in the patents-in-suit are disclosed in the prior art. Specifically, as shown by Exhibits 1-195, each claim chart is directed to one of the asserted claims and details where the limitations of that asserted claim are disclosed in the prior art.

Appendix B identifies additional prior art from which disclosure is not specifically identified in Exhibits 1-195 due to one or more of the following reasons: (i) the art indicates and/or describes the state of the art during the relevant time; (ii) the art has substantially similar disclosures to other prior art of which disclosure is reflected in Exhibits 1-195; (iii) the prior art is used as supporting references in an obviousness combination; and/or (iv) Google is in the process of obtaining further detail regarding the prior art. Google reserves the right to update

---

[13]   RealAudio 2.0 is described in the RealAudio Content Creation Guide, RealAudio Encoder Release 2.0, and RealAudio Player Guide Version 2.0 publications.

[14]   Mod4Win 2.2 is describded in JSInc Help File ("JSInc") publication.

these disclosures and to specifically rely on any such reference to prove the invalidity of the asserted claims of the patents-in-suit at that time.

### A.      Anticipation and Obviousness

Google contends that each reference identified above, combined with the knowledge of persons of ordinary skill in the art at the relevant time, render the asserted claims of the patents-in-suit invalid under 35 U.S.C. §§ 102 and/or 103. The claim charts enclosed as Exhibits 1-195 specify, on a claim-by-claim basis, the disclosure in the prior art that anticipates each limitation of each asserted claim. In view of the disclosures identified in the claim charts enclosed as Exhibits 1-195, Google contends that at least each of the following prior art singly renders one or more of the asserted claims of the '076 patent and the '178 patents invalid as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103:[15]

1.      DAD486X Manual v. 6.0A (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

2.      DADPRO Brochure (at least claims 1, 3, 5-6, 14-15 of the '076 patent and claims 1, 9, 13-14 of the '178 patent);

3.      Sound Blaster 16 User Guide (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-9, 14-17, 28-29 of the '178 patent);

4.      Sound Blaster "Making WAVes With Multimedia" Book (at least claims 1-2, 4-6, 14 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

---

[15]   The claims identified in the parentheticals should not be taken as any admission that the reference does not anticipate, either explicitly and/or inherently, others of the asserted claims of the patents-in-suit. To the extent necessary, Google reserves the right to supplement these Invalidity Contentions to amend the listings of claims contended as being anticipated based on, for example, claim construction and/or other litigation positions taken by Personal Audio, discovery (including deposition testimony) of Plaintiff and/or third parties, the Court's claim construction order, and/or better understandings of the prior art resulting from recently or newly obtained information regarding particular prior art (including information suggesting the inherent disclosure of certain claim limitations). In the claim charts enclosed as Exhibits 1-195, to the extent that a certain limitation of an asserted claim is not explicitly cited in the disclosure of a particular prior art reference in this listing, that claim limitation is obvious over and/or inherent in that prior art reference.

5.      Listen Up Player Publication (at least claims 1-3, 13-15 of the '076 patent and claims 1-4, 8-9, 14, 29 of the '178 patent);

6.      Roy NewsComm Thesis (at least claims 1-2, 5-6, 13-14 of the '076 patent and claims 1-6, 8-9, 13-17, 28-29 of the '178 patent);

7.      NewsComm Presentation (at least claims 1-2, 5-6, 13-14 of the '076 patent and claims 1-3, 5, 9, 13-15, 17 of the '178 patent);

8.      NewsComm Journal Article (at least claims 1-2, 14 of the '076 patent and claims 1-6, 9, 13-15, 17 of the '178 patent);

9.      Comparative Design Review Article (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-16, 28-29 of the '178 patent);

10.     Loeb Article (at least claims 1, 14 of the '076 patent and claims 1-4, 8-11, 13-16, 28¬29 of the '178 patent);

11.     VoiceNotes Article (at least claims 1-2, 5-6, 13-14 of the '076 patent and claims 1, 5, 9, 14 of the '178 patent);

12.     U.S. Patent No. 5,132,992 to Yurt (at least claims 19, 21 of the '178 patent);

13.     U.S. Patent No. 5,864,868 to Contois (at least claims 1-2, 4-6, 14 of the '076 patent and claims 1-3, 5, 7-9, 13-16 of the '178 patent);

14.     U.S. Patent No. 5,640,590 to Luther (at least claims 1-2, 5-6, 14 of the '076 patent and claims 1-6, 8-9, 14-16, 28-29 of the '178 patent);

15.     U.S. Patent No. 5,661,787 to Pocock (at least claims 1-3, 14-15 of the '076 patent and claims 1-6, 8, 14-15, 28-29 of the '178 patent);

16.     U.S. Patent No. 5,726,909 to Krikorian (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

17.     U.S. Patent No. 5,793,980 to Glaser, et al. (at least claims 1-2, 14 of the '076 patent and claims 1-5, 8, 14-17, 28-29 of the '178 patent);

18.     U.S. Patent No. 5,949,951 to Sklar, et al. (at least claim 16 of the '178 patent);

19.     U.S. Patent No. 6,182,126 to Nathan, et al. (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-6, 8-9, 14-17, 28-29 of the '178 patent);

20.     U.S. Patent No. 5,751,672 to Yankowski (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

21.     U.S. Patent No. 5,616,876 to Cluts (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-10, 13-18, 21, 28-29 of the '178 patent);

22.     U.S. Patent No. 5,541,638 to Story (at least claims 1, 5-6, 14 of the '076 patent and claims 1-3, 8-9, 13-15, 17, 28-29 of the '178 patent);

23.     U.S. Patent No. 5,555,098 to Parulski (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-6, 8-9, 14-16, 28-29 of the '178 patent);

24.     U.S. Patent No. 5,386,081 to Nakada, et al. (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

25.     U.S. Patent No. 5,583,560 to Florin, et al. (at least claims 1-3, 14-15 of the '076 patent and claims 1-4, 8-9, 13-17, 29 of the '178 patent);

26.     U.S. Patent No. 5,774,859 to Houser, et al. (at least claims 13 of the '076 patent);

27.     U.S. Patent No. 5,819,160 to Foladare, et al. (at least claims 1, 5-6, 14 of the '076 patent and claims 1-2, 8-9, 13-14, 28-29 of the '178 patent);

28.     U.S. Patent No. 5,914,941 to Janky (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 13-17, 28-29 of the '178 patent);

29.     U.S. Patent No. 6,392,633 to Leiper (at least claim 13 of the '076 patent);

30.     Sony D-240 Discman User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-7, 14-15, 17 of the '178 patent);

31.     Sony D-232 Discman User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-7, 14-15, 17 of the '178 patent);

32.     Sony MZ-1 Service Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 28-29 of the '178 patent);

33.     Sony MZ-1 User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 28-29 of the '178 patent);

34.     Sony MZ-B3 User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

35.     Sony MZ-R2 User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 28-29 of the '178 patent);

36.     Sony MZ-R3 User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

37.     Sony MDS-B1 User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

38.     Macromedia Director User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-6, 8-9, 14, 16-17, 28 of the '178 patent);

39.     Opcode Audioshop Manual (at least claims 1-2, 4-6, 14 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

40.     Microsoft Windows Sound System User Guide (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

41.     Voyetra AudioStation User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 29 of the '178 patent);

42.     Using Windows Sound System 2 (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-17, 28-29 of the '178 patent);

43.     DAD system (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

44.     Gravis Windecks enabled system (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

45.     Opcode Audioshop enabled system (at least claims 1-2, 4-6, 14 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

46.     Sound Blaster 16 enabled system (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-17, 28-29 of the '178 patent);

47.     Voyetra AudioStation 2 enabled system[16] (at least claims 1-6 , 14-15 of the '076 patent and claims 1-9, 14-15, 28-29 of the '178 patent);

48.     NewsComm device[17] (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

49.     Audio Highway Listen Up Player (at least claims 1-3, 14-15 of the '076 patent and claims 1-4 of the '178 patent);

50.     Sony D-245 Discman[18] (at least claims 1-6, 14-15 of the '076 patent);

51.     Sony D-121 Discman (at least claims 1-6, 14-15 of the '076 patent);

---

[16]   Based on the disclosures in the Voyetra AudioStation 2 User Manual, the public availability and use of the actual Voyetra AudioStation 2 software form additional grounds for invalidity under 35 U.S.C. § 102.

[17]   Based on the disclosure in the Roy NewsComm Thesis, the public availability and use of the actual NewsComm device form additional grounds for invalidity under 35 U.S.C. § 102.

[18]   The Sony players identified in this list (D-245, D-121, D-2, D-11, D-141, D-143, MZ-1) each have the capability for RMS (program) play, which enables the user to create a playlist (*i.e.*, allows the user to select tracks for playback in a desired order).

52.     Sony D-2 Discman (at least claims 1-6, 14-15 of the '076 patent);

53.     Sony D-11 Discman (at least claims 1-6, 14-15 of the '076 patent);

54.     Sony D-141 Discman (at least claims 1-6, 14-15 of the '076 patent);

55.     Sony D-143 Discman (at least claims 1-6, 14-15 of the '076 patent);

56.     Sony MZ-1 Portable Minidisc Recorder (at least claims 1-6, 14-15 of the '076 patent);

57.     U.S. Patent No. 5,296,848 to Witheridge, et al. (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

58.     U.S. Patent No. 5,428,732 to Hancock, et al. (at least claim 1, 5-6, 14 of the '076 patent and claims 1, 8, 14, 28 of the '178 patent);

59.     U.S. Patent No. 5,499,316 to Sudoh, et al. (at least claims 1-6, 14-15 of the '076 patent and claims 1, 3-9, 14-15, 17, 28-29 of the '178 patent);

60.     U.S. Patent No. 5,594,601 to Mimick, et al. (at least claims 1, 4-6, 14 of the '076 patent and claims 1-3, 8-9, 14-15, 28-29 of the '178 patent);

61.     FR 2714760 (at least claims 1-2, 14-15 of the '076 patent and claims 1-6, 8-9, 13-14, 16, 28-29 of the '178 patent);

62.     U.S. Patent No. 5,721,951 to DorEl, et al. (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 14-15, 17, 28-29 of the '178 patent);

63.     Chase '914 (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-8, 14-15, 17, 28-29 of the '178 patent);

64.     Chase '164 (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

65.     Lake (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-17, 28-29 of the '178 patent);

66.     Beaton (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent);

67.     Person Book (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 14-17, 28-29 of the '178 patent);

68.     Hindus Thesis (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent);

69.     Stifelman Thesis (at least claims 1-6, 14-15 of the '076 patent and claim 1, 4-8, 14, 28 of the '178 patent);

70. Horner Thesis (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

71. Petrowski (at least claims 1-6, 14-15 of the '076 patent and claims 1-4, 6-9, 14-15, 28-29 of the '178 patent);

72. Wicked Sounds enabled system (at least claims 1-6, 13-15 of the '076 patent and claims 1-4, 6-9, 14-15, 28-29 of the '178 patent);

73. Tuttle (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-8, 14-16, 28-29 of the '178 patent);

74. Aarseth (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-9, 13-15, 17, 28-29 of the '178 patent);

75. WinPlay3 (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 14-17, 28-29 of the '178 patent);

76. Conventional Computer Running Windows 95 (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent);

77. Creative EnsembleAV (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent);

78. RealAudio 2.0 enabled system (at least claims 1-2, 5-6, 14-15 of the '076 patent and claims 1, 4-5, 8-9, 14-17, 28-29 of the '178 patent);

79. U.S. Patent No. 6,453,281 to Walters, et al. (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-6, 8-9, 14, 16-17, 28-29 of the '178 patent);

80. Macworld Music & Sound Bible (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

81. Kan (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

82. JSInc (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

83. Cerberus (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 10-17, 19-21, 28-29 of the '178 patent);

84. IPR References (U.S. Patent Application Pub. No. 2002/0177914 to Tim Chase ("Chase"); Loeb, S., "Architecting Personalized Delivery of Multimedia Information", Communications of the ACM, December 1992, Vol. 35, No. 12 ("Loeb"); and related proceedings PTAB-IPR2015-00845; PTAB-IPR2015-00846; *Google LLC v. Personal Audio, LLC*, Case Nos. 2017-1162, 2017-1166,

2017-2110, 2017-2011 (Fed. Cir. Aug. 1, 2018)) (at least claims 1 and 4 of the '076 patent and claims 1-4, 9 and 13 of the '178 patent);

85.  Mod4Win System (at least claims 1-6, 14-15 of the '076 patent and claims 1-11, 13-17, 28-29 of the '178 patent);

86.  NewsComm System (at least claims 1-2, 5-6, 13-14 of the '076 patent and claims 1-6, 8-18, 20, 28-29 of the '178 patent).

Each anticipatory prior art reference, either alone or in combination with other prior art, also renders the asserted claims obvious to one of ordinary skill in the art. In particular, each anticipatory prior art reference on its own renders obvious the claimed inventions and also may be combined with (i) information known to persons skilled in the art at the time of the alleged invention and/or (ii) any of the other anticipatory prior art references. To the extent that Plaintiff contends that any of the anticipatory prior art fails to disclose explicitly or inherently one or more limitations of the asserted claims, Google reserves the right to argue that any difference between the reference and the corresponding patent claims would have been obvious to one of ordinary skill in the art even if it has not specifically denoted that the reference is to be combined with the knowledge of a person of ordinary skill in the art. Further, Google reserves the right to identify other prior art references that, when combined with anticipatory prior art, would render the claims obvious.

The Supreme Court clarified the standard for what types of inventions are patentable. *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1731 (2007) ("the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results"). In particular, the Supreme Court emphasized that inventions arising from ordinary innovation, ordinary skill or common sense should not be patentable. *See id.* at 1732,1738-39, 1742-43, 1746. Because both the '076 patent and the '178 patent simply combine elements well known in the art in a straightforward fashion to achieve a well-known and obvious

result and thus yield no more than one skilled in the art would expect from such combinations, the claims of those patents are obvious. The asserted claims are therefore invalid under 35 U.S.C. § 103 because they do nothing more than combine known techniques and apparatuses according to their known and ordinary uses to yield predictable results.

The Supreme Court further held that "[w]hen a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill ...." *See id*. at 1740. Accordingly, a person of skill in the art would have been motivated to combine or adapt known or familiar methods in the art, especially where market forces prompt such variations.

In view of *KSR*, the United States Patent and Trademark Office issued a set of new Examination Guidelines. *See* Examination Guidelines for Determining Obviousness Under 35 U.S.C. § 103, 72 Fed. Reg. 57526 (Oct. 10, 2007). These Guidelines identify various rationales under *KSR* for finding a claim obvious at the time of the filing of the application for this patent, including those based on other precedents, including but not limited to:

(A)     Combining prior art elements according to known methods to yield predictable results;

(B)     Simple substitution of one known element for another to obtain predictable results;

(C)     Use of known techniques to improve similar devices (methods, or products) in the same way;

(D)     Applying a known technique to a known device (method, or product) ready for improvement to yield predictable results;

(E)     "Obvious to try" – choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

(F)     Known work in one field of endeavor may prompt variations of it for use in either the same field or a different one based on design incentives or other market forces if the variations would have been predictable to one of ordinary skill in the art;

(G)     Some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior art reference or to combine prior art reference teachings to arrive at the claimed invention. *See* 72 Fed. Reg. 57529. These rationales apply in rendering obvious the asserted claims of the patents-in-suit. Here, the state of the art at the relevant time expressly taught and suggested combining features from various well known media players. As a result, one skilled in the art would have known to combine or modify references that described known systems and methods which one of skill in the art would have recognized as offering improvements to solutions at that time. Each of the prior art references identified herein described systems and methods that were known to offer such improvements, and, accordingly, one of skill in the art would have been motivated to combine or modify the references as described herein.

Further, as detailed in Appendix A, each prior art reference may be categorized as being part of one or more particular prior art groups.[19] In light of the various reasons to combine discussed in detail below, invalidity under 35 U.S.C. § 103 can be based on one or more references in one prior art group combined with one or more references in another prior art group. If and to the extent Plaintiff argues that one or more of these references, combined with the knowledge of persons of ordinary skill in the art at the relevant time, fails to disclose one or more specific elements of an asserted claim, Google reserves the right to rely on the combination of one or more of the references disclosed herein, including the art identified in Appendix B, with one or more other references disclosed herein, including the art identified in Appendix B. Further, to the extent Plaintiff argues that claim elements that are not disclosed in the specifications of the asserted patents and/or related applications were enabled, Google reserves the right to rely on the combination of one or more of the references disclosed herein, including the art identified in Appendix B, with one or more other references disclosed herein, including the art identified in Appendix B.

## B. Motivation To Combine

Motivation exists to combine one or more of the references included in these Invalidity Contentions with each other. Generally, motivation to combine any of these references with others exists within the references themselves, as well as within the knowledge of those of ordinary skill in the art at the relevant time. For example, many of these references identify and

---

[19]   Inclusion of one prior art reference in one group does not in any way mean that that reference cannot be categorized as being part of another group. Moreover, the groupings shown in Appendix A are not intended to be exhaustive of all the prior art references that can be categorized in each respective group. To the extent necessary, Google reserves the right to amend and/or supplement these Invalidity Contentions to revise the groupings shown in Appendix A.

address the same technical issues and suggest very similar solutions to those issues in the field of audio storage and playback. Moreover, several of these references cross-reference and/or discuss one another, thereby providing an explicit motivation to combine such references and further illustrating the close technical relationship among this group of references. If and to the extent that Plaintiff challenges the correspondence of any of these references with respect to particular elements of the asserted claims of the patents-in-suit, Google reserves the right to supplement these Invalidity Contentions to identify additional motivations to combine particular references with one another to the extent necessary. Google may rely upon a subset of the references or all of the references depending upon the Court's claim construction and further investigation. Google's contentions that the references in this section, in various combinations, render the asserted claims of the patents-in-suit obvious under 35 U.S.C. § 103 are in no way an admission or suggestion that each reference does not independently anticipate the asserted claims under 35 U.S.C. § 102. Any of the references disclosed herein, including the art identified in Appendix B, may be combined with other references disclosed herein, including the art identified in Appendix B, to render obvious, and therefore invalid, each of the asserted claims of the patent-in-suit.

During prosecution of the '076 patent and the '178 patent, the Applicant made various admissions as to what was known at the relevant time.[20] For example, during prosecution of the '076 patent, the Applicant stated:

---

[20]   Google hereby incorporates by reference the grounds for claim rejections set forth by the United States Patent and Trademark Office during the prosecution of the '076 patent and the '178 patent.

> It is to be understood that applicant does not claim that all of the functions set forth in the dependent claims are patentable *per se*. Plainly, for example, conventional CD players allow the user to skip forward to the beginning of the next track on the disk or to skip backward to preceding tracks, eight-track tape cartridges formed an "endless loop" for continuous play, and VCR systems commonly include fast forward, reverse and slow motion playback capabilities which vary the rate at which the programs are reproduced. None of these, however,

*See* '076 patent prosecution history, Mar. 3, 2000 Response at 5. The Applicant argued that the prior art relied on by the Examiner failed to disclose "a file of data which establishes the sequence in which program segments are scheduled to be reproduced." *See id*. However, and as clearly evident from the references identified in these Invalidity Contentions and the accompanying claim charts, having a "playlist" that specified the order by which program segments would play was not a novel idea or feature at the relevant time. Rather, such a "playlist" feature was very well known prior to any alleged invention by Plaintiff.

Unlike records, cassettes, and video tapes which store and present media tracks in a fixed order, a collection of digital audio files on a computer has no predefined order. If a user wishes to listen to more than one audio file in a session, some mechanism for ordering the audio files is required. A playlist is an obvious choice to meet this need. Moreover, as the prior art references show, playlists were well known and used regularly in a wide variety of audio systems including CD players, radio broadcasting systems, stereo systems, personal audio systems, jukeboxes, karaoke players, and home audio software. Further, porting familiar user interface and navigation features (skip forward, skip back, repeat) from portable audio devices (*e.g.*, Walkman, Discman) and stereo systems to enable navigation and playback of digital audio content was standard

practice, as evidenced by most of the prior art references cited.[21] *See, e.g.*, U.S. Patent No. 5,751,672 to Yankowski at 10:4-29; Nielsen Article; U.S. Patent No. 5,721,951 to DorEl at 6:22-28. Conversely, designing audio playback software to emulate common features of audio reproduction devices such as CD players, broadcasting systems, jukeboxes, karaoke machines, mixers, and audio editing devices, or porting common features of these devices to portable electronic devices, was also already commonplace prior to 1996.[22] Thus, with respect to the '076 patent and the '178 patent, to the extent that a particular single prior art reference does not either explicitly or inherently disclose both the claimed playback control and playlist limitations, it would have been obvious to one of ordinary skill in the art to use the admittedly prior art playback controls to navigate through a "playlist" of program segments. In general, therefore, it also would have been obvious to combine any reference disclosing the use of a playlist of program segments with any other reference disclosing controls (*e.g.*, skip forward button) to play program segments.

One would also be motivated to combine the identified prior art references because the references address the same or similar issues, *i.e.*, facilitating user access to, interaction with, and enjoyment of digital audio content. Further, the prior art references teach complementary technical features such as navigation controls, playlists, audio compression, file transfer, and graphical user interface features (*e.g.*, scrollable displays) to address these issues. Persons of skill in the art would have recognized that there were no significant impediments (technological or

---

[21]   For example, Nielsen shows three different user interface designs from designers at three different companies given the same general requirements for a PC-based music application. All three designers chose to use conventional playback controls to control navigation and a scrollable list to display the contents of a user generated playlist.

[22]   The asserted claims of the patents-in-suit are not limited to portable devices nor to consumer electronics.

otherwise) to combining elements and features from different references. Indeed, the prior art references evidence a mixing-and-matching of the same basic features into different combinations. Further, that many of the prior art references use conventional computer hardware and basic software both enables and motivates the combination of these features. Indeed, the patents themselves recommend the use of "conventional laptop[s] or desktop personal computer[s]" with a "conventional" sound card, a "conventional" display, a "standard" keyboard, the Windows 95 operating system, and a "conventional high speed modem" to implement the player. *See* '076 patent at 4:32-5:45.

Developments in the art would also provide motivation to combine prior art references in ways that would take advantage of those developments. For example, in the early to mid-1990s, significant advances were made in audio compression. For example, MPEG compression, including layer III compression, was well known in the field prior to the filing date of the patents-in-suit. *See, e.g.*, U.S. Patent No. 5,914,941 to Janky at 12:63-13:3; Chase '914 ¶¶ 15, 50. Furthermore, the internet boom was in full swing by this time as well. Countless websites, usenet groups, and BBS boards promoted access to information about music on the internet and provided audio content. *See generally, e.g.*, Ben Greenman, NetMusic, (Michael Wolff & Co. 1995); Ted Gurley and W.T. Pfefferle, Plug In: The Guide to Music on the Net, (Prentice Hall April 1996); Brad Hill, The Virtual Musician, (Schirmer Books August 1996). Personal Audio's patents acknowledge "Internet Radio" and specifically "the popular 'Real Audio' program offered by Progressive Networks" as prior art. *See* '076 patent at 1:50-63. In addition, the use of personal computers for enjoyment of multimedia was increasing. Windows 95, released in August 1995, included a host of multimedia programs and features (*e.g.*, CD Player, Media Player, Sound Recorder) that allowed users to access and enjoy digital audio and video content.

*See, e.g.*, Lake, and Person Book at Chapters 31-35. Sound cards, including the popular SoundBlaster series of sound cards, had become staple components of personal computers, allowing for improved audio functionality and performance. Hard disk capacity was also steadily increasing which, combined with advances in audio compression, made it more feasible to store (whether temporarily or persistently) a library of audio files on a personal computer. Google may rely on cited or uncited portions of the prior art, other documents, and expert testimony to establish that a person of ordinary skill in the art would have been motivated to modify or combine the prior art so as to render the claims invalid as obvious. In the event Plaintiff challenges the motivation to combine particular prior art references, Google reserves the right to supplement these contentions to further specify the motivation to combine the prior art to the extent necessary.

One would have known that triggering different functions based upon whether or not a predetermined amount of time has passed between user commands is a common technology in software field. For example, Windows operating system can distinguish consecutive single click commands from a double click command based on the time elapsed between the first and the second click commands. If the time passed between the first click and the second click exceeds a predetermined time, Windows considers the event as two separate single click commands. Conversely, if the time passed between the first click and the second click does not exceed the predetermined time, Windows considers the event as a single double click command. Depending on whether the event is a double click or two single clicks, a Windows application can be programmed to act differently. *See, e.g.,* Harold Davis, *Visual Basic 4 Secrets* (June 1996) at p. 52; *Robert Arnson, The Waite Group's Visual Basic How-To* (1992) at pp. 144-14; Gregory A. Wolking, *Edit Windows Recorder Macros*, PC Mag at 270 (Oct 24, 1995).

In particular, the asserted claims of the patents-in-suit are rendered obvious under 35 U.S.C. § 103 in view of at least the following exemplary combinations of references and reasons to combine:

### 1. Any of the DAD References With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of any of the DAD Manual v6.0A, DAD Brochure and DAD system (collectively "DAD References") with the teachings from any one or more of the "Image" references in Appendix A. Each of the DAD References and multiple "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the DAD References to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were well adapted to storing images and such images were widely used in association with multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the DAD References with that of any one or more of the "Image" references to render obvious claims 16 and 17 of the '178 patent.

### 2. Any of the DAD References With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of any of the DAD Manual v6.0A, DAD Brochure and DAD system (collectively "DAD References") with the teachings from any one or more of the "Voice Command" references in Appendix A. Each of the DAD References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the DAD References to turn to the teachings of any one or more of the "Voice Command" references

to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the DAD References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

3.       **Any of the DAD References With Any One or More of the "Subscription / Purchase Audio" References**

It would have been obvious to combine the disclosure of any of the DAD Manual v6.0A, DAD Brochure and DAD system (collectively "DAD References") with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Each of the DAD References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the DAD References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the DAD References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

4.       **Any of the DAD References With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of any of the DAD Manual v6.0A, DAD Brochure and DAD system (collectively "DAD References") with the teachings from any

one or more of the "Encryption / Decryption" references in Appendix A. Each of the DAD References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the DAD References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the DAD References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

5.     **Any of the Opcode Audioshop References With Any One or More of the "Skip Back – Previous Track (1)" References**

It would have been obvious to combine the disclosure of each of the Opcode Audioshop Manual and Opcode Audioshop enabled system (collectively "Opcode Audioshop References") with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of the Opcode Audioshop References and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Opcode Audioshop References to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous

track was admittedly well known.[23] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Opcode Audioshop References with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

> **6.** **Any of the Opcode Audioshop References With Any One or More of the "Preferences" References**

It would have been obvious to combine the disclosure of any of the "Opcode Audioshop" references with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the Opcode Audioshop References and multiple "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Opcode Audioshop References to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Opcode Audioshop References with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

---

[23]   During prosecution of the '076 patent, the Applicant admitted that the playback controls claimed in both patents were well known: "It is to be understood that Applicant does not claim that all of the functions set forth in the dependent claims are patentable per se. ***Plainly, for example, conventional CD players allow the user to skip forward to the beginning of the next track on the disk or to skip backward to preceding tracks*** ...." *See* '076 patent prosecution history, Mar. 3, 2000 Response at 5 (emphasis added).

7.     **Any of the Opcode Audioshop References With Any One or More of the "Image" References**

It would have been obvious to combine the disclosure of any of the Opcode Audioshop References with the teachings from any one or more of the "Image" references in Appendix A. Computer systems were well adapted to storing images and such images were widely used in association with multimedia data. Each of the Opcode Audioshop References and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Opcode Audioshop References to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Opcode Audioshop References with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

8.     **Any of the Opcode Audioshop References With Any One or More of the "Voice Command" References**

It would have been obvious to combine the disclosure of any of the Opcode Audioshop References with the teachings from any one or more of the "Voice Command" references in Appendix A. Each of the Opcode Audioshop References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Opcode Audioshop References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including

multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Opcode Audioshop References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

9.    **Any of the Opcode Audioshop References With Any One or More of the "Subscription / Purchase Audio" References**

It would have been obvious to combine the disclosure of any of the Opcode Audioshop References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Each of the Opcode Audioshop References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Opcode Audioshop References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Opcode Audioshop References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

10.    **Any of the Opcode Audioshop References With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of any of the Opcode Audioshop References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Each of the Opcode Audioshop References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Opcode Audioshop

References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Opcode Audioshop References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 11.    Any of the Sound Blaster References With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of any of the Sound Blaster 16 User Guide, Sound Blaster "Making WAVEs" Book and Sound Blaster 16 enabled system (collectively "Sound Blaster References") with the teachings from any one or more of the "Downloading Audio" references in Appendix A. Each of the Sound Blaster References and the "Downloading Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Sound Blaster References to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

12. **Any of the Sound Blaster References With Any One or More of the "Downloading Playlist" References**

It would have been obvious to combine the disclosure of any of the Sound Blaster References with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each of the "Sound Blaster" references and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Sound Blaster References to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

13. **Any of the Sound Blaster References With Any One or More of the "Preferences" References**

It would have been obvious to combine the disclosure of any of the Sound Blaster References with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the "Sound Blaster" references and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the "Preferences" references to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences

and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

14.    **Any of the Sound Blaster References With Any One or More of the "Voice Command" References**

It would have been obvious to combine the disclosure of any of the Sound Blaster References with the teachings from any one or more of the "Voice Command" references in Appendix A. Each of the Sound Blaster References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Sound Blaster References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

15.    **Any of the Sound Blaster References With Any One or More of the "Subscription / Purchase Audio" References**

It would have been obvious to combine the disclosure of any of the Sound Blaster References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Each of the Sound Blaster References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Sound Blaster

References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

        **16.**      **Any of the Sound Blaster References With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of any of the Sound Blaster References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Each of the Sound Blaster References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Sound Blaster References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 17. Gravis Windecks With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of a Gravis Windecks enabled system with the teachings from any one or more of the "Downloading Audio" references in Appendix A. Each of a Gravis Windecks enabled system and the "Downloading Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Gravis Windecks enabled system to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of a Gravis Windecks enabled system with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 18. Gravis Windecks With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of a Gravis Windecks enabled system with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each of the Gravis Windecks enabled system and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Gravis Windecks enabled system to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that

multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of a Gravis Windecks enabled system with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

19.     **Gravis Windecks With Any One or More of the "Preferences" References**

It would have been obvious to combine the disclosure of a Gravis Windecks enabled system with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the Gravis Windecks enabled system and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of a Gravis Windecks enabled system to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of a Gravis Windecks enabled system with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

20.     **Gravis Windecks With Any One or More of the "Voice Command" References**

It would have been obvious to combine the disclosure of a Gravis Windecks enabled system with the teachings from any one or more of the "Voice Command" references in Appendix A. Gravis Windecks enabled system and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art

presented with the disclosure of Gravis Windecks enabled system to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of Gravis Windecks enabled system with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 21. Gravis Windecks With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of a Gravis Windecks enabled system with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Gravis Windecks enabled system and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Gravis Windecks enabled system to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Gravis Windecks enabled system with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 22.     Gravis Windecks With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of a Gravis Windecks enabled

system with the teachings from any one or more of the "Encryption / Decryption" references in

Appendix A. Gravis Windecks enabled system and multiple "Encryption / Decryption"

references are directed to the field of media players, and it would have been obvious to one

skilled in the art presented with the disclosure of Gravis Windecks enabled system to turn to the

teachings of any one or more of the "Encryption / Decryption" references to result in operation

that would have been predictable in nature and would improve and/or personalize the use and/or

operation of the media player(s). Computer systems were used to encrypt and decrypt data since

the 1970s, and encryption schemes were commonly used to protect multimedia data.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

Gravis Windecks enabled system with that of any one or more of the "Encryption / Decryption"

references to render obvious at least claim 21 of the '178 patent.

### 23.     Any of the Windows Sound System References With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of any of the Windows Sound

System Manual and Microsoft Windows Sound System User Guide (collectively "Windows

Sound System References") with the teachings from any one or more of the "Downloading

Audio" references in Appendix A. Each of the Windows Sound System References and the

"Downloading Audio" references are directed to the field of media players, and it would have

been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound

System References to turn to the teachings of any one or more of the "Downloading Audio"

references to result in operation that would have been predictable in nature and would improve

and/or personalize the use and/or operation of the media player(s). It was well known to those of

ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 24. Any of the Windows Sound System References With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of any of the Windows Sound System References with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each of the Windows Sound System References and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound System References to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 25. Any of the Windows Sound System References With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of any of the Windows Sound System References with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the Windows Sound System References and the "Preferences" references

are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the "Preferences" references to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

26.   **Any of the Windows Sound System References With Any One or More of the "Voice Command" References**

It would have been obvious to combine the disclosure of any of the Windows Sound System References with the teachings from any one or more of the "Voice Command" references in Appendix A. Any of the Windows Sound System References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound System References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

27.   **Any of the Windows Sound System References With Any One or More of the "Subscription / Purchase Audio" References**

It would have been obvious to combine the disclosure of any of the Windows Sound System References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Any of the Windows Sound System References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound System References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

28.   **Any of the Windows Sound System References With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of any of the Windows Sound System References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Any of the Windows Sound System References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound System References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer

systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 29.   U.S. Patent No. 5,819,160 to Foladare With Any One or More of the "Skip Forward" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Skip Forward" references in Appendix A. Each of U.S. Patent No. 5,819,160 to Foladare, et al. and the "Skip Forward" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Skip Forward" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip forward was admittedly well known.[24] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Skip Forward" references to render obvious claims 1 and 14 of the '076 patent and claims 4 and 14 of the '178 patent (and any dependent claims).

### 30.   U.S. Patent No. 5,819,160 With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Skip Back – Current Track (1)"

---

[24]   *See supra* n.22.

references in Appendix A. Each of U.S. Patent No. 5,819,160 to Foladare, et al. and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 31. U.S. Patent No. 5,819,160 With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of U.S. Patent No. 5,819,160 to Foladare, et al. and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[25]

---

[25]   *See supra* n.22.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 32. U.S. Patent No. 5,819,160 to Foladare, et al. With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of U.S. Patent No. 5,819,160 to Foladare, et al. and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[26] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent (and any dependent claims).

---

[26] During prosecution of the '076 patent, the Applicant admitted that repeat functionality was well known: "It is to be understood that Applicant does not claim that all of the functions set forth in the dependent claims are patentable *per se*. Plainly, for example, conventional CD players allow the user to skip forward to the beginning of the next track on the disk or to skip backward to preceding tracks, ***eight-track cartridges formed an 'endless loop' for continuous play*** ...." *See* '076 patent prosecution history, Mar. 3, 2000 Response at 5 (emphasis added).

### 33.   U.S. Patent No. 5,819,160 With Any One or More of the "Playlist Edit" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Playlist Edit" references in Appendix A. Each of U.S. Patent No. 5,819,160 to Foladare, et al. and the "Playlist Edit" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Playlist Edit" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known at the relevant time to allow a user to add, change the order of, and/or remove tracks in a playlist. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Playlist Edit" references to render obvious claims 5 and 6 of the '076 patent (and any dependent claims).

### 34.   U.S. Patent No. 5,819,160 to Foladare, et al. With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Voice Command" references in Appendix A. U.S. Patent No. 5,819,160 to Foladare, et al. and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with

microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

> **35.    U.S. Patent No. 5,819,160 With Any One or More of the "Subscription / Purchase Audio" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Any of the Windows Sound System References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound System References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

> **36.    U.S. Patent No. 5,819,160 With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. U.S. Patent No. 5,819,160 to Foladare, et al. and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been

obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

**37.     Loeb With Any One or More of the "Store Audio" References**

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Store Audio" references in Appendix A. Each of the Loeb Publication and the "Store Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Store Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). The ability to store audio in a media player designed to play audio was fundamentally well known long before the patents-in-suit. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Store Audio" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 38.    Loeb With Any One or More of the "Playlist" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Playlist" references in Appendix A. Each of the Loeb Publication and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio tracks. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 39.    Loeb With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Downloading Audio" references in Appendix A. Each of the Loeb Publication and the "Downloading Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one

or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 40.   Loeb With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each of the Loeb Publication and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 41.   Loeb With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of the Loeb Publication and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Remaining Time" references to

result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known with multimedia players to display how much play time is left of a currently playing track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

> **42.     Loeb With Any One or More of the "Skip Back – Current Track (1)" References**

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of the Loeb Publication and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

> **43.     Loeb With Any One or More of the "Skip Back – Current Track (2)" References**

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of the Loeb Publication and the "Skip Back – Current Track (2)" references are directed

to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 44. Loeb With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of the Loeb Publication and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[27] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Skip Back – Previous

---

[27] *See supra* n.22.

Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 45.     Loeb With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of the Loeb Publication and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[28] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 46.     Loeb With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of the Loeb Publication and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Playlist Repeat" references to

---

[28]   *See supra* n.22.

result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[29] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 47. Loeb With Any One or More of the "Playlist Edit" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Playlist Edit" references in Appendix A. Each of the Loeb Publication and the "Playlist Edit" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Playlist Edit" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known at the relevant time to allow a user to add, change the order of, and/or remove tracks in a playlist. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Playlist Edit" references to render obvious claims 5 and 6 of the '076 patent (and any dependent claims).

### 48. Loeb With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Voice Command" references in Appendix A. Loeb Publication and multiple "Voice Command" references are directed to the field of media players,

---

[29] *See supra* n.25.

and it would have been obvious to one skilled in the art presented with the disclosure of Loeb Publication to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Loeb Publication with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 49. Loeb With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Loeb Publication and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Loeb Publication to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Loeb Publication with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 50.   Loeb With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Loeb Publication and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Loeb Publication to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Loeb Publication with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 51.   Any of the NewsComm References or NewsComm System With Any One or More of the "Playlist" References

It would have been obvious to combine the disclosure of any of the Roy NewsComm Thesis, NewsComm Presentation, NewsComm Journal Article, and NewsComm System (collectively "NewsComm References") with the teachings from any one or more of the "Playlist" references in Appendix A. Each of the NewsComm References and multiple "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio. Accordingly, for

at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

**52.    Any of the NewsComm References With Any One or More of the "Image" References**

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Image" references in Appendix A. Each of the NewsComm References and multiple "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were well adapted to storing images and such images were widely used in association with multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

**53.    Any of the NewsComm References With Any One or More of the "Remaining Time" References**

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of the NewsComm References and multiple "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been

predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known with multimedia players to display how much play time is left of a currently playing track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

54. **Any of the NewsComm References With Any One or More of the "Skip Back – Current Track (1)" References**

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of the NewsComm References and multiple "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

55. **Any of the NewsComm References With Any One or More of the "Skip Back – Current Track (2)" References**

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Skip Back – Current Track (2)"

references in Appendix A. Each of the NewsComm References and multiple "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

> **56.    Any of the NewsComm References With Any One or More of the "Skip Back – Previous Track (1)" References**

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of the NewsComm References and multiple "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[30] Accordingly, for at least these

---

[30]    *See supra* n.22.

reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

**57.    Any of the NewsComm References With Any One or More of the "Skip Back – Previous Track (2)" References**

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of the NewsComm References and multiple "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[31] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

**58.    Any of the NewsComm References With Any One or More of the "Playlist Repeat" References**

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of the NewsComm References and multiple "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art

---

[31]    *See supra* n.22.

presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[32] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 59.    Any of the NewsComm References With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Track ID" references in Appendix A. Each of the NewsComm References and multiple "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known, as illustrated by the references identified herein, to have information for identifying a given audio track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

---

[32]    *See supra* n.25.

### 60.   Any of the NewsComm References With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Voice Command" references in Appendix A. Any of the NewsComm References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 61.   Any of the NewsComm References With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Any of the NewsComm References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia

libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

62.    **Any of the NewsComm References With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Any of the NewsComm References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

63.    **Comparative Design Review Article With Any One or More of the "Store Audio" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Store Audio" references in Appendix A. Each of the Comparative Design Review Article and the "Store Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or

more of the "Store Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). The ability to store audio in a media player designed to play audio was fundamentally well known long before the patents-in-suit. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Store Audio" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 64.   Comparative Design Review Article With Any One or More of the "Playlist" References

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Playlist" references in Appendix A. Each of the Comparative Design Review Article and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 65.   Comparative Design Review Article With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Downloading Audio" references in

Appendix A. Each of the Comparative Design Review Article and the "Downloading Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

66.   **Comparative Design Review Article With Any One or More of the "Downloading Playlist" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each of the Comparative Design Review Article and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the

Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

> **67.    Comparative Design Review Article With Any One or More of the "Remaining Time" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of the Comparative Design Review Article and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known with multimedia players to display how much play time is left of a currently playing track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

> **68.    Comparative Design Review Article With Any One or More of the "Skip Back – Current Track (1)" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of the Comparative Design Review Article and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review

Article to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 69. Comparative Design Review Article With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of the Comparative Design Review Article and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

70.     **Comparative Design Review Article With Any One or More of the
"Skip Back – Previous Track (1)" References**

It would have been obvious to combine the disclosure of the Comparative Design Review
Article with the teachings from any one or more of the "Skip Back – Previous Track (1)"
references in Appendix A. Each of the Comparative Design Review Article and the "Skip Back –
Previous Track (1)" references are directed to the field of media players, and it would have been
obvious to one skilled in the art presented with the disclosure of the Comparative Design Review
Article to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)"
references to result in operation that would have been predictable in nature and would improve
and/or personalize the use and/or operation of the media player(s). A playback control button to
skip back to a previous track was admittedly well known.[33] Accordingly, for at least these
reasons, it would have been obvious to combine the teachings of the Comparative Design
Review Article with that of any one or more of the "Skip Back – Previous Track (1)" references
to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

71.     **Comparative Design Review Article With Any One or More of the
"Skip Back – Previous Track (2)" References**

It would have been obvious to combine the disclosure of the Comparative Design Review
Article with the teachings from any one or more of the "Skip Back – Previous Track (2)"
references in Appendix A. Each of the Comparative Design Review Article and the "Skip Back –
Previous Track (2)" references are directed to the field of media players, and it would have been
obvious to one skilled in the art presented with the disclosure of the Comparative Design Review
Article to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)"

---

[33]   *See supra* n.22.

references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[34] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

> 72.    **Comparative Design Review Article With Any One or More of the "Playlist Repeat" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of the Comparative Design Review Article and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[35] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

---

[34]  *See supra* n.22.

[35]  *See supra* n.25.

73.    **Comparative Design Review Article With Any One or More of the "Track ID" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Track ID" references in Appendix A. Each of the Comparative Design Review Article and the "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known, as illustrated by the references identified herein, to have information for identifying a given audio track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

74.    **Comparative Design Review With Any One or More of the "Voice Command" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Voice Command" references in Appendix A. Comparative Design Review Article and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Comparative Design Review Article to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Comparative Design Review Article with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

## 75.   Comparative Design Review With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Comparative Design Review Article and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Comparative Design Review Article to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Comparative Design Review Article with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

## 76.   Comparative Design Review With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Comparative Design Review Article and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Comparative Design Review Article to turn to

the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Comparative Design Review Article with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 77.    VoiceNotes Article With Any One or More of the "Playlist" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Playlist" references in Appendix A. Each of the VoiceNotes Article and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 78.    VoiceNotes Article With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each

of the VoiceNotes Article and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

79. **VoiceNotes Article With Any One or More of the "Display Track" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Display Track" references in Appendix A. Each of the VoiceNotes Article and the "Display Track" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Display Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known that prior art multimedia players would indicate the track being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Display Track" references to render obvious claims 2, 3, 14, and 15 of the '178 patent (and any dependent claims).

### 80.    VoiceNotes Article With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Display Playlist" references in Appendix A. Each of the VoiceNotes Article and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known that prior art multimedia players would indicate all or part of the playlist being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 81.    VoiceNotes Article With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Image" references in Appendix A. Each of the VoiceNotes Article and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were well adapted to storing images and such images were widely used in association with multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

the VoiceNotes Article with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

**82.    VoiceNotes Article With Any One or More of the "Remaining Time" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of the VoiceNotes Article and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known with multimedia players to display how much play time is left of a currently playing track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

**83.    VoiceNotes Article With Any One or More of the "Skip Back – Current Track (1)" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of the VoiceNotes Article and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact

disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 84. VoiceNotes Article With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of the VoiceNotes Article and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 85. VoiceNotes Article With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of the VoiceNotes Article and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or

more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[36] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

86.    **VoiceNotes Article With Any One or More of the "Skip Back – Previous Track (2)" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of the VoiceNotes Article and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[37] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

---

[36]   *See supra* n.22.

[37]   *See supra* n.22.

### 87.   VoiceNotes Article With Any One or More of the "Skip to Track" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Skip to Track" references in Appendix A. Each of the VoiceNotes Article and the "Skip to Track" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Skip to Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Prior art multimedia players provided controls to allow a user to skip to a particular track that the user wanted to listen to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Skip to Track" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 88.   VoiceNotes Article With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of the VoiceNotes Article and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[38] Accordingly, for at least

---

[38] *See supra* n.25.

these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article

with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the

'076 patent and claim 7 of the '178 patent (and any dependent claims).

### 89.    VoiceNotes Article With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the

teachings from any one or more of the "Track ID" references in Appendix A. Each of the

VoiceNotes Article and the "Track ID" references are directed to the field of media players, and

it would have been obvious to one skilled in the art presented with the disclosure of the

VoiceNotes Article to turn to the teachings of any one or more of the "Track ID" references to

result in operation that would have been predictable in nature and would improve and/or

personalize the use and/or operation of the media player(s). It was very well known, as illustrated

by the references identified herein, to have information for identifying a given audio track.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

the VoiceNotes Article with that of any one or more of the "Track ID" references to render

obvious claims 8 and 28 of the '178 patent (and any dependent claims).

### 90.    VoiceNotes Article With Any One or More of the "Description" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the

teachings from any one or more of the "Description" references in Appendix A. Each of the

VoiceNotes Article and the "Description" references are directed to the field of media players,

and it would have been obvious to one skilled in the art presented with the disclosure of the

VoiceNotes Article to turn to the teachings of any one or more of the "Description" references to

result in operation that would have been predictable in nature and would improve and/or

personalize the use and/or operation of the media player(s). It was well known with prior art

multimedia players to have description information about audio files that could be played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Description" references to render obvious claims 8 and 29 of the '178 patent (and any dependent claims).

91.     **VoiceNotes Article With Any One or More of the "Preferences" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the VoiceNotes Article and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

92.     **VoiceNotes Article With Any One or More of the "Subscription / Purchase Audio" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. VoiceNotes Article and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of VoiceNotes Article to turn to the teachings of any one or more of the

"Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings VoiceNotes Article with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

93. **VoiceNotes Article With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. VoiceNotes Article and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of VoiceNotes Article to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of VoiceNotes Article with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

94. **Voyetra AudioStation User Manual With Any One or More of the "Downloading Audio" References**

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Downloading Audio" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Downloading Audio"

references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 95.   Voyetra AudioStation User Manual With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more

of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 96.    Voyetra AudioStation User Manual With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Image" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were well adapted to storing images and such images were widely used in association with multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

### 97.    Voyetra AudioStation User Manual With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or

operation of the media player(s). It was well known with multimedia players to display how much play time is left of a currently playing track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

###### 98.     Voyetra AudioStation User Manual With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

###### 99.     Voyetra AudioStation User Manual With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Skip Back –

Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 100.   Voyetra AudioStation User Manual With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[39] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User

---

[39]   *See supra* n.22.

Manual with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 101.   Voyetra AudioStation User Manual With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[40] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 102.   Voyetra AudioStation User Manual With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Track ID" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more

---

[40]   *See supra* n.22.

of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known, as illustrated by the references identified herein, to have information for identifying a given audio track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

### 103.   Voyetra AudioStation User Manual With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 104.   Voyetra AudioStation User Manual With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Voice Command" references in

Appendix A. Voyetra AudioStation User Manual and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Voyetra AudioStation User Manual with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

> ### 105. Voyetra AudioStation User Manual With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Voyetra AudioStation User Manual and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings Voyetra AudioStation User Manual with that of any one or more of the

"Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

**106.    Voyetra AudioStation User Manual With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Voyetra AudioStation User Manual and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Voyetra AudioStation User Manual with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

**107.    FR 2714760 With Any One or More of the "Playlist" References**

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Playlist" references in Appendix A. Each of FR 2714760 and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known to allow a user to create a

playlist specifying the order of playing selected audio. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 108.    FR 2714760 With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each of FR 2714760 and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 109.    FR 2714760 With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Display Playlist" references in Appendix A. Each of FR 2714760 and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that

would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known that prior art multimedia players would indicate all or part of the playlist being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 110.    FR 2714760 With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of FR 2714760 and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known with multimedia players to display how much play time is left of a currently playing track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

### 111.    FR 2714760 With Any One or More of the "Skip Forward" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip Forward" references in Appendix A. Each of FR 2714760 and the "Skip Forward" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the

teachings of any one or more of the "Skip Forward" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip forward was admittedly well known.[41] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Skip Forward" references to render obvious claims 1 and 14 of the '076 patent and claims 4 and 14 of the '178 patent (and any dependent claims).

### 112.    FR 2714760 With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of FR 2714760 and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

---

[41] *See supra* n.22.

### 113.   FR 2714760 With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of FR 2714760 and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 114.   FR 2714760 With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of FR 2714760 and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A

playback control button to skip back to a previous track was admittedly well known.[42]

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 115.   FR 2714760 With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of FR 2714760 and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[43]

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 116.   FR 2714760 With Any One or More of the "Skip to Track" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip to Track" references in Appendix A. Each of FR 2714760 and the "Skip to Track" references are directed to the field of media players, and it would have been

---

[42]   *See supra* n.22.

[43]   *See supra* n.22.

obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip to Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Prior art multimedia players provided controls to allow a user to skip to a particular track that the user wanted to listen to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Skip to Track" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 117.    FR 2714760 With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of FR 2714760 and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[44] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

---

[44] *See supra* n.25.

### 118. FR 2714760 With Any One or More of the "Playlist Edit" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Playlist Edit" references in Appendix A. Each of FR 2714760 and the "Playlist Edit" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Playlist Edit" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known at the relevant time to allow a user to add, change the order of, and/or remove tracks in a playlist. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Playlist Edit" references to render obvious claims 5 and 6 of the '076 patent (and any dependent claims).

### 119. FR 2714760 With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Track ID" references in Appendix A. Each of FR 2714760 and the "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known, as illustrated by the references identified herein, to have information for identifying a given audio track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

### 120.    FR 2714760 With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Preferences" references in Appendix A. Each of FR 2714760 and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 121.    FR 2714760 With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Voice Command" references in Appendix A. FR 2714760 and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to

combine the teachings of FR 2714760 with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 122.    FR 2714760 With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. FR 2714760 and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 123.    FR 2714760 With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. FR 2714760 and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and

decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 124.    U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known with multimedia players to display how much play time is left of a currently playing track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

### 125.    U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to

Luther to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 126. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 127. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[45] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 128. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)"

---

[45] *See supra* n.22.

references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[46] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 129. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Skip to Track" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Skip to Track" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Skip to Track" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Skip to Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Prior art multimedia players provided controls to allow a user to skip to a particular track that the user wanted to listen to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Skip to Track" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

---

[46] *See supra* n.22.

### 130.   U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[47] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 131.   U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Track ID" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very

---

[47]   *See supra* n.25.

well known, as illustrated by the references identified herein, to have information for identifying

a given audio track. Accordingly, for at least these reasons, it would have been obvious to

combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the

"Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent

claims).

### 132.   U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Description" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to

Luther with the teachings from any one or more of the "Description" references in Appendix A.

Each of U.S. Patent No. 5,640,590 to Luther and the "Description" references are directed to the

field of media players, and it would have been obvious to one skilled in the art presented with the

disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of

the "Description" references to result in operation that would have been predictable in nature and

would improve and/or personalize the use and/or operation of the media player(s). It was well

known with prior art multimedia players to have description information about audio files that

could be played. Accordingly, for at least these reasons, it would have been obvious to combine

the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the

"Description" references to render obvious claims 8 and 29 of the '178 patent (and any

dependent claims).

### 133.   U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to

Luther with the teachings from any one or more of the "Preferences" references in Appendix A.

Each of U.S. Patent No. 5,640,590 to Luther and the "Preferences" references are directed to the

field of media players, and it would have been obvious to one skilled in the art presented with the

disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 134.   U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Voice Command" references in Appendix A. U.S. Patent No. 5,640,590 to Luther and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 135. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. U.S. Patent No. 5,640,590 to Luther and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 136. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. U.S. Patent No. 5,640,590 to Luther and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt

data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 137.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 138.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Image" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the

disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more

of the "Image" references to result in operation that would have been predictable in nature and

would improve and/or personalize the use and/or operation of the media player(s). Computer

systems were well adapted to storing images and such images were widely used in association

with multimedia data. Accordingly, for at least these reasons, it would have been obvious to

combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of

the "Image" references to render obvious claim 16 of the '178 patent (and any dependent

claims).

### 139.    U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to

Krikorian with the teachings from any one or more of the "Remaining Time" references in

Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and the "Remaining Time"

references are directed to the field of media players, and it would have been obvious to one

skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn

to the teachings of any one or more of the "Remaining Time" references to result in operation

that would have been predictable in nature and would improve and/or personalize the use and/or

operation of the media player(s). It was well known with multimedia players to display how

much play time is left of a currently playing track. Accordingly, for at least these reasons, it

would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian

with that of any one or more of the "Remaining Time" references to render obvious claim 17 of

the '178 patent (and any dependent claims).

### 140.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[48] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 141.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve

---

[48]   *See supra* n.25.

and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 142.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 143.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Skip Back – Previous Track (1)"

references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[49] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 144. U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[50] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to

---

[49] *See supra* n.22.

[50] *See supra* n.22.

Krikorian with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 145.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Track ID" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and the "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known, as illustrated by the references identified herein, to have information for identifying a given audio track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

### 146.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Voice Command" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or

operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

147.    **U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Subscription / Purchase Audio" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

148.    **U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and multiple "Encryption /

Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 149.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Downloading Audio" references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and the "Downloading Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

150. **U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Downloading Playlist" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

151. **U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Playlist Repeat" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user

to repeat playback of a playlist.[51] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

**152.    U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Skip Back – Current Track (1)" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

**153.    U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Skip Back – Current Track (2)" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Skip Back – Current Track (2)"

---

[51]    *See supra* n.25.

references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 154. U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[52] Accordingly, for at least

---

[52] *See supra* n.22.

these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 155. U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[53] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 156. U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Preferences" references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art

---

[53] *See supra* n.22.

presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 157. U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Voice Command" references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 158.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 159.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Each of U.S. Patent No. 5,751,672 to Yankowski and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt

data since the 1970s, and encryption schemes were commonly used to protect multimedia data.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Encryption /

Decryption" references to render obvious at least claim 21 of the '178 patent.

### 160.    RealAudio 2.0 With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the

teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of the

RealAudio 2.0 and the "Playlist Repeat" references are directed to the field of media players, and

it would have been obvious to one skilled in the art presented with the disclosure of RealAudio

2.0 to turn to the teachings of any one or more of the "Playlist Repeat" references to result in

operation that would have been predictable in nature and would improve and/or personalize the

use and/or operation of the media player(s). Various prior art multimedia players admittedly

allowed a user to repeat playback of a playlist.[54] Accordingly, for at least these reasons, it would

have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of

the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the

'178 patent (and any dependent claims).

### 161.    RealAudio 2.0 With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the

teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix

A. Each of the RealAudio 2.0 and the "Skip Back – Current Track (1)" references are directed to

the field of media players, and it would have been obvious to one skilled in the art presented with

---

[54]  *See supra* n.25.

the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Skip Back –
Current Track (1)" references to result in operation that would have been predictable in nature
and would improve and/or personalize the use and/or operation of the media player(s). It was
well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the
ability to restart playback of a track that the user was listening to. Accordingly, for at least these
reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any
one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14
of the '076 patent (and any dependent claims).

### 162. RealAudio 2.0 With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the
teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix
A. Each of the RealAudio 2.0 and the "Skip Back – Current Track (2)" references are directed to
the field of media players, and it would have been obvious to one skilled in the art presented with
the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Skip Back –
Current Track (2)" references to result in operation that would have been predictable in nature
and would improve and/or personalize the use and/or operation of the media player(s). It was
well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the
ability to restart playback of a track that the user was listening to. Accordingly, for at least these
reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any
one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14
of the '178 patent (and any dependent claims).

### 163.   RealAudio 2.0 With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of the RealAudio 2.0 and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[55] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 164.   RealAudio 2.0 With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the RealAudio 2.0 and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user.

---

[55]   *See supra* n.22.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

**165.   RealAudio 2.0 With Any One or More of the "Display Playlist" References**

It would have been obvious to combine the disclosure of the RealAudio 2.0 with the teachings from any one or more of the "Display Playlist" references in Appendix A. Each of the RealAudio 2.0 and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the RealAudio 2.0 to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known that prior art multimedia players would indicate all or part of the playlist being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the RealAudio 2.0 with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

**166.   RealAudio 2.0 With Any One or More of the "Skip to Track" References**

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Skip to Track" references in Appendix A. Each of the RealAudio 2.0 and the "Skip to Track" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the RealAudio 2.0 to turn to the teachings of any one or more of the "Skip to Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Prior art multimedia players

provided controls to allow a user to skip to a particular track that the user wanted to listen to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the RealAudio 2.0 with that of any one or more of the "Skip to Track" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

**167.   RealAudio 2.0 With Any One or More of the "Voice Command" References**

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Voice Command" references in Appendix A. Each of RealAudio 2.0 and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

**168.   RealAudio 2.0 With Any One or More of the "Subscription / Purchase Audio" References**

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Each of RealAudio 2.0 and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been

130

predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 169. RealAudio 2.0 With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. RealAudio 2.0 and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 170. Any of the Computer Jukebox References With Loeb

Each of the DAD References, Opcode Audioshop References, Sound Blaster References, Windows Sound System References, Gravis Windecks, Voyetra AudioStation User Manual and Macromedia Director User Manual (collectively "Computer Jukebox References") discloses the ability of a listener to build a music playlist by selecting audio cuts from a library. *See, e.g.*,

DAD Manual v6.0A, at 3-9 ("The left side of the screen is a Library display, which allows you to search for and display cuts in the audio library. The right side of the screen is where you will build your playlist."). One skilled in the art presented with such disclosure in any one of the Computer Jukebox References would be motivated to increase the power of this interface by expanding the ways in which the computer can assist the user in selecting audio cuts. The Loeb Article discloses a manner by which audio tracks may be selected based on a user profile and/or on the user's opinions of previously played audio. *See* Loeb Article, at 45 ("the *LyricTime* prototype selects songs from a database and plays them for the listener. More specifically, to select songs from the database, it uses the information filter which implements the model described in the previous section, using descriptions of the songs, a listener profile, and feedback from the listener. The listener can step through the selected songs, look at title and artist information, or have the *LyricTime* prototype play them. The listener profile provides listener specific preference information to the filter. Listeners can have different profiles for different moods. Listener feedback is used to update the profile based on the listener's opinion of songs that have been played."). Thus, one skilled in the art would be motivated to combine the teachings of any one of the Computer Jukebox References and the Loeb Article to implement a more powerful interface for selecting audio cuts for a playlist, to render obvious, for example, claims 9, 10, 13, 14, and 18 of the '178 patent.

### 171. Any of the Computer Jukebox References With Any One or More of the "Downloading Audio" References

To the extent not already addressed above, it would have been obvious to combine the disclosure of any one of the Computer Jukebox References with the teachings from any one or more of the "Downloading Audio" references in Appendix A. Each of the Computer Jukebox References and multiple "Downloading Audio" references are directed to the field of media

players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Computer Jukebox References to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any one of the Computer Jukebox References with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 172. Any of the Computer Jukebox References With Any One or More of the "Downloading Playlist" References

To the extent not already addressed above, it would have been obvious to combine the disclosure of any one of the Computer Jukebox References with the teachings from any one or more of the "Downloading Playlist" references in Appendix A. Each of the Computer Jukebox References and multiple "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Computer Jukebox References to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any one of the Computer Jukebox References with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 173.    Any of the Computer Jukebox References With Any One or More of the "Voice Command" References

To the extent not already addressed above, it would have been obvious to combine the disclosure of any one of the Computer Jukebox References with the teachings from any one or more of the "Voice Command" references in Appendix A. Any one of the Computer Jukebox References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any one of the Computer Jukebox References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any one of the Computer Jukebox References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 174.    Any of the Computer Jukebox References With Any One or More of the "Subscription / Purchase Audio" References

To the extent not already addressed above, it would have been obvious to combine the disclosure of any one of the Computer Jukebox References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Any one of the Computer Jukebox References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any one of the Computer Jukebox References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the

use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any one of the Computer Jukebox References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

**175.    Any of the Computer Jukebox References With Any One or More of the "Encryption / Decryption" References**

To the extent not already addressed above, it would have been obvious to combine the disclosure of any one of the Computer Jukebox References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Any one of the Computer Jukebox References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any one of the Computer Jukebox References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any one of the Computer Jukebox References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

**176.    U.S. Patent No. 6,453,281 to Walters With Any One or More of the "Preferences" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 6,453,281 to Walters, et al. with the teachings from any one or more of the "Preferences" references in

Appendix A. Each of U.S. Patent No. 6,453,281 to Walters, et al. and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 6,453,281 to Walters, et al. to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 6,453,281 to Walters, et al. with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 177.   U.S. Patent No. 6,453,281 to Walters With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of the U.S. Patent No. 6,453,281 to Walters, et al. with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. U.S. Patent No. 6,453,281 to Walters, et al. and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 6,453,281 to Walters, et al. to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[56] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 6,453,281 to Walters, et al. with that of any one or

---

[56]   *See supra* n.25.

more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 178.   U.S. Patent No. 6,453,281 to Walters With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of the U.S. Patent No. 6,453,281 to Walters, et al. with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Each of U.S. Patent No. 6,453,281 to Walters, et al. and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 6,453,281 to Walters, et al. to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 6,453,281 to Walters, et al. with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 179.   U.S. Patent No. 6,453,281 to Walters With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of the U.S. Patent No. 6,453,281 to Walters, et al. with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Each of U.S. Patent No. 6,453,281 to Walters, et al. and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 6,453,281 to Walters, et al. to turn to the teachings of any one or more of the "Encryption /

Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 6,453,281 to Walters, et al. with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 180. Macworld Music & Sound Bible With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of Macworld Music & Sound Bible with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the Macworld Music & Sound Bible and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Macworld Music & Sound Bible to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Macworld Music & Sound Bible with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 181. Macworld Music & Sound Bible With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of Macworld Music & Sound Bible with the teachings from any one or more of the "Voice Command" references in Appendix A.

Each of Macworld Music & Sound Bible and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Macworld Music & Sound Bible to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Macworld Music & Sound Bible with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 182.   Macworld Music & Sound Bible With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of Macworld Music & Sound Bible with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Macworld Music & Sound Bible and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Macworld Music & Sound Bible to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Macworld Music & Sound Bible with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 183.   Macworld Music & Sound Bible With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of Macworld Music & Sound Bible with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Each of Macworld Music & Sound Bible and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Macworld Music & Sound Bible to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Macworld Music & Sound Bible with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 184.   WinPlay3 With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the WinPlay3 and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

WinPlay3 with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

185.    **WinPlay3 With Any One or More of the "Display Playlist" References**

It would have been obvious to combine the disclosure of the WinPlay3 with the teachings from any one or more of the "Display Playlist" references in Appendix A. Each of the WinPlay3 and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the WinPlay3 to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known that prior art multimedia players would indicate all or part of the playlist being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the WinPlay3 with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

186.    **WinPlay3 With Any One or More of the "Playlist Edit" References**

It would have been obvious to combine the disclosure of the WinPlay3 with the teachings from any one or more of the "Playlist Edit" references in Appendix A. Each of the WinPlay3 and the "Playlist Edit" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the WinPlay3 to turn to the teachings of any one or more of the "Playlist Edit" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known at the relevant time to allow a user to add, change the order of, and/or remove tracks in a playlist. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

the WinPlay3 with that of any one or more of the "Playlist Edit" references to render obvious claims 5 and 6 of the '076 patent (and any dependent claims).

187. **WinPlay3 With Any One or More of the "Skip Back – Current Track (2)" References**

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of the WinPlay3 and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

188. **WinPlay3 With Any One or More of the "Skip Back – Previous Track (2)" References**

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of the WinPlay3 and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control

button to skip back to a previous track was admittedly well known.[57] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 189. WinPlay3 With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Voice Command" references in Appendix A. WinPlay3 and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 190. WinPlay3 With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. WinPlay3 and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the

---

[57] *See supra* n.22.

disclosure of WinPlay3 to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 191.    WinPlay3 With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. WinPlay3 and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 192.    JSInc and Mod4Win With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of JSInc and Mod4Win with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the

JSInc, Mod4Win and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of JSInc and and Mod4Win to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of JSInc and and Mod4Win with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

> ### 193. JSInc and Mod4Win With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of the JSInc and Mod4Win with the teachings from any one or more of the "Display Playlist" references in Appendix A. Each of the JSInc and Mod4Win and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the JSInc and Mod4Win to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known that prior art multimedia players would indicate all or part of the playlist being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the JSInc and Mod4Win with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 194.   JSInc and Mod4Win With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of JSInc and Mod4Win with the teachings from any one or more of the "Image" references in Appendix A. Each of JSInc and Mod4Win and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of JSInc and Mod4Win to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were well adapted to storing images and such images were widely used in association with multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of JSInc and Mod4Win with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

### 195.   JSInc and Mod4Win With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of JSInc and Mod4Win with the teachings from any one or more of the "Voice Command" references in Appendix A. JSInc and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of JSInc and Mod4Win to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to

combine the teachings of JSInc and Mod4Win with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 196. JSInc and Mod4Win With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of JSInc and Mod4Win with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. JSInc and Mod4Win and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of JSInc to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of JSInc and Mod4Win with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 197. JSInc and Mod4Win With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of JSInc and Mod4Win with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. JSInc and Mod4Win and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of JSInc and Mod4Win to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer

systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of JSInc and Mod4Win with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 198.   Kan With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the Kan and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 199.   Kan With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Display Playlist" references in Appendix A. Each of the Kan and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the JSInc to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known that prior art multimedia players would indicate all or

part of the playlist being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 200. Kan With Any One or More of the "Display Track" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Display Track" references in Appendix A. Each of the Kan and the "Display Track" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Display Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known that prior art multimedia players would indicate the track being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Display Track" references to render obvious claims 2, 3, 14, and 15 of the '178 patent (and any dependent claims).

### 201. Kan With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of the Kan and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[58]

---

[58] *See supra* n.25.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 202. Kan With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Image" references in Appendix A. Each of Kan and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were well adapted to storing images and such images were widely used in association with multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

### 203. Kan With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Voice Command" references in Appendix A. Kan and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

Kan with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 204.   Kan With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Kan and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 205.   Kan With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Kan and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 206.   Cerberus With Any One or More of the "Playlist" References

It would have been obvious to combine the Cerberus System (described by the references listed in the Cerberus claim charts) with the teachings from any one or more of the "Playlist" references in Appendix A. Each of the Cerberus System and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Cerberus System to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio tracks. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Cerberus System with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 207.   Cerberus With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of the Cerberus System (described by the references listed in the Cerberus claim charts) with the teachings from any one or more of the "Display Playlist" references in Appendix A. Each of the Cerberus System and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Cerberus System to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or

operation of the media player(s). It was very well known that prior art multimedia players would indicate all or part of the playlist being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Cerberus System with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

208.   **Cerberus With Any One or More of the "Playlist Repeat" References**

It would have been obvious to combine the disclosure of the Cerberus System (described by the references listed in the Cerberus claim charts) with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of the Cerberus System and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Cerberus System to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[59] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Cerberus System with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

209.   **Cerberus With Any One or More of the "Voice Command" References**

It would have been obvious to combine the disclosure of the Cerberus System (described by the references listed in the Cerberus claim charts) with the teachings from any one or more of

---

[59]   *See supra* n.25.

the "Voice Command" references in Appendix A. The Cerberus System and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Cerberus System to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Cerberus System with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 210. The IPR References With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of the IPR References with the teachings from any one or more of the "Image" references in Appendix A. The IPR References and multiple "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the IPR References to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were well adapted to storing images and such images were widely used in association with multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the IPR References with that of any one or more of the "Image" references to render obvious claims 16 and 17 of the '178 patent.

### 211.   The IPR References With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of the IPR References with the teachings from any one or more of the "Voice Command" references in Appendix A. The IPR References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the IPR References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the IPR References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 212.   The IPR References With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of the IPR References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Each of the DAD References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the IPR References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the IPR References with

that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 213.   The IPR References With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of the IPR References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. The IPR References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the IPR References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the IPR References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 214.   The IPR References With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of the IPR References with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. The IPR References and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the IPR References to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A

playback control button to skip back to a previous track was admittedly well known.[60]

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the IPR References with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 215.   The IPR References With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of the IPR References with the teachings from any one or more of the "Preferences" references in Appendix A. The IPR References and multiple "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the IPR References to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the IPR References with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

---

[60]   During prosecution of the '076 patent, the Applicant admitted that the playback controls claimed in both patents were well known: "It is to be understood that Applicant does not claim that all of the functions set forth in the dependent claims are patentable per se. ***Plainly, for example, conventional CD players allow the user to skip forward to the beginning of the next track on the disk or to skip backward to preceding tracks*** ...." *See* '076 patent prosecution history, Mar. 3, 2000 Response at 5 (emphasis added).

### 216.   The IPR References With Any One or More of the "Playlist" References

It would have been obvious to combine the IPR References with the teachings from any one or more of the "Playlist" references in Appendix A. The IPR References and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the IPR References to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio tracks. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the IPR References with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 217.   The IPR References With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of the IPR References with the teachings from any one or more of the "Display Playlist" references in Appendix A. Each of the IPR References and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the IPR References to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was very well known that prior art multimedia players would indicate all or part of the playlist being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the IPR References

with that of any one or more of the "Display Playlist" references to render obvious claims 2 and

14 of the '178 patent (and any dependent claims).

### 218.   The IPR References With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of the IPR References with the

teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of the

IPR References  and the "Playlist Repeat" references are directed to the field of media players,

and it would have been obvious to one skilled in the art presented with the disclosure of the IPR

References to turn to the teachings of any one or more of the "Playlist Repeat" references to

result in operation that would have been predictable in nature and would improve and/or

personalize the use and/or operation of the media player(s). Various prior art multimedia players

admittedly allowed a user to repeat playback of a playlist.[61] Accordingly, for at least these

reasons, it would have been obvious to combine the teachings of the IPR References with that of

any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent

and claim 7 of the '178 patent (and any dependent claims).

### 219.   The IPR References With Any One or More of the "Display Track" References

It would have been obvious to combine the disclosure of the IPR References with the

teachings from any one or more of the "Display Track" references in Appendix A. Each of the

IPR References and the "Display Track" references are directed to the field of media players, and

it would have been obvious to one skilled in the art presented with the disclosure of the IPR

References to turn to the teachings of any one or more of the "Display Track" references to result

in operation that would have been predictable in nature and would improve and/or personalize

---

[61]   *See supra* n.25.

the use and/or operation of the media player(s). It was very well known that prior art multimedia players would indicate the track being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the IPR References with that of any one or more of the "Display Track" references to render obvious claims 2, 3, 14, and 15 of the '178 patent (and any dependent claims).

### 220.   Additional Combinations of References

To the extent not already addressed above, it would also have been obvious to combine the disclosures of the following references for the reasons explained above.

- U.S. Patent No. 5,616,876 to Cluts in combination with either DAD References, WinPlay3, U.S. Patent No. 5,914,941 to Janky, Chase '914, Chase '164, Sound Blaster References, Sony HCD-241, Windows 95, U.S. Patent No. 5,751,672 to Yankowski, or Petrowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- U.S. Patent No. 5,721,951 to DorEl in combination with either DAD References, WinPlay3, Labrosse, Horner Thesis, Chase '914, Chase '164, Pascoe, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,751,672 to Yankowski, Petrowski, Sound Blaster References, or Nielsen Article (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- U.S. Patent No. 5,751,672 to Yankowski in combination with either DAD References, WinPlay3, Pascoe, Horner Thesis, Chase '914, Chase '164, Sone, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,914,941 to Janky, or U.S. Patent No. 5,481,509 to Knowles (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- U.S. Patent No. 5,914,941 to Janky in combination with either DAD References, WinPlay3, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, Horner Thesis, Windows 95, Sound Blaster References, Nielsen Article, Sony HCD-241, Sony Minidisc Recorder Manual, APA, Petrowski, or U.S. Patent No. 5,751,672 to Yankowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Chase '914 in combination with either Windows 95, Sony HCD-241, Sony Minidisc Recorder Manual, DAD References, Sound Blaster References, Petrowski, U.S. Patent No. 5,751,672 to Yankowski, Labrosse, or Horner Thesis (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Chase '164 in combination with either Windows 95, Sony HCD-241, DAD References, Sound Blaster References, Petrowski, U.S. Patent No. 5,751,672 to Yankowski, Labrosse, or Horner Thesis (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Lake in combination with either DAD References, Windows 95, WinPlay3, Sound Blaster References, Sony HCD-241, U.S. Patent No. 5,914,941 to Janky, or Chase '914, Chase '164 (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Sound Blaster References in combination with either DAD References, WinPlay3, Pascoe, Horner Thesis, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,914,941 to Janky, U.S. Patent No. 5,751,672 to Yankowski, or Petrowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Beaton in combination with either DAD References, Sound Blaster References, Nielsen Article, Petrowski, Windows 95, WinPlay3, Sony HCD-241, Pascoe, Horner Thesis, Chase '914, Chase '164, or U.S. Patent No. 5,914,941 to Janky (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Person in combination with either DAD References, WinPlay3, Pascoe, Horner Thesis, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,914,941 to Janky, U.S. Patent No. 5,751,672 to Yankowski, or Petrowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Hindus Thesis in combination with either DAD References, Sound Blaster References, Windows 95, Petrowski, Nielsen Article, WinPlay3, Sony HCD-241, Roy NewsComm Thesis, SparcStation 2, Horner Thesis, or Stifelman Thesis (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Stifelman Thesis in combination with either DAD References, Windows 95, WinPlay3, Sound Blaster References, Sony HCD-241, U.S. Patent No. 5,751,672 to Yankowski, SparcStation 2, Petrowski, U.S. Patent No. 5,914,941 to Janky, Nielsen Article, Roy NewsComm Thesis, Horner Thesis, Hindus Thesis (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Horner Thesis in combination with either DAD References, Person, Petrowski, Sound Blaster References, Rathbone, SparcStation 2, Tuttle, Sony HCD-241, Sony MZ-1 Minidisc Recorder and Manual, WinPlay3, Roy NewsComm Thesis, Hindus Thesis, or Stifelman Thesis (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Roy NewsComm Thesis in combination with either the DAD References, Horner Thesis, Hindus Thesis, Stifelman Thesis, Petrowski, Sound Blaster References, SparcStation 2, Sony HCD-241, Sony MZ-1 Minidisc Recorder and Manual, Rathbone, Tuttle, U.S. Patent No. 5,751,672 to Yankowski, or Sone (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Petrowski in combination with either DAD References, Sone, Tuttle, Rathbone Horner Thesis, Roy NewsComm Thesis, Sony MZ-1 Minidisc Recorder and Manual, Sony HCD-241, Chase, or U.S. Patent No. 5,616,876 to Cluts, (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Aarseth in combination with either DAD References, Windows 95, Jankowski, Petrowski, Sound Blaster References, Horner Thesis, Sony HCD-241, Sony MZ-1 Minidisc Recorder and Manual, Tuttle, U.S. Patent No. 5,751,672 to Yankowski, U.S. Patent No. 5,721,951 to DorEl, or WinPlay3 (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Nielsen Article in combination with either DAD References, WinPlay3, Pascoe, Horner Thesis, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,914,941 to Janky, U.S. Patent No. 5,751,672 to Yankowski, or Petrowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- DAD References in combination with either the Roy NewsComm Thesis, Horner Thesis, Sound Blaster References, Sound Blaster User Guide, Petrowski, Sony HCD-241, Sony MZ-1 Minidisc Recorder and Manual, Rathbone, Sone, or WinPlay3 (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- WinPlay3 in combination with either Windows 95, Nielsen Article, Sony HCD-241, Horner Thesis, Roy NewsComm Thesis, Pascoe, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, Tuttle, U.S. Patent No. 5,751,672 to Yankowski, Petrowski, DAD References, or Labrosse (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Windows 95 in combination with either WinPlay3, U.S. Patent No. 5,914,941 to Janky, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, Pascoe, U.S. Patent No. 5,751,672 to Yankowski, DAD References, Petrowski, or Labrosse (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent)

- Wicked Sounds in combination with either Windows 95, Sone, Rathbone, Roy NewsComm Thesis, Horner Thesis, DAD References, or Tuttle (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Creative EnsembleAV in combination with either WinPlay3, Pascoe, Horner Thesis, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,914,941 to Janky, U.S. Patent No. 5,751,672 to Yankowski, DAD References, or Petrowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- U.S. Patent No. 5,687,160 to Aotake, et al. in combination with either DAD References, Sone, U.S. Patent No. 5,751,672 to Yankowski, Windows 95, Sony HCD-241, or Sony MZ-1 Minidisc Recorder and Manual (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Sony MZ-1 Minidisc Recorder and Manual in combination with either Sone or Tuttle (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

## II.   INVALIDITY UNDER 35 U.S.C. § 112

Pursuant to P.R. 3-3(d), Google identifies below the grounds upon which the asserted claims of the patents-in-suit are invalid under 35 U.S.C. § 112.

### A.   Lack of Written Description Under U.S.C. § 112(1)

The claims of the '178 patent were originally filed in May of 2008, almost 12 years after the original filing date and include subject matter that is not described in the specification in a way that conveys the inventors "possessed" that subject matter as of the original filing date.

Claim 8 of the '178 patent is invalid for lack of written description. The specification contains no support for "program description data" stored in the digital memory unit of the player comprising program description records describing the audio program files in the digital memory unit. Further, the specification provides no support for "program description records," let alone program description records which specify the storage location of compressed audio files stored on the player. The specification does describe a Programs Table 303 which contains various fields describing audio segments. The Programs Table 303 resides on the host server, however, not on the player. What the player downloads is the "schedule file (seen at 307 in FIG. 4) consisting of a sequence of program segment identification numbers which are used to

compile a sequencing file." *See* '076 patent at 12:3-15. Claim 29 of the '178 patent is also invalid for lack of written description for the same reasons.

Claims 14-15 and 28-29 of the '178 patent are invalid for lack of written description. The specification contains no support for a memory unit of the player storing "(b) program description data including displayable text describing each of [the] audio program files" in the memory unit. Rather, the specification describes displayable text descriptions for topics and subjects only. *See* '076 patent at 19:21-39. Moreover, these text descriptions are part of a catalog for downloading ***audio files that are not on the player***. *See id.*

Claims 2-8 of the '178 patent are also invalid for lack of written description due to the limitation of claim 2 reciting "a display screen for displaying a scrollable listing describing ***each*** of said separate digital compressed audio program files in said collection." The patents describe only topic descriptions being displayed in a scrollable listing. *See* '076 patent at 12:43-57. The patents do not describe a scrollable listing of descriptions for ***each*** segment in the sequencing file. Claims 14-15, 28-29 of the '178 patent are also invalid for lack of written description due to the limitation of claim 14 requiring "a display screen for presenting a visual menu listing to said listener containing displayable text describing some or all of the audio program files in said collection specified by said sequencing file" for the same reasons.

Claim 9 of the '178 patent is invalid for lack of written description due to the "each audio program file in said collection specified by said sequencing file is selected in accordance with program preference data or program selections accepted from said listener" limitation because the claimed scope is broader than what could be supported by the description of the selection mechanism described in the patent specification of the '178 patent.

**B.     Indefiniteness Under 35 U.S.C. § 112(2)**

Claims 2-8 of the '178 patent are indefinite. The only algorithm disclosed in the specification for responding to a program-selection command is the audio hyperlink-based algorithm. *See* '076 patent at 33:11-16 and 35:54-36:8. However, claims 2-8 require that the listener-selected audio program file is selected from a scrollable listing by means of manual controls. The specification provides no disclosure of corresponding structure for responding to a program-selection command which is made by selecting a file displayed on a scrollable listing. Rather than disclosing structure as to how the user-selected Selection Record is determined in such a scenario, the specification merely states that "means may also be included to respond to the users selection of a given program on the scrollable listing by means of a mouse or the like, and then automatically continue the play at the beginning of the program segment thus selected." *See* '076 patent at 12:53-57. This is a purely functional description. Claims 14-15 and 28-29 are invalid for indefiniteness based on the "processor for ... (a) ..." limitation for the same reasons as claims 2-8.

Claims 14-15, 28-29 of the '178 patent are invalid for indefiniteness based on the "audio playback unit" limitation of claim 14. Given claim 14 includes a separate "processor" limitation, the meaning of "audio playback unit" in the claim is insolubly ambiguous.

Claims 2 and 3 of the '076 patent are invalid for indefiniteness based on the "means responsive to a single one of said second commands for discontinuing the reproduction of the currently playing program segment and instead continuing the reproduction at the beginning of said currently playing program" limitation.

Claim 3 of the '076 patent is invalid for indefiniteness based on the "means responsive to the detection of two consecutive ones of said second commands for discontinuing the reproduction of the currently playing program segment and instead continuing the reproduction

at the beginning of a program segment which precedes the currently playing program segment" limitation.

Claims 5 and 6 of the '076 patent are invalid for indefiniteness based on the "editing means for modifying said data establishing said sequence" and "means for reordering the sequence established by said data" limitations.

Claims 14 and 15 of the '076 patent are invalid for indefiniteness based on the "processing means responsive to a second one of said control command for discontinuing the translation of the currently playing program and instead continuing the translation at the beginning of said currently playing program" limitation.

Claim 15 of the '076 patent is invalid for indefiniteness based on the "means responsive to two consecutive ones of said second control commands for discontinuing the translation of the currently playing program and instead continuing the translation at the beginning of a program segment which precedes said currently playing program in said sequence" limitation.

Asserted claims of the patents-in-suit are invalid for indefiniteness because they are of mixed statutory categories, *e.g.*, apparatus claims that include limitations directed to user actions and server functions, not the capabilities of the claimed apparatus.

Further, to the extent Plaintiff alleges that one or more of the asserted claims of the patents-in-suit recite software limitations in means-plus function form, those claims are invalid as indefinite under 35 U.S.C. § 112 ¶ 1. The patents-in-suit do not sufficiently provide the algorithm for performing the recited function for these elements as required by the Federal Circuit and this Court. *See, e.g.*, *Robert Bosch, LLC v. Snap-On Inc.,* Case No. 14-1040 (Fed. Cir. 2014); *WMS Gaming, Inc. v. IGT*, 184 F. 3d 1339, 1348-49 (Fed. Cir. 2005); *Gobeli Research Ltd. v. Apple Computer, Inc.*, 384 F. Supp. 2d 1016, 1022-33 (E.D. Tex. 2005).

Further, the apparatus claims in the patents-in-suit claim purely functional elements without any supported structure, contrary to the Federal Circuit law. All claims depending from such and/or any intervening claims are also invalid as indefinite for at least the same reasons.

Google reserves the right to amend and/or supplement these Invalidity Contentions based on 35 U.S.C. § 112 as discovery progresses and depending on the claim construction positions taken by Plaintiff and the Court's claim construction order.

Dated: DRAFT                          By _____

**Counsel for Google LLC**

**APPENDIX A**

## PRIOR ART GROUPS

A.    **Store Audio**

1.    DAD Manual v6.0A

2.    DAD Brochure

3.    DAD System

4.    Macromedia Director User Manual

5.    Listen Up Player Publication

6.    Sony MDS-B1 User Manual

7.    Microsoft Windows Sound System User Guide

8.    Roy NewsComm Thesis

9.    NewsComm Presentation

10.    Opcode Audioshop Manual

11.    Opcode Audioshop enabled system

12.    Sony D-232 Discman User Manual

13.    Sony D-240 Discman User Manual

14.    Sony MZ-1 User Manual

15.    Sony MZ-1 Service Manual

16.    Sony MZ-1 Portable Minidisc Recorder

17.    Sony MZ-B3 User Manual

18.    Sony MZ-R2 User Manual

19.    Sony MZ-R3 User Manual

20.    Sound Blaster "Making WAVes" Book

21.    Sound Blaster 16 User Guide

22.    Sound Blaster 16 enabled system

23.   NewsComm Journal Article

24.   Windows Sound System Manual

25.   VoiceNotes Article

26.   Voyetra AudioStation User Manual

27.   FR 2714760

28.   U.S. Patent No. 5,168,481 to Culbertson, et al.

29.   U.S. Patent No. 5,296,848 to Witheridge, et al.

30.   U.S. Patent No. 5,341,350 to Frank, et al.

31.   U.S. Patent No. 5,347,082 to Ojima

32.   U.S. Patent No. 5,355,302 to Martin, et al.

33.   U.S. Patent No. 5,371,316 to Eitaki, et al.

34.   U.S. Patent No. 5,386,081 to Nakada, et al.

35.   U.S. Patent No. 5,418,622 to Takeuchi

36.   U.S. Patent No. 5,428,732 to Hancock, et al.

37.   U.S. Patent No. 5,481,509 to Knowles

38.   U.S. Patent No. 5,499,316 to Sudoh, et al.

39.   U.S. Patent No. 5,524,051 to Ryan

40.   U.S. Patent No. 5,541,638 to Story

41.   U.S. Patent No. 5,555,098 to Parulski

42.   U.S. Patent No. 5,557,541 to Schulhof, et al.

43.   U.S. Patent No. 5,572,442 to Schulhof, et al.

44.   U.S. Patent No. 5,583,560 to Florin, et al.

45.   U.S. Patent No. 5,594,601 to Mimick, et al.

46.     U.S. Patent No. 5,616,876 to Cluts

47.     U.S. Patent No. 5,640,590 to Luther

48.     U.S. Patent No. 5,661,787 to Pocock

49.     U.S. Patent No. 5,668,788 to Allison

50.     U.S. Patent No. 5,726,909 to Krikorian

51.     U.S. Patent No. 5,740,134 to Peterson

52.     U.S. Patent No. 5,751,672 to Yankowski

53.     U.S. Patent No. 5,754,784 to Garland, et al.

54.     U.S. Patent No. 5,781,889 to Martin, et al.

55.     U.S. Patent No. 5,793,980 to Glaser, et al.

56.     U.S. Patent No. 5,798,921 to Johnson, et al.

57.     U.S. Patent No. 5,815,671 to Morrison

58.     U.S. Patent No. 5,819,160 to Foladare, et al.

59.     U.S. Patent No. 5,841,979 to Schulhof, et al.

60.     U.S. Patent No. 5,864,868 to Contois

61.     U.S. Patent No. 5,914,941 to Janky

62.     U.S. Patent No. 5,966,440 to Hair

63.     U.S. Patent No. 6,182,126 to Nathan, et al.

64.     U.S. Patent No. 5,687,160 to Aotake, et al.

65.     U.S. Patent No. 5,721,951 to DorEl

66.     Chase '914

67.     Chase '164

68.     Labrosse

69.     Sone

70.     Tuttle

71.     Person Book

72.     Beaton

73.     Lake

74.     Stifelman Thesis

75.     Hindus Thesis

76.     Horner Thesis

77.     Sony HCD-241

78.     Nielsen Article

79.     Petrowski

80.     Aarseth

81.     Rathbone

82.     Sun Microsystems SparcStation 2

83.     Gravis Windecks enabled system

84.     RealAudio 2.0

85.     U.S. Patent No. 6,453,281 to Walters, et al.

86.     Macworld Music & Sound Bible

87.     U.S. Patent No. 5,404,505 to Levinson, et al.

88.     WinPlay3

89.     Kan

90.     JSInc

91.     Windows95

92.    Mod4Win

93.    IPR References

94.    NewsComm Device


**B.**    **Playlist**

1.    DAD Manual v6.0A

2.    DAD Brochure

3.    DAD system

4.    Macromedia Director User Manual

5.    Listen Up Player Publication

6.    Sony MDS-B1 User Manual

7.    Microsoft Windows Sound System User Guide

8.    Roy NewsComm Thesis

9.    NewsComm Presentation

10.    Opcode Audioshop Manual

11.    Opcode Audioshop enabled system

12.    Sony D-232 Discman User Manual

13.    Sony D-240 Discman User Manual

14.    Sony MZ-1 User Manual

15.    Sony MZ-1 Service Manual

16.    Sony MZ-1 Portable Minidisc Recorder

17.    Sony MZ-B3 User Manual

18.    Sony MZ-R2 User Manual

19.    Sony MZ-R3 User Manual

20.     Sound Blaster "Making WAVes" Book

21.     Sound Blaster 16 User Guide

22.     Sound Blaster 16 enabled system

23.     NewsComm Journal Article

24.     Windows Sound System Manual

25.     Voyetra AudioStation User Manual

26.     U.S. Patent No. 5,168,481 to Culbertson, et al.

27.     U.S. Patent No. 5,296,848 to Witheridge, et al.

28.     U.S. Patent No. 5,341,350 to Frank, et al.

29.     U.S. Patent No. 5,347,082 to Ojima

30.     U.S. Patent No. 5,355,302 to Martin, et al.

31.     U.S. Patent No. 5,386,081 to Nakada, et al.

32.     U.S. Patent No. 5,418,622 to Takeuchi

33.     U.S. Patent No. 5,428,732 to Hancock, et al.

34.     U.S. Patent No. 5,481,509 to Knowles

35.     U.S. Patent No. 5,499,316 to Sudoh, et al.

36.     U.S. Patent No. 5,541,638 to Story

37.     U.S. Patent No. 5,555,098 to Parulski

38.     U.S. Patent No. 5,557,541 to Schulhof, et al.

39.     U.S. Patent No. 5,572,442 to Schulhof, et al.

40.     U.S. Patent No. 5,583,560 to Florin, et al.

41.     U.S. Patent No. 5,594,601 to Mimick, et al.

42.     U.S. Patent No. 5,616,876 to Cluts

43.     U.S. Patent No. 5,640,590 to Luther

44.     U.S. Patent No. 5,661,787 to Pocock

45.     U.S. Patent No. 5,668,788 to Allison

46.     U.S. Patent No. 5,726,909 to Krikorian

47.     U.S. Patent No. 5,751,672 to Yankowski

48.     U.S. Patent No. 5,754,784 to Garland, et al.

49.     U.S. Patent No. 5,781,889 to Martin, et al.

50.     U.S. Patent No. 5,793,980 to Glaser, et al.

51.     U.S. Patent No. 5,798,921 to Johnson, et al.

52.     U.S. Patent No. 5,815,671 to Morrison

53.     U.S. Patent No. 5,819,160 to Foladare, et al.

54.     U.S. Patent No. 5,841,979 to Schulhof, et al.

55.     U.S. Patent No. 5,864,868 to Contois

56.     U.S. Patent No. 5,914,941 to Janky

57.     U.S. Patent No. 5,966,440 to Hair

58.     U.S. Patent No. 6,182,126 to Nathan, et al.

59.     U.S. Patent No. 5,687,160 to Aotake, et al.

60.     U.S. Patent No. 5,721,951 to DorEl

61.     Chase '914

62.     Chase '164

63.     Labrosse

64.     Sone

65.     Tuttle

66.    Person Book

67.    Beaton

68.    Lake

69.    Stifelman Thesis

70.    Hindus Thesis

71.    Horner Thesis

72.    Sony HCD-241

73.    Nielsen Article

74.    Petrowski

75.    Aarseth

76.    Rathbone

77.    Sun Microsystems SparcStation 2

78.    Pascoe

79.    Gravis Windecks enabled system

80.    RealAudio 2.0

81.    U.S. Patent No. 6,453,281 to Walters, et al.

82.    Macworld Music & Sound Bible

83.    WinPlay3

84.    Kan

85.    JSInc

86.    Windows95

87.    Mod4Win

88.    IPR References

89.     NewsComm Device

**C.     Skip Forward**

1.      DAD Manual v6.0A

2.      Loeb Article

3.      DAD system

4.      Macromedia Director User Manual

5.      Listen Up Player Publication

6.      Sony MDS-B1 User Manual

7.      Microsoft Windows Sound System User Guide

8.      Roy NewsComm Thesis

9.      Comparative Design Review Article

10.     Opcode Audioshop Manual

11.     Opcode Audioshop enabled system

12.     Sony D-232 Discman User Manual

13.     Sony D-240 Discman User Manual

14.     Sony MZ-1 User Manual

15.     Sony MZ-1 Service Manual

16.     Sony MZ-1 Portable Minidisc Recorder

17.     Sony MZ-B3 User Manual

18.     Sony MZ-R2 User Manual

19.     Sony MZ-R3 User Manual

20.     Sound Blaster "Making WAVes" Book

21.     Sound Blaster 16 User Guide

22.     Sound Blaster 16 enabled system

23.     NewsComm Journal Article

24.     Windows Sound System Manual

25.     VoiceNotes Article

26.     Voyetra AudioStation User Manual

27.     U.S. Patent No. 5,296,848 to Witheridge, et al.

28.     U.S. Patent No. 5,386,081 to Nakada, et al.

29.     U.S. Patent No. 5,499,316 to Sudoh, et al.

30.     U.S. Patent No. 5,557,541 to Schulhof, et al.

31.     U.S. Patent No. 5,572,442 to Schulhof, et al.

32.     U.S. Patent No. 5,583,560 to Florin, et al.

33.     U.S. Patent No. 5,640,590 to Luther

34.     U.S. Patent No. 5,661,787 to Pocock

35.     U.S. Patent No. 5,726,909 to Krikorian

36.     U.S. Patent No. 5,740,134 to Peterson

37.     U.S. Patent No. 5,751,672 to Yankowski

38.     U.S. Patent No. 5,754,784 to Garland, et al.

39.     U.S. Patent No. 5,793,980 to Glaser, et al.

40.     U.S. Patent No. 5,798,921 to Johnson, et al.

41.     U.S. Patent No. 5,819,160 to Foladare, et al.

42.     U.S. Patent No. 5,841,979 to Schulhof, et al.

43.     U.S. Patent No. 5,864,868 to Contois

44.     U.S. Patent No. 5,914,941 to Janky

45.     U.S. Patent No. 5,966,440 to Hair

46.     U.S. Patent No. 6,182,126 to Nathan, et al.

47.     U.S. Patent No. 5,616,876 to Cluts

48.     U.S. Patent No. 5,687,160 to Aotake, et al.

49.     U.S. Patent No. 5,721,951 to DorEl

50.     Chase '914

51.     Chase '164

52.     Beaton

53.     Tuttle

54.     Person Book

55.     Lake

56.     Stifelman Thesis

57.     Hindus Thesis

58.     Horner Thesis

59.     Sony HCD-241

60.     Nielsen Article

61.     Petrowski

62.     Aarseth

63.     Rathbone

64.     Gravis Windecks enabled system

65.     RealAudio 2.0

66.     U.S. Patent No. 6,453,281 to Walters, et al.

67.     Macworld Music & Sound Bible

68.     WinPlay3

69.     Kan

70.     JSInc

71.     Windows95

72.     Mod4Win

73.     IPR References

74.     NewsComm Device

**D.      Skip Back – Current Track (1)**

1.      DAD Manual v6.0A

2.      DAD system

3.      Macromedia Director User Manual

4.      Sony MDS-B1 User Manual

5.      Opcode Audioshop Manual

6.      Opcode Audioshop enabled system

7.      Sony D-232 Discman User Manual

8.      Sony D-240 Discman User Manual

9.      Sony MZ-1 User Manual

10.     Sony MZ-1 Service Manual

11.     Sony MZ-1 Portable Minidisc Recorder

12.     Sony MZ-B3 User Manual

13.     Sony MZ-R2 User Manual

14.     Sony MZ-R3 User Manual

15.     Sound Blaster "Making WAVes" Book

16.     Sound Blaster 16 User Guide

17.     Sound Blaster 16 enabled system

18.     Windows Sound System Manual

19.     U.S. Patent No. 5,296,848 to Witheridge, et al.

20.     U.S. Patent No. 5,499,316 to Sudoh, et al.

21.     U.S. Patent No. 5,914,941 to Janky

22.     U.S. Patent No. 5,616,876 to Cluts

23.     U.S. Patent No. 5,751,672 to Yankowski

24.     U.S. Patent No. 5,687,160 to Aotake, et al.

25.     U.S. Patent No. 5,721,951 to DorEl

26.     Chase '914

27.     Chase '164

28.     Beaton

29.     Tuttle

30.     Person Book

31.     Lake

32.     Stifelman Thesis

33.     Hindus Thesis

34.     Horner Thesis

35.     Sony HCD-241

36.     Nielsen Article

37.     Petrowski

38.     Aarseth

39.     Rathbone

40.     Gravis Windecks enabled system

41.     U.S. Patent No. 6,453,281 to Walters, et al.

42.     Macworld Music & Sound Bible

43.     WinPlay3

44.     Kan

45.     JSInc

46.     Windows95

47.     Mod4Win

48.     IPR References

49.     NewsComm Device

**E.     Skip Back – Previous Track (1)**

1.      DAD Manual v6.0A

2.      DAD system

3.      Macromedia Director User Manual

4.      Listen Up Player Publication

5.      Sony MDS-B1 User Manual

6.      Sony D-232 Discman User Manual

7.      Sony D-240 Discman User Manual

8.      Sony MZ-1 User Manual

9.      Sony MZ-B3 User Manual

10.     Sony MZ-R2 User Manual

11.     Sony MZ-R3 User Manual

12.     Sony MZ-1 Service Manual

13.     Sony MZ-1 Portable Minidisc Recorder

14.     Sound Blaster 16 User Guide

15.     Sound Blaster 16 enabled system

16.     Windows Sound System Manual

17.     U.S. Patent No. 5,583,560 to Florin, et al.

18.     U.S. Patent No. 5,841,979 to Schulhof, et al.

19.     U.S. Patent No. 5,914,941 to Janky

20.     U.S. Patent No. 5,616,876 to Cluts

21.     U.S. Patent No. 5,751,672 to Yankowski

22.     U.S. Patent No. 5,687,160 to Aotake, et al.

23.     U.S. Patent No. 5,721,951 to DorEl

24.     Chase '914

25.     Chase '164

26.     Beaton

27.     Tuttle

28.     Person Book

29.     Lake

30.     Stifelman Thesis

31.     Hindus Thesis

32.     Horner Thesis

33.     Sony HCD-241

34.     Nielsen Article

35.     Petrowski

36.     Gravis Windecks enabled system

37.     U.S. Patent No. 6,453,281 to Walters, et al.

38. Macworld Music & Sound Bible

39. WinPlay3

40. Kan

41. JSInc

42. Windows95

43. Mod4Win

44. IPR References

45. NewsComm Device

**F.      Playlist Repeat**

1. DAD Manual v6.0A

2. DAD Brochure

3. DAD system

4. Macromedia Director User Manual

5. Sony MDS-B1 User Manual

6. Microsoft Windows Sound System User Guide

7. Opcode Audioshop Manual

8. Opcode Audioshop enabled system

9. Sony D-232 Discman User Manual

10. Sony D-240 Discman User Manual

11. Sony MZ-1 User Manual

12. Sony MZ-1 Service Manual

13. Sony MZ-1 Portable Minidisc Recorder

14. Sony MZ-B3 User Manual

15. Sony MZ-R2 User Manual

16.     Sony MZ-R3 User Manual

17.     Sound Blaster "Making WAVes" Book

18.     Sound Blaster 16 User Guide

19.     Sound Blaster 16 enabled system

20.     Windows Sound System Manual

21.     Voyetra AudioStation User Manual

22.     U.S. Patent No. 5,371,316 to Eitaki, et al.

23.     U.S. Patent No. 5,428,732 to Hancock, et al.

24.     U.S. Patent No. 5,726,909 to Krikorian

25.     U.S. Patent No. 5,751,672 to Yankowski

26.     U.S. Patent No. 5,864,868 to Contois

27.     U.S. Patent No. 5,914,941 to Janky

28.     U.S. Patent No. 5,966,440 to Hair

29.     U.S. Patent No. 5,687,160 to Aotake, et al.

30.     U.S. Patent No. 5,721,951 to DorEl

31.     Beaton

32.     Person Book

33.     Lake

34.     Stifelman Thesis

35.     Hindus Thesis

36.     Horner Thesis

37.     Sony HCD-241

38.     Nielsen Article

39.     Petrowski

40.     Rathbone

41.     Gravis Windecks enabled system

42.     Macworld Music & Sound Bible

43.     WinPlay3

44.     Kan

45.     JSInc

46.     Windows95

47.     Mod4Win

48.     IPR References

49.     NewsComm Device

**G.     Playlist Edit**

1.      DAD Manual v6.0A

2.      DAD Brochure

3.      DAD system

4.      Macromedia Director User Manual

5.      Sony MDS-B1 User Manual

6.      Microsoft Windows Sound System User Guide

7.      Roy NewsComm Thesis

8.      NewsComm Presentation

9.      Comparative Design Review Article

10.     Opcode Audioshop Manual

11.     Opcode Audioshop enabled system

12.     Sony D-232 Discman User Manual

13.     Sony D-240 Discman User Manual User Manual

14.     Sony MZ-1 User Manual

15.     Sony MZ-1 Service Manual

16.     Sony MZ-1 Portable Minidisc Recorder

17.     Sony MZ-B3 User Manual

18.     Sony MZ-R2 User Manual

19.     Sony MZ-R3 User Manual

20.     Sound Blaster "Making WAVes" Book

21.     Sound Blaster 16 User Guide

22.     Sound Blaster 16 enabled system

23.     NewsComm Journal Article

24.     Windows Sound System Manual

25.     VoiceNotes Article

26.     Voyetra AudioStation User Manual

27.     U.S. Patent No. 5,168,481 to Culbertson, et al.

28.     U.S. Patent No. 5,296,848 to Witheridge, et al.

29.     U.S. Patent No. 5,347,082 to Ojima

30.     U.S. Patent No. 5,386,081 to Nakada, et al.

31.     U.S. Patent No. 5,418,622 to Takeuchi

32.     U.S. Patent No. 5,428,732 to Hancock, et al.

33.     U.S. Patent No. 5,481,509 to Knowles

34.     U.S. Patent No. 5,499,316 to Sudoh, et al.

35.     U.S. Patent No. 5,555,098 to Parulski

36.    U.S. Patent No. 5,594,601 to Mimick, et al.

37.    U.S. Patent No. 5,616,876 to Cluts

38.    U.S. Patent No. 5,640,590 to Luther

39.    U.S. Patent No. 5,668,788 to Allison

40.    U.S. Patent No. 5,726,909 to Krikorian

41.    U.S. Patent No. 5,751,672 to Yankowski

42.    U.S. Patent No. 5,781,889 to Martin, et al.

43.    U.S. Patent No. 5,798,921 to Johnson, et al.

44.    U.S. Patent No. 5,819,160 to Foladare, et al.

45.    U.S. Patent No. 5,864,868 to Contois

46.    U.S. Patent No. 5,914,941 to Janky

47.    U.S. Patent No. 5,966,440 to Hair

48.    U.S. Patent No. 6,182,126 to Nathan, et al.

49.    RealAudio 2.0

50.    Gravis Windecks enabled system

51.    Macworld Music & Sound Bible

52.    WinPlay3

53.    Kan

54.    JSInc

55.    Windows95

56.    Mod4Win

57.    NewsComm Device

**H.    Downloading Audio**

1.    DAD Manual v6.0A

2.        DAD Brochure

3.        DAD system

4.        Macromedia Director User Manual

5.        Listen Up Player Publication

6.        Sony MDS-B1 User Manual

7.        Microsoft Windows 95 Resource Kit

8.        Roy NewsComm Thesis

9.        NewsComm Presentation

10.       Opcode Audioshop Manual

11.       Opcode Audioshop enabled system

12.       Sound Blaster "Making WAVes" Book

13.       Sound Blaster 16 User Guide

14.       Sound Blaster 16 enabled system

15.       NewsComm Journal Article

16.       Windows Sound System Manual

17.       VoiceNotes Article

18.       FR 2714760

19.       U.S. Patent No. 5,341,350 to Frank, et al.

20.       U.S. Patent No. 5,355,302 to Martin, et al.

21.       U.S. Patent No. 5,524,051 to Ryan

22.       U.S. Patent No. 5,541,638 to Story

23.       U.S. Patent No. 5,557,541 to Schulhof, et al.

24.       U.S. Patent No. 5,572,442 to Schulhof, et al.

25.     U.S. Patent No. 5,583,560 to Florin, et al.

26.     U.S. Patent No. 5,594,601 to Mimick, et al.

27.     U.S. Patent No. 5,616,876 to Cluts

28.     U.S. Patent No. 5,640,590 to Luther

29.     U.S. Patent No. 5,661,787 to Pocock

30.     U.S. Patent No. 5,668,788 to Allison

31.     U.S. Patent No. 5,726,909 to Krikorian

32.     U.S. Patent No. 5,740,134 to Peterson

33.     U.S. Patent No. 5,781,889 to Martin, et al.

34.     U.S. Patent No. 5,793,980 to Glaser, et al.

35.     U.S. Patent No. 5,815,671 to Morrison

36.     U.S. Patent No. 5,819,160 to Foladare, et al.

37.     U.S. Patent No. 5,841,979 to Schulhof, et al.

38.     U.S. Patent No. 5,864,868 to Contois

39.     U.S. Patent No. 5,914,941 to Janky

40.     U.S. Patent No. 5,966,440 to Hair

41.     U.S. Patent No. 6,182,126 to Nathan, et al.

42.     U.S. Patent No. 5,721,951 to DorEl

43.     Chase '914

44.     Chase '164

45.     Beaton

46.     Person Book

47.     Lake

48.    Stifelman Thesis

49.    Hindus Thesis

50.    Horner Thesis

51.    Nielsen Article

52.    Petrowski

53.    Aarseth

54.    Rathbone

55.    Sun Microsystems SparcStation 2

56.    Sone

57.    Labrosse

58.    Pascoe

59.    RealAudio 2.0

60.    U.S. Patent No. 6,453,281 to Walters, et al.

61.    WinPlay3

62.    Kan

63.    JSInc

64.    Windows95

65.    U.S. Patent No. 5,926,624 to Katz, et al.

66.    Cerberus System

67.    Mod4Win

68.    IPR References

69.    NewsComm Device

**I.    Downloading Playlist**

1.    U.S. Patent No. 5,541,638 to Story

2.      DAD Manual v6.0A

3.      DAD Brochure

4.      DAD system

5.      Macromedia Director User Manual

6.      Listen Up Player Publication

7.      Sony MDS-B1 User Manual

8.      Microsoft Windows 95 Resource Kit

9.      Roy NewsComm Thesis

10.     NewsComm Presentation

11.     Opcode Audioshop Manual

12.     Opcode Audioshop enabled system

13.     Sound Blaster "Making WAVes" Book

14.     Sound Blaster 16 User Guide

15.     Sound Blaster 16 enabled system

16.     NewsComm Journal Article

17.     Windows Sound System Manual

18.     U.S. Patent No. 5,296,848 to Witheridge, et al.

19.     U.S. Patent No. 5,557,541 to Schulhof, et al.

20.     U.S. Patent No. 5,572,442 to Schulhof, et al.

21.     U.S. Patent No. 5,583,560 to Florin, et al.

22.     U.S. Patent No. 5,616,876 to Cluts

23.     U.S. Patent No. 5,640,590 to Luther

24.     U.S. Patent No. 5,661,787 to Pocock

25.     U.S. Patent No. 5,668,788 to Allison

26.     U.S. Patent No. 5,740,134 to Peterson

27.     U.S. Patent No. 5,793,980 to Glaser, et al.

28.     U.S. Patent No. 5,815,671 to Morrison

29.     U.S. Patent No. 5,819,160 to Foladare, et al.

30.     U.S. Patent No. 5,841,979 to Schulhof, et al.

31.     U.S. Patent No. 5,864,868 to Contois

32.     U.S. Patent No. 5,914,941 to Janky

33.     U.S. Patent No. 5,966,440 to Hair

34.     U.S. Patent No. 5,721,951 to DorEl

35.     Chase '914

36.     Chase '164

37.     Beaton

38.     Person Book

39.     Lake

40.     Stifelman Thesis

41.     Hindus Thesis

42.     Horner Thesis

43.     Comparative Design Article

44.     Petrowski

45.     Aarseth

46.     Rathbone

47.     Sun Microsystems SparcStation 2

48.    Sone

49.    Labrosse

50.    Pascoe

51.    RealAudio 2.0

52.    Macworld Music & Sound Bible

53.    WinPlay3

54.    Kan

55.    JSInc

56.    Windows95

57.    Mod4Win

58.    IPR References

59.    NewsComm Device

**J.    Display Track**

1.    DAD Manual v6.0A

2.    DAD Brochure

3.    DAD system

4.    Loeb Article

5.    Macromedia Director User Manual

6.    Listen Up Player Publication

7.    Sony MDS-B1 User Manual

8.    Microsoft Windows Sound System User Guide

9.    Roy NewsComm Thesis

10.    NewsComm Presentation

11.    Comparative Design Review Article

12.    Opcode Audioshop Manual

13.    Opcode Audioshop enabled system

14.    Sony D-232 Discman User Manual

15.    Sony D-240 Discman User Manual

16.    Sony MZ-1 User Manual

17.    Sony MZ-1 Service Manual

18.    Sony MZ-1 Portable Minidisc Recorder

19.    Sony MZ-B3 User Manual

20.    Sony MZ-R2 User Manual

21.    Sony MZ-R3 User Manual

22.    Sound Blaster "Making WAVes" Book

23.    Sound Blaster 16 User Guide

24.    Sound Blaster 16 enabled system

25.    NewsComm Journal Article

26.    Windows Sound System Manual

27.    Voyetra AudioStation User Manual

28.    FR 2714760

29.    U.S. Patent No. 5,168,481 to Culbertson, et al.

30.    U.S. Patent No. 5,296,848 to Witheridge, et al.

31.    U.S. Patent No. 5,347,082 to Ojima

32.    U.S. Patent No. 5,355,302 to Martin, et al.

33.    U.S. Patent No. 5,418,622 to Takeuchi

34.    U.S. Patent No. 5,481,509 to Knowles

35. U.S. Patent No. 5,499,316 to Sudoh, et al.

36. U.S. Patent No. 5,524,051 to Ryan

37. U.S. Patent No. 5,541,638 to Story

38. U.S. Patent No. 5,555,098 to Parulski

39. U.S. Patent No. 5,557,541 to Schulhof, et al.

40. U.S. Patent No. 5,572,442 to Schulhof, et al.

41. U.S. Patent No. 5,583,560 to Florin, et al.

42. U.S. Patent No. 5,594,601 to Mimick, et al.

43. U.S. Patent No. 5,616,876 to Cluts

44. U.S. Patent No. 5,640,590 to Luther

45. U.S. Patent No. 5,726,909 to Krikorian

46. U.S. Patent No. 5,740,134 to Peterson

47. U.S. Patent No. 5,751,672 to Yankowski

48. U.S. Patent No. 5,754,784 to Garland, et al.

49. U.S. Patent No. 5,793,980 to Glaser, et al.

50. U.S. Patent No. 5,798,921 to Johnson, et al.

51. U.S. Patent No. 5,815,671 to Morrison

52. U.S. Patent No. 5,841,979 to Schulhof, et al.

53. U.S. Patent No. 5,864,868 to Contois

54. U.S. Patent No. 5,914,941 to Janky

55. U.S. Patent No. 5,966,440 to Hair

56. U.S. Patent No. 6,182,126 to Nathan, et al.

57. U.S. Patent No. 5,687,160 to Aotake, et al.

58.    U.S. Patent No. 5,721,951 to DorEl

59.    Chase '914

60.    Chase '164

61.    Beaton

62.    Tuttle

63.    Person Book

64.    Lake

65.    Hindus Thesis

66.    Horner Thesis

67.    Sony HCD-241

68.    Nielsen Article

69.    Petrowski

70.    Aarseth

71.    Rathbone

72.    Sone

73.    RealAudio 2.0

74.    Gravis Windecks enabled system

75.    U.S. Patent No. 6,453,281 to Walters, et al.

76.    Kan

77.    JSInc

78.    Windows95

79.    Mod4Win

80.    IPR References

    81.    NewsComm Device

**K.**    **Display Playlist**

    1.    DAD Manual v6.0A

    2.    DAD Brochure

    3.    DAD system

    4.    Loeb Article

    5.    Macromedia Director User Manual

    6.    Listen Up Player Publication

    7.    Sony MDS-B1 User Manual

    8.    Roy NewsComm Thesis

    9.    NewsComm Presentation

    10.    Comparative Design Review Article

    11.    Opcode Audioshop Manual

    12.    Opcode Audioshop enabled system

    13.    Sony D-232 Discman User Manual

    14.    Sony D-240 Discman User Manual User Manual

    15.    Sony MZ-1 User Manual

    16.    Sony MZ-1 Service Manual

    17.    Sony MZ-1 Portable Minidisc Recorder

    18.    Sony MZ-B3 User Manual

    19.    Sony MZ-R2 User Manual

    20.    Sony MZ-R3 User Manual

    21.    Sound Blaster "Making WAVes" Book

    22.    Sound Blaster 16 User Guide

23.     Sound Blaster 16 enabled system

24.     NewsComm Journal Article

25.     Windows Sound System Manual

26.     Voyetra AudioStation User Manual

27.     U.S. Patent No. 5,168,481 to Culbertson, et al.

28.     U.S. Patent No. 5,296,848 to Witheridge, et al.

29.     U.S. Patent No. 5,347,082 to Ojima

30.     U.S. Patent No. 5,355,302 to Martin, et al.

31.     U.S. Patent No. 5,418,622 to Takeuchi

32.     U.S. Patent No. 5,481,509 to Knowles

33.     U.S. Patent No. 5,524,051 to Ryan

34.     U.S. Patent No. 5,541,638 to Story

35.     U.S. Patent No. 5,555,098 to Parulski

36.     U.S. Patent No. 5,557,541 to Schulhof, et al.

37.     U.S. Patent No. 5,572,442 to Schulhof, et al.

38.     U.S. Patent No. 5,583,560 to Florin, et al.

39.     U.S. Patent No. 5,594,601 to Mimick, et al.

40.     U.S. Patent No. 5,616,876 to Cluts

41.     U.S. Patent No. 5,640,590 to Luther

42.     U.S. Patent No. 5,726,909 to Krikorian

43.     U.S. Patent No. 5,740,134 to Peterson

44.     U.S. Patent No. 5,751,672 to Yankowski

45.     U.S. Patent No. 5,781,889 to Martin, et al.

46.     U.S. Patent No. 5,793,980 to Glaser, et al.

47.     U.S. Patent No. 5,798,921 to Johnson, et al.

48.     U.S. Patent No. 5,815,671 to Morrison

49.     U.S. Patent No. 5,841,979 to Schulhof, et al.

50.     U.S. Patent No. 5,864,868 to Contois

51.     U.S. Patent No. 5,914,941 to Janky

52.     U.S. Patent No. 5,966,440 to Hair

53.     U.S. Patent No. 6,182,126 to Nathan, et al.

54.     U.S. Patent No. 5,687,160 to Aotake, et al.

55.     U.S. Patent No. 5,721,951 to DorEl

56.     Chase '914

57.     Chase '164

58.     Beaton

59.     Tuttle

60.     Person Book

61.     Lake

62.     Labrosse

63.     Hindus Thesis

64.     Horner Thesis

65.     Sony HCD-241

66.     Nielsen Article

67.     Petrowski

68.     Aarseth

69.     Rathbone

70.     Gravis Windecks enabled system

71.     U.S. Patent No. 6,453,281 to Walters, et al.

72.     Macworld Music & Sound Bible

73.     Mod4Win

74.     IPR References

75.     NewsComm Device

**L.     Image**

1.      Loeb Article

2.      Macromedia Director User Manual

3.      Listen Up Player Publication

4.      Comparative Design Review Article

5.      Windows Sound System Manual

6.      FR 2714760

7.      U.S. Patent No. 5,355,302 to Martin, et al.

8.      U.S. Patent No. 5,481,509 to Knowles

9.      U.S. Patent No. 5,555,098 to Parulski

10.     U.S. Patent No. 5,557,541 to Schulhof, et al.

11.     U.S. Patent No. 5,572,442 to Schulhof, et al.

12.     U.S. Patent No. 5,583,560 to Florin, et al.

13.     U.S. Patent No. 5,616,876 to Cluts

14.     U.S. Patent No. 5,640,590 to Luther

15.     U.S. Patent No. 5,751,672 to Yankowski

16.     U.S. Patent No. 5,754,784 to Garland, et al.

17.    U.S. Patent No. 5,781,889 to Martin, et al.

18.    U.S. Patent No. 5,793,980 to Glaser, et al.

19.    U.S. Patent No. 5,841,979 to Schulhof, et al.

20.    U.S. Patent No. 5,864,868 to Contois

21.    U.S. Patent No. 5,966,440 to Hair

22.    U.S. Patent No. 6,182,126 to Nathan, et al.

23.    RealAudio 2.0

24.    U.S. Patent No. 6,453,281 to Walters, et al.

25.    U.S. Patent No. 5,949,951 to Sklar, et al.

26.    U.S. Patent No. 5,712,949 to Kato, et al.

27.    Pascoe

28.    WO 98/29835 to Kunkel

29.    Mod4Win

30.    IPR References

31.    NewsComm Device

**M.    Skip Back – Current Track (2)**

1.    DAD Manual v6.0A

2.    DAD system

3.    Macromedia Director User Manual

4.    Sony MDS-B1 User Manual

5.    Opcode Audioshop Manual

6.    Opcode Audioshop enabled system

7.    Sony D-232 Discman User Manual

8.    Sony D-240 Discman User Manual

9.      Sony MZ-1 User Manual

10.     Sony MZ-B3 User Manual

11.     Sony MZ-R2 User Manual

12.     Sony MZ-R3 User Manual

13.     Sony MZ-1 Service Manual

14.     Sony MZ-1 Portable Minidisc Recorder

15.     Sound Blaster "Making WAVes" Book

16.     Sound Blaster 16 User Guide

17.     Sound Blaster 16 enabled system

18.     Windows Sound System Manual

19.     U.S. Patent No. 5,819,160 to Foladare, et al.

20.     U.S. Patent No. 5,841,979 to Schulhof, et al.

21.     U.S. Patent No. 5,864,868 to Contois

22.     U.S. Patent No. 5,914,941 to Janky

23.     U.S. Patent No. 5,966,440 to Hair

24.     U.S. Patent No. 5,616,876 to Cluts

25.     U.S. Patent No. 5,751,672 to Yankowski

26.     U.S. Patent No. 5,687,160 to Aotake, et al.

27.     U.S. Patent No. 5,721,951 to DorEl

28.     Chase '914

29.     Chase '164

30.     Beaton

31.     Person Book

32.     Lake

33.     Stifelman Thesis

34.     Hindus Thesis

35.     Horner Thesis

36.     Sony HCD-241

37.     Nielsen Article

38.     Rathbone

39.     Gravis Windecks enabled system

40.     U.S. Patent No. 6,453,281 to Walters, et al.

41.     Macworld Music & Sound Bible

42.     Kan

43.     JSInc

44.     Windows95

45.     Mod4Win

46.     IPR References

47.     NewsComm Device

**N.      Skip Back – Previous Track (2)**

1.      DAD Manual v6.0A

2.      DAD Brochure

3.      DAD system

4.      Macromedia Director User Manual

5.      Sony MDS-B1 User Manual

6.      Opcode Audioshop Manual

7.      Opcode Audioshop enabled system

8.      Sony D-232 Discman User Manual

9.      Sony D-240 Discman User Manual

10.     Sony MZ-1 User Manual

11.     Sony MZ-B3 User Manual

12.     Sony MZ-R2 User Manual

13.     Sony MZ-R3 User Manual

14.     Sony MZ-1 Service Manual

15.     Sony MZ-1 Portable Minidisc Recorder

16.     Sound Blaster "Making WAVes" Book

17.     Sound Blaster 16 User Guide

18.     Sound Blaster 16 enabled system

19.     Windows Sound System Manual

20.     U.S. Patent No. 5,914,941 to Janky

21.     U.S. Patent No. 5,616,876 to Cluts

22.     U.S. Patent No. 5,751,672 to Yankowski

23.     U.S. Patent No. 5,687,160 to Aotake, et al.

24.     U.S. Patent No. 5,721,951 to DorEl

25.     Chase '914

26.     Chase '164

27.     Beaton

28.     Tuttle

29.     Person Book

30.     Lake

31.    Stifelman Thesis

32.    Hindus Thesis

33.    Horner Thesis

34.    Sony HCD-241

35.    Comparative Design Article

36.    Petrowski

37.    Gravis Windecks enabled system

38.    U.S. Patent No. 6,453,281 to Walters, et al.

39.    Macworld Music & Sound Bible

40.    WinPlay 3

41.    Kan

42.    JSInc

43.    Windows95

44.    Mod4Win

45.    NewsComm Device

**O.    Track ID**

1.    DAD Manual v6.0A

2.    DAD Brochure

3.    DAD system

4.    Loeb Article

5.    Macromedia Director User Manual

6.    Listen Up Player Publication

7.    Sony MDS-B1 User Manual

8.    Opcode Audioshop Manual

9.      Opcode Audioshop enabled system

10.     Sony MZ-1 User Manual

11.     Sony MZ-1 Service Manual

12.     Sony MZ-1 Portable Minidisc Recorder

13.     Sony MZ-B3 User Manual

14.     Sony MZ-R2 User Manual

15.     Sony MZ-R3 User Manual

16.     Sound Blaster "Making WAVes" Book

17.     Sound Blaster 16 User Guide

18.     Sound Blaster 16 enabled system

19.     Windows Sound System Manual

20.     U.S. Patent No. 5,355,302 to Martin, et al.

21.     U.S. Patent No. 5,386,081 to Nakada, et al.

22.     U.S. Patent No. 5,404,505 to Levinson

23.     U.S. Patent No. 5,418,622 to Takeuchi

24.     U.S. Patent No. 5,428,732 to Hancock, et al.

25.     U.S. Patent No. 5,481,509 to Knowles

26.     U.S. Patent No. 5,499,316 to Sudoh, et al.

27.     U.S. Patent No. 5,541,638 to Story

28.     U.S. Patent No. 5,555,098 to Parulski

29.     U.S. Patent No. 5,583,560 to Florin, et al.

30.     U.S. Patent No. 5,594,601 to Mimick, et al.

31.     U.S. Patent No. 5,616,876 to Cluts

32.     U.S. Patent No. 5,661,787 to Pocock

33.     U.S. Patent No. 5,668,788 to Allison

34.     U.S. Patent No. 5,751,672 to Yankowski

35.     U.S. Patent No. 5,781,889 to Martin, et al.

36.     U.S. Patent No. 5,815,671 to Morrison

37.     U.S. Patent No. 5,864,868 to Contois

38.     U.S. Patent No. 5,914,941 to Janky

39.     U.S. Patent No. 5,966,440 to Hair

40.     U.S. Patent No. 6,182,126 to Nathan, et al.

41.     U.S. Patent No. 5,687,160 to Aotake, et al.

42.     U.S. Patent No. 5,721,951 to DorEl

43.     U.S. Patent No. 8,769,297 to Rhoads

44.     Chase '914

45.     Chase '164

46.     Beaton

47.     Tuttle

48.     Person Book

49.     Lake

50.     Stifelman Thesis

51.     Hindus Thesis

52.     Horner Thesis

53.     Sony HCD-241

54.     Nielsen Article

55.      Petrowski

56.      Aarseth

57.      Rathbone

58.      Sone

59.      Labrosse

60.      Gravis Windecks enabled system

61.      Macworld Music & Sound Bible

62.      WinPlay3

63.      Kan

64.      JSInc

65.      Windows95

66.      Cerberus System

67.      Mod4Win

68.      IPR References

69.      NewsComm Device

**P.**      **Description**

1.      DAD Manual v6.0A

2.      DAD system

3.      Loeb Article

4.      Macromedia Director User Manual

5.      Listen Up Player Publication

6.      Sony MDS-B1 User Manual

7.      Microsoft Windows Sound System User Guide

8.      Roy NewsComm Thesis

9.        NewsComm Presentation

10.      Comparative Design Review Article

11.      Opcode Audioshop Manual

12.      Opcode Audioshop enabled system

13.      Sony MZ-1 User Manual

14.      Sony MZ-1 Service Manual

15.      Sony MZ-1 Portable Minidisc Recorder

16.      Sony MZ-B3 User Manual

17.      Sony MZ-R2 User Manual

18.      Sony MZ-R3 User Manual

19.      Sound Blaster "Making WAVes" Book

20.      Sound Blaster 16 enabled system

21.      Sound Blaster 16 User Guide

22.      Sound Blaster 16 enabled system

23.      NewsComm Journal Article

24.      Windows Sound System Manual

25.      Voyetra AudioStation User Manual

26.      FR 2714760

27.      U.S. Patent No. 5,168,481 to Culbertson, et al.

28.      U.S. Patent No. 5,341,350 to Frank, et al.

29.      U.S. Patent No. 5,347,082 to Ojima

30.      U.S. Patent No. 5,355,302 to Martin, et al.

31.      U.S. Patent No. 5,386,081 to Nakada, et al.

32.     U.S. Patent No. 5,418,622 to Takeuchi

33.     U.S. Patent No. 5,481,509 to Knowles

34.     U.S. Patent No. 5,499,316 to Sudoh, et al.

35.     U.S. Patent No. 5,541,638 to Story

36.     U.S. Patent No. 5,555,098 to Parulski

37.     U.S. Patent No. 5,583,560 to Florin, et al.

38.     U.S. Patent No. 5,594,601 to Mimick, et al.

39.     U.S. Patent No. 5,616,876 to Cluts

40.     U.S. Patent No. 5,661,787 to Pocock

41.     U.S. Patent No. 5,668,788 to Allison

42.     U.S. Patent No. 5,726,909 to Krikorian

43.     U.S. Patent No. 5,751,672 to Yankowski

44.     U.S. Patent No. 5,781,889 to Martin, et al.

45.     U.S. Patent No. 5,793,980 to Glaser, et al.

46.     U.S. Patent No. 5,798,921 to Johnson, et al.

47.     U.S. Patent No. 5,864,868 to Contois

48.     U.S. Patent No. 5,914,941 to Janky

49.     U.S. Patent No. 5,966,440 to Hair

50.     U.S. Patent No. 6,182,126 to Nathan, et al.

51.     U.S. Patent No. 5,687,160 to Aotake, et al.

52.     U.S. Patent No. 5,721,951 to DorEl

53.     Chase '914

54.     Chase '164

55.    Beaton

56.    Tuttle

57.    Person Book

58.    Lake

59.    Hindus Thesis

60.    Horner Thesis

61.    Comparative Design Article

62.    Petrowski

63.    Aarseth

64.    Rathbone

65.    Sone

66.    Labrosse

67.    Gravis Windecks enabled system

68.    RealAudio 2.0

69.    U.S. Patent No. 6,453,281 to Walters, et al.

70.    Macworld Music & Sound Bible

71.    Mod4Win

72.    IPR References

73.    NewsComm Device

**Q.    Preferences**

1.    DAD Manual v6.0A

2.    Loeb Article

3.    DAD Brochure

4.    DAD system

5.      Listen Up Player Publication

6.      Roy NewsComm Thesis

7.      NewsComm Presentation

8.      Comparative Design Review Article

9.      NewsComm Journal Article

10.     U.S. Patent No. 5,355,302 to Martin, et al.

11.     U.S. Patent No. 5,404,505 to Levinson

12.     U.S. Patent No. 5,524,051 to Ryan

13.     U.S. Patent No. 5,541,638 to Story

14.     U.S. Patent No. 5,557,541 to Schulhof, et al.

15.     U.S. Patent No. 5,572,442 to Schulhof, et al.

16.     U.S. Patent No. 5,583,560 to Florin, et al.

17.     U.S. Patent No. 5,616,876 to Cluts

18.     U.S. Patent No. 5,726,909 to Krikorian

19.     U.S. Patent No. 5,740,134 to Peterson

20.     U.S. Patent No. 5,819,160 to Foladare, et al.

21.     U.S. Patent No. 5,841,979 to Schulhof, et al.

22.     U.S. Patent No. 5,864,868 to Contois

23.     U.S. Patent No. 5,914,941 to Janky

24.     U.S. Patent No. 5,966,440 to Hair

25.     Mod4Win

26.     NewsComm Device

**R.      Remaining Time**

1.      DAD Manual v6.0A

2.      DAD Brochure

3.      DAD system

4.      Macromedia Director User Manual

5.      Sony MDS-B1 User Manual

6.      Microsoft Windows Sound System User Guide

7.      Opcode Audioshop Manual

8.      Opcode Audioshop enabled system

9.      Sony D-232 Discman User Manual

10.     Sony D-240 Discman User Manual

11.     Sony MZ-1 User Manual

12.     Sony MZ-1 Service Manual

13.     Sony MZ-1 Portable Minidisc Recorder

14.     Sony MZ-B3 User Manual

15.     Sony MZ-R2 User Manual

16.     Sony MZ-R3 User Manual

17.     Sound Blaster "Making WAVes" Book

18.     Sound Blaster 16 User Guide

19.     Sound Blaster 16 enabled system

20.     Windows Sound System Manual

21.     U.S. Patent No. 5,499,316 to Sudoh, et al.

22.     U.S. Patent No. 5,583,560 to Florin, et al.

23.     U.S. Patent No. 5,616,876 to Cluts

24.     U.S. Patent No. 5,751,672 to Yankowski

25.     U.S. Patent No. 5,793,980 to Glaser, et al.

26.     U.S. Patent No. 5,841,979 to Schulhof, et al.

27.     U.S. Patent No. 5,914,941 to Janky

28.     U.S. Patent No. 5,966,440 to Hair

29.     U.S. Patent No. 6,182,126 to Nathan, et al.

30.     Gravis Windecks enabled system

31.     RealAudio 2.0

32.     U.S. Patent No. 6,453,281 to Walters, et al.

33.     Macworld Music & Sound Bible

34.     WinPlay3

35.     Kan

36.     JSInc

37.     Windows95

38.     Mod4Win

39.     NewsComm Device

S.    **Skip To Track**

1.     DAD Manual v6.0A

2.     Loeb Article

3.     DAD system

4.     Macromedia Director User Manual

5.     Listen Up Player Publication

6.     Sony MDS-B1 User Manual

7.     Microsoft Windows Sound System User Guide

8.     Roy NewsComm Thesis

9.      NewsComm Presentation

10.     Comparative Design Review Article

11.     Opcode Audioshop Manual

12.     Opcode Audioshop enabled system

13.     Sony D-232 Discman User Manual

14.     Sony D-240 Discman User Manual

15.     Sony MZ-1 User Manual

16.     Sony MZ-B3 User Manual

17.     Sony MZ-R2 User Manual

18.     Sony MZ-R3 User Manual

19.     Sony MZ-1 Service Manual

20.     Sony MZ-1 Portable Minidisc Recorder

21.     Sound Blaster "Making WAVEs" Book

22.     Sound Blaster 16 User Guide

23.     Sound Blaster 16 enabled system

24.     NewsComm Journal Article

25.     Windows Sound System Manual

26.     Voyetra AudioStation User Manual

27.     U.S. Patent No. 5,296,848 to Witheridge, et al.

28.     U.S. Patent No. 5,481,509 to Knowles

29.     U.S. Patent No. 5,541,638 to Story

30.     U.S. Patent No. 5,583,560 to Florin, et al.

31.     U.S. Patent No. 5,594,601 to Mimick, et al.

32.     U.S. Patent No. 5,616,876 to Cluts

33.     U.S. Patent No. 5,668,788 to Allison

34.     U.S. Patent No. 5,726,909 to Krikorian

35.     U.S. Patent No. 5,751,672 to Yankowski

36.     U.S. Patent No. 5,781,889 to Martin, et al.

37.     U.S. Patent No. 5,793,980 to Glaser, et al.

38.     U.S. Patent No. 5,798,921 to Johnson, et al.

39.     U.S. Patent No. 5,841,979 to Schulhof, et al.

40.     U.S. Patent No. 5,864,868 to Contois

41.     U.S. Patent No. 5,914,941 to Janky

42.     U.S. Patent No. 6,182,126 to Nathan, et al.

43.     U.S. Patent No. 5,687,160 to Aotake, et al.

44.     U.S. Patent No. 5,721,951 to DorEl

45.     Chase '914

46.     Chase '164

47.     Beaton

48.     Tuttle

49.     Person Book

50.     Lake

51.     Hindus Thesis

52.     Horner Thesis

53.     Sony HCD-241

54.     Nielsen Article

55.   Petrowski

56.   Aarseth

57.   Rathbone

58.   Labrosse

59.   Gravis Windecks enabled system

60.   U.S. Patent No. 6,453,281 to Walters, et al.

61.   Macworld Music & Sound Bible

62.   Mod4Win

63.   IPR References

64.   NewsComm Device

**T.     Voice Command**

1.    U.S. Patent No. 5,774,859 to Houser, et al.

2.    U.S. Patent No. 6,392,633 to Leiper

3.    VoiceNotes Article

4.    Stifelman Thesis

5.    U.S. Patent No. 5,524,051 to Ryan

6.    WO 95-28,701 to Labrosse, et al.

7.    U.S. Patent No. 5,754,784 to Garland, et al.

8.    Windows Sound System References, including Using Windows Sound System 2

9.    Macworld Music & Sound Bible

10.   U.S. Patent No. 6,453,281 to Walters, et al.

11.   U.S. Patent No. 8,769,297 to Rhoads

12.   Mod4Win

13.   NewsComm Device

**U.    Subscription / Purchase Audio**

1.    U.S. Patent No. 5,132,992 to Yurt, et al.

2.    Listen Up Player Publication

3.    Loeb Article

4.    U.S. Patent No. 5,661,787 to Pocock

5.    U.S. Patent No. 6,182,126 to Nathan

6.    U.S. Patent No. 5,541,638 to Story

7.    U.S. Patent No. 5,819,160 to Foladare et al.

8.    U.S. Patent No. 5,914,941 to Janky

9.    U.S. Patent No. 5,721,815 to Ottesen, et al.

10.    U.S. Patent No. 8,769,297 to Rhoads

11.    U.S. Patent No. 5,524,051 to Ryan

12.    U.S. Patent No. 5,557,541 to Schulhof, et al.

13.    U.S. Patent No. 5,572,442 to Schulhof, et al.

14.    U.S. Patent No. 5,841,979 to Schulhof, et al.

15.    U.S. Patent No. 5,815,671 to Morrison

16.    U.S. Patent No. 5,966,440 to Hair

17.    U.S. Patent No. 5,404,505 to Levinson

18.    U.S. Patent No. 5,926,624 to Katz, et al.

19.    U.S. Patent No. 7,047,241 to Erickson

20.    U.S. Patent No. 5,638,443 to Stefik, et al.

21.    U.S. Patent No. 5,953,005 to Liu

22.    Cerberus System

23.    Mod4Win

24.     IPR References

25.     NewsComm Device

**V.      Audio Encryption / Decryption**

1.      Chase '914

2.      Chase '164

3.      U.S. Patent No. 5,132,992 to Yurt

4.      Loeb Article

5.      U.S. Patent No. 5,864,868 to Contois

6.      U.S. Patent No. 5,661,787 to Pocock

7.      U.S. Patent No. 5,726,909 to Krikorian

8.      U.S. Patent No. 5,793,980 to Glaser

9.      U.S. Patent No. 6,182,126 to Nathan

10.     U.S. Patent No. 5,616,876 to Cluts

11.     U.S. Patent No. 5,541,638 to Story

12.     U.S. Patent No. 5,819,160 to Foladare et al.

13.     U.S. Patent No. 5,914,941 to Janky

14.     U.S. Patent No. 8,769,297 to Rhoads

15.     U.S. Patent No. 5,524,051 to Ryan

16.     U.S. Patent No. 5,404,505 to Levinson

17.     U.S. Patent No. 5,926,624 to Katz, et al.

18.     U.S. Patent No. 7,047,241 to Erickson

19.     U.S. Patent No. 5,953,005 to Liu

20.     Cerberus System

21.     Mod4Win

22.     IPR References

23.     NewsComm Device

**APPENDIX B**

| | ADDITIONAL ART[62] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 1. | Sound Blaster Series, Hardware Programming Guide [APP-PA00006379-APP-PA00006519] | 1993-1996 |
| 2. | U.S. Patent No. 5,699,336 [APP-PA00005915-APP-PA00005933] | Dec. 16, 1997 (filed Jan. 18, 1996) (claims priority to JP P7-027729 filed Jan. 25, 1995) |
| 3. | U.S. Patent No. 5,508,984 [APP-PA00007467-APP-PA00007474] | Apr. 16, 1996 (filed Oct. 28, 1993) (claims priority to JP 4-316444 filed Oct. 30, 1992 and JP 4-316445 filed Oct. 30, 1992) |
| 4. | CA 2224712 [APP-PA00005236-APP-PA00005286] | Oct. 30, 1997 (filed Mar. 18, 1997) (Canada) |
| 5. | DE 3829032[63] [APP-PA00003774-APP-PA00003779] | July 5, 1990 (filed Aug. 26, 1988) (Germany) |
| 6. | "A Continuous Media Player" [APP-PA00006078-APP-PA00006088] | Nov. 1992 |
| 7. | "A Distributed Real-Time MPEG Video Audio Player," by Cen, S., et al., Department of Computer Science and Engineering Oregon Graduate Institute of Science and Technology [APP-PA00003902-APP-PA00003913] | 1995 |
| 8. | Akai Electric Co.: DR16 Hard Disk Recorder Operator's Manual, Japan [APP-PA00006202-APP-PA00006371] | Nov. 1995 |
| 9. | "Audio Support In HP Mpower" (Computer Network Communications Software) [APP-PA00007494-APP-PA00007499] | Apr. 1994 |
| 10. | "Automatic Content-Based Retrieval Of Broadcast News" [APP-PA00005326-APP-PA00005334] | Nov. 1995 |

---

[62]   To the extent that these additional references describe particular products and/or software programs that may have been publicly known or in public use prior to the filing dates of the patents-in-suit, Google reserves the right to amend and/or supplement these Invalidity Contentions based on information learned of in connection with subpoenas and/or other requests for information pertaining to such products and/or software programs.

[63]   Certified translation available at APP-PA00030553-APP-PA30559.

| | ADDITIONAL ART[62] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 11. | "Capturing, Structuring, and Representing Ubiquitous Audio" [APP-PA00002462-APP-PA00002486] | Oct. 1993 |
| 12. | "Decision '97: The New Digital Desktop Studios" [APP-PA00006372-APP-PA00006378] | July 1, 1997 |
| 13. | "Integration Of Value-Added Audio Playback Capacity Into A Computer Network" [APP-PA00006114-APP-PA00006118] | June 1995 |
| 14. | "Net.Speech: Desktop Audio Comes To The Net" [APP-PA00006071-APP-PA00006077] | Oct. 1995 |
| 15. | Roland Corporation: DM-800 Multi Track Disc Recorder Owner's Manual, 1995 [APP-PA00006887-APP-PA00007061] | 1995 |
| 16. | EP 0461127 [APP-PA00007346-APP-PA00007406] | Sept. 27, 1995 (filed Jan. 26, 1990) (claims priority to US 305,223 filed Feb. 2, 1989) |
| 17. | WO 1990/09020 [APP-PA00007754- APP-PA00007859] | Aug. 9, 1990 (Filed Jan. 26, 1990) (claims priority to US 305,223 filed Feb. 2, 1989) |
| 18. | GB 2262826 [APP-PA00005287- APP-PA00005296] | June 30, 1993 (filed Dec. 9, 1991) |
| 19. | GB 2299200 [APP-PA00005840- APP-PA00005862] | Sept. 25, 1996 (filed Mar. 11, 1996) |
| 20. | GB 2304489 [APP-PA00006587- APP-PA00006603] | Mar. 19, 1997 (Aug. 15, 1995) |
| 21. | U.S. Patent No. 3,947,882 [APP-PA00002916-APP-PA00002932] | Mar. 30, 1976 (filed Nov. 29, 1972) |
| 22. | U.S. Patent No. 4,210,940 [APP-PA00003822-APP-PA00003839] | July 1, 1980 (filed Sept. 29, 1978) |
| 23. | U.S. Patent No. 4,375,083 [APP-PA00006843-APP-PA00006866] | Feb. 22, 1983 (filed Jan. 31, 1980) |
| 24. | U.S. Patent No. 4,614,144 [APP-PA00002822-2832] | Sept. 30, 1986 (filed Sept. 21, 1984) |
| 25. | U.S. Patent No. 4,667,088 [APP-PA00002933-APP-PA00002939] | May 19, 1987 (filed Nov. 1, 1982) (claims priority to GB82/00311 filed May 11, 1983) |

| | ADDITIONAL ART[62] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 26. | U.S. Patent No. 4,766,581 [APP-PA00004228-APP-PA00004262] | Aug. 23, 1988 (filed Aug. 7, 1984) |
| 27. | U.S. Patent No. 4,817,127 [APP-PA00005162-APP-PA00005186] | Mar. 28, 1989 (filed Aug. 8, 1986) |
| 28. | U.S. Patent No. 4,905,289 [APP-PA00003689-APP-PA00003693] | Feb. 27, 1990 (filed Feb. 27, 1989) (claims priority to EP 86106577.9 filed May 15, 1986) |
| 29. | U.S. Patent No. 5,106,097 [APP-PA00007864-APP-PA00007878] | Apr. 21, 1992 (filed Feb. 28, 1991) |
| 30. | U.S. Patent No. 5,153,579 [APP-PA00007738-APP-PA00007753] | Oct. 6, 1992 (filed Feb. 21, 1991) |
| 31. | U.S. Patent No. 5,179,627 [APP-PA00006614-APP-PA00006842] | Jan. 12, 1993 (filed June 23, 1992) |
| 32. | U.S. Patent No. 5,341,350 [APP-PA00007650-APP-PA00007655] | Aug. 23, 1994 (filed July 4, 1991) |
| 33. | U.S. Patent No. 5,359,698 [APP-PA00007174-APP-PA00007191] | Oct. 25, 1994 (filed Dec. 20, 1991) |
| 34. | U.S. Patent No. 5,388,181 [APP-PA00007705-APP-PA00007724] | Feb. 7, 1995 (filed Sept. 29, 1993) |
| 35. | U.S. Patent No. 5,406,626 [APP-PA00002875-APP-PA00002879] | Apr. 11, 1995 (filed Mar. 15, 1993) |
| 36. | U.S. Patent No. 5,408,449 [APP-PA00006061-APP-PA00006070] | Apr. 18, 1995 (filed Nov. 30, 1993) |
| 37. | U.S. Patent No. 5,428,732 [APP-PA00002864-APP-PA00002874] | June 27, 1995 (filed Sept. 9, 1994) |
| 38. | U.S. Patent No. 5,454,723 [APP-PA00007082-APP-PA00007097] | Oct. 3, 1995 (filed Dec. 22, 1993) |
| 39. | U.S. Patent No. 5,463,599 [APP-PA00002940-APP-PA00002947] | Oct. 31, 1995 (filed Aug. 23, 1994) |
| 40. | U.S. Patent No. 5,467,288 [APP-PA00006012-APP-PA00006032] | Nov. 14, 1995 (filed Apr. 9, 1993) |
| 41. | U.S. Patent No. 5,475,835 [APP-PA00006128-APP-PA00006156] | Dec. 12, 1995 (filed Mar. 2, 1993) |

| | ADDITIONAL ART[62] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 42. | U.S. Patent No. 5,486,645 [APP-PA00006576-APP-PA00006586] | Jan. 23, 1996 (filed June 30, 1994) (claims priority to KR 93-12407 filed June 30, 1993) |
| 43. | U.S. Patent No. 5,500,919 [APP-PA00004600-APP-PA00004614] | Mar. 19, 1996 (filed Nov. 18, 1992) |
| 44. | U.S. Patent No. 5,510,573 [APP-PA00002880-APP-PA00002890] | Apr. 23, 1996 (filed June 30, 1994) (claims priority to KR 93-12406 filed June 30, 1993) |
| 45. | U.S. Patent No. 5,587,546 [APP-PA00004263-APP-PA00004268] | Dec. 24, 1996 (filed Nov. 15, 1994) (claims priority to JP 5-309768 filed Nov. 16, 1993) |
| 46. | U.S. Patent No. 5,590,195 [APP-PA00003049-APP-PA00003062] | Dec. 31, 1996 (filed Jan. 12, 1994) |
| 47. | U.S. Patent No. 5,610,774 [APP-PA00007551-APP-PA00007567] | Mar. 11, 1997 (filed Mar. 4, 1994) (claims priority on JP 3-263654 filed Oct. 11, 1991) |
| 48. | U.S. Patent No. 5,619,425 [APP-PA00007656-APP-PA00007679] | Apr. 8, 1997 (filed Mar. 17, 1995) (claims priority on JP 6-505506 filed Mar. 22, 1994) |
| 49. | U.S. Patent No. 5,625,608 [APP-PA00004085-APP-PA00004093] | Apr. 29, 1997 (filed May 22, 1995) |
| 50. | U.S. Patent No. 5,640,458 [APP-PA00005125-APP-PA00005134] | June 17, 1997 (filed Oct. 22, 1990 (claims priority on JP 1-278209 filed Oct. 25, 1989) |
| 51. | U.S. Patent No. 5,668,788 [APP-PA00005700-APP-PA00005704] | Sept. 16, 1997 (filed June 10, 1996) |
| 52. | U.S. Patent No. 5,670,730 [APP-PA00005953-APP-PA00005958] | Sept. 23, 1997 (filed May 22, 1995) |
| 53. | U.S. Patent No. 5,691,494 [APP-PA00004615-APP-PA00004630] | Nov. 25, 1997 (filed Sept. 29, 1995) (claims priority on JP 6-249454 filed Oct. 14, 1994) |

| | ADDITIONAL ART[62] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 54. | U.S. Patent No. 5,696,928 [APP-PA00006119-APP-PA00006127] | Dec. 9, 1997 (filed May 22, 1995) |
| 55. | U.S. Patent No. 5,708,845 [APP-PA00002435-APP-PA00002449] | Jan. 13, 1998 (filed Sept. 29, 1995) |
| 56. | U.S. Patent No. 5,728,960 [APP-PA00002833-APP-PA00002863] | Mar. 17, 1998 (filed July 10, 1996) |
| 57. | U.S. Patent No. 5,751,806 [APP-PA00004591-APP-PA00004599] | May 12, 1998 (filed Dec. 18, 1996) |
| 58. | U.S. Patent No. 5,790,423 [APP-PA00003675-APP-PA00003688] | Aug. 4, 1998 (filed June 4, 1995) |
| 59. | U.S. Patent No. 5,799,063 [APP-PA00007731-APP-PA00007737] | Aug. 25, 1998 (filed Aug. 5, 1996) |
| 60. | U.S. Patent No. 5,810,600 [APP-PA00003721-APP-PA00003740] | Sept. 22, 1998 (filed Apr. 20, 1993) (claims priority on JP 4-102840 filed Apr. 22, 1992; JP 4-106884 filed Apr. 24, 1992; JP 40131771 filed Apr. 25, 1992; JP 4-137845 filed Apr. 30, 1992) |
| 61. | U.S. Patent No. 5,845,104 [APP-PA00003840-APP-PA00003854] | Dec. 1, 1998 (filed Nov. 13, 1995) |
| 62. | U.S. Patent No. 5,848,427 APP-PA00003760-3773] | Dec. 8, 1998 (filed July26, 1998) (claims priority on JP 7-237084 filed Sept. 14, 1995) |
| 63. | U.S. Patent No. 5,915,288 [APP-PA00004094-APP-PA00004112] | June 22, 1999 (filed Feb. 19, 1998) |
| 64. | U.S. Patent No. 5,918,213 [APP-PA00003998-APP-PA00004077] | June 29, 1999 (filed Dec. 22, 1995) |
| 65. | U.S. Patent No. 5,926,624 [APP-PA00004130-APP-PA00004152] | July 20, 1999 (filed Sept. 12, 1996) |
| 66. | U.S. Patent No. 5,946,278 [APP-PA00005335-APP-PA00005351] | Aug. 31, 1999 (filed Sept. 8, 1997) |
| 67. | U.S. Patent No. 5,963,916 [APP-PA00002948-APP-PA00003042] | Oct. 5, 1999 (filed Oct. 31, 1996) |
| 68. | U.S. Patent No. 5,964,830 [APP-PA00004577-APP-PA00004590] | Oct. 12, 1999 (filed Aug. 20, 1996) |

| | ADDITIONAL ART[62] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 69. | U.S. Patent No. 5,966,440 [APP-PA00003694-APP-PA00003705] | Oct. 12, 1999 (filed June 6, 1995) |
| 70. | U.S. Patent No. 6,064,379 [APP-PA00005829-APP-PA00005839] | May 16, 2000 (filed June 24, 1996) |
| 71. | U.S. Patent No. 6,118,790 [APP-PA00005221-APP-PA00005235] | Sept. 12, 2000 (filed June 19, 1996) |
| 72. | U.S. Patent No. 6,212,359 [APP-PA00002450-APP-PA00002461] | Apr. 3, 2001 (filed July 2, 1997) |
| 73. | U.S. Patent No. 6,300,880 [APP-PA00005102-APP-PA00005120] | Oct. 9, 2001 (filed Jan. 16, 1996) |
| 74. | U.S. Patent No. 6,301,513 [APP-PA00006157-APP-PA00006201] | Oct. 9, 2001 (filed May 22, 1996) (claims priority on IL 113843 filed May 25, 1995; IL 115805 filed Oct. 29, 1995; IL 118230 filed May 12, 1996) |
| 75. | U.S. Patent No. 6,332,147 [APP-PA00007305-APP-PA00007345] | Dec. 18, 2001 (filed Nov. 3, 1995) |
| 76. | U.S. Patent No. 6,427,064 [APP-PA00003855-APP-PA00003891] | July 30, 2002 (filed Jan. 5, 1994) |
| 77. | U.S. Patent No. 6,453,281 [APP-PA00002525-APP-PA00002573] | Sept. 17, 2001 (filed July 30, 1996) |
| 78. | WO 1993/019536 [APP-PA00007440-APP-PA00007455] | Sept. 30, 1993 (filed Feb. 25, 1993) (claims priority on DE P4209382.1 filed Mar. 23, 1992) |
| 79. | WO 1994/020951 [APP-PA00007112-APP-PA00007173] | Sept. 15, 1994 (filed May 5, 1993) (claims priority on US 08/031094 filed Mar. 8, 1993) |
| 80. | WO 1997/020297 [APP-PA00007204-APP-PA00007264] | June 5, 1997 (filed Nov. 27, 1996) (claims priority on US 08/564009 filed Nov. 29, 1995) |
| 81. | WO 1997/040611 [APP-PA00005959-APP-PA00006011] | Oct. 30, 1997 (filed Mar. 18, 1997 (claims priority on US 08/635801 filed Apr. 22, 1996) |

| | ADDITIONAL ART[62] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 82. | Listing of Sony Service Manuals [APP-PA00007079-APP-PA00007081] | 8/3/09 |
| 83. | Sony MZ-B3 Service Manual [APP-PA00007879-APP-PA00007937] | 1997 |
| 84. | Sony MZ-R2 Portable Minidisc Recorder Service Manual [APP-PA00008018- APP-PA00008095] | 1993 |
| 85. | Sony MZ-R3 Portable Minidisc Recorder Service Manual [APP-PA00008431- APP-PA00008497] | 2001 |
| 86. | Saehan MPMan F20 Digital Stereo Player (device available for inspection); photographs available at [APP-PA00008378-APP-PA00008382] | |
| 87. | Avid Videoshop User Guide [APP-PA00009268-APP-PA00009733] | 1993 |
| 88. | Avid Media Composer User Guide, Oct. 1996 [APP-PA00034086- APP-PA00034623] | Oct. 1996 |
| 89. | The Audible Macintosh, by D. Rubin [APP-PA00009764- APP-PA00010230] | 1992 |
| 90. | U.S. Patent No. 5,239,124 [APP-PA00005209-APP-PA00005220] | Aug. 24, 1998 (filed Mar. 28, 1991) (claims priority on JP 2-84971 filed Apr. 2, 1990) |
| 91. | U.S. Patent No. 6,101,324 to Connell, et al. [APP-PA00034038- APP-PA00034085] | Aug. 8, 2000 (filed Feb. 6, 1990) |
| 92. | "The All-Digital Radio Station," by Aarseth, B., Audio Engineering Society [APP-PA00005135-APP-PA00005161] | May 11-14, 1996 |
| 93. | "Computer-Aided Radio and Television Automation of On- the-Air Studios in Broadcast Facilities," by Weiss, A., Audio Engineering Society 13th International Conference [APP-PA00004118- APP-PA00004129] | Dec. 1-4, 1994 |
| 94. | "Applications 3 – Radio Station Automation," by Jackson, P., Audio Engineering Society 4th UK Conference [APP-PA00006536- APP-PA00006540] | May 1990 |

| | ADDITIONAL ART[62] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 95. | "Multi-Channel Recording on Winchester Disks: Improving the Channel/Minute Ratio," by Kulick, J., et al., Audio Engineering Society 7th International Conference [APP-PA00007680-APP-PA00007683] | May 14-17, 1989 |
| 96. | "Networking of Personal Computers for Audio in a Broadcasting Environment," by Eliot, R., Audio Engineering Society UK Digital Audio Interchange Conference [APP-PA00004269- APP-PA00004277] | May 1993 |
| 97. | "The New Facilities for the Department for Light and Sound Design of the Theatre Academy of Finland," by Moller, H., Audio Engineering Society [APP-PA00005705- APP-PA00005716] | Oct. 7-10, 1993 |
| 98. | "Audio for Multimedia in Russia," by Gorodnikov, A., Audio Engineering Society [APP-PA00006608- APP-PA00006613] | Oct. 7-10, 1993 |
| 99. | "Country-wide Digital Audio Networking by the South African Broadcasting Corporation for on-line Playout of Programme Material in Distributed Radio Services," by Evans, T., Audio Engineering Society [APP-PA00007098- APP-PA00007111] | Mar. 16-19, 1993 |
| 100. | U.S. Patent No. 5,724,567 to Rose, et al. [APP-PA00033623 - APP-PA00033635] | Mar. 3, 1998 (filed Apr. 25, 1994) |
| 101. | U.S. Patent No. 5,410,344 to Graves, et al. [APP-PA00033499- APP-PA00033512] | Apr. 25, 1995 (filed Sept. 22, 1993) |
| 102. | U.S. Patent No. 5,724,482 to Grewe, et al. [APP-PA00033612- APP-PA00033622] | Mar. 3, 1998 (filed May 22, 1995) |
| 103. | "Wegener Announces MPEG-2 Based Systems for Broadcasters Using Micropolis Video Servers," M2 Presswire, [APP-PA00006059- APP-PA00006060] | Mar. 27, 1995 |
| 104. | "The Digital Audio Processing Station," by Moorer, J.A., et al., J.J. Audio Eng. Soc. Vol. 34, No. 6, pp 454-463, Audio Eng. Soc. U.S. [APP-PA00005819- APP-PA00005828] | June 1996 |

| | ADDITIONAL ART[62] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 105. | Sony MDS-B1 MD Recorder Operation Manual, Revision 2, Sony Corporation Audio Group[64] [APP-PA00005717- APP-PA00005784] | |
| 106. | "Lessons from *LyricTime*: A Prototype Multimedia System," by Loeb, S., et al., Bell Communications Research [APP-PA00030601- APP-PA00030608] | April 1-4, 1992 |
| 107. | U.S. Patent No. 5,721,827 [APP-PA00033579- APP-PA00033611] | Feb. 24, 1998 (filed Oct. 2, 1996) |
| 108. | JP 8084381[65] [APP-PA00003706- APP-PA00003720] | Mar. 26, 1996 |
| 109. | QuickTime: The Official Guide for Macintosh Users, by Stern, J., et al. [APP-PA00033127- APP-PA00033495] | 1994 |
| 110. | Mastering the World of QuickTime, by Borrell, J. [APP-PA00032818- APP-PA00033050] | 1993 |
| 111. | Mastering Macromedia Director 5, by Henderson, C. [APP-PA00032064- APP-PA00032817] | 1997 |
| 112. | U.S. Patent No. 5,848,398 [APP-PA00005942- APP-PA00005952] | Dec. 8, 1998 (filed Apr. 25, 1996) |
| 113. | WO 1996/017451 [APP-PA00034860- APP-PA00034917] | June 6, 1996 (filed Nov. 14, 1995) (claims priority on US 08/347582 filed Nov. 30, 1994) |
| 114. | Learning Director, published by Macromedia, version 4 [APP-PA00034624- APP-PA00034859] | 1994 |
| 115. | "Architectures for Personalized Multimedia," by Ramanathan, S., et al., IEEE [APP-PA00034947- APP-PA00034956] | Spring 1994 |

---

[64]   Because this reference is a revision prior to the revision of the Sony MDS-B1 User Manual, which has a publication date of June 13, 1993, the revision 2 version was published at least before that date.

[65]   Certified translation available at APP-PA00030586- APP-PA00030598.

Dated:  October 5, 2018

By:  */s/ Melissa Baily*
Melissa Baily
David Perlson
Antonio Sistos
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, Floor 22
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Google LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I, Jeff Nardinelli, hereby certify that on October 5, 2018, copies of the foregoing were

caused to be served via email upon the following:

William M. Parrish
Victor G. Hardy
Minghui Yang
Hardy Parrish Yang, LLP
Spicewood Business Center
4412 Spicewood Springs Road, Suite 202
Austin, TX 78759
Email: bparrish@hpylegal.com
Email: vhardy@hpylegal.com
Email: myang@hpylegal.com

Douglas Q. Hahn
Stradling Yocca Carlson & Rauth, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Email: dhahn@sycr.com

Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

By:  */s/ Jeff Nardinelli*
Jeff Nardinelli

# EXHIBITS B-E

# REDACTED IN THEIR ENTIRETY

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. 17-1751 (CFC) (CJB) |
| | § | |
| GOOGLE LLC, | § | JURY TRIAL |
| | § | |
| Defendant. | § | |
| | § | |

**EXPERT REPORT OF DR. KETAN MAYER-PATEL
REGARDING DEMONSTRATIVE WINDOWS 95 COMPUTERS**

## I.     INTRODUCTION

1.     My name is Ketan Mayer-Patel.  I am over eighteen years of age, and I would be competent to testify as to the matters set forth herein if I am called upon to do so.

2.     I have been retained by the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, on behalf of Defendant Google LLC ("Google") as an expert witness in connection with the above-captioned litigation initiated by Personal Audio, LLC ("Plaintiff" or "PA").  I have been asked to provide expert analysis and opinions concerning whether computers containing the same hardware specifications as Google's demonstrative Windows 95 computers would have been available on or before October 2, 1996.

3.     I am being compensated for my time expended in connection with this case at my customary rate of $600 per hour, plus expenses.  My compensation is in no way dependent on my opinions or the outcome of this matter.

4.     It may be necessary for me to supplement this report based on material that subsequently comes to light in this case, and I reserve the right to do so.  I may be asked to present demonstrative evidence at trial, and I reserve the right to do so.

## II.     QUALIFICATIONS

5.     My qualifications are listed in Section II of my June 19, 2020 Rebuttal Expert Report regarding noninfringement, which I incorporate here.

## III.     WINDOWS 95 COMPUTERS

6.     At the request of Google and Dr. Quackenbush, I purchased three Windows 95 computers off of eBay.com on July 24, 2020:

- A Micron Millennia Transport laptop ("Micron I"), then available at

  https://www.ebay.com/itm/Vintage-Micron-Millennia-Transport-133MHz-32MB-RAM-Win-95-CD-Floppy-Laptop/274410848519?

- 1 -

hash=item3fe4294107:g:8m8AAOSwYV9e96IZ.  A printout of the offer page is

attached as Exhibit A, and a printout of the post-sale page is attached as Exhibit

B.

- A second Micron Millennia Transport laptop ("Micron II"), then available at

  https://www.ebay.com/itm/Vintage-Micron-Millennia-Transport-133MHz-48MB-

  RAM-Win-95-CD-Floppy-Laptop/274339940508?

  hash=item3fdfef489c:g:kK4AAOSw56JemdH9.  A printout of the offer page is

  attached as Exhibit C, and a printout of the post-sale page is attached as Exhibit

  D.

- A Windows 95 desktop computer ("Desktop"), then available at

  https://www.ebay.com/itm/Vintage-Windows-95-DOS-Gaming-Computer-PC-

  Pentium-3DFX-Voodoo-2-SSD-SB16-MMX-CRT/264806714056?

  hash=item3da7b5cac8:g:F5YAAOSwAmNfGyRy.  A printout of the offer page is

  attached as Exhibit E, and a printout of the post-sale page is attached as Exhibit F.

7.     All three computers run the Windows 95 operating system.  As Windows 95 was

released in August 1995,[1] computers running Windows 95 would have been publicly available

by October 2, 1996.  Of note, the specification of both asserted patents mentions Windows 95 as

a then-existing operating system.  *See, e.g.,* U.S. Pat. No. 6,199,076 at 5:26-34.

8.     According to the product specifications listed on eBay, and verified on my

personal inspection of the devices, the Micron I and Micron II computers each contain a 133Mhz

Intel Pentium CPU.  According to the product specifications listed on eBay, and verified on my

---

[1]  *See, e.g.,*  https://www.washingtonpost.com/wp-srv/business/longterm/microsoft/stories/1995/debut082495.htm.

personal inspection of the devices, the Desktop computer contains a 200Mhz Intel Pentium CPU. In my experience, these CPUs would have been publicly available by October 2, 1996.  *See, e.g.*, http://www.cpu-world.com/CPUs/Pentium/Intel-Pentium%20133%20-%20A80502133%20(A80502-133).html, http://www.cpu-world.com/CPUs/Pentium/Intel-Pentium%20200%20-%20FV80502200.html

9.      According to the product specifications listed on eBay, and verified on my personal inspection of the devices, the Micron I computer contains 32 MB of RAM, the Micron II computer contains 48 MB of RAM, and the Desktop computer contains 64 MB of RAM.  In my experience, that amount of RAM was available for installation on computers by October 2, 1996.  *See, e.g.,* https://www.cnet.com/news/dell-passes-along-savings/.

10.     I further note that the Micron Millennia Transport line of laptops were available before October 2, 1996, and were preinstalled with Windows 95.  *See, e.g.,* https://groups.csail.mit.edu/mac/ftpdir/thinkpad/old-archive/HTML/tp-1996/msg00946.html, http://web.archive.org/web/19961110142506/http://www.mei.micron.com/Company/PressReleases/pr71596.htm, http://web.archive.org/web/19961219010716/http://www.pcmag.com/edchoice/1514/ec1514p1.htm, https://www.govtech.com/magazines/gt/Product-Focus-PCs.html.  I further note that the BIOS of the Desktop is dated 07/15/1995.

11.     Based on the above, the Micron I, Micron II, and Desktop computers represent hardware configurations that were available on or before October 2, 1996.  Put another way, a user in September 1996 could have purchased computers containing the same, or comparable, hardware configurations as the Micron I, Micron II, and Desktop computers.

12.     I reserve the right to supplement my report based on material that subsequently comes to light in this case, including any supplemental or responsive report submitted by Personal Audio, or any changes in the Court's claim constructions, or other substantive orders.

By:   _____
           Dr. Ketan Mayer-Patel



Hi! Sign in | Sell  Watchlist  My eBay

Search for anything    All Categories

Back to home page | Listed in category: Computers/Tablets & Networking > Laptops & Netbooks > PC Laptops & Netbooks

This listing has ended.

---

## Related sponsored items 1/2

Feedback o













| | | | | | |
|---|---|---|---|---|---|
| Bytecc BT-144 Slim Black USB External Floppy Disk... | Portable External 3.5" USB 1.44 MB FDD Floppy Disk... | Vintage Open Box A4TECH 3 button Mouse NWW-11... | Dell Latitude X200 Docking Station Port Replicator w/... | Dell Inspiron 2650 PP04L Laptop Floppy Drive Cadd... | Toshiba Portege Laptop 3.5" Exte... |
| $13.88 | $18.04 ~~$18.99~~ | $20.99 ~~$29.99~~ | $19.85 | $5.95 | $32.54 |
| + $4.88 shipping | Free shipping | + $8.99 shipping | + $11.95 shipping | Free shipping | + $32.54 shipping |

---

## Similar sponsored items

Feedback o













| | | | | | |
|---|---|---|---|---|---|
| VINTAGE Dell Inspiron 5000 PPM Notebook 3.5" Flopp... | Dell 3.06 GHz, 512 MB, No AC Adapter, No Floppy, N... | Vintage Dell INSPIRON 7500 Laptop Windows 98... | Vintage~ Compaq Armada M300 ~Personal Compute... | RAM MEMORY MICRON 1GB=2X 512MB PC1 3200U | MICRON RAM I 2GB=2x1GB PC |
| $26.10 ~~$30.70~~ | $47.53 ~~$91.80~~ | $65.00 | $75.00 | $9.35 | $4.49 |
| + shipping | + shipping | + shipping | Free shipping | + $11.22 shipping | + $10.47 shipping |

---



## Vintage Micron Millennia Transport 133MHz 32MB RAM Win 95 CD Floppy Laptop ++

| Condition: | Used |
|---|---|

Sold for: **US $200.00**
No Interest if paid in full in 6 mo on $99+*

Shipping: Calculate

### Shop with confidence

eBay Money Back Gua
Get the item you ordered money back. Learn more

Item location: New York, New York, United States

Ships to: United States, Canada, United Kingdom, Denmark, Romania, Slovakia, Bulgaria, Czech Republic, Finland, Hungary, Latvia, Lithuania, Malta, Estonia, Australia, Greece, Portugal, Cyprus, Slovenia, Japan, Sweden, Korea, South, Taiwan, Belgium, France, Ireland, Netherlands, Poland, Spain, Italy, Germany, Austria, Bahamas, Israel, Mexico, New Zealand, Singapore, Switzerland, Norway, United Arab Emirates, Qatar, Kuwait, Bahrain, Croatia, Republic of, Malaysia, Antigua and Barbuda, Aruba, Belize, Dominica, Grenada, Saint Kitts-Nevis, Saint Lucia, Turks and Caicos Islands, Barbados, Bermuda, Brunei Darussalam, Bolivia, French Guiana, Guernsey, Gibraltar, Guadeloupe, Iceland, Jersey, Jordan, Cambodia, Cayman Islands, Liechtenstein, Sri Lanka, Luxembourg, Monaco, Macau, Martinique, Maldives, Oman, Pakistan, Paraguay, Reunion, Uruguay   See exclusions

Delivery: Varies

Payments:

**PayPal CREDIT**

*No Interest if paid in full in 6 months on $99+. | See terms and apply now

Earn up to 5x points when you use your eBay Mastercard. Learn more

Returns: Seller does not accept returns | See details

### Seller information
ibepaco (337 )
100% Positive feedback

Save this Seller

Contact seller

See other items

**Have one to sell?** | **Sell now**

| Description | Shipping and payments |

eBay item number: 27

Seller assumes all responsibility for this listing.

Last updated on   Jul 10, 2020 06:11:07 PDT   View all revisions

### Item specifics

| | | | |
|---|---|---|---|
| Condition: | Used: An item that has been used previously. The item may have some signs of cosmetic wear, but is fully … Read more | Brand: | Micron |
| Processor Speed: | 133 MHz | Operating System: | Windows 95 |
| Screen Size: | 12.1 in | Model: | Millennia TransPort |
| Processor Type: | Pentium | Type: | Notebook |
| Storage Type: | HDD (Hard Disk Drive) | Release Year: | 1996 |
| MPN: | Does Not Apply | RAM Size: | 48 MB |
| Processor: | Intel Pentium | Hard Drive Capacity: | up to 1.2GB |

Vintage Micron Millennia Transport 133MHz 32MB RAM Win 95 CD Floppy Laptop ++. Condition is Used.

Micron Millennia Transport.  Powers up and performs well when plugged in via AC adaptor.  Battery pack doesn't seem to hold charge.

This has a 133Mhz Intel Pentium CPU
32MB onboard Ram
3.5" removable Floppy Drive
5.25" removable 4X CD-Rom Drive

This comes with tons of extras.  Included:

Micron Millennia Transport Notebook
AC Adaptor
3.5-inch Floppy Drive Removable
5.25-inch Removable 4X CD-ROM Drive
Non-working Lithium-Ion Battery
1.2 GB Hard Drive Removable
Original Manual
Windows 95 & Microsoft Plus CD
Microsoft Office & Bookshelf designed for Windows 95 Software CD's
PC Card Modem 56K
Micron Laptop Carry Case

The original price of this system in 1996 was over $4000.00.

Ad · wayfair.com ▾

**Antique** Computer at Wayfair® - Wayfair® **Antique** Computer

At Your Doorstep Faster Than Ever, Fast & Free Shipping On Orders Over $35! Up to 70% Off Top Selling Brands. Fast & Free Shipping On Orders Over $35! Shop our Huge Selection. Something for Everyone. Up to 70% Off. A Zillion Things Home. Top Brands & Styles. Home Décor & so much more. Styles: Modern, Traditional, Eclectic, Rustic, Glam, Farmhouse, Country, Industrial.

⭐ (4.6)

[ Visit Website ]

Ad · tigerdirect.com ▾

**TigerDirect Official Site - Unbeatable Prices - Great Deals & Quick Shipping**

Take Advantage of Our Special Deals and Spend Less on Intel Electronics. Don't Miss Out! Desktops with Intel Inside® Come in a Range of Packages to Solve Any Computing Need. Low Prices. Rebate Savings. Daily Deals. Exclusive Bundles. Track Your Order. Business Solutions. Dedicated Service. Innovative Products. Models: EliteBook, EliteDesk, ProDesk, ProBook, ZBook, Envy, Omen, Pavilion.

⭐ (4.6)

| | |
|---|---|
| Laptops & Notebooks | Desktop Computers |
| Software | Consumer Electronics |
| Components & Storage | Request an eQuote |

[ Visit Website ]

Ad · walletgenius.com ▾

**Buy Windows 95 - Buy Windows 95**

If You Have Questions About Computer Software We Can Help. Browse Great Results & Info. Reliable Results, Genius Answers, Correct Information, Fast & Easy To Find Information. Laptop Information. Computer Hardware. Electronic Help. Types: Explore Information, Browse Finance Info, Save Money Online.

| | |
|---|---|
| Computer Programming | Computer Security |
| Antiviral Software | Endpoint Protection |

[ Visit Website ]

Ad · info.com ▾

**32G RAM Laptop - 32G RAM Laptop**

Search 32G **RAM** Laptop.

[ Visit Website ]

---

Back to home page

More to explore :  Winning,  Floppy Emulator,  Vintage Computer Floppy Drives for Apple,  Home Audio CD CD Transports for SACD,  Sog Micron,  300 Win Mag Dies,  Floppy, Zip & Jaz Dri Vintage and Classic Headlights for Saab 95,  Micron 4GB DDR4 SDRAM Memory (RAM),  Vintage and Classic Parts for Saab 95

---

About eBay    Announcements    Community    Security Center    Resolution Center    Seller Center    Policies    Affiliates    Help & Contact    Site Map

Copyright © 1995-2020 eBay Inc. All Rights Reserved. Accessibility, User Agreement, Privacy, Cookies, Do not sell my personal information and AdChoice

Case 1:17-cv-01751-CFC-CJB Document 505-1 Filed 10/05/20 Page 246 of 486 PageID #: 25443



Hi! Sign in                                                                                     Sell    Watchlist    My eBay

🔍 Search for anything | All Categories ▾ |

Back to home page | Listed in category: Computers/Tablets & Networking > Laptops & Netbooks > PC Laptops & Netbooks

---

This listing has ended.

## Vintage Micron Millennia Transport 133MHz 32MB RAM Win 95 CD Floppy Laptop ++ See original listing



Sell one like this

| | |
|---|---|
| Condition: | **Used** |
| Ended: | Jul 24, 2020, 8:14PM |
| Price: | **US $200.00** |
| Shipping: | **Calculate** Varies based on location and shipping method |
| Item location: | New York, New York, United States |
| Seller: | **ibepaco (337  )** | **Seller's other items** |

---

Related sponsored items 1/2                                                                        Feedback ⌄



Bytecc BT-144 Slim Black USB External Floppy Disk...

$13.88
+ $4.88 shipping



Portable External 3.5" USB 1.44 MB FDD Floppy Disk...

$18.04
$18.99
Free shipping



Vintage Open Box A4TECH 3 button Mouse NWW-11...

$20.99
$29.99
+ $8.99 shipping



Dell Latitude X200 Docking Station Port Replicator w/...

$19.85
+ $11.95 shipping



Dell Inspiron 2650 PP04L Laptop Floppy Drive Cadd...

$5.95
Free shipping



Toshiba Portege Laptop 3.5" Exte...

$32.54
+ $32.54 shipping

---

Similar sponsored items                                                                            Feedback ⌄



VINTAGE Dell Inspiron 5000 PPM Notebook 3.5" Flopp...

$26.10
$30.70
+ shipping



Dell 3.06 GHz, 512 MB, No AC Adapter, No Floppy, N...

$47.53
$91.80
+ shipping



Vintage Dell INSPIRON 7500 Laptop Windows 98...

$65.00
+ shipping



Vintage~ Compaq Armada M300 ~Personal Compute...

$75.00
Free shipping



RAM MEMORY MICRON 1GB=2X 512MB PC1 3200U

$9.35
+ $11.22 shipping



MICRON RAM 2GB=2x1GB PC...

$4.49
+ $10.47 shipping

---

## Description

Seller assumes all responsibility for this listing.

eBay item number

Last updated on  Jul 10, 2020 06:11:07 PDT   View all revisions

### Item specifics

| | | | |
|---|---|---|---|
| Condition: | Used: An item that has been used previously. The item may have some signs of cosmetic wear, but is fully … Read more | Brand: | Micron |
| Processor Speed: | 133 MHz | Operating System: | Windows 95 |
| Screen Size: | 12.1 in | Model: | Millennia TransPort |
| Processor Type: | Pentium | Type: | Notebook |
| Storage Type: | HDD (Hard Disk Drive) | Release Year: | 1996 |
| MPN: | Does Not Apply | RAM Size: | 48 MB |
| Processor: | Intel Pentium | Hard Drive Capacity: | up to 1.2GB |

Vintage Micron Millennia Transport 133MHz 32MB RAM Win 95 CD Floppy Laptop ++. Condition is Used.

Micron Millennia Transport.  Powers up and performs well when plugged in via AC adaptor.  Battery pack doesn't seem to hold charge.

This has a 133Mhz Intel Pentium CPU
32MB onboard Ram
3.5" removable Floppy Drive
5.25" removable 4X CD-Rom Drive

This comes with tons of extras.  Included:

Micron Millennia Transport Notebook
AC Adaptor
3.5-inch Floppy Drive Removable
5.25-inch Removable 4X CD-ROM Drive
Non-working Lithium-Ion Battery
1.2 GB Hard Drive Removable
Original Manual
Windows 95 & Microsoft Plus CD
Microsoft Office & Bookshelf designed for Windows 95 Software CD's
PC Card Modem 56K
Micron Laptop Carry Case

The original price of this system in 1996 was over $4000.00.

Back to home page

More to explore :   Winning,   Floppy Emulator,   Vintage Computer Floppy Drives for Apple,   Home Audio CD CD Transports for SACD,   Sog Micron,   300 Win Mag Dies,   Floppy, Zip & Jaz Dri
Vintage and Classic Headlights for Saab 95,   Micron 4GB DDR4 SDRAM Memory (RAM),   Vintage and Classic Parts for Saab 95

About eBay    Announcements    Community    Security Center    Resolution Center    Seller Center    Policies    Affiliates    Help & Contact    Site Map

Copyright © 1995-2020 eBay Inc. All Rights Reserved. Accessibility, User Agreement, Privacy, Cookies, Do not sell my personal information and AdChoice



Hi! Sign in                                                    Sell    Watchlist    My eBay

Search for anything                                    All Categories ▾

Back to home page  |  Listed in category:   Computers/Tablets & Networking  >  Laptops & Netbooks  >  PC Laptops & Netbooks

This listing has ended.

Related sponsored items 1/2                                                    Feedback

     

| Bytecc BT-144 Slim Black USB External Floppy Disk... | Portable External 3.5" USB 1.44 MB FDD Floppy Disk... | Vintage Open Box A4TECH 3 button Mouse NWW-11... | USA NJ New Genuine 0813007 BSNO3558E5... | Dell Latitude X200 Docking Station Port Replicator w/... | Dell Inspiron 26 Laptop Floppy D |
|---|---|---|---|---|---|
| $13.88 | $18.04 | $20.99 | $53.10 | $19.85 | $5.95 |
| + $4.88 shipping | $18.99 | $29.99 | $55.89 | + $11.95 shipping | Free shipping |
|  | Free shipping | + $8.99 shipping | Free shipping |  |  |

Similar sponsored items 1/2                                                    Feedback

     

| Vintage Compaq Contura Contura 400C Windows 9,... | VINTAGE NEC LAPTOP PC-6010-41301 VERSA... | IBM THINKPAD RETRO Alienware like Laptop... | AS IS SONY VAIO PCG-C1XG/BP Working Japane... | VINTAGE Dell Inspiron 5000 PPM Notebook 3.5" Flopp... | Dell 3.06 GHz, 5 AC Adapter, No |
|---|---|---|---|---|---|
| $299.99 | $99.99 | $365.00 | $349.99 | $26.10 | $47.53 |
| Free shipping | Free shipping | + $24.00 shipping | Free shipping | $30.70 | $91.80 |
|  |  |  |  | + shipping | + shipping |

### Vintage Micron Millennia Transport 133MHz 48MB RAM Win 95 CD Floppy Laptop ++

Condition:  **Used**

Sold for:  **US $229.99**

No Interest if paid in full in 6 mo on $99+*

Shipping:  Local pick-up offered.  |  See details

Shop with confidence

eBay Money Back Gua
Get the item you ordered
money back. Learn more



    



Item location: Imperial Beach, California, United States
Ships to: Worldwide    See exclusions

**Delivery:** Varies

**Payments:** Pay on pickup

**PayPal CREDIT**
*No Interest if paid in full in 6 months on $99+. | See terms and apply now

Earn up to 5x points when you use your eBay Mastercard. Learn more

**Returns:** Free 30 day returns | See details

**Seller information**
lecrad03 (7934     )
99.5% Positive feedback

Save this Seller
Contact seller
Visit store
See other items

Have one to sell?    Sell now

| Description | Shipping and payments |
| --- | --- |

eBay item number:  27

Seller assumes all responsibility for this listing.
Last updated on  Jul 16, 2020 05:49:03 PDT  View all revisions

### Item specifics

| | | | |
| --- | --- | --- | --- |
| Condition: | Used: An item that has been used previously. The item may have some signs of cosmetic wear, but is fully … Read more | Model: | Millennia TransPort |
| Processor Speed: | 133 MHz | Type: | Notebook |
| Hard Drive Capacity: | up to 1.2GB | MPN: | Does Not Apply |
| Processor Type: | Pentium | RAM Size: | 48 MB |
| Release Year: | 1996 | Brand: | Micron |
| Storage Type: | HDD (Hard Disk Drive) | Screen Size: | 11.3 in |
| Processor: | Intel Pentium | Operating System: | Windows 95 |

**lecrad03**
lecrad03 (7934    )    99.5%

📧  Sign up for newsletter

Visit Store:

## Categories

Lego

Other

**Vintage Micron Millennia Transport 133MHz 48GB RAM Win 95 CD Floppy 56**

This is a vintage Micron Millennia Transport.  The external and internal batteries are no longer operable.
the home screen once by plugging in AC Power, but the internal battery will no longer allow the system to
short of the desktop screen.

This has a 133Mhz Intel Pentium CPU
Upgraded to 48MB  onboard Ram
3.5" removable Floppy Drive
5.25" removable 4X CD-Rom Drive

This comes with tons of extras.  Included:

Micron Millennia Transport Notebook
AC Adaptor
3.5-inch Floppy Drive Removable
5.25-inch Removable 4X CD-ROM Drive
Non-working Lithium-Ion Battery
1.2 GB Hard Drive Removable
Original Manual
Microsoft Windows 95 Manual
Windows 95 & Microsoft Plus CD
11 Original Micron 3.5 Disks
Micron Sound Blaster CD
PC Handyman CD
Encarta 98 (2 CD's)
Microsoft Works CD
Microsoft Office & Bookshelf designed for Windows 95 Software CD's
Mouse
Printer Cable
PC Card Modem 56K and associated Paperwork/CD
Norton Antivirus 3.5-in Floppy's for Windows 95
Two Replacement TrackPoints
RFI Noise Suppressor
Samsonite Laptop Carry Case

The original price of this system in 1996 was $4738.00.

Please contact me with any questions.  Thanks for looking.

Ad · wayfair.com ▼

**Antique Computer at Wayfair® - Antique Computer Under $150**

At Your Doorstep Faster Than Ever, Fast & Free Shipping On Orders Over $35! Up to 70% Off Top Selling Brands. Fast & Free Shipping On Orders Over $35! Up to 70% Off. Home Décor & so much more. Something for Everyone. Shop our Huge Selection. Top Brands & Styles. Styles: Modern, Traditional, Eclectic, Rustic, Glam, Farmhouse, Country, Industrial.

(4.6)

Visit Website

Ad · gopher.com ▼

**Windows 95 CD - Windows 95 CD**

Search Windows 95 CD, Look Up Results on Gopher.com

Visit Website

Ad · tigerdirect.com ▼

**TigerDirect Official Site - Unbeatable Prices - Great Deals & Quick Shipping**

Take Advantage of Our Special Deals and Spend Less on Intel Electronics. Don't Miss Out! Desktops with Intel Inside® Come in a Range of Packages to Solve Any Computing Need. Daily Deals. Track Your Order, Exclusive Bundles. Dedicated Service. Innovative Products. Low Prices.

(4.6)

Visit Website

Laptops & Notebooks    Desktop Computers
Software    Request an eQuote
Business Solutions    Consumer Electronics

Ad · walletgenius.com ▼

**-- - Laptop RAM**

If You Have Questions About Computer Hardware We Can Help. Browse Great Results & Info. Reliable Results, Genius Answers, Correct Information, Fast & Easy To Find Information. Comprehensive Information. Explore Finance Info. Browse Online Resources. Find Trusted Sources. Types: Explore Information, Browse Finance Info, Save Money Online.

Visit Website

Endpoint Protection    Antivirus Software
Computer Hardware    Cybersecurity Services
Electronics

Back to home page

More to explore : Winning, Floppy Emulator, Vintage Computer Floppy Drives for Apple, Home Audio CD CD Transports for SACD, Sog Micron, Floppy Disk Reader, Winning 12oz Boxin 300 Win Mag Dies, Floppy, Zip & Jaz Drives, Vintage and Classic Headlights for Saab 95

About eBay   Announcements   Community   Security Center   Resolution Center   Seller Center   Policies   Affiliates   Help & Contact   Site Map

Copyright © 1995-2020 eBay Inc. All Rights Reserved. Accessibility, User Agreement, Privacy, Cookies, Do not sell my personal information and AdChoice



Hi! Sign in                                                                    Sell    Watchlist    My eBay

Search for anything                                          All Categories ▾

Back to home page | Listed in category:  Computers/Tablets & Networking  >  Laptops & Netbooks  >  PC Laptops & Netbooks

---

This listing has ended.

---

**Vintage Micron Millennia Transport 133MHz 48MB RAM Win 95 CD Floppy Laptop ++** See original listing



SOLD

Sell one like this

| | |
|---|---|
| Condition: | **Used** |
| Ended: | Jul 24, 2020, 8:08PM |
| Price: | US $229.99 |
| Shipping: | Local pick-up offered. |
| Item location: | Imperial Beach, California, United States |
| Seller: | lecrad03 (7934  )  |  Seller's other items |

---

Related sponsored items 1/2                                                    Feedback o


Bytecc BT-144 Slim Black USB External Floppy Disk...
$13.88
+ $4.88 shipping


Portable External 3.5" USB 1.44 MB FDD Floppy Disk...
$18.04
$18.99
Free shipping


Vintage Open Box A4TECH 3 button Mouse NWW-11...
$20.99
$29.99
+ $8.99 shipping


USA NJ New Genuine 0813007 BSNO3558E5...
$53.10
$55.89
Free shipping


Dell Latitude X200 Docking Station Port Replicator w/...
$19.85
+ $11.95 shipping


Dell Inspiron 26 Laptop Floppy D...
$5.95
Free shipping

---

Similar sponsored items 1/2                                                    Feedback o


Vintage Compaq Contura Contura 400C Windows 9...
$299.99
Free shipping


VINTAGE NEC LAPTOP PC-6010-41301 VERSA...
$99.99
Free shipping


IBM THINKPAD RETRO Alienware like Laptop...
$365.00
+ $24.00 shipping


AS IS SONY VAIO PCG-C1XG/BP Working Japane...
$349.99
Free shipping


VINTAGE Dell Inspiron 5000 PPM Notebook 3.5" Flopp...
$26.10
$30.70
+ shipping


Dell 3.06 GHz, AC Adapter, No...
$47.53
$91.80
+ shipping

## Description

Seller assumes all responsibility for this listing.

eBay item number

Last updated on  Jul 16, 2020 05:49:03 PDT   View all revisions

### Item specifics

| | | | |
|---|---|---|---|
| Condition: | Used: An item that has been used previously. The item may have some signs of cosmetic wear, but is fully ... Read more | Model: | Millennia TransPort |
| Processor Speed: | 133 MHz | Type: | Notebook |
| Hard Drive Capacity: | up to 1.2GB | MPN: | Does Not Apply |
| Processor Type: | Pentium | RAM Size: | 48 MB |
| Release Year: | 1996 | Brand: | Micron |
| Storage Type: | HDD (Hard Disk Drive) | Screen Size: | 11.3 in |
| Processor: | Intel Pentium | Operating System: | Windows 95 |

**lecrad03**

lecrad03 (7934  )   99.5%                                                Visit S

🖂 Sign up for newsletter

## Categories

Lego

Other

**Vintage Micron Millennia Transport 133MHz 48GB RAM Win 95 CD Floppy 56**

This is a vintage Micron Millennia Transport.  The external and internal batteries are no longer operable.  I wa home screen once by plugging in AC Power, but the internal battery will no longer allow the system to come u desktop screen.

This has a 133Mhz Intel Pentium CPU
Upgraded to 48MB  onboard Ram
3.5" removable Floppy Drive
5.25" removable 4X CD-Rom Drive

This comes with tons of extras.  Included:

Micron Millennia Transport Notebook
AC Adaptor
3.5-inch Floppy Drive Removable
5.25-inch Removable 4X CD-ROM Drive
Non-working Lithium-Ion Battery
1.2 GB Hard Drive Removable
Original Manual
Microsoft Windows 95 Manual
Windows 95 & Microsoft Plus CD
11 Original Micron 3.5 Disks
Micron Sound Blaster CD
PC Handyman CD
Encarta 98 (2 CD's)
Microsoft Works CD
Microsoft Office & Bookshelf designed for Windows 95 Software CD's
Mouse
Printer Cable
PC Card Modem 56K and associated Paperwork/CD
Norton Antivirus 3.5-in Floppy's for Windows 95
Two Replacement TrackPoints
RFI Noise Suppressor
Samsonite Laptop Carry Case

The original price of this system in 1996 was $4738.00.

Please contact me with any questions.  Thanks for looking.

Related sponsored items 1/2                                                                    Feedback

     

Bytecc BT-144 Slim Black USB External Floppy Disk...
$13.88
+ $4.88 shipping

Portable External 3.5" USB 1.44 MB FDD Floppy Disk...
$18.04
$18.99
Free shipping

Vintage Open Box A4TECH 3 button Mouse NWW-11...
$20.99
$29.90
+ $8.99 shipping

USA NJ New Genuine 0813007 BSNO3558E5...
$53.10
$55.89
Free shipping

Dell Latitude X200 Docking Station Port Replicator w/...
$19.85
+ $11.95 shipping

Dell Inspiron 26 Laptop Floppy D...
$5.95
Free shipping

Explore more sponsored options: Brand

Compaq

  

Compaq Armada 7730MT Laptop Pentium MMX...
$55.25
$65.00
+ shipping

Vintage compaq LTE 5000 Laptop . working , please...
$189.14
+ shipping

Vintage Compaq Contura Contura 400C Windows ...
$299.99
+ shipping

Acer

  

computer Pc portatile IBM thinkpad r50e !!...
$70.42
+ shipping

Acer ASPIRE 5332 Intel Laptop - Does not boot -...
$32.58
+ shipping

Vintage Acer T 200T laptop
$65.21
+ shipping

People who viewed this item also viewed 1/2                                                    Feedback

     

*Rare* IBM ThinkPad A31p 15" Intel Pentium 4 2GHz...
$149.90
Free shipping

Gateway Windows 98se Laptop,30GB HD,512MB...
$79.95
+ shipping

Vintage Dell INSPIRON 7500 Laptop Windows 98 ...
$65.00
+ shipping

Gateway Laptop Computer,Windows...
$99.95
+ shipping

Dell Lattitude CPi D300XT PPL Pentium II Laptop...
$36.00
+ $22.75 shipping    33 bids

Vintage IBM Th AC Adapter, Flo
$97.00
+ shipping

## Sponsored items based on your recent views 1/2

Feedback

     

| | | | | | |
|---|---|---|---|---|---|
| Texas Instruments Extensa 565CD Vintage Laptop,... | Vintage Samsung Sens 800 laptop computer | Vintage Compaq Contura Contura 400C Windows 9... | Vintage Wang Laptop Computer Model WLTC,Ol... | Epson HX-20 Vintage Portable Computer with... | Vintage PC, Sie Nixdorf PCD-3M |
| $280.00 | $140.00 | $299.99 | $202.18 | $288.00 | $75.00 |
| $350.00 | + $20.00 shipping | Free shipping | Free shipping | + shipping | + $144.00 shippi |
| Free shipping | | | | | |

Ad wayfair.com▾

**Antique Computer at Wayfair® - Antique Computer Under $150**

Visit Website

At Your Doorstep Faster Than Ever. Fast & Free Shipping On Orders Over $35! Up to 70% Off Top Selling Brands. Fast & Free Shipping On Orders Over $35! Shop our Huge Selection. Up to 70% Off. A Zillion Things Home. Top Brands & Styles. Home Décor & so much more. Something for Everyone. Styles: Modern, Traditional, Eclectic, Rustic, Glam, Farmhouse, Country, Industrial.

(4.6)

Ad tigerdirect.com▾

**TigerDirect Official Site - Unbeatable Prices - Specialized Tech Retailer**

Visit Website

Take Advantage of Our Special Deals and Spend Less on Intel Electronics. Don't Miss Out! Desktops with Intel Inside® Come in a Range of Packages to Solve Any Computing Need. Innovative Products. Dedicated Service. Low Prices. Track Your Order, Rebate Savings. Daily Deals. Business Solutions. Exclusive Bundles. Models: EliteBook, EliteDesk, ProDesk, ProBook, ZBook, Envy, Omen, Pavilion.

(4.6)

Laptops & Notebooks    Desktop Computers
Software    Request an eQuote
Daily Deals    Business Solutions

Ad justanswer.com▾

**Ram Troubleshooting - Fix It Fast–1:1 Mechanic Chat**

Visit Website

Dodge Mechanics Online Now. Get Expert Repair & Parts Guidance in Minutes! 12MM+ Questions Answered. Helped Over 8MM Worldwide. Services: Expert Q&A, 1-on-1 Consultations, Connect in Minutes, Free Follow-Up Questions, 24/7 Access.

(4.9)

Ask on JustAnswer Now    Ask Your Car Question Now
Get Medical Answers    Ask a CPA Online Now

Back to home page

More to explore :   Winning,   Floppy Emulator,   Vintage Computer Floppy Drives for Apple,   Home Audio CD CD Transports for SACD,   Sog Micron,   300 Win Mag Dies,   Floppy, Zip & Jaz Dri
Vintage and Classic Headlights for Saab 95,   Micron 4GB DDR4 SDRAM Memory (RAM),   Vintage and Classic Parts for Saab 95

About eBay    Announcements    Community    Security Center    Resolution Center    Seller Center    Policies    Affiliates    Help & Contact    Site Map

Copyright © 1995-2020 eBay Inc. All Rights Reserved. Accessibility, User Agreement, Privacy, Cookies, Do not sell my personal information and AdChoice

Hi! Sign in



Sell    Watchlist    My eBay

Search for anything | All Categories

Back to home page | Listed in category: Computers/Tablets & Networking > Vintage Computing > Vintage Computers & Mainframes

This listing has ended.

This seller is currently away until Aug 08, 2020. If you make a purchase, there may be a delay in processing your order.

## Sponsored items from this seller

Feedback o



Vintage Intel Computer Camera Webcam USB

$8.99
+ $4.99 shipping



Vintage PC Individual Training For Lotus 1-2-3...

$7.49
+ $2.99 shipping

## Similar sponsored items 1/2

Feedback o



Vintage Northstar North Star Advantage PC Computer...

$750.00
Free shipping



Apple Macintosh Portable M5120 VERY CLEAN SO...

$597.00
+ shipping



Vintage Rack Computer Pentium 4 2.4GHz 1GB...

$306.00
$360.00
+ shipping



Lot of 2 Vintage Morrow Designs Computers with 2...

$750.00
Free shipping



Vintage Laser 128K Computer - Very Clean but...

$498.00
+ shipping



Vintage Zenith D Systems Z-67 C

$424.99
$499.99
+ shipping



### Vintage Windows 95 DOS Gaming Computer PC Pentium 3DFX Voodoo 2 SSD SB16 MMX CRT

Shop with confidence

eBay Money Back Gua
Get the item you ordered
money back. Learn more

Condition: --

" Machine is 100% Reliable, no problems what so ever - A treat of a Turn Key Vintage Computer to take " ... Read more

Sold for: US $799.99



$36 for 24 months
with PayPal Credit*

**Seller information**
baagoo (1221   )
100% Positive feedback

Save this Seller
Contact seller
Visit store
See other items

Shipping: **$99.99** Standard Shipping | See details
Item location: Austin, Texas, United States
Ships to: United States and many other countries | See details

Delivery: Estimated within 6-7 business days

Payments:

**PayPal CREDIT**
*$36 for 24 months. Minimum purchase required. | See terms and apply now

Earn up to 5x points when you use your
eBay Mastercard.  Learn more

Returns: 30 day returns. Buyer pays for return shipping |
See details




Have one to sell?  **Sell now**

---

| Description | Shipping and payments |

eBay item number:   26

Seller assumes all responsibility for this listing.

### Item specifics

| Seller Notes: | "Machine is 100% Reliable, no problems what so ever - A treat of a Turn Key Vintage Computer to take you back in time, with all the correct hardware! Lots of hours configuring, testing and proven." |
| Vintage: | Yes |

Greetings!

I am selling my Vintage Windows 95 and MSDOS Gaming Computer PC  - Pentium 200Mhz MMX 64MB RAM 3DFX Voodoo 2 12
NEC Multi-Sync CRT monitor - 16GB SSD (actual usable size is less) - Sound Blaster 16 - 50X CDROM - Floppy Drive 3.5"

Machine is 100% Reliable, no problems what so ever - A treat of a Turn Key Vintage Computer to take you back in time, with all the
configuring, testing and proven.

New AT Case and Power Supply (Both NOS)
Pentium 200 MHz MMX CPU
64MB Fast Page RAM
New Dallas RTC (Real Time Clock) BIOS battery DIP chip
1.44MB 3.5 Floppy Drive
50X CDROM Drive
High Quality "DOM DELKIN DEVICES" 16GB CF IDE SSD Hard Drive (not the super cheap 'problematic' variants) (actual usable s
limitations)
3DFX VOOODOO 2 12MB PCI 3D Graphics Card w/ Pass Through Cable (The Game Changer!)
S3 Trio64+ 2D/3D Video Card
Creative Labs Sound Blaster 16 CT2950 (Proper compatible 'big' Sound Blaster 16 card - not a Vibra 16 or other buggy cards with
games
3COM Network Card Ethernet 10/100 mbit Card (TCP/IP Network drivers installed - DHCP on - WAR FTP SERVER installed )
NEC Multi-Sync XV15 CRT Monitor (BEAUTIFUL DISPLAY!!!!)
Vintage Labtec Speakers
Vintage Compaq PS/2 Keyboard
New Vintage Logitech Serial Serial Mouse

Clean install of Windows 95 - All drivers installed and working correctly in and out of Windows (MSDOS mode)

A backup disk of Windows 95 and all drivers and games will be provided

The following games have been installed, configured, tested and ready to go ( all sound working properly, etc )

FALLOUT
DIABLO
Star Craft
War Craft II

War Craft II
Half Life (3DFX)
QUAKE (GLQUAKE 3DFX)
QUAKE II (3DFX)
DOOM
DOOM II
DUKE NUKEM 3D
HEXEN
Rise of the Triad
MDK (3DFX)
Master Of Orion II
FULL THROTTLE
SAM AND MAX
ULTIMA 6
SYSTEM SHOCK
Jazz Jackrabbit
Death Rally
Decent 2
Age Of Empires
Sim City 2000
Sim Tower
The Incredible Machine 2
Pizza Tycoon
TYRIAN
One Must Fall
Prince Of Persia
Epic Pinball
Pinball Fantasies
Commander Keen 4
Commander Keen 6
Commander Keen Keen Dreams
Microsoft Golf
Sky Roads
Bio Menace
Ski Free
Pitfall
Big Red Racing
Jetpack
Jill of the Jungle
3D Pool


Machine is 100% Reliable, no problems what so ever - great FPS in QUAKE / QUAKE2 - great multimedia performance  - A treat c back in time, with all the correct hardware!

Machine and monitor will be overpacked to ensure safe delivery

I do have the Global Shipping Program enabled

Previous Feedback on similar items:

A++++++++ seller . Very happy. Shipped with super care! Item was spot on!
Vintage Windows 95 Gaming Computer PC Pentium 3DFX Voodoo 16GB SSD SB16 Compaq (#254508377736)

WOW!!!SUPERB ExcellentSelller.SuperFastShip.AwesomePackaging.GreatCommunication!
Vintage Windows 95 DOS Gaming Computer PC Pentium 3DFX Voodoo 2 SSD SB16 Retro (#254395201382)

Cheers!

Ad · walletgenius.com▾

### Dos Windows 95 - Dos Windows 95

Search **Dos Windows 95**. Look Up Results On Walletgenius.com. Look Up Results On Walletgenius Find &
Compare Your Options To Find The Best Price For You. Browse Online Resources. Find Trusted Sources.
Explore Finance Info. Comprehensive Information. Types: Explore Information, Browse Finance Info, Save
Money Online.

Antivirus Software      Electronics
Cybersecurity Services    Computer Hardware

Visit Website

Ad · tsri.com▾

### Mainframe Modernization - Automated COBOL Transformation

Iterative, fully automated, Model and Architecture-Driven Modernization of COBOL. Leverage two decades of
fully automated modernization of COBOL to Java, C#, C++. Code Documentation. COBOL to Cloud. COBOL to
C# COBOL to Java. Types: Fully Automated Process, Accurate w/ Code Warranty, Code Documentation,
Refactoring & Redesign, No Code Freeze, Legacy to Cloud.

Visit Website

Back to home page

More to explore :  3dfx,  Windows 95 PC Desktops & All-In-One Computers,  PC 2 TB SSD Capacity,  3dfx Computer Graphics Cards for PCI,  dos computer,
Windows 7 PC Laptops & Netbooks HDD + SSD,  Intel Pentium Windows 95 PC Notebooks/Laptops,  CRT Computer Monitors,  Dell PC 2 TB SSD Capacity,
Dell Intel Pentium Windows 7 PC Desktops & All-In-One Computers

About eBay    Announcements    Community    Security Center    Resolution Center    Seller Center    Policies    Affiliates    Help & Contact    Site Map

Copyright © 1995-2020 eBay Inc. All Rights Reserved. Accessibility, User Agreement, Privacy, Cookies, Do not sell my personal information and AdChoice

https://www.ebay.com/itm/Vintage-Windows-95-DOS-Gaming-Computer-PC-Pentium-3DFX-Voodoo-2-SSD-SB16-MMX-CRT-/264806714056?hash=it...    4/4

Case 1:17-cv-01751-CFC-CJB Document 505-1 Filed 10/05/20 Page 260 of 486 PageID #: 25457

Hi! Sign in                                                                                                        Sell    Watchlist    My eBay

 ebay          🔍 Search for anything                                                    All Categories ▾

Back to home page   |   Listed in category:   Computers/Tablets & Networking  >  Vintage Computing  >  Vintage Computers & Mainframes

**This listing has ended.**

This seller is currently away until Aug 08, 2020. If you make a purchase, there may be a delay in processing your order.

### Vintage Windows 95 DOS Gaming Computer PC Pentium 3DFX Voodoo 2 SSD SB16 MMX CRT    See original listing



| | |
|---|---|
| Condition: | -- |
| | " *Machine is 100% Reliable, no problems what so ever - A treat of a Turn Key Vintage Computer to take* " ... Read more |
| Ended: | Jul 24, 2020, 8:21PM |
| Price: | US $799.99 |
| Shipping: | **$99.99** Standard Shipping |
| Item location: | Austin, Texas, United States |
| Seller: | baagoo (1221  )  |  Seller's other items |

Sell one like this

---

### Sponsored items from this seller                                                    Feedback o



Vintage Intel Computer
Camera Webcam USB
$8.99
+ $4.99 shipping

Vintage PC Individual
Training For Lotus 1-2-3...
$7.49
+ $2.99 shipping

---

### Similar sponsored items  1/2                                                        Feedback o

     

Vintage Northstar North Star
Advantage PC Computer...
$750.00
Free shipping

Apple Macintosh Portable
M5120 VERY CLEAN SO...
$597.00
+ shipping

Vintage Rack Computer
Pentium 4 2.4GHz 1GB...
$306.00
$360.00
+ shipping

Lot of 2 Vintage Morrow
Designs Computers with 2...
$750.00
Free shipping

Vintage Laser 128K
Computer - Very Clean but...
$498.00
+ shipping

Vintage Osborne
Portable Compu...
$550.00
+ $35.00 shipping

## Description

eBay item numbe

Seller assumes all responsibility for this listing.

### Item specifics

| | |
|---|---|
| Seller Notes: | "Machine is 100% Reliable, no problems what so ever - A treat of a Turn Key Vintage Computer to take you back in time, with all the correct hardware! Lots of hours config and proven." |
| Vintage: | Yes |

Greetings!

I am selling my Vintage Windows 95 and MSDOS Gaming Computer PC  - Pentium 200Mhz MMX 64MB RAM 3DFX Voodoo 2 12MB Card - Awesome NEC Multi-Sync CRT monitor - 16GB SSD (actual usable size is less) - Sound Blaster 16 - 50X CDROM - Floppy Dri

Machine is 100% Reliable, no problems what so ever - A treat of a Turn Key Vintage Computer to take you back in time, with all the co hardware! Lots of hours configuring, testing and proven.

New AT Case and Power Supply (Both NOS)
Pentium 200 MHz MMX CPU
64MB Fast Page RAM
New Dallas RTC (Real Time Clock) BIOS battery DIP chip
1.44MB 3.5 Floppy Drive
50X CDROM Drive
High Quality "DOM DELKIN DEVICES" 16GB CF IDE SSD Hard Drive (not the super cheap 'problematic' variants) (actual usable size to BIOS limitations)
3DFX VOOODOO 2 12MB PCI 3D Graphics Card w/ Pass Through Cable (The Game Changer!)
S3 Trio64+ 2D/3D Video Card
Creative Labs Sound Blaster 16 CT2950 (Proper compatible 'big' Sound Blaster 16 card - not a Vibra 16 or other buggy cards with MS or Windows games
3COM Network Card Ethernet 10/100 mbit Card (TCP/IP Network drivers installed - DHCP on - WAR FTP SERVER installed )
NEC Multi-Sync XV15 CRT Monitor (BEAUTIFUL DISPLAY!!!!)
Vintage Labtec Speakers

Ad walletgenius.com▾

**Dos Windows 95 - Dos Windows 95**

Search **Dos Windows 95**. Look Up Results On Walletgenius.com. Look Up Results On Walletgenius Find & Compare Your Options To Find The Best Price For You. Comprehensive Information. Browse Online Resources. Find Trusted Sources. Explore Finance Info. Types: Explore Information, Browse Finance Info, Save Money Online.

Visit Website

Antivirus Software          Cybersecurity Services
Computer Hardware        Endpoint Protection

Back to home page

More to explore :   3dfx,   Windows 95 PC Desktops & All-In-One Computers,   PC 2 TB SSD Capacity,   3dfx Computer Graphics Cards for PCI,   dos computer,   Windows 7 PC Laptops & Netbooks HDD + SSD,   Intel Pentium Windows 95 PC Notebooks/Laptops,   CRT Computer Monitors,   Dell Intel Pentium Windows 7 PC Desktops & All-In-One Comp Windows 95 Intel Pentium MMX PC Laptops & Netbooks

About eBay    Announcements    Community    Security Center    Resolution Center    Seller Center    Policies    Affiliates    Help & Contact    Site Map

Copyright © 1995-2020 eBay Inc. All Rights Reserved. Accessibility, User Agreement, Privacy, Cookies, Do not sell my personal information and AdChoice

# EXHIBIT G

REDACTED
IN ITS
ENTIRETY

# EXHIBIT H

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC. | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 17-1751-CFC-CJB |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| GOOGLE, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PERSONAL AUDIO, LLC'S OBJECTIONS AND RESPONSES TO GOOGLE LLC'S FIFTH SET OF INTERROGATORIES (NOS. 22 – 42)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Court's Scheduling Order (D.I. 137), Plaintiff Personal Audio, LLC ("Personal Audio"), by and through its undersigned counsel, hereby serves its Responses and Objections to Defendant Google LLC's ("Google") Fifth Set of Interrogatories (Nos. 22-42) (the "Interrogatories"), which are designated Restricted – Attorneys' Eyes Only under the Amended Protective Order (D.I. 51).

## PRELIMINARY STATEMENT

These responses are made solely for the purpose of this action. The responses do not waive any appropriate objection, including, but not limited to, those based on competency, relevancy, materiality, attorney-client privilege, work-product, or admissibility, which would require the exclusion of any statement made herein if the statement were offered into evidence in court.

Personal Audio has not completed its investigation of the facts relating to this case, has not completed its discovery in this action, and has not completed its preparation for trial. All of the responses contained herein are based upon such information and documents presently available to and specifically known to Personal Audio. Personal Audio discloses only those contentions that are presently known. Personal Audio anticipates that further discovery, investigation, legal research, and analysis will supply additional facts, add meaning to known

1

burdensome to the extent it requests to "[i]dentify any and all 'components' supplied by Google . . . ."  Personal Audio further objects to this Interrogatory to the extent it calls for legal interpretation and/or legal conclusion.  Personal Audio objects to this interrogatory as premature and as calling for expert opinion and  objects to this Interrogatory on the ground that discovery is ongoing and Google has not yet produced relevant information sought in this Interrogatory, and expert reports are not yet due.

Subject to and without waiving the foregoing objections, and to the extent understood, Personal Audio identifies components of all Accused Google software (including elements of the source code of the Accused software identified in Personal Audio's Final Infringement Contentions) and/or the Google Pixel C.

**INTERROGATORY NO. 35:**

Identify all facts supporting your belief, if any, that the following claim limitation represents a point of novelty over prior art, including why it is more effective or valuable than alternative implementations:  "wherein said processor responds to a skip backward program selection command accepted from said listener at a time when said currently playing audio program file has played for at least a predetermined amount of time by discontinuing the reproduction of said currently playing audio program file and instead continuing the reproduction at the beginning of said currently playing audio program file."

**RESPONSE TO INTERROGATORY NO. 35:**

In addition to the foregoing General Objections, which are incorporated fully by reference herein, Personal Audio objects to this Interrogatory as overly broad and unduly burdensome to the extent it requests to "[i]dentify all facts supporting. . . ."  Personal Audio also objects to this Interrogatory to the extent it calls for legal interpretation and/or legal conclusion. Personal Audio also objects to this Interrogatory on the ground that the terms "more effective," "valuable," and "alternative implementations" are vague and ambiguous.  Personal Audio objects to this interrogatory on the grounds that it calls for expert opinion and it is premature in that expert reports are not yet due and discovery is incomplete.  Personal Audio also objects to this

16

Interrogatory on the ground that discovery is ongoing and Google has not yet produced relevant information sought in this Interrogatory.

Subject to and without waiving the foregoing objections, subject to its right to supplement after expert reports are due and discovery is completed , and to the extent understood, Personal Audio responds as follows: The recited claim limitation appears in claim 5 of the '178 Patent.  Pursuant to Rule 33(d) of the Federal Rules of Civil Procedures, Personal Audio refers to the file wrappers of the '178 Patent, produced in this action with bates number PA2-0001367-1770 (up to issue notification, dated March 24, 2009). In addition, Personal Audio incorporates by reference its expert report to be issued in this case.  Personal Audio further refers to the PTO's Final Written Decisions in IPR2015-00845 and IPR2015-00846 and the Federal Circuit's Opinion in *Google LLC v. Personal Audio, LLC*, No. 2017-1162 (Fed. Cir. August 1, 2018).

**INTERROGATORY NO. 36:**

Describe in detail and chronologically the complete history of interests, including the chain of title, of each of the Asserted Patents, including: (a) an identification of each and every person or party that has ever had a financial interest in each Asserted Patent, including litigation financing and contingency arrangements; (b) any and all promises, transfers, liens, assignments, and agreements relating to the ownership of each Asserted Patent; (c) an identification of when and how each and every transfer or assignment of interest occurred from the named inventor through Personal Audio's purported ownership of them and any subsequent transfer thereof by Personal Audio; and (d) an identification of each Document related to interests in each Asserted Patent.

**RESPONSE TO INTERROGATORY NO. 36:**

In addition to the foregoing General Objections, which are incorporated fully by reference herein, Personal Audio objects to this Interrogatory as overly broad and unduly burdensome to the extent it requests to "[d]escribe in detail and chronologically the complete history of interests, including the chain of title, of each of the Asserted Patents."  Personal Audio

Interrogatory to the extent it calls for legal interpretation and/or legal conclusion. Personal Audio objects to this interrogatory on the grounds that it calls for expert opinion and it is premature in that expert reports are not yet due and discovery is incomplete.

Subject to and without waiving the foregoing objections, Personal Audio responds as follows: The asserted patents in this action are duly issued by the United States Patent and Trademark Office. Both asserted patents claim priority to October 2, 1996. The examiners to the underlying patent applications evaluated the claims, including the Asserted Claims, in view of the specification and concluded each claim limitation is fully supported by the specification prior to issuance of the patents. Accordingly, written description support for each limitation of each Asserted Claim is found in the full specification (including drawings) of the Asserted Patents.

## INTERROGATORY NO. 41:

For each limitation of each Asserted Claim, state all facts tending to prove or disprove that that limitation was not previously disclosed or otherwise known before the priority date of the associated Asserted Patent.

## RESPONSE TO INTERROGATORY NO. 41:

In addition to the foregoing General Objections, which are incorporated fully by reference herein, Personal Audio objects to this Interrogatory as overly broad and unduly burdensome to the extent it requests to "state all facts tending to prove or disprove that [each] limitation was not previously disclosed or otherwise known before the priority date of the associated Asserted Patent." Personal Audio also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege, protection, or immunity. Personal Audio also objects to this Interrogatory to the extent that it seeks information that is not within Personal Audio's possession, custody, or control. Personal Audio also objects to this Interrogatory to the extent it calls for legal interpretation and/or legal conclusion.

Subject to and without waiving the foregoing objections, Personal Audio responds as follows: The asserted patents in this action are duly issued by the United States Patent and Trademark Office.  Both asserted patents claim priority to October 2, 1996.  The examiners to the underlying patent applications considered a number of prior art references, but the asserted patents overcame the examiners' obviousness rejections.

**INTERROGATORY NO. 42:**

For each limitation of each Asserted Claim, state clearly and precisely the boundaries of the limitation, including whether each limitation is directed to an apparatus, a method, or a combination of an apparatus and method.

**RESPONSE TO INTERROGATORY NO. 42:**

In addition to the foregoing General Objections, which are incorporated fully by reference herein, Personal Audio objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks "the [precise] boundaries of [each] limitation" "of each Asserted Claim."  Personal Audio further objects to this Interrogatory to the extent it calls for legal interpretation and/or legal conclusion.  Personal Audio further objects to this Interrogatory as premature on the ground that the parties have completed claim construction briefings, that the Court held *Markman* hearing on August 1, 2018, and that the Court has not issued decisions on claim construction yet.  Personal Audio also objects to this Interrogatory on the ground that the term "boundaries of the limitation" is vague and ambiguous.

Subject to and without waiving the foregoing objections, and to the extent understood, Personal Audio responds as follows: Personal Audio asserts claims 1-3, 5-6, and 13-15 of the '076 Patent against Google in this action.  All asserted claims of the '076 Patent in this action are apparatus claims. Personal Audio asserts claims 1-21, 28, and 29 of the '178 Patent against Google in this action.  All asserted claims of the '178 Patent in this action are apparatus claims.

Dated: October 29, 2018

Of Counsel:

Douglas Q. Hahn
Stradling Yocca Carlson & Rauth, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4138
 Fax: 949-823-5138
Email: dhahn@sycr.com

Charles W. Goehringer
GERMER PLLC
550 Fannin, Suite 400
Beaumont, TX  77701
Phone:  409-654-6700
Email:  cwgoehringer@germer.com

Respectfully submitted,

FARNAN LLP

 /s/ Brian E. Farnan
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Fl.
Wilmington, DE  19801
Tel:  (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Victor G. Hardy (admitted *pro hac vice*)
William Parrish (admitted *pro hac vice*)
Minghui Yang (admitted *pro hac vice*)
Hardy, Parish, Yang, LLP
Spicewood Business Center
4412 Spicewood Springs Rd.
Suite 202
Austin, Texas 78759
Telephone: (512) 520-9407
vhardy@hpylegal.com
bparrish@hpylegal.com
myang@hpylegal.com

*Attorneys for Plaintiff  Personal Audio, LLC*

# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| PERSONAL AUDIO, LLC, | |
| Plaintiff, | CASE NO. 1:15-CV-00350-RC |
| v. | |
| GOOGLE INC., | |
| Defendant. | |

## INVALIDITY CONTENTIONS

Pursuant to P.R. 3-3 and the Court's scheduling order, *see* ECF No. 52, Google Inc. hereby submits these Invalidity Contentions. These disclosures, including the accompanying claim charts, set forth Google's invalidity contentions with respect to the claims of U.S. Patent No. 6,199,076 ("'076 patent") and U.S. Patent No. 7,509,178 ("'178 patent") (collectively "patents-in-suit") currently asserted by Plaintiff Personal Audio, LLC ("Plaintiff" or "PA"), which are claims 1-3, 5, 6, 13-15 of the '076 patent and claims 1-21, 28-29 of the '178 patent according to Plaintiff's March 13, 2017 Infringement Contentions.

Google reserves the right to amend these Invalidity Contentions should Plaintiff provide the information that it failed to provide in its P.R. 3-1 and 3-2 disclosures or in response to Google's discovery requests or if Plaintiff is permitted to amend or supplement its P.R. 3-1 or 3-2 disclosures in any way. Plaintiff's disclosures under P.R. 3-1 and 3-2 are deficient in numerous respects. For example, Plaintiff failed to identify specifically where each element of each asserted claim is found within each accused instrumentality, as required by P.R. 3-1.[1]

---

[1] Google reserves the right to supplement its Invalidity Contentions pursuant to P.R.

Despite claiming different priority dates for different asserted claims of the patents-in-suit,

Plaintiff has also failed to identify all documents evidencing the conception, reduction to

practice, design, and development of each alleged claimed invention, which were created on or

before the date of application for the patents-in-suit or the priority date identified pursuant to

P.R. 3-1(e), as required by P.R. 3-2(b).

 The following disclosures, including the accompanying claim charts, were prepared prior

to the Court's claim construction ruling.  As such, these disclosures are based on the claim

constructions of Plaintiff to the extent those constructions can be discerned from Plaintiff's

March 13, 2017 Infringement Contentions, which Google contends are defective under the local

patent rules, and also to the extent that those constructions can be understood in light of the

positions taken during prosecution and reexamination of the patents-in-suit.  These disclosures

are not, and nothing in these disclosures should be seen as, an endorsement, acquiescence, or

acceptance of any of Plaintiff's claim constructions nor an assertion of particular constructions

by Google.  Google expressly reserves the right to propose alternative constructions to those

advocated by Plaintiff and to challenge and contest Plaintiff's claim construction positions.

Google reserves the right to take positions that vary from any claim construction positions

expressed or implied herein.  Further, in addition to invalidity under 35 U.S.C. §§ 102 and/or

103, Google contends that one or more of the claims of the patents-in-suit are invalid under 35

U.S.C. § 112.  Google reserves the right to amend and/or supplement these Invalidity

Contentions based on information learned through further discovery of Plaintiff, including for

example, claim construction positions taken by Plaintiff and information pertaining to the

development and description of the claimed subject matter by the named inventors (and assigns

---

3-3(e) to the extent Plaintiff exercises the provisions of P.R. 3-1(g).

thereof) listed on the patents-in-suit.  Google's positions on the invalidity of particular claims will also depend on how those claims are construed by the Court.  In the absence of a claim construction ruling, these Invalidity Contentions are made in the alternative and are not necessarily intended to be consistent with each other and other contentions.  Google reserves the right to amend these Invalidity Contentions upon receipt of the Court's claim construction order in accordance with P.R. 3-6.

Prior art not included in these contentions, whether or not known to Google at this time, may become relevant depending on the positions Plaintiff asserts and the claim constructions the Court adopts.  Google's ongoing investigations may also uncover additional prior art, including responses to pending third party subpoenas.  For example, for any given company's commercial products, Google expects that additional documentation relating to these products will be discovered, and Google reserves the right to rely on such documentation to further support these Invalidity Contentions.  Google accordingly reserves the right to modify these Invalidity Contentions by adding or withdrawing prior art and/or modifying any of the referenced claim charts in light of the Court's claim construction ruling, any amended or supplemental infringement contentions by Plaintiff, any party admissions or admissions by any named inventor concerning the scope of the claims or teachings of the prior art, or any positions taken by Plaintiff in this or related litigation, reexamination, or other proceeding, or to avoid unfair prejudice from Plaintiff's failure to timely comply with its disclosure obligations.  Additional obviousness combinations of the references identified in these disclosures are possible, and Google reserves the right to use any such combination(s) in these actions.  In particular, Google is currently unaware of the extent, if any, to which Plaintiff will contend that limitations of the claims at issue are not disclosed in the art identified by Plaintiff as anticipatory, and the extent to

which Plaintiff will contend that elements not disclosed in the asserted patent specification and related applications would have been known to persons of ordinary skill in the art at the relevant time. To the extent that an issue arises with any such limitations, Google reserves the right to identify other references that would have made such limitations obvious in view of the relevant disclosures.

Plaintiff states in its P.R. 3-1 disclosures that "[e]ach asserted claim in the '076 patent is entitled to a priority date no later than May 20, 1996, with the exception of claim 4, which is entitled to a priority date no later than June 18, 1996. Each asserted claim in the '178 patent is entitled to a priority date no later than May 20, 1996, with the exception of claims 2, 3, 4, 5, 6, and 7, which are entitled to a priority date no later than August 2, 1996."[2] Google reserves the right to challenge any priority date and any alleged date of conception earlier than the October 2, 1996 filing date of the application that led to the '076 patent and to amend these contentions upon the Court's determination of the priority date(s) of the asserted claims. Further, discovery is ongoing regarding the alleged conception and reduction to practice dates to determine earlier invention by other parties under 35 U.S.C. § 102(g). Discovery and investigation as to public use or on-sale bar under 35 U.S.C. § 102(b) or the Applicant's failure to comply with 35 U.S.C. § 112 are also ongoing. Google therefore reserves the right to further supplement or amend these Invalidity Contentions if and when such further information becomes available.

The identity of each item of prior art relied upon in this disclosure is listed below and in the attached claim charts, including prior art systems, publications, and patents. Each prior art publication/patent is identified in accordance with P.R. 3-3(a). Except for copies of prior art

---

[2]    Google objects to the inclusion of "no later than" with respect to these dates as improper in view of Plaintiff's failure to specify an earlier date or identify any support for any earlier date.

already in Plaintiff's possession, custody, or control, the publications and/or source code

describing the prior art systems have been produced to Plaintiff to the extent located, and to the

extent that such systems and/or source code are in Google's possession, they have been produced

and/or made available for inspection in accordance with P.R. 3-4(b).  Subject to the foregoing,

the references cited in Exhibits 1-189 disclose the elements of the asserted claims (either

explicitly and/or inherently) and may be relied upon to show the state of the art in the relevant

time frames.  Further, the suggested obviousness combinations are in addition to Google's

anticipation contentions and are not to be construed to suggest that any reference included in the

combinations is not anticipatory on its own.  Google has endeavored to identify exemplary

portions of the references based on presently available information and Plaintiff's Infringement

Contentions.  The references, however, may contain additional support for particular claim

limitations.  Google expressly reserves the right to rely on uncited portions of the prior art

references, other documents, and expert testimony to provide context and/or to aid in

understanding the cited portions of the references.  In instances of cumulative disclosure within a

particular prior art reference, Google may have cited a subset of those instances as opposed to

citing each instance, and Google reserves the right to rely on uncited instances of cumulative

disclosure.  Where Google cites to a particular figure in a reference, the citation should be

understood to encompass the caption and description of the figure and any text relating to or

discussing the figure.  Conversely, where Google cites to particular text referring to a figure, the

citation should be understood to include the figure as well.

      Google also incorporates by reference all assertions made by any party at any time that

one or more of the asserted claims of the patents-in-suit are invalid or unenforceable for any

reason, including without limitation all invalidity contentions asserted during prior litigations,

reexaminations, and original prosecution of the patents-in-suit, including the Invalidity

Contentions served in *Personal Audio v. Apple, Inc. et al.*, No. 9:09-CV-00111, *Personal Audio*

*v. Samsung Electronics et al.*, No. 1:14-CV-00008, and *Personal Audio v. Acer Inc. et al.*, No.

1:11-CV-00432. The fact that Google may specifically list herein certain prior art references or

systems that have been listed in the invalidity contentions from prior lawsuits, current pending

lawsuit, or asserted in reexamination proceedings is not a waiver of Google's right to assert the

invalidity or unenforceability of the asserted patents based on any of the other references

included in the reexaminations or prior invalidity contentions which are not separately

additionally identified herein but nonetheless incorporated by reference.

## I.     PRIOR ART

Pursuant to P.R. 3-3(a) and 3-3(b) and in light of Plaintiff's P.R. 3-1 Infringement

Contentions and claim charts served on March 13, 2017, Google identifies below the prior art

presently known to Google that anticipate and/or render obvious the asserted claims of the

patents-in-suit. In these Invalidity Contentions, including the exhibits, any citation to a printed

publication or other reference describing a prior art system should also be construed to include a

reference to the prior art system itself. Each listed document or item became prior art at least as

early as the dates set forth herein. Google reserves the right to rely upon foreign counterparts of

the U.S. Patents identified in these invalidity contentions, U.S. counterparts of foreign patents

and foreign patent applications identified in these invalidity contentions, U.S. and foreign patents

and patent applications corresponding to articles and publications identified in these invalidity

contentions, and any systems, products, or prior inventions related to any of the references

identified in these Invalidity Contentions. The following patents and publications are prior art

under at least 35 U.S.C. §§ 102(a), (b), (e), (f), and/or (g). In accordance with P.R. 3-3(c), the

claim charts enclosed as Exhibits 1-189 identify specifically where each element of each asserted claim is disclosed in the prior art.[3]

| | U.S. PATENT DOCUMENTS | Filing Date | Issue Date |
|---|---|---|---|
| 1. | U.S. Patent No. 5,132,992 to Yurt, et al. | Jan. 7, 1991 | July 21, 1992 |
| 2. | U.S. Patent No. 5,819,160 to Foladare, et al. | Sept. 18, 1996 | Oct. 6, 1998 |
| 3. | U.S. Patent No. 5,914,941 to Janky | May 25, 1995 | June 22, 1999 |
| 4. | U.S. Patent No. 5,966,440 to Hair | June 6, 1995 | Oct. 12, 1999 |
| 5. | U.S. Patent No. 5,557,541 to Schulhof, et al. | July 21, 1994 | Sept. 17, 1996 |
| 6. | U.S. Patent No. 5,864,868 to Contois | Feb. 13, 1996 | Jan. 26, 1999 |
| 7. | U.S. Patent No. 5,616,876 to Cluts | Apr. 19, 1995 | Apr. 1, 1997 |
| 8. | U.S. Patent No. 5,572,442 to Schulhof, et al. | July 21, 1994 | Nov. 5, 1996 |
| 9. | U.S. Patent No. 5,640,590 to Luther | Nov. 18, 1992 | June 17, 1997 |
| 10. | U.S. Patent No. 5,168,481 to Culbertson, et al. | Dec. 29, 1989 | Dec. 1, 1992 |
| 11. | U.S. Patent No. 5,347,082 to Ojima | Feb. 28, 1992 | Sept. 13, 1994 |
| 12. | U.S. Patent No. 5,355,302 to Martin, et al. | Mar. 6, 1992 | Oct. 11, 1994 |
| 13. | U.S. Patent No. 5,371,316 to Eitaki, et al. | May 5, 1993 | Dec. 6, 1994 |
| 14. | U.S. Patent No. 5,386,081 to Nakada, et al. | Jan. 14, 1993 | Jan. 31, 1995 |
| 15. | U.S. Patent No. 5,418,622 to Takeuchi | Oct. 27, 1993 | May 23, 1995 |
| 16. | U.S. Patent No. 5,481,509 to Knowles | Sept. 19, 1994 | Jan. 2, 1996 |
| 17. | U.S. Patent No. 5,524,051 to Ryan | Apr. 6, 1994 | June 4, 1996 |

---

[3]     With respect to the prior art produced under P.R. 3-4(b), some of the listed prior art materials are in the possession, custody, or control of third parties subject to subpoena and will be produced upon production.

-6-

| | U.S. PATENT DOCUMENTS | Filing Date | Issue Date |
|---|---|---|---|
| 18. | U.S. Patent No. 5,541,638 to Story | June 28, 1994 | July 30, 1996 |
| 19. | U.S. Patent No. 5,555,098 to Parulski | Apr. 26, 1994 | Sept. 10, 1996 |
| 20. | U.S. Patent No. 5,661,787 to Pocock | Oct. 27, 1994 | Aug. 26, 1997 |
| 21. | U.S. Patent No. 5,687,160, to Aotake, et al. | Aug. 8, 1995 | Nov. 11, 1997 |
| 22. | U.S. Patent No. 5,721,951 to DorEl | Feb. 24, 1995 | Feb. 24, 1998 |
| 23. | U.S. Patent No. 5,726,909 to Krikorian | Dec. 8, 1995 | Mar. 10, 1998 |
| 24. | U.S. Patent No. 5,751,672 to Yankowski | July 26, 1995 | May 12, 1998 |
| 25. | U.S. Patent No. 5,754,784 to Garland, et al. | Aug. 15, 1996 | May 19, 1998 |
| 26. | U.S. Patent No. 5,774,859 to Houser, et al. | Jan. 3, 1995 | June 30, 1998 |
| 27. | U.S. Patent No. 5,798,921 to Johnson, et al. | May 5, 1995 | Aug. 25, 1998 |
| 28. | U.S. Patent No. 5,841,979 to Schulhof, et al. | May 7, 1996 | Nov. 24, 1998 |
| 29. | U.S. Patent No. 5,949,951 to Sklar, et al. | Nov. 8, 1996 | Sept. 7, 1999 |
| 30. | U.S. Patent No. 6,182,126 to Nathan, et al. | June 12, 1997 | Jan. 30, 2001 |
| 31. | U.S. Patent No. 6,392,633 to Leiper | Aug. 30, 2000 | May 21, 2002 |
| 32. | U.S. Patent No. 5,668,788 to Allison | June 10, 1996 | Sept. 16, 1997 |
| 33. | U.S. Patent No. 5,296,848 to Witheridge, et al. | Oct. 1, 1991 | Mar. 22, 1994 |
| 34. | U.S. Patent No. 5,428,732 to Hancock, et al. | Sept. 9, 1994 | June 27, 1995 |
| 35. | U.S. Patent No. 5,341,350 to Frank, et al. | Jan. 7, 1993 | Aug. 23, 1994 |
| 36. | U.S. Patent No. 5,781,889 to Martin, et al. | Jan. 11, 1996 | July 14, 1998 |
| 37. | U.S. Patent No. 5,793,980 to Glaser, et al. | Nov. 30, 1994 | Aug. 11, 1998 |
| 38. | U.S. Patent No. 5,594,601 to Mimick, et al. | May 3, 1995 | Jan. 14, 1997 |

| | U.S. PATENT DOCUMENTS | Filing Date | Issue Date |
|---|---|---|---|
| 39. | U.S. Patent No. 5,499,316 to Sudoh, et al. | June 24, 1992 | Mar. 12, 1996 |
| 40. | U.S. Patent No. 5,815,671 to Morrison | June 11, 1996 | Sept. 29, 1998 |
| 41. | U.S. Patent No. 5,740,134 to Peterson | Aug. 13, 1996 | Apr. 14, 1998 |
| 42. | U.S. Patent No. 5,583,560 to Florin, et al. | June 22, 1993 | Dec. 10, 1996 |
| 43. | U.S. Patent No. 5,404,505 to Levinson | Nov. 1, 1991 | Apr. 4, 1995 |
| 44. | U.S. Patent No. 6,453,281 to Walters, et al. | July 30, 1996 | Sept. 17, 2002 |
| 45. | U.S. Patent No. 5,712,949 to Kato, et al. | Jan. 24,1992 | Jan. 27, 1998 |
| 46. | U.S. Patent No. 8,769,297 to Rhoads | Sep. 8, 2003 | Jul. 1, 2014 |
| 47. | U.S. Patent No. 5,721,815 to Ottesen, et al. | Jun. 7, 1995 | Feb. 24, 1998 |
| 48. | U.S. Patent No. 5,924,624 to Katz, et al. | Sep. 12, 1996 | Jul. 20, 1999 |
| 49. | U.S. Patent No. 7,047,241 to Erickson | Oct. 11, 1996 | May 16, 2006 |
| 50. | U.S. Patent No. 5,638,443 to Stefik, et al. | Nov. 23,1994 | Jun. 10, 1997 |
| 51. | U.S. Patent No. 5,953,005 to Liu | Jun. 28, 1996 | Sep. 14,1999 |

| | FOREIGN PATENT DOCUMENTS | Country of Origin | Publication Date |
|---|---|---|---|
| 1. | FR 2714760[4] | France | July 7, 1995 |
| 2. | PCT Publication WO 95/10833 | U.S. | Apr. 20, 1995 |
| 3. | European Patent Application No. 0625771A2 to Tuttle ("Tuttle") | EP | Nov. 23, 1994 |
| 4. | UK Patent Application No. 2281434A to Sone ("Sone") | UK | Mar. 1, 1995 |

---

[4]     A translation of FR 2714760 was produced to Plaintiff at APP-PA00006605 in Plaintiff's prior litigation against Apple.

| | FOREIGN PATENT DOCUMENTS | Country of Origin | Publication Date |
|---|---|---|---|
| 5. | European Patent Application Publication No. 0 548 597 A1 to Pascoe ("Pascoe") | EP | June 30, 1993 |
| 6. | PCT Publication 95/28701 to Labrosse ("Labrosse") | U.S. | Oct. 26, 1995 |
| 7. | PCT Publication WO 98/29835 to Kunkel, et al. ("Kunkel") | U.S. | July 9, 1998 |

Each of the following publications discloses and describes particular products and/or software programs that were publicly known and/or in public use prior to the filing dates of the patents-in-suit.  Thus, in addition to each publication itself serving as a prior art reference under 35 U.S.C. § 102, the various products and/or software programs described in the publications may also serve as grounds for invalidity under 35 U.S.C. § 102 because they were in public use, in which case it would have been obvious to a person of ordinary skill in the art to combine the actual systems in public use with the published documents describing those systems because the documents described the systems in public use and refer to them throughout.  In some of these cases, Google has obtained such products and/or software programs.  In other cases, Google has served subpoenas and/or otherwise requested information pertaining to the products and/or software programs (and/or obtained the actual products and/or software programs themselves).  To the extent necessary, Google will amend and/or supplement these Invalidity Contentions based on information received in response.

| | PRIOR ART PUBLICATIONS | Publication Date |
|---|---|---|
| 1. | DAD486x Digital Audio Delivery System Operation Manual, version 6.0A, ENCO Systems, Inc. ("DAD Manual v6.0A") | June 30, 1995 |
| 2. | Sound Blaster 16 User's Guide for Windows 95, Creative Technology Ltd. ("Sound Blaster 16 User Guide") | Sept. 1995 |

| | PRIOR ART PUBLICATIONS | Publication Date |
|---|---|---|
| 3. | DADpro Digital Audio Delivery System (7 unnumbered pages), ENCO Systems, March 1996 ("DAD Brochure") | Mar. 1996 |
| 4. | Sound Blaster: Making WAVes with Multimedia, D. Day, et al., Prima Publishing ("Sound Blaster 'Making WAVes' Book") | 1995 |
| 5. | Loeb, S., "Architecting Personalized Delivery of Multimedia Information," Communications of the ACM, Vol. 35, No. 12 ("Loeb Article") | Dec. 1992 |
| 6. | Microsoft Windows 95 Resource Kit, Chapter 7, Microsoft Press ("Microsoft Windows 95 Resource Kit") | 1995 |
| 7. | Audioshop Manual, by Opcode Systems, Inc. ("Opcode Audioshop Manual") | 1991-1992 |
| 8. | "NewsComm: A Hand-Held Device For Interactive Access To Structured Audio" (82 pages), by Deb Kumar Roy ("Roy NewsComm Thesis") | May 12, 1995 |
| 9. | "NewsComm: A Hand-Held Interface For Interactive Access To Structured Audio" (9 pages), by Deb K. Roy, et al., Proceedings of the SIGCHI conference on Human factors in computing systems: common ground, Vancouver, British Columbia, Canada ("NewsComm presentation") | Apr. 13-18, 1996 (conference dates) |
| 10. | "Using Acoustic Structure In A Hand-Held Audio Playback Device," C. Schmandt, et al., IBM Systems Journal, vol. 35, nos. 3&4 ("NewsComm Journal Article") | accepted for publication June 14, 1996 |
| 11. | Voyetra AudioStation 2 User Manual ("Voyetra AudioStation User Manual")[5] | 1992-1996 |
| 12. | Microsoft Windows Sound System, Software User's Guide, version 2 ("Microsoft Windows Sound System User Guide") | 1993 |

---

[5]     According to information available at http://www.turtlebeach.com/company.aspx, AudioStation software was available beginning in 1992 ("As part of its multimedia initiative, in 1992 Voyetra developed AudioStation, which helps set the standard for today's PC jukebox programs.").

| | PRIOR ART PUBLICATIONS | Publication Date |
|---|---|---|
| 13. | "Comparative Design Review: An Exercise in Parallel Design," by Nielsen, J., et al.,  INTERCHI '93, pp. 414-417, ACM, U.S.A. ("Comparative Design Review Article" or "Nielsen Article")) | Apr. 24-29, 1993 |
| 14. | "VoiceNotes: A Speech Interface for a Hand-Held Voice Notetaker," by Stifelman, L., et al., INTERCHI '93, pp. 179-186, CM, U.S.A. ("VoiceNotes Article") | Apr. 24-29, 1993 |
| 15. | Sony Discman Operating Instructions for D-240, D-242CK, D-242SK, D-245, D-247 ("Sony D-240 Discman User Manual") | 1995 |
| 16. | Sony MDS-B1 MD Recorder Operation Manual, Revision 3, Sony Corporation Audio Group ("Sony MDS-B1 User Manual") | June 13, 1993 |
| 17. | Sony Discman Operating Instructions for D-232 / D-235 ("Sony D-232 Discman User Manual") | 1994 |
| 18. | Sony MZ-1 Portable Minidisc Recorder Operating Instructions, Sony Corporation ("Sony MZ-1 User Manual") | 1992 |
| 19. | Sony MZ-1 Service Manual, published by Sony Home A&V Products Div. Quality Engineering Dept. ("Sony MZ-1 Service Manual") | Dec. 1992 |
| 20. | Sony MZ-B3 Portable Minidisc Recorder Operating Instructions, Sony Corporation ("Sony MZ-B3 User Manual") | 1995 |
| 21. | Sony MZ-R2 Portable Minidisc Recorder Operating Instructions, Sony Corporation ("Sony MZ-R2 User Manual") | 1993 |
| 22. | Sony MZ-R3 Portable Minidisc Recorder Operating Instructions, Sony Corporation ("Sony MZ-R3 User Manual") | 1995 |
| 23. | Using Director, by Macromedia, version 4, 2nd ed. ("Macromedia Director User Manual") | 1994 |
| 24. | "Audio Highway Announces The Listen Up Player – A New Device That Delivers Personalized Audio Content to Information-Hungry, On-the-Go Consumers," press release ("Listen Up Player press release")[6] | Sept. 23, 1996 |

[6]      Since the Listen Up Player press release and the publications disclosing the Listen Up Player device constitute a single prior art reference, these materials are collectively referred to herein as the "Listen Up Player Publication."  Even if the documents regarding the Listen Up

-11-

| | PRIOR ART PUBLICATIONS | Publication Date |
|---|---|---|
| 25. | Using Windows Sound System 2, by Moore, M., et al., Que Corporation ("Windows Sound System Manual") | 1994 |
| 26. | U.S. Patent Application No. 10/083,902 to Chase (Publication No. 2002/0177914) ("Chase '914") | Nov. 28,  2002 |
| 27. | U.S. Provisional Patent Application No. 60/003,164 to Chase ("Chase '164") | Nov. 28, 2002 |
| 28. | Matthew Lake & Yael Li-Ron, Sight and Sound: Multimedia, PC Computing ("Lake") | Sept. 30, 1995 |
| 29. | Richard J. Beaton & Peter Wong, A Disk-Based System for the Subjective Assessment of High Quality Audio ("Beaton") | Mar. 19, 1993 |
| 30. | Ron Person, Special Edition Using Windows 95 ("Person Book") | Dec. 31, 1995 |
| 31. | Debby Hindus, Semi-Structured Capture and Display of Telephone Conversations ("Hindus Thesis") | Apr. 28, 1992 |
| 32. | Lisa Joy Stifelman, VoiceNotes: An Application for a Voice-Controlled Hand-Held Computer ("Stifelman Thesis") | May 8, 1992 |
| 33. | Christopher Horner, NewsTime: A Graphical User Interface to Audio News ("Horner Thesis") | July 12, 1993 |
| 34. | Thorsten Petrowski and Axel Stolz, Wicked Sounds for Windows ("Petrowski") | Dec. 31, 1992 |
| 35. | Bjørn Aarseth, The All-Digital Radio Station, Audio Engineering Society Preprint ("Aarseth") | May 14, 1996 |
| 36. | Sony HCD-241 Compact Disc Deck Receiver Operating Instructions ("Sony HCD-241 Manual") | 1994 |
| 37. | Andy Rathbone, "Dummies 101: Windows 95," ("Rathbone"), IDG Books | Mar. 26, 1996 |

Player were not deemed to be a single reference, it would have been obvious to a person of ordinary skill in the art at the relevant time to combine them because they all describe the same system.

-12-

|  | PRIOR ART PUBLICATIONS | Publication Date |
|---|---|---|
| 38. | RealAudio Content Creation Guide, RealAudio Encoder Release 2.0, Progressive Networks Inc. | 1995-1996 |
| 39. | The RealAudio Player Guide Version 2.0, Progressive Networks Inc. | 1996 |
| 40. | UNIX Quick Reference Guide | Sept. 1, 1995 |
| 41. | Macworld Music & Sound Bible | 1992 |
| 42. | Kan, Ti, *XMCD_1.2–X11/Motif CD Player* ("Kan") | Nov. 30, 1994 |
| 43. | Harold Davis, *Visual Basic 4 Secrets* | June 1996 |
| 44. | Robert Arnson*, The Waite Group's Visual Basic How-To* | 1992 |
| 45. | Gregory A. Wolking, *Edit Windows Recorder Macros*, PC Mag | Oct 24, 1995 |
| 46. | JSInc Help File ("JSInc") | Aug. 1995 |
| 47. | Sparkes, Dominic, *Cerberus Advances Online Audio; Service Says It Delivers CD Quality Fast*, Billboard | Aug. 6, 1994 |
| 48. | Pride, Dominic, *U.K. Bands Attach Convention Thru Internet; Cerberus Allows Unsigned Acts Exposure on System*, Billboard | Aug. 6, 1994 |
| 49. | Rosen, Nick, *Internet gives a break to budding pop stars*, The Sunday Times (London) | Aug. 7, 1994 |
| 50. | Watts, Susan, *Music industry faces up to computer rival; Susan Watts reports on a company offering music down the telephone line*, The Independent (London) | Aug. 20, 1994 |
| 51. | Bloom, James, *Playing at Musical Shares*, The Guardian (London) | Sept. 8, 1994 |
| 52. | Rosen, Nick, *Royalties Boost for Internet Music*, The Guardian (London) | Nov. 14, 1994 |
| 53. | Rawsthorn, Alice, *Wired for sound; On-line distribution of recordings puts the music industry in a quandary*, The Dallas Morning News | Nov. 27, 1994 |
| 54. | Watts, Susan, *Sound idea wins backing of IBM*, The Independent (London) | Dec. 22, 1994 |

|     | PRIOR ART PUBLICATIONS | Publication Date |
|-----|------------------------|------------------|
| 55. | McClellan, Jim, *Cyberspace: On the Byte Tracks*, The Observer | Jan. 15, 1995 |
| 56. | James, Cooper, *Dawn of the electronic Our Price*, The Independent (London) | June 9, 1995 |
| 57. | *Cerberus Sound & Vision Reckons it has System for Offering Downloadable Music on the Internet*, Computergram International | Sept. 15, 1995 |
| 58. | *Online music distribution now a reality*, Pro Sound News Europe | Oct. 1995 |
| 59. | *Comment: Tapping to the Beat of a Digital Drummer: Fine Tuning U.S. Copyright Law for Music Distribution on the Internet*, 59 Alb. L. Rev. 789 | 1995 |
| 60. | *Comments: Dissemination of Digitized Music on the Internet: A Challenge to the Copyright Act*, Santa Clara Comp. & High Tech. L.J. 97 | Feb. 1996 |
| 61. | Austin, Marcus, *Special Report on the Internet: Selling with the personal touch - The Internet has become an effective marketing and sales tool, with operators able to build Web sites around individual users' needs and interests*, Marketing | June 27, 1996 |
| 62. | *Cercure ATM dispenses music online*, Pro Sound News Europe | Dec. 1996 |
| 63. | Cerberus Help Pages, available at https://cordis.europa.eu/infowin/acts/analysys/products/thematic/ multimed/clipdemo/cerberus/help.htm | 1995 |
| 64. | The Birth of MP3s? 1995, available at https://youtube/ZULzDuAkf_c | 1995 |

The following systems or software products are prior art under at least 35 U.S.C.

§§ 102(a), (b), (f), and/or (g). Although Google's investigation continues, information available

to date indicates that each system or software product was (i) known or used in this country

before the alleged invention of the claimed subject matter of the asserted claims; (ii) was in

public use and/or on sale in this country and/or was the subject of a printed publication more

than one year before the filing date of the patent; and/or (iii) was invented by another who did

not abandon, suppress, or conceal, before the alleged invention of the claimed subject matter of the asserted claims.  The charts enclosed as Exhibits 1-189 specify where the limitations of the asserted claims in the patents-in-suit are disclosed in the prior art.

|  | **PRIOR ART SOFTWARE/SYSTEMS** |
|---|---|
| 1. | DAD system |
| 2. | Opcode Audioshop |
| 3. | Sound Blaster 16 |
| 4. | Gravis Windecks[7] |
| 5. | Sony D-245 "Discman" Compact Disc Compact Player[8] |
| 6. | Sony D-121 "Discman" Compact Disc Compact Player |
| 7. | Sony D-2 "Discman" Compact Disc Compact Player |
| 8. | Sony D-11 "Discman" Compact Disc Compact Player |
| 9. | Sony D-141 "Discman" Compact Disc Compact Player |
| 10. | Sony D-143 "Discman" Compact Disc Compact Player |
| 11. | Sony HCD-241 Compact Disc Deck Receiver ("Sony HCD-241") |
| 12. | Sony MZ-1 Portable Minidisc Recorder[9] |
| 13. | NewsComm device[10] |

---

[7]     Gravis Windecks version 1.12 (1995, 1996) runs on a PC with the Microsoft Windows 95 operating system.

[8]     The use and operation of the Sony D-245, D-121, D-2, D-11, D-141, and D-143 devices are similar to that described in the Sony D-232 Discman User Manual and the Sony D-240 Discman User Manual.

[9]     The Sony MZ-1 Portable Minidisc Recorder is described in the Sony MZ-1 User Manual.

[10]     The NewsComm device, which was publicly known and/or used prior to the filing dates of the patents-in-suit, is described in the Roy NewsComm Thesis and also described in the NewsComm presentation and the NewsComm Journal Article.

| | PRIOR ART SOFTWARE/SYSTEMS |
|---|---|
| 14. | Sony MDS-B1 MD Recorder[11] |
| 15. | Voyetra AudioStation[12] |
| 16. | Audio Highway Listen Up Player[13] |
| 17. | Computer with Windows 95 ("Windows 95") (Aug. 24, 1995) |
| 18. | Computer with WinPlay3, *e.g.,* v 1.4 ("WinPlay3") (Mar. 31, 1996) |
| 19. | Computer with Wicked Sounds software ("Wicked Sounds") (Dec. 31, 1992) [*see, e.g.,* Petrowski] |
| 20. | Computer with Creative EnsembleAV and associated SoundBlaster 16 software ("Creative EnsembleAV") (Dec. 31, 1995) [*see, e.g.,* Sound Blaster "Making WAVes" Book] |
| 21. | Computer with admitted "conventional" hardware and software components (Dec. 31, 1995) |
| 22. | Sun Microsystems SparcStation 2 (described in SparcStation 2 Service Manual) (Dec. 31, 1991) |
| 23. | Computer with RealAudio Player, *e.g.,* v 2.0 ("RealAudio 2.0")[14] |
| 24. | Computer with Unix (Sept. 1, 1995) |
| 25. | System with *XMCD_1.2–X11/Motif CD Player* (Nov. 30. 1994) |
| 26. | Cerberus System (1995) |

The claim charts attached as Exhibits 1-189 specify where the limitations of the asserted claims in the patents-in-suit are disclosed in the prior art. Specifically, as shown by Exhibits 1-

---

[11]     The Sony MDS-B1 MD Recorder is described in the Sony MDS-B1 User Manual.

[12]     The Voyetra AudioStation program is described in the Voyetra AudioStation 2 User Manual.

[13]     The Listen Up Player device is described in the Listen Up Player Publication.

[14]     RealAudio 2.0 is described in the RealAudio Content Creation Guide, RealAudio Encoder Release 2.0, and RealAudio Player Guide Version 2.0 publications.

189, each claim chart is directed to one of the asserted claims and details where the limitations of that asserted claim are disclosed in the prior art.

Appendix B identifies additional prior art from which disclosure is not specifically identified in Exhibits 1-189 due to one or more of the following reasons: (i) the art indicates and/or describes the state of the art during the relevant time; (ii) the art has substantially similar disclosures to other prior art of which disclosure is reflected in Exhibits 1-189; (iii) the prior art is used as supporting references in an obviousness combination; and/or (iv) Google is in the process of obtaining further detail regarding the prior art.  Google reserves the right to update these disclosures and to specifically rely on any such reference to prove the invalidity of the asserted claims of the patents-in-suit at that time.

A.    **Anticipation and Obviousness**

Google contends that each reference identified above, combined with the knowledge of persons of ordinary skill in the art at the relevant time, render the asserted claims of the patents-in-suit invalid under 35 U.S.C. §§ 102 and/or 103.  The claim charts enclosed as Exhibits 1-189 specify, on a claim-by-claim basis, the disclosure in the prior art that anticipates each limitation of each asserted claim.  In view of the disclosures identified in the claim charts enclosed as Exhibits 1-189, Google contends that at least each of the following prior art singly renders one or more of the asserted claims of the '076 patent and the '178 patents invalid as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103:[15]

---

[15]    The claims identified in the parentheticals should not be taken as any admission that the reference does not anticipate, either explicitly and/or inherently, others of the asserted claims of the patents-in-suit.  To the extent necessary, Google reserves the right to supplement these Invalidity Contentions to amend the listings of claims contended as being anticipated based on, for example, claim construction and/or other litigation positions taken by Personal Audio, discovery (including deposition testimony) of Plaintiff and/or third parties, the Court's claim

-17-

1.  DAD486X Manual v. 6.0A (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

2.  DADPRO Brochure (at least claims 1, 3, 5-6, 14-15 of the '076 patent and claims 1, 9, 13-14 of the '178 patent);

3.  Sound Blaster 16 User Guide (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-9, 14-17, 28-29 of the '178 patent);

4.  Sound Blaster "Making WAVes With Multimedia" Book (at least claims 1-2, 4-6, 14 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

5.  Listen Up Player Publication (at least claims 1-3, 13-15 of the '076 patent and claims 1-4, 8-9, 14, 29 of the '178 patent);

6.  Roy NewsComm Thesis (at least claims 1-2, 5-6, 13-14 of the '076 patent and claims 1-6, 8-9, 13-17, 28-29 of the '178 patent);

7.  NewsComm Presentation (at least claims 1-2, 5-6, 13-14 of the '076 patent and claims 1-3, 5, 9, 13-15, 17 of the '178 patent);

8.  NewsComm Journal Article (at least claims 1-2, 14 of the '076 patent and claims 1-6, 9, 13-15, 17 of the '178 patent);

9.  Comparative Design Review Article (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-16, 28-29 of the '178 patent);

10. Loeb Article (at least claims 1, 14 of the '076 patent and claims 1-4, 8-11, 13-16, 28-29 of the '178 patent);

11. VoiceNotes Article (at least claims 1-2, 5-6, 13-14 of the '076 patent and claims 1, 5, 9, 14 of the '178 patent);

12. U.S. Patent No. 5,132,992 to Yurt (at least claims 19, 21 of the '178 patent);

13. U.S. Patent No. 5,864,868 to Contois (at least claims 1-2, 4-6, 14 of the '076 patent and claims 1-3, 5, 7-9, 13-16 of the '178 patent);

14. U.S. Patent No. 5,640,590 to Luther (at least claims 1-2, 5-6, 14 of the '076 patent and claims 1-6, 8-9, 14-16, 28-29 of the '178 patent);

---

construction order, and/or better understandings of the prior art resulting from recently or newly obtained information regarding particular prior art (including information suggesting the inherent disclosure of certain claim limitations).  In the claim charts enclosed as Exhibits 1-189, to the extent that a certain limitation of an asserted claim is not explicitly cited in the disclosure of a particular prior art reference in this listing, that claim limitation is obvious over and/or inherent in that prior art reference.

15. U.S. Patent No. 5,661,787 to Pocock (at least claims 1-3, 14-15 of the '076 patent and claims 1-6, 8, 14-15, 28-29 of the '178 patent);

16. U.S. Patent No. 5,726,909 to Krikorian (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

17. U.S. Patent No. 5,793,980 to Glaser, et al. (at least claims 1-2, 14 of the '076 patent and claims 1-5, 8, 14-17, 28-29 of the '178 patent);

18. U.S. Patent No. 5,949,951 to Sklar, et al. (at least claim 16 of the '178 patent);

19. U.S. Patent No. 6,182,126 to Nathan, et al. (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-6, 8-9, 14-17, 28-29 of the '178 patent);

20. U.S. Patent No. 5,751,672 to Yankowski (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

21. U.S. Patent No. 5,616,876 to Cluts (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-10, 13-18, 21, 28-29 of the '178 patent);

22. U.S. Patent No. 5,541,638 to Story (at least claims 1, 5-6, 14 of the '076 patent and claims 1-3, 8-9, 13-15, 17, 28-29 of the '178 patent);

23. U.S. Patent No. 5,555,098 to Parulski (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-6, 8-9, 14-16, 28-29 of the '178 patent);

24. U.S. Patent No. 5,386,081 to Nakada, et al. (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

25. U.S. Patent No. 5,583,560 to Florin, et al. (at least claims 1-3, 14-15 of the '076 patent and claims 1-4, 8-9, 13-17, 29 of the '178 patent);

26. U.S. Patent No. 5,774,859 to Houser, et al. (at least claims 13 of the '076 patent);

27. U.S. Patent No. 5,819,160 to Foladare, et al. (at least claims 1, 5-6, 14 of the '076 patent and claims 1-2, 8-9, 13-14, 28-29 of the '178 patent);

28. U.S. Patent No. 5,914,941 to Janky (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 13-17, 28-29 of the '178 patent);

29. U.S. Patent No. 6,392,633 to Leiper (at least claim 13 of the '076 patent);

30. Sony D-240 Discman User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-7, 14-15, 17 of the '178 patent);

31. Sony D-232 Discman User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-7, 14-15, 17 of the '178 patent);

32. Sony MZ-1 Service Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 28-29 of the '178 patent);

33. Sony MZ-1 User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 28-29 of the '178 patent);

34. Sony MZ-B3 User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

35. Sony MZ-R2 User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 28-29 of the '178 patent);

36. Sony MZ-R3 User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

37. Sony MDS-B1 User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

38. Macromedia Director User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-6, 8-9, 14, 16-17, 28 of the '178 patent);

39. Opcode Audioshop Manual (at least claims 1-2, 4-6, 14 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

40. Microsoft Windows Sound System User Guide (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

41. Voyetra AudioStation User Manual (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 29 of the '178 patent);

42. Using Windows Sound System 2 (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-17, 28-29 of the '178 patent);

43. DAD system (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

44. Gravis Windecks enabled system (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

45. Opcode Audioshop enabled system (at least claims 1-2, 4-6, 14 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

46. Sound Blaster 16 enabled system (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-17, 28-29 of the '178 patent);

47. Voyetra AudioStation 2 enabled system[16] (at least claims 1-6 , 14-15 of the '076 patent and claims 1-9, 14-15, 28-29 of the '178 patent);

48. NewsComm device[17] (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

49. Audio Highway Listen Up Player (at least claims 1-3, 14-15 of the '076 patent and claims 1-4 of the '178 patent);

50. Sony D-245 Discman[18] (at least claims 1-6, 14-15 of the '076 patent);

51. Sony D-121 Discman (at least claims 1-6, 14-15 of the '076 patent);

52. Sony D-2 Discman (at least claims 1-6, 14-15 of the '076 patent);

53. Sony D-11 Discman (at least claims 1-6, 14-15 of the '076 patent);

54. Sony D-141 Discman (at least claims 1-6, 14-15 of the '076 patent);

55. Sony D-143 Discman (at least claims 1-6, 14-15 of the '076 patent);

56. Sony MZ-1 Portable Minidisc Recorder (at least claims 1-6, 14-15 of the '076 patent);

57. U.S. Patent No. 5,296,848 to Witheridge, et al. (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

58. U.S. Patent No. 5,428,732 to Hancock, et al. (at least claim 1, 5-6, 14 of the '076 patent and claims 1, 8, 14, 28 of the '178 patent);

59. U.S. Patent No. 5,499,316 to Sudoh, et al. (at least claims 1-6, 14-15 of the '076 patent and claims 1, 3-9, 14-15, 17, 28-29 of the '178 patent);

60. U.S. Patent No. 5,594,601 to Mimick, et al. (at least claims 1, 4-6, 14 of the '076 patent and claims 1-3, 8-9, 14-15, 28-29 of the '178 patent);

61. FR 2714760 (at least claims 1-2, 14-15 of the '076 patent and claims 1-6, 8-9, 13-14,

---

[16]    Based on the disclosures in the Voyetra AudioStation 2 User Manual, the public availability and use of the actual Voyetra AudioStation 2 software form additional grounds for invalidity under 35 U.S.C. § 102.

[17]    Based on the disclosure in the Roy NewsComm Thesis, the public availability and use of the actual NewsComm device form additional grounds for invalidity under 35 U.S.C. § 102.

[18]    The Sony players identified in this list (D-245, D-121, D-2, D-11, D-141, D-143, MZ-1) each have the capability for RMS (program) play, which enables the user to create a playlist (*i.e.*, allows the user to select tracks for playback in a desired order).

-21-

16, 28-29 of the '178 patent);

62. U.S. Patent No. 5,721,951 to DorEl, et al.  (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 14-15, 17, 28-29 of the '178 patent);

63. Chase '914 (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-8, 14-15, 17, 28-29 of the '178 patent);

64. Chase '164 (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-9, 14-15, 17, 28-29 of the '178 patent);

65. Lake (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 14-17, 28-29 of the '178 patent);

66. Beaton (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent);

67. Person Book (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 14-17, 28-29 of the '178 patent);

68. Hindus Thesis (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent);

69. Stifelman Thesis (at least claims 1-6, 14-15 of the '076 patent and claim 1, 4-8, 14, 28 of the '178 patent);

70. Horner Thesis (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

71. Petrowski (at least claims 1-6, 14-15 of the '076 patent and claims 1-4,  6-9,  14-15, 28-29 of the '178 patent);

72. Wicked Sounds enabled system (at least claims 1-6, 13-15 of the '076 patent and claims 1-4, 6-9, 14-15, 28-29 of the '178 patent);

73. Tuttle (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-8, 14-16, 28-29 of the '178 patent);

74. Aarseth (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-9, 13-15, 17, 28-29 of the '178 patent);

75. WinPlay3 (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 14-17, 28-29 of the '178 patent);

76. Conventional Computer Running Windows 95 (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent);

77. Creative EnsembleAV (at least claims 1-4, 14-15 of the '076 patent and claims 1-8,

-22-

14-15, 28-29 of the '178 patent);

78. RealAudio 2.0 enabled system (at least claims 1-2, 5-6, 14-15 of the '076 patent and claims 1, 4-5, 8-9, 14-17, 28-29 of the '178 patent);

79. U.S. Patent No. 6,453,281 to Walters, et al. (at least claims 1-3, 5-6, 14-15 of the '076 patent and claims 1-6, 8-9, 14, 16-17, 28-29 of the '178 patent);

80. Macworld Music & Sound Bible (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

81. Kan (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

82. JSInc (at least claims 1-6, 14-15 of the '076 patent and claims 1-9, 13-17, 28-29 of the '178 patent);

83. Cerberus (at least claims 1-6, 14-15 of the '076 patent and claims 1-8, 10-17, 19- 21, 28-29 of the '178 patent);

Each anticipatory prior art reference, either alone or in combination with other prior art, also renders the asserted claims obvious to one of ordinary skill in the art.  In particular, each anticipatory prior art reference on its own renders obvious the claimed inventions and also may be combined with (i) information known to persons skilled in the art at the time of the alleged invention and/or (ii) any of the other anticipatory prior art references.  To the extent that Plaintiff contends that any of the anticipatory prior art fails to disclose explicitly or inherently one or more limitations of the asserted claims, Google reserves the right to argue that any difference between the reference and the corresponding patent claims would have been obvious to one of ordinary skill in the art even if it has not specifically denoted that the reference is to be combined with the knowledge of a person of ordinary skill in the art.  Further, Google reserves the right to identify other prior art references that, when combined with anticipatory prior art, would render the claims obvious.

The Supreme Court clarified the standard for what types of inventions are patentable.

-23-

*See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1731 (2007) ("the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results").  In particular, the Supreme Court emphasized that inventions arising from ordinary innovation, ordinary skill or common sense should not be patentable.  *See id*. at 1732,1738-39, 1742-43, 1746.  Because both the '076 patent and the '178 patent simply combine elements well known in the art in a straightforward fashion to achieve a well-known and obvious result and thus yield no more than one skilled in the art would expect from such combinations, the claims of those patents are obvious.  The asserted claims are therefore invalid under 35 U.S.C. § 103 because they do nothing more than combine known techniques and apparatuses according to their known and ordinary uses to yield predictable results.

The Supreme Court further held that "[w]hen a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one.  If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability.  For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill …." *See id*. at 1740.  Accordingly, a person of skill in the art would have been motivated to combine or adapt known or familiar methods in the art, especially where market forces prompt such variations.

In view of *KSR*, the United States Patent and Trademark Office issued a set of new Examination Guidelines.  *See* Examination Guidelines for Determining Obviousness Under 35 U.S.C. § 103, 72 Fed. Reg. 57526 (Oct. 10, 2007).  These Guidelines identify various rationales under *KSR* for finding a claim obvious at the time of the filing of the application for this patent,

-24-

including those based on other precedents, including but not limited to:

(A)     Combining prior art elements according to known methods to yield predictable results;

(B)     Simple substitution of one known element for another to obtain predictable results;

(C)     Use of known techniques to improve similar devices (methods, or products) in the same way;

(D)     Applying a known technique to a known device (method, or product) ready for improvement to yield predictable results;

(E)     "Obvious to try" – choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

(F)     Known work in one field of endeavor may prompt variations of it for use in either the same field or a different one based on design incentives or other market forces if the variations would have been predictable to one of ordinary skill in the art;

(G)     Some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior art reference or to combine prior art reference teachings to arrive at the claimed invention.  *See* 72 Fed. Reg. 57529.  These rationales apply in rendering obvious the asserted claims of the patents-in-suit.  Here, the state of the art at the relevant time expressly taught and suggested combining features from various well known media players.  As a result, one skilled in the art would have known to combine or modify references that described known systems and methods which one of skill in the art would have recognized as offering improvements to solutions at that time.  Each of the prior art references identified herein described systems and methods that were known to offer such improvements, and, accordingly,

-25-

one of skill in the art would have been motivated to combine or modify the references as described herein.

Further, as detailed in Appendix A, each prior art reference may be categorized as being part of one or more particular prior art groups.[19]  In light of the various reasons to combine discussed in detail below, invalidity under 35 U.S.C. § 103 can be based on one or more references in one prior art group combined with one or more references in another prior art group.  If and to the extent Plaintiff argues that one or more of these references, combined with the knowledge of persons of ordinary skill in the art at the relevant time, fails to disclose one or more specific elements of an asserted claim, Google reserves the right to rely on the combination of one or more of the references disclosed herein, including the art identified in Appendix B, with one or more other references disclosed herein, including the art identified in Appendix B.  Further, to the extent Plaintiff argues that claim elements that are not disclosed in the specifications of the asserted patents and/or related applications were enabled, Google reserves the right to rely on the combination of one or more of the references disclosed herein, including the art identified in Appendix B, with one or more other references disclosed herein, including the art identified in Appendix B.

### B.      Motivation To Combine

Motivation exists to combine one or more of the references included in these Invalidity

---

[19]      Inclusion of one prior art reference in one group does not in any way mean that that reference cannot be categorized as being part of another group.  Moreover, the groupings shown in Appendix A are not intended to be exhaustive of all the prior art references that can be categorized in each respective group.  To the extent necessary, Google reserves the right to amend and/or supplement these Invalidity Contentions to revise the groupings shown in Appendix A.

Contentions with each other.  Generally, motivation to combine any of these references with others exists within the references themselves, as well as within the knowledge of those of ordinary skill in the art at the relevant time.  For example, many of these references identify and address the same technical issues and suggest very similar solutions to those issues in the field of audio storage and playback.  Moreover, several of these references cross-reference and/or discuss one another, thereby providing an explicit motivation to combine such references and further illustrating the close technical relationship among this group of references.  If and to the extent that Plaintiff challenges the correspondence of any of these references with respect to particular elements of the asserted claims of the patents-in-suit, Google reserves the right to supplement these Invalidity Contentions to identify additional motivations to combine particular references with one another to the extent necessary.  Google may rely upon a subset of the references or all of the references depending upon the Court's claim construction and further investigation. Google's contentions that the references in this section, in various combinations, render the asserted claims of the patents-in-suit obvious under 35 U.S.C. § 103 are in no way an admission or suggestion that each reference does not independently anticipate the asserted claims under 35 U.S.C. § 102.  Any of the references disclosed herein, including the art identified in Appendix B, may be combined with other references disclosed herein, including the art identified in Appendix B, to render obvious, and therefore invalid, each of the asserted claims of the patent-in-suit.

During prosecution of the '076 patent and the '178 patent, the Applicant made various admissions as to what was known at the relevant time.[20]  For example, during prosecution of the '076 patent, the Applicant stated:

---

[20]     Google hereby incorporates by reference the grounds for claim rejections set forth by the United States Patent and Trademark Office during the prosecution of the '076 patent and the '178 patent.

> It is to be understood that applicant does not claim that all of the functions set forth in the dependent claims are patentable *per se*. Plainly, for example, conventional CD players allow the user to skip forward to the beginning of the next track on the disk or to skip backward to preceding tracks, eight-track tape cartridges formed an "endless loop" for continuous play, and VCR systems commonly include fast forward, reverse and slow motion playback capabilities which vary the rate at which the programs are reproduced. None of these, however,

*See* '076 patent prosecution history, Mar. 3, 2000 Response at 5. The Applicant argued that the prior art relied on by the Examiner failed to disclose "a file of data which establishes the sequence in which program segments are scheduled to be reproduced." *See id.* However, and as clearly evident from the references identified in these Invalidity Contentions and the accompanying claim charts, having a "playlist" that specified the order by which program segments would play was not a novel idea or feature at the relevant time. Rather, such a "playlist" feature was very well known prior to any alleged invention by Plaintiff.

Unlike records, cassettes, and video tapes which store and present media tracks in a fixed order, a collection of digital audio files on a computer has no predefined order. If a user wishes to listen to more than one audio file in a session, some mechanism for ordering the audio files is required. A playlist is an obvious choice to meet this need. Moreover, as the prior art references show, playlists were well known and used regularly in a wide variety of audio systems including CD players, radio broadcasting systems, stereo systems, personal audio systems, jukeboxes, karaoke players, and home audio software. Further, porting familiar user interface and navigation features (skip forward, skip back, repeat) from portable audio devices (*e.g.*, Walkman, Discman) and stereo systems to enable navigation and playback of digital audio content was

standard practice, as evidenced by most of the prior art references cited.[21]  *See, e.g.*, U.S. Patent No. 5,751,672 to Yankowski at 10:4-29; Nielsen Article; U.S. Patent No. 5,721,951 to DorEl at 6:22-28.  Conversely, designing audio playback software to emulate common features of audio reproduction devices such as CD players, broadcasting systems, jukeboxes, karaoke machines, mixers, and audio editing devices, or porting common features of these devices to portable electronic devices, was also already commonplace prior to 1996.[22]  Thus, with respect to the '076 patent and the '178 patent, to the extent that a particular single prior art reference does not either explicitly or inherently disclose both the claimed playback control and playlist limitations, it would have been obvious to one of ordinary skill in the art to use the admittedly prior art playback controls to navigate through a "playlist" of program segments.  In general, therefore, it also would have been obvious to combine any reference disclosing the use of a playlist of program segments with any other reference disclosing controls (*e.g.*, skip forward button) to play program segments.

One would also be motivated to combine the identified prior art references because the references address the same or similar issues, *i.e.*, facilitating user access to, interaction with, and enjoyment of digital audio content.  Further, the prior art references teach complementary technical features such as navigation controls, playlists, audio compression, file transfer, and graphical user interface features (*e.g.*, scrollable displays) to address these issues.  Persons of skill in the art would have recognized that there were no significant impediments (technological

---

[21]     For example, Nielsen shows three different user interface designs from designers at three different companies given the same general requirements for a PC-based music application.  All three designers chose to use conventional playback controls to control navigation and to a scrollable list to display the contents of a user generated playlist.

[22]     The asserted claims of the patents-in-suit are not limited to portable devices nor to consumer electronics.

or otherwise) to combining elements and features from different references.  Indeed, the prior art references evidence a mixing-and-matching of the same basic features into different combinations.  Further, that many of the prior art references use conventional computer hardware and basic software both enables and motivates the combination of these features.  Indeed, the patents themselves recommend the use of "conventional laptop[s] or desktop personal computer[s]" with a "conventional" sound card, a "conventional" display, a "standard" keyboard, the Windows 95 operating system, and a "conventional high speed modem" to implement the player.  *See* '076 patent at 4:32-5:45.

Developments in the art would also provide motivation to combine prior art references in ways that would take advantage of those developments.  For example, in the early to mid-1990s, significant advances were made in audio compression.  For example, MPEG compression, including layer III compression, was well known in the field prior to the filing date of the patents-in-suit.  *See, e.g.*, U.S. Patent No. 5,914,941 to Janky at 12:63-13:3; Chase '914 ¶¶ 15, 50.  Furthermore, the internet boom was in full swing by this time as well.  Countless websites, usenet groups, and BBS boards promoted access to information about music on the internet and provided audio content.  *See generally, e.g.*, Ben Greenman, NetMusic, (Michael Wolff & Co. 1995); Ted Gurley and W.T. Pfefferle, Plug In: The Guide to Music on the Net, (Prentice Hall April 1996); Brad Hill, The Virtual Musician, (Schirmer Books August 1996).  Personal Audio's patents acknowledge "Internet Radio" and specifically "the popular 'Real Audio' program offered by Progressive Networks" as prior art.  *See* '076 patent at 1:50-63.  In addition, the use of personal computers for enjoyment of multimedia was increasing.  Windows 95, released in August 1995, included a host of multimedia programs and features (*e.g.*, CD Player, Media Player, Sound Recorder) that allowed users to access and enjoy digital audio and video content.

-30-

*See, e.g.*, Lake, and Person Book at Chapters 31-35.  Sound cards, including the popular SoundBlaster series of sound cards, had become staple components of personal computers, allowing for improved audio functionality and performance.  Hard disk capacity was also steadily increasing which, combined with advances in audio compression, made it more feasible to store (whether temporarily or persistently) a library of audio files on a personal computer. Google may rely on cited or uncited portions of the prior art, other documents, and expert testimony to establish that a person of ordinary skill in the art would have been motivated to modify or combine the prior art so as to render the claims invalid as obvious.  In the event Plaintiff challenges the motivation to combine particular prior art references, Google reserves the right to supplement these contentions to further specify the motivation to combine the prior art to the extent necessary.

One would have known that triggering different functions based upon whether or not a predetermined amount of time has passed between user commands is a common technology in software field.  For example, Windows operating system can distinguish consecutive single click commands from a double click command based on the time elapsed between the first and the second click commands.  If the time passed between the first click and the second click exceeds a predetermined time, Windows considers the event as two separate single click commands. Conversely, if the time passed between the first click and the second click does not exceed the predetermined time, Windows considers the event as a single double click command.  Depending on whether the event is a double click or two single clicks, a Windows application can be programmed to act differently.  *See, e.g.,* Harold Davis, *Visual Basic 4 Secrets* (June 1996) at p. 52; *Robert Arnson, The Waite Group's Visual Basic How-To* (1992) at pp. 144-14; Gregory A. Wolking, *Edit Windows Recorder Macros*, PC Mag at 270 (Oct 24, 1995).

In particular, the asserted claims of the patents-in-suit are rendered obvious under 35 U.S.C. § 103 in view of at least the following exemplary combinations of references and reasons to combine:

### 1.    Any of the DAD References With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of any of the DAD Manual v6.0A, DAD Brochure and DAD system (collectively "DAD References") with the teachings from any one or more of the "Image" references in Appendix A.  Each of the DAD References and multiple "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the DAD References to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were well adapted to storing images and such images were widely used in association with multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the DAD References with that of any one or more of the "Image" references to render obvious claims 16 and 17 of the '178 patent.

### 2.    Any of the DAD References With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of any of the DAD Manual v6.0A, DAD Brochure and DAD system (collectively "DAD References") with the teachings from any one or more of the "Voice Command" references in Appendix A.  Each of the DAD References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the

DAD References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the DAD References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 3.    Any of the DAD References With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of any of the DAD Manual v6.0A, DAD Brochure and DAD system (collectively "DAD References") with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Each of the DAD References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the DAD References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the DAD References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 4.    Any of the DAD References With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of any of the DAD Manual v6.0A, DAD Brochure and DAD system (collectively "DAD References") with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Each of the DAD References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the DAD References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the DAD References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

###### 5.    Any of the Opcode Audioshop References With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of each of the Opcode Audioshop Manual and Opcode Audioshop enabled system (collectively "Opcode Audioshop References") with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A.  Each of the Opcode Audioshop References and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Opcode Audioshop References to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous

track was admittedly well known.[23]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Opcode Audioshop References with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 6. Any of the Opcode Audioshop References With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of any of the "Opcode Audioshop" references with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of the Opcode Audioshop References and multiple "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Opcode Audioshop References to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Opcode Audioshop References with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 7. Any of the Opcode Audioshop References With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of any of the Opcode Audioshop

---

[23]   During prosecution of the '076 patent, the Applicant admitted that the playback controls claimed in both patents were well known:  "It is to be understood that Applicant does not claim that all of the functions set forth in the dependent claims are patentable per se.  ***Plainly, for example, conventional CD players allow the user to skip forward to the beginning of the next track on the disk or to skip backward to preceding tracks* ….**"  *See* '076 patent prosecution history, Mar. 3, 2000 Response at 5 (emphasis added).

References with the teachings from any one or more of the "Image" references in Appendix A. Computer systems were well adapted to storing images and such images were widely used in association with multimedia data. Each of the Opcode Audioshop References and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Opcode Audioshop References to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Opcode Audioshop References with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

### 8. Any of the Opcode Audioshop References With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of any of the Opcode Audioshop References with the teachings from any one or more of the "Voice Command" references in Appendix A. Each of the Opcode Audioshop References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Opcode Audioshop References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Opcode Audioshop References with that of any one or more

-36-

of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 9.    Any of the Opcode Audioshop References With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of any of the Opcode Audioshop References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Each of the Opcode Audioshop References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Opcode Audioshop References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Opcode Audioshop References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 10.   Any of the Opcode Audioshop References With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of any of the Opcode Audioshop References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Each of the Opcode Audioshop References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Opcode Audioshop References to turn to the teachings of any one or more of the "Encryption / Decryption"

references to result in operation that would have been predictable in nature and would improve

and/or personalize the use and/or operation of the media player(s).  Computer systems were used

to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to

protect multimedia data.  Accordingly, for at least these reasons, it would have been obvious to

combine the teachings of any of the Opcode Audioshop References with that of any one or more

of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178

patent.

### 11.    Any of the Sound Blaster References With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of any of the Sound Blaster 16

User Guide, Sound Blaster "Making WAVEs" Book and Sound Blaster 16 enabled system

(collectively "Sound Blaster References") with the teachings from any one or more of the

"Downloading Audio" references in Appendix A.  Each of the Sound Blaster References and the

"Downloading Audio" references are directed to the field of media players, and it would have

been obvious to one skilled in the art presented with the disclosure of any of the Sound Blaster

References to turn to the teachings of any one or more of the "Downloading Audio" references to

result in operation that would have been predictable in nature and would improve and/or

personalize the use and/or operation of the media player(s).  It was well known to those of

ordinary skill in the art that multimedia information and files could be obtained from a remote

location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it

would have been obvious to combine the teachings of any of the Sound Blaster References with

that of any one or more of the "Downloading Audio" references to render obvious claims 1 and

14 of the '178 patent (and any dependent claims).

-38-

### 12.    Any of the Sound Blaster References With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of any of the Sound Blaster References with the teachings from any one or more of the "Downloading Playlist" references in Appendix A.  Each of the "Sound Blaster" references and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Sound Blaster References to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 13.    Any of the Sound Blaster References With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of any of the Sound Blaster References with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of the "Sound Blaster" references and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the "Preferences" references to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well

-39-

known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 14.   Any of the Sound Blaster References With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of any of the Sound Blaster References with the teachings from any one or more of the "Voice Command" references in Appendix A.  Each of the Sound Blaster References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Sound Blaster References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 15.   Any of the Sound Blaster References With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of any of the Sound Blaster References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Each of the Sound Blaster References and multiple "Subscription /

-40-

Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Sound Blaster References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

**16.    Any of the Sound Blaster References With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of any of the Sound Blaster References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Each of the Sound Blaster References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Sound Blaster References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Sound Blaster References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

-41-

17.    **Gravis Windecks With Any One or More of the "Downloading Audio" References**

It would have been obvious to combine the disclosure of a Gravis Windecks enabled system with the teachings from any one or more of the "Downloading Audio" references in Appendix A.  Each of a Gravis Windecks enabled system and the "Downloading Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Gravis Windecks enabled system to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of a Gravis Windecks enabled system with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

18.    **Gravis Windecks With Any One or More of the "Downloading Playlist" References**

It would have been obvious to combine the disclosure of a Gravis Windecks enabled system with the teachings from any one or more of the "Downloading Playlist" references in Appendix A.  Each of the Gravis Windecks enabled system and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Gravis Windecks enabled system to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or

-42-

operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of a Gravis Windecks enabled system with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 19.    Gravis Windecks With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of a Gravis Windecks enabled system with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the Gravis Windecks enabled system and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of a Gravis Windecks enabled system to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of a Gravis Windecks enabled system with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 20.    Gravis Windecks With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of a Gravis Windecks enabled

system with the teachings from any one or more of the "Voice Command" references in Appendix A.  Gravis Windecks enabled system and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Gravis Windecks enabled system to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of Gravis Windecks enabled system with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 21.    Gravis Windecks With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of a Gravis Windecks enabled system with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Gravis Windecks enabled system and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Gravis Windecks enabled system to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Gravis Windecks enabled system with that of any one or

-44-

more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 22.    Gravis Windecks With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of a Gravis Windecks enabled system with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Gravis Windecks enabled system and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Gravis Windecks enabled system to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Gravis Windecks enabled system with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 23.    Any of the Windows Sound System References With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of any of the Windows Sound System Manual and Microsoft Windows Sound System User Guide (collectively "Windows Sound System References") with the teachings from any one or more of the "Downloading Audio" references in Appendix A.  Each of the Windows Sound System References and the "Downloading Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound

-45-

System References to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 24.   Any of the Windows Sound System References With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of any of the Windows Sound System References with the teachings from any one or more of the "Downloading Playlist" references in Appendix A.  Each of the Windows Sound System References and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound System References to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

-46-

## 25.   Any of the Windows Sound System References With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of any of the Windows Sound System References with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of the Windows Sound System References and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the "Preferences" references to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

## 26.   Any of the Windows Sound System References With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of any of the Windows Sound System References with the teachings from any one or more of the "Voice Command" references in Appendix A.  Any of the Windows Sound System References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound System References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with

-47-

microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 27.   Any of the Windows Sound System References With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of any of the Windows Sound System References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Any of the Windows Sound System References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound System References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 28.   Any of the Windows Sound System References With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of any of the Windows Sound System References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Any of the Windows Sound System References and multiple

"Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound System References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 29.   U.S. Patent No. 5,819,160 to Foladare With Any One or More of the "Skip Forward" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Skip Forward" references in Appendix A.  Each of U.S. Patent No. 5,819,160 to Foladare, et al. and the "Skip Forward" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Skip Forward" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip forward was admittedly well known.[24]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Skip Forward" references to render obvious claims 1 and 14 of the '076 patent and claims 4 and

---

[24]      *See supra* n.22.

-49-

14 of the '178 patent (and any dependent claims).

> **30.    U.S. Patent No. 5,819,160 With Any One or More of the "Skip Back – Current Track (1)" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A.  Each of U.S. Patent No. 5,819,160 to Foladare, et al. and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

> **31.    U.S. Patent No. 5,819,160 With Any One or More of the "Skip Back – Previous Track (1)" References**

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A.  Each of U.S. Patent No. 5,819,160 to Foladare, et al. and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Skip Back –

Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[25] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 32.    U.S. Patent No. 5,819,160 to Foladare, et al. With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Playlist Repeat" references in Appendix A. Each of U.S. Patent No. 5,819,160 to Foladare, et al. and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[26] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any

---

[25]    *See supra* n.22.

[26]    During prosecution of the '076 patent, the Applicant admitted that repeat functionality was well known: "It is to be understood that Applicant does not claim that all of the functions set forth in the dependent claims are patentable *per se*. Plainly, for example, conventional CD players allow the user to skip forward to the beginning of the next track on the disk or to skip backward to preceding tracks, ***eight-track cartridges formed an 'endless loop' for continuous play*** …." *See* '076 patent prosecution history, Mar. 3, 2000 Response at 5 (emphasis added).

one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent (and any dependent claims).

### 33.    U.S. Patent No. 5,819,160 With Any One or More of the "Playlist Edit" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Playlist Edit" references in Appendix A.  Each of U.S. Patent No. 5,819,160 to Foladare, et al. and the "Playlist Edit" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Playlist Edit" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  As illustrated by the references identified herein, it was well known at the relevant time to allow a user to add, change the order of, and/or remove tracks in a playlist.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Playlist Edit" references to render obvious claims 5 and 6 of the '076 patent (and any dependent claims).

### 34.    U.S. Patent No. 5,819,160 to Foladare, et al. With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Voice Command" references in Appendix A.  U.S. Patent No. 5,819,160 to Foladare, et al. and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to

turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 35.   U.S. Patent No. 5,819,160 With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Any of the Windows Sound System References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Windows Sound System References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the Windows Sound System References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 36.   U.S. Patent No. 5,819,160 With Any One or More of the "Encryption / Decryption" References

-53-

It would have been obvious to combine the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  U.S. Patent No. 5,819,160 to Foladare, et al. and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,819,160 to Foladare, et al. to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,819,160 to Foladare, et al. with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 37.    Loeb With Any One or More of the "Store Audio" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Store Audio" references in Appendix A.  Each of the Loeb Publication and the "Store Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Store Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  The ability to store audio in a media player designed to play audio was fundamentally well known long before the patents-in-suit. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

-54-

the Loeb Publication with that of any one or more of the "Store Audio" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 38.  Loeb With Any One or More of the "Playlist" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Playlist" references in Appendix A.  Each of the Loeb Publication and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio tracks.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 39.  Loeb With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Downloading Audio" references in Appendix A.  Each of the Loeb Publication and the "Downloading Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the

"Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 40. Loeb With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Downloading Playlist" references in Appendix A.  Each of the Loeb Publication and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 41. Loeb With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of the Loeb Publication and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known with multimedia players to display how much play time is left of a currently playing track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

### 42. Loeb With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of the Loeb Publication and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Skip Back – Current Track (1)" references to

render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 43. Loeb With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of the Loeb Publication and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 44. Loeb With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of the Loeb Publication and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been

predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[27] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 45. Loeb With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A. Each of the Loeb Publication and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). A playback control button to skip back to a previous track was admittedly well known.[28] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 46. Loeb With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of the Loeb Publication with the

---

[27]    *See supra* n.22.

[28]    *See supra* n.22.

teachings from any one or more of the "Playlist Repeat" references in Appendix A.  Each of the Loeb Publication and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[29]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 47.    Loeb With Any One or More of the "Playlist Edit" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Playlist Edit" references in Appendix A.  Each of the Loeb Publication and the "Playlist Edit" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Loeb Publication to turn to the teachings of any one or more of the "Playlist Edit" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  As illustrated by the references identified herein, it was well known at the relevant time to allow a user to add, change the order of, and/or remove tracks in a playlist.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Loeb Publication with that of any one or more of the "Playlist Edit" references to render obvious claims 5 and 6 of the '076 patent (and any dependent claims).

---

[29]    *See supra* n.25.

### 48.    Loeb With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Voice Command" references in Appendix A.  Loeb Publication and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Loeb Publication to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Loeb Publication with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 49.    Loeb With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Loeb Publication and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Loeb Publication to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Loeb Publication with that of any one or

more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 50.   Loeb With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of the Loeb Publication with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. Loeb Publication and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Loeb Publication to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Loeb Publication with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 51.   Any of the NewsComm References With Any One or More of the "Playlist" References

It would have been obvious to combine the disclosure of any of the Roy NewsComm Thesis, NewsComm Presentation and NewsComm Journal Article references (collectively "NewsComm References") with the teachings from any one or more of the "Playlist" references in Appendix A. Each of the NewsComm References and multiple "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been

-62-

predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 52. Any of the NewsComm References With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Image" references in Appendix A. Each of the NewsComm References and multiple "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were well adapted to storing images and such images were widely used in association with multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

### 53. Any of the NewsComm References With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of the NewsComm References and multiple "Remaining Time" references

-63-

are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known with multimedia players to display how much play time is left of a currently playing track.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

### 54.    Any of the NewsComm References With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A.  Each of the NewsComm References and multiple "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

-64-

### 55. Any of the NewsComm References With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of the NewsComm References and multiple "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 56. Any of the NewsComm References With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A. Each of the NewsComm References and multiple "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve

and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[30]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 57.   Any of the NewsComm References With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A.  Each of the NewsComm References and multiple "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[31]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 58.   Any of the NewsComm References With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of any of the NewsComm

---

[30]   *See supra* n.22.

[31]   *See supra* n.22.

References with the teachings from any one or more of the "Playlist Repeat" references in Appendix A.  Each of the NewsComm References and multiple "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[32]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 59.   Any of the NewsComm References With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Track ID" references in Appendix A.  Each of the NewsComm References and multiple "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known, as illustrated by the references identified herein, to have information for identifying a given audio track.  Accordingly, for at least these reasons, it would have been obvious to

---

[32]      *See supra* n.25.

combine the teachings of any of the NewsComm References with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

### 60.     Any of the NewsComm References With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Voice Command" references in Appendix A.  Any of the NewsComm References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 61.     Any of the NewsComm References With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Any of the NewsComm References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm

-68-

References to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 62. Any of the NewsComm References With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of any of the NewsComm References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Any of the NewsComm References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the NewsComm References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any of the NewsComm References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 63. Comparative Design Review Article With Any One or More of the "Store Audio" References

-69-

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Store Audio" references in Appendix A. Each of the Comparative Design Review Article and the "Store Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Store Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). The ability to store audio in a media player designed to play audio was fundamentally well known long before the patents-in-suit. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Store Audio" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 64. Comparative Design Review Article With Any One or More of the "Playlist" References

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Playlist" references in Appendix A. Each of the Comparative Design Review Article and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that

-70-

of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076

patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 65. Comparative Design Review Article With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of the Comparative Design Review

Article with the teachings from any one or more of the "Downloading Audio" references in

Appendix A.  Each of the Comparative Design Review Article and the "Downloading Audio"

references are directed to the field of media players, and it would have been obvious to one

skilled in the art presented with the disclosure of the Comparative Design Review Article to turn

to the teachings of any one or more of the "Downloading Audio" references to result in operation

that would have been predictable in nature and would improve and/or personalize the use and/or

operation of the media player(s).  It was well known to those of ordinary skill in the art that

multimedia information and files could be obtained from a remote location (*e.g.*, over the

Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious

to combine the teachings of the Comparative Design Review Article with that of any one or more

of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent

(and any dependent claims).

### 66. Comparative Design Review Article With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of the Comparative Design Review

Article with the teachings from any one or more of the "Downloading Playlist" references in

Appendix A.  Each of the Comparative Design Review Article and the "Downloading Playlist"

references are directed to the field of media players, and it would have been obvious to one

skilled in the art presented with the disclosure of the Comparative Design Review Article to turn

to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server). Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 67. Comparative Design Review Article With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of the Comparative Design Review Article and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known with multimedia players to display how much play time is left of a currently playing track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

-72-

68. **Comparative Design Review Article With Any One or More of the "Skip Back – Current Track (1)" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A.  Each of the Comparative Design Review Article and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

69. **Comparative Design Review Article With Any One or More of the "Skip Back – Current Track (2)" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A.  Each of the Comparative Design Review Article and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve

-73-

and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

> **70. Comparative Design Review Article With Any One or More of the "Skip Back – Previous Track (1)" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A.  Each of the Comparative Design Review Article and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[33]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

> **71. Comparative Design Review Article With Any One or More of the "Skip Back – Previous Track (2)" References**

It would have been obvious to combine the disclosure of the Comparative Design Review

---

[33]   *See supra* n.22.

-74-

Article with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A.  Each of the Comparative Design Review Article and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[34]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 72.   Comparative Design Review Article With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Playlist Repeat" references in Appendix A.  Each of the Comparative Design Review Article and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Various prior art multimedia players admittedly allowed a user to repeat

---

[34]   *See supra* n.22.

playback of a playlist.[35]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

**73.   Comparative Design Review Article With Any One or More of the "Track ID" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Track ID" references in Appendix A. Each of the Comparative Design Review Article and the "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Comparative Design Review Article to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known, as illustrated by the references identified herein, to have information for identifying a given audio track.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Comparative Design Review Article with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

**74.   Comparative Design Review With Any One or More of the "Voice Command" References**

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Voice Command" references in Appendix A.  Comparative Design Review Article and multiple "Voice Command" references

---

[35]    *See supra* n.25.

are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Comparative Design Review Article to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Comparative Design Review Article with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 75.    Comparative Design Review With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Comparative Design Review Article and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Comparative Design Review Article to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Comparative Design Review Article with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 76.    Comparative Design Review With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of the Comparative Design Review Article with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Comparative Design Review Article and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Comparative Design Review Article to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Comparative Design Review Article with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 77.    VoiceNotes Article With Any One or More of the "Playlist" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Playlist" references in Appendix A.  Each of the VoiceNotes Article and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  As illustrated by the references

identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 78.    VoiceNotes Article With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Downloading Playlist" references in Appendix A.  Each of the VoiceNotes Article and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 79.    VoiceNotes Article With Any One or More of the "Display Track" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Display Track" references in Appendix A.  Each of the VoiceNotes Article and the "Display Track" references are directed to the field of media players,

and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Display Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known that prior art multimedia players would indicate the track being played.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Display Track" references to render obvious claims 2, 3, 14, and 15 of the '178 patent (and any dependent claims).

### 80.    VoiceNotes Article With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Display Playlist" references in Appendix A.  Each of the VoiceNotes Article and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known that prior art multimedia players would indicate all or part of the playlist being played.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 81.    VoiceNotes Article With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the

teachings from any one or more of the "Image" references in Appendix A.  Each of the VoiceNotes Article and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were well adapted to storing images and such images were widely used in association with multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

### 82.   VoiceNotes Article With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Remaining Time" references in Appendix A.  Each of the VoiceNotes Article and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known with multimedia players to display how much play time is left of a currently playing track.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

-81-

83.   **VoiceNotes Article With Any One or More of the "Skip Back –
Current Track (1)" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the

teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix

A.  Each of the VoiceNotes Article and the "Skip Back – Current Track (1)" references are

directed to the field of media players, and it would have been obvious to one skilled in the art

presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or

more of the "Skip Back – Current Track (1)" references to result in operation that would have

been predictable in nature and would improve and/or personalize the use and/or operation of the

media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact

disc player) with the ability to restart playback of a track that the user was listening to.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

the VoiceNotes Article with that of any one or more of the "Skip Back – Current Track (1)"

references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).


84.   **VoiceNotes Article With Any One or More of the "Skip Back –
Current Track (2)" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the

teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix

A.  Each of the VoiceNotes Article and the "Skip Back – Current Track (2)" references are

directed to the field of media players, and it would have been obvious to one skilled in the art

presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or

more of the "Skip Back – Current Track (2)" references to result in operation that would have

been predictable in nature and would improve and/or personalize the use and/or operation of the

media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 85. VoiceNotes Article With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A.  Each of the VoiceNotes Article and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[36]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 86. VoiceNotes Article With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix

---

[36]     *See supra* n.22.

A.  Each of the VoiceNotes Article and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[37]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 87.    VoiceNotes Article With Any One or More of the "Skip to Track" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Skip to Track" references in Appendix A.  Each of the VoiceNotes Article and the "Skip to Track" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Skip to Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Prior art multimedia players provided controls to allow a user to skip to a particular track that the user wanted to listen to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Skip to Track" references to render

---

[37]    *See supra* n.22.

obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 88.    VoiceNotes Article With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Playlist Repeat" references in Appendix A.  Each of the VoiceNotes Article and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[38]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 89.    VoiceNotes Article With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Track ID" references in Appendix A.  Each of the VoiceNotes Article and the "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known, as

---

[38]    *See supra* n.25.

illustrated by the references identified herein, to have information for identifying a given audio track.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

### 90. VoiceNotes Article With Any One or More of the "Description" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Description" references in Appendix A.  Each of the VoiceNotes Article and the "Description" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Description" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known with prior art multimedia players to have description information about audio files that could be played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Description" references to render obvious claims 8 and 29 of the '178 patent (and any dependent claims).

### 91. VoiceNotes Article With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of the VoiceNotes Article and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the VoiceNotes Article to turn to the teachings of any one or more of the "Preferences" references to

result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the VoiceNotes Article with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

92.    **VoiceNotes Article With Any One or More of the "Subscription / Purchase Audio" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  VoiceNotes Article and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of VoiceNotes Article to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings VoiceNotes Article with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

93.    **VoiceNotes Article With Any One or More of the "Encryption / Decryption" References**

It would have been obvious to combine the disclosure of the VoiceNotes Article with the

-87-

teachings from any one or more of the "Encryption / Decryption" references in Appendix A. VoiceNotes Article and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of VoiceNotes Article to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of VoiceNotes Article with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 94.  Voyetra AudioStation User Manual With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Downloading Audio" references in Appendix A.  Each of the Voyetra AudioStation User Manual and the "Downloading Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more

of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent

(and any dependent claims).

### 95.   Voyetra AudioStation User Manual With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User

Manual with the teachings from any one or more of the "Downloading Playlist" references in

Appendix A.  Each of the Voyetra AudioStation User Manual and the "Downloading Playlist"

references are directed to the field of media players, and it would have been obvious to one

skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn

to the teachings of any one or more of the "Downloading Playlist" references to result in

operation that would have been predictable in nature and would improve and/or personalize the

use and/or operation of the media player(s).  It was well known to those of ordinary skill in the

art that multimedia information and files could be obtained from a remote location (*e.g.*, over the

Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious

to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more

of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent

(and any dependent claims).

### 96.   Voyetra AudioStation User Manual With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User

Manual with the teachings from any one or more of the "Image" references in Appendix A.

Each of the Voyetra AudioStation User Manual and the "Image" references are directed to the

field of media players, and it would have been obvious to one skilled in the art presented with the

disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more

of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were well adapted to storing images and such images were widely used in association with multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

### 97.    Voyetra AudioStation User Manual With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Remaining Time" references in Appendix A.  Each of the Voyetra AudioStation User Manual and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known with multimedia players to display how much play time is left of a currently playing track.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

### 98.    Voyetra AudioStation User Manual With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User

Manual with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 99.    Voyetra AudioStation User Manual With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have

been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 100.  Voyetra AudioStation User Manual With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A.  Each of the Voyetra AudioStation User Manual and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[39]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 101.  Voyetra AudioStation User Manual With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A.  Each of the Voyetra AudioStation User Manual and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been

---

[39]    *See supra* n.22.

obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User

Manual to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)"

references to result in operation that would have been predictable in nature and would improve

and/or personalize the use and/or operation of the media player(s).  A playback control button to

skip back to a previous track was admittedly well known.[40]  Accordingly, for at least these

reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User

Manual with that of any one or more of the "Skip Back – Previous Track (2)" references to

render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 102.  Voyetra AudioStation User Manual With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User

Manual with the teachings from any one or more of the "Track ID" references in Appendix A.

Each of the Voyetra AudioStation User Manual and the "Track ID" references are directed to the

field of media players, and it would have been obvious to one skilled in the art presented with the

disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more

of the "Track ID" references to result in operation that would have been predictable in nature and

would improve and/or personalize the use and/or operation of the media player(s).  It was very

well known, as illustrated by the references identified herein, to have information for identifying

a given audio track.  Accordingly, for at least these reasons, it would have been obvious to

combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of

the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any

dependent claims).

---

[40]     *See supra* n.22.

### 103.   Voyetra AudioStation User Manual With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Preferences" references in Appendix A. Each of the Voyetra AudioStation User Manual and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Voyetra AudioStation User Manual with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 104.   Voyetra AudioStation User Manual With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Voice Command" references in Appendix A.  Voyetra AudioStation User Manual and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands

were widely used to control computer applications, including multimedia applications.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Voyetra AudioStation User Manual with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 105.    Voyetra AudioStation User Manual With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Voyetra AudioStation User Manual and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings Voyetra AudioStation User Manual with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 106.    Voyetra AudioStation User Manual With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of the Voyetra AudioStation User Manual with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Voyetra AudioStation User Manual and multiple "Encryption / Decryption"

-95-

references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Voyetra AudioStation User Manual to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Voyetra AudioStation User Manual with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 107.   FR 2714760 With Any One or More of the "Playlist" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Playlist" references in Appendix A.  Each of FR 2714760 and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 108.   FR 2714760 With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings

from any one or more of the "Downloading Playlist" references in Appendix A.  Each of FR 2714760 and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 109.    FR 2714760 With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Display Playlist" references in Appendix A.  Each of FR 2714760 and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known that prior art multimedia players would indicate all or part of the playlist being played.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 110.   FR 2714760 With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Remaining Time" references in Appendix A.  Each of FR 2714760 and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known with multimedia players to display how much play time is left of a currently playing track.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

### 111.   FR 2714760 With Any One or More of the "Skip Forward" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip Forward" references in Appendix A.  Each of FR 2714760 and the "Skip Forward" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip Forward" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip forward was admittedly well known.[41]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

---

[41]      *See supra* n.22.

FR 2714760 with that of any one or more of the "Skip Forward" references to render obvious claims 1 and 14 of the '076 patent and claims 4 and 14 of the '178 patent (and any dependent claims).

### 112.   FR 2714760 With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A.  Each of FR 2714760 and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 113.   FR 2714760 With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A.  Each of FR 2714760 and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip Back –

Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 114.   FR 2714760 With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A.  Each of FR 2714760 and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[42] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 115.   FR 2714760 With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings

---

[42]      *See supra* n.22.

from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A.  Each of FR 2714760 and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[43] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 116.  FR 2714760 With Any One or More of the "Skip to Track" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Skip to Track" references in Appendix A.  Each of FR 2714760 and the "Skip to Track" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Skip to Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Prior art multimedia players provided controls to allow a user to skip to a particular track that the user wanted to listen to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the

---

[43]     *See supra* n.22.

"Skip to Track" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 117.   FR 2714760 With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Playlist Repeat" references in Appendix A.  Each of FR 2714760 and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[44]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 118.   FR 2714760 With Any One or More of the "Playlist Edit" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Playlist Edit" references in Appendix A.  Each of FR 2714760 and the "Playlist Edit" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Playlist Edit" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation

---

[44]     *See supra* n.25.

of the media player(s).  As illustrated by the references identified herein, it was well known at the relevant time to allow a user to add, change the order of, and/or remove tracks in a playlist. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Playlist Edit" references to render obvious claims 5 and 6 of the '076 patent (and any dependent claims).

### 119.  FR 2714760 With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Track ID" references in Appendix A.  Each of FR 2714760 and the "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known, as illustrated by the references identified herein, to have information for identifying a given audio track.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

### 120.  FR 2714760 With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of FR 2714760 and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Preferences" references to result in operation that would

have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 121.   FR 2714760 With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Voice Command" references in Appendix A.  FR 2714760 and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 122.   FR 2714760 With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  FR 2714760 and multiple "Subscription / Purchase Audio" references are directed to the field of

media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 123.  FR 2714760 With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of FR 2714760 with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  FR 2714760 and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of FR 2714760 to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of FR 2714760 with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 124.  U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Remaining Time" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known with multimedia players to display how much play time is left of a currently playing track. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

### 125. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to. Accordingly, for at least these reasons, it would have

been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 126. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A.  Each of U.S. Patent No. 5,640,590 to Luther and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 127. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A.  Each of U.S. Patent No. 5,640,590 to Luther and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been

obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[45]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 128.   U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A.  Each of U.S. Patent No. 5,640,590 to Luther and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[46]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

---

[45]     *See supra* n.22.

[46]     *See supra* n.22.

### 129.   U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Skip to Track" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Skip to Track" references in Appendix A.  Each of U.S. Patent No. 5,640,590 to Luther and the "Skip to Track" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Skip to Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Prior art multimedia players provided controls to allow a user to skip to a particular track that the user wanted to listen to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Skip to Track" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 130.   U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Playlist Repeat" references in Appendix A.  Each of U.S. Patent No. 5,640,590 to Luther and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).

Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[47] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 131.    U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Track ID" references in Appendix A.  Each of U.S. Patent No. 5,640,590 to Luther and the "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known, as illustrated by the references identified herein, to have information for identifying a given audio track.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

### 132.    U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Description" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Description" references in Appendix A.

---

[47]    *See supra* n.25.

Each of U.S. Patent No. 5,640,590 to Luther and the "Description" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Description" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known with prior art multimedia players to have description information about audio files that could be played.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Description" references to render obvious claims 8 and 29 of the '178 patent (and any dependent claims).

### 133.   U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Preferences" references in Appendix A. Each of U.S. Patent No. 5,640,590 to Luther and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the

'178 patent (and any dependent claims).

### 134. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Voice Command" references in Appendix A. U.S. Patent No. 5,640,590 to Luther and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 135. U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. U.S. Patent No. 5,640,590 to Luther and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve

-112-

and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 136.   U.S. Patent No. 5,640,590 to Luther With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,640,590 to Luther with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  U.S. Patent No. 5,640,590 to Luther and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,640,590 to Luther to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,640,590 to Luther with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 137.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Downloading Playlist" references in

Appendix A.  Each of U.S. Patent No. 5,726,909 to Krikorian and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 138.    U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Image" references in Appendix A. Each of U.S. Patent No. 5,726,909 to Krikorian and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were well adapted to storing images and such images were widely used in association with multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent

claims).

### 139.  U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Remaining Time" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Remaining Time" references in Appendix A.  Each of U.S. Patent No. 5,726,909 to Krikorian and the "Remaining Time" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Remaining Time" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known with multimedia players to display how much play time is left of a currently playing track.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Remaining Time" references to render obvious claim 17 of the '178 patent (and any dependent claims).

### 140.  U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Playlist Repeat" references in Appendix A.  Each of U.S. Patent No. 5,726,909 to Krikorian and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or

operation of the media player(s).  Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[48]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 141.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A.  Each of U.S. Patent No. 5,726,909 to Krikorian and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 142.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to

---

[48]     *See supra* n.25.

Krikorian with the teachings from any one or more of the "Skip Back – Current Track (2)"

references in Appendix A.  Each of U.S. Patent No. 5,726,909 to Krikorian and the "Skip Back –

Current Track (2)" references are directed to the field of media players, and it would have been

obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to

Krikorian to turn to the teachings of any one or more of the "Skip Back – Current Track (2)"

references to result in operation that would have been predictable in nature and would improve

and/or personalize the use and/or operation of the media player(s).  It was well known to provide

the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback

of a track that the user was listening to.  Accordingly, for at least these reasons, it would have

been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of

any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5

and 14 of the '178 patent (and any dependent claims).

### 143.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to

Krikorian with the teachings from any one or more of the "Skip Back – Previous Track (1)"

references in Appendix A.  Each of U.S. Patent No. 5,726,909 to Krikorian and the "Skip Back –

Previous Track (1)" references are directed to the field of media players, and it would have been

obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to

Krikorian to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)"

references to result in operation that would have been predictable in nature and would improve

and/or personalize the use and/or operation of the media player(s).  A playback control button to

skip back to a previous track was admittedly well known.[49]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

### 144.  U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A.  Each of U.S. Patent No. 5,726,909 to Krikorian and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[50]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 145.  U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Track ID" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Track ID" references in Appendix A.

---

[49]     *See supra* n.22.

[50]     *See supra* n.22.

Each of U.S. Patent No. 5,726,909 to Krikorian and the "Track ID" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Track ID" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known, as illustrated by the references identified herein, to have information for identifying a given audio track.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Track ID" references to render obvious claims 8 and 28 of the '178 patent (and any dependent claims).

### 146.  U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Voice Command" references in Appendix A.  Each of U.S. Patent No. 5,726,909 to Krikorian and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 147.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Each of U.S. Patent No. 5,726,909 to Krikorian and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 148.   U.S. Patent No. 5,726,909 to Krikorian With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,726,909 to Krikorian with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Each of U.S. Patent No. 5,726,909 to Krikorian and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure U.S. Patent No. 5,726,909 to Krikorian to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the

use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,726,909 to Krikorian with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 149.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Downloading Audio" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Downloading Audio" references in Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and the "Downloading Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 150.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Downloading Playlist" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Downloading Playlist" references in

Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and the "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Downloading Playlist" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 151.  U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Playlist Repeat" references in Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Various prior art multimedia players admittedly allowed a user

to repeat playback of a playlist.[51]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 152.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Skip Back – Current Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Skip Back – Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 153.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Skip Back – Current Track (2)"

---

[51]      *See supra* n.25.

-123-

references in Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 154.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Skip Back – Previous Track (1)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Skip Back – Previous Track (1)" references in Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and the "Skip Back – Previous Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Skip Back – Previous Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[52]  Accordingly, for at least

---

[52]      *See supra* n.22.

these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Skip Back – Previous Track (1)" references to render obvious claims 3 and 15 of the '076 patent (and any dependent claims).

###    155.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[53]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

###    156.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art

---

[53]    *See supra* n.22.

presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 157.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Voice Command" references in Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 158.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 159.   U.S. Patent No. 5,751,672 to Yankowski With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of U.S. Patent No. 5,751,672 to Yankowski with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Each of U.S. Patent No. 5,751,672 to Yankowski and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure U.S. Patent No. 5,751,672 to Yankowski to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data.

-127-

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 5,751,672 to Yankowski with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

**160.   RealAudio 2.0 With Any One or More of the "Playlist Repeat" References**

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Playlist Repeat" references in Appendix A.  Each of the RealAudio 2.0 and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[54]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

**161.   RealAudio 2.0 With Any One or More of the "Skip Back – Current Track (1)" References**

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Skip Back – Current Track (1)" references in Appendix A.  Each of the RealAudio 2.0 and the "Skip Back – Current Track (1)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Skip Back –

---

[54]     *See supra* n.25.

Current Track (1)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Skip Back – Current Track (1)" references to render obvious claims 2 and 14 of the '076 patent (and any dependent claims).

### 162.   RealAudio 2.0 With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A.  Each of the RealAudio 2.0 and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 163.   RealAudio 2.0 With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the

teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A.  Each of the RealAudio 2.0 and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[55] Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 164.   RealAudio 2.0 With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of the RealAudio 2.0 and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Preferences" references to render obvious

---

[55]    *See supra* n.22.

claims 9 and 13 of the '178 patent (and any dependent claims).

### 165. RealAudio 2.0 With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of the RealAudio 2.0 with the teachings from any one or more of the "Display Playlist" references in Appendix A.  Each of the RealAudio 2.0 and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the RealAudio 2.0 to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known that prior art multimedia players would indicate all or part of the playlist being played.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the RealAudio 2.0 with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 166. RealAudio 2.0 With Any One or More of the "Skip to Track" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Skip to Track" references in Appendix A.  Each of the RealAudio 2.0 and the "Skip to Track" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the RealAudio 2.0 to turn to the teachings of any one or more of the "Skip to Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Prior art multimedia players provided controls to allow a user to skip to a particular track that the user wanted to listen to.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the RealAudio 2.0 with that of any one or more of the "Skip to Track" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 167. RealAudio 2.0 With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Voice Command" references in Appendix A. Each of RealAudio 2.0 and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 168. RealAudio 2.0 With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Each of RealAudio 2.0 and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been

-132-

predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 169.  RealAudio 2.0 With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of RealAudio 2.0 with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A. RealAudio 2.0 and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of RealAudio 2.0 to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of RealAudio 2.0 with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 170.  Any of the Computer Jukebox References With Loeb

Each of the DAD References, Opcode Audioshop References, Sound Blaster References, Windows Sound System References, Gravis Windecks, Voyetra AudioStation User Manual and Macromedia Director User Manual (collectively "Computer Jukebox References") discloses the ability of a listener to build a music playlist by selecting audio cuts from a library.  *See, e.g.*,

DAD Manual v6.0A, at 3-9 ("The left side of the screen is a Library display, which allows you to search for and display cuts in the audio library.  The right side of the screen is where you will build your playlist.").  One skilled in the art presented with such disclosure in any one of the Computer Jukebox References would be motivated to increase the power of this interface by expanding the ways in which the computer can assist the user in selecting audio cuts.  The Loeb Article discloses a manner by which audio tracks may be selected based on a user profile and/or on the user's opinions of previously played audio.  *See* Loeb Article, at 45 ("the *LyricTime* prototype selects songs from a database and plays them for the listener.  More specifically, to select songs from the database, it uses the information filter which implements the model described in the previous section, using descriptions of the songs, a listener profile, and feedback from the listener.  The listener can step through the selected songs, look at title and artist information, or have the *LyricTime* prototype play them.  The listener profile provides listener specific preference information to the filter.  Listeners can have different profiles for different moods.  Listener feedback is used to update the profile based on the listener's opinion of songs that have been played.").  Thus, one skilled in the art would be motivated to combine the teachings of any one of the Computer Jukebox References and the Loeb Article to implement a more powerful interface for selecting audio cuts for a playlist, to render obvious, for example, claims 9, 10, 13, 14, and 18 of the '178 patent.

### 171.   Any of the Computer Jukebox References With Any One or More of the "Downloading Audio" References

To the extent not already addressed above, it would have been obvious to combine the disclosure of any one of the Computer Jukebox References with the teachings from any one or more of the "Downloading Audio" references in Appendix A.  Each of the Computer Jukebox References and multiple "Downloading Audio" references are directed to the field of media

-134-

players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Computer Jukebox References to turn to the teachings of any one or more of the "Downloading Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any one of the Computer Jukebox References with that of any one or more of the "Downloading Audio" references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 172.   Any of the Computer Jukebox References With Any One or More of the "Downloading Playlist" References

To the extent not already addressed above, it would have been obvious to combine the disclosure of any one of the Computer Jukebox References with the teachings from any one or more of the "Downloading Playlist" references in Appendix A.  Each of the Computer Jukebox References and multiple "Downloading Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any of the Computer Jukebox References to turn to the teachings of any one or more of the "Downloading Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to those of ordinary skill in the art that multimedia information and files could be obtained from a remote location (*e.g.*, over the Internet, from a file server).  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any one of the Computer Jukebox References with that of any one or more of the "Downloading Playlist"

references to render obvious claims 1 and 14 of the '178 patent (and any dependent claims).

### 173.   Any of the Computer Jukebox References With Any One or More of the "Voice Command" References

To the extent not already addressed above, it would have been obvious to combine the disclosure of any one of the Computer Jukebox References with the teachings from any one or more of the "Voice Command" references in Appendix A.  Any one of the Computer Jukebox References and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any one of the Computer Jukebox References to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any one of the Computer Jukebox References with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 174.   Any of the Computer Jukebox References With Any One or More of the "Subscription / Purchase Audio" References

To the extent not already addressed above, it would have been obvious to combine the disclosure of any one of the Computer Jukebox References with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Any one of the Computer Jukebox References and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any one of the Computer Jukebox References to turn to the

-136-

teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any one of the Computer Jukebox References with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 175.    Any of the Computer Jukebox References With Any One or More of the "Encryption / Decryption" References

To the extent not already addressed above, it would have been obvious to combine the disclosure of any one of the Computer Jukebox References with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Any one of the Computer Jukebox References and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of any one of the Computer Jukebox References to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of any one of the Computer Jukebox References with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 176.   U.S. Patent No. 6,453,281 to Walters With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of U.S. Patent No. 6,453,281 to Walters, et al. with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of U.S. Patent No. 6,453,281 to Walters, et al. and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 6,453,281 to Walters, et al. to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 6,453,281 to Walters, et al. with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 177.   U.S. Patent No. 6,453,281 to Walters With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of the U.S. Patent No. 6,453,281 to Walters, et al. with the teachings from any one or more of the "Playlist Repeat" references in Appendix A.  U.S. Patent No. 6,453,281 to Walters, et al. and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 6,453,281 to Walters, et al. to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Various prior art multimedia players admittedly allowed a user to repeat

-138-

playback of a playlist.[56]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 6,453,281 to Walters, et al. with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 178.   U.S. Patent No. 6,453,281 to Walters With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of the U.S. Patent No. 6,453,281 to Walters, et al. with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Each of U.S. Patent No. 6,453,281 to Walters, et al. and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 6,453,281 to Walters, et al. to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 6,453,281 to Walters, et al. with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 179.   U.S. Patent No. 6,453,281 to Walters With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of the U.S. Patent No. 6,453,281 to Walters, et al. with the teachings from any one or more of the "Encryption / Decryption"

---

[56]      *See supra* n.25.

references in Appendix A.  Each of U.S. Patent No. 6,453,281 to Walters, et al. and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of U.S. Patent No. 6,453,281 to Walters, et al.  to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of U.S. Patent No. 6,453,281 to Walters, et al. with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 180.   Macworld Music & Sound Bible With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of Macworld Music & Sound Bible with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of the Macworld Music & Sound Bible and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Macworld Music & Sound Bible to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Macworld Music & Sound Bible with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178

patent (and any dependent claims).

### 181. Macworld Music & Sound Bible With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of Macworld Music & Sound Bible with the teachings from any one or more of the "Voice Command" references in Appendix A. Each of Macworld Music & Sound Bible and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Macworld Music & Sound Bible to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s). Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Macworld Music & Sound Bible with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 182. Macworld Music & Sound Bible With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of Macworld Music & Sound Bible with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. Macworld Music & Sound Bible and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Macworld Music & Sound Bible to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the

-141-

use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Macworld Music & Sound Bible with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 183.   Macworld Music & Sound Bible With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of Macworld Music & Sound Bible with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Each of Macworld Music & Sound Bible and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Macworld Music & Sound Bible to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Macworld Music & Sound Bible with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 184.   WinPlay3 With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of the WinPlay3 and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the

teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 185.   WinPlay3 With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of the WinPlay3 with the teachings from any one or more of the "Display Playlist" references in Appendix A.  Each of the WinPlay3 and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the WinPlay3 to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known that prior art multimedia players would indicate all or part of the playlist being played.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the WinPlay3 with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 186.   WinPlay3 With Any One or More of the "Playlist Edit" References

It would have been obvious to combine the disclosure of the WinPlay3 with the teachings from any one or more of the "Playlist Edit" references in Appendix A.  Each of the WinPlay3

and the "Playlist Edit" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the WinPlay3 to turn to the teachings of any one or more of the "Playlist Edit" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  As illustrated by the references identified herein, it was well known at the relevant time to allow a user to add, change the order of, and/or remove tracks in a playlist. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the WinPlay3 with that of any one or more of the "Playlist Edit" references to render obvious claims 5 and 6 of the '076 patent (and any dependent claims).

### 187.   WinPlay3 With Any One or More of the "Skip Back – Current Track (2)" References

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Skip Back – Current Track (2)" references in Appendix A.  Each of the WinPlay3 and the "Skip Back – Current Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the teachings of any one or more of the "Skip Back – Current Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known to provide the user of a multimedia device (*e.g.*, a compact disc player) with the ability to restart playback of a track that the user was listening to.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Skip Back – Current Track (2)" references to render obvious claims 5 and 14 of the '178 patent (and any dependent claims).

### 188.  WinPlay3 With Any One or More of the "Skip Back – Previous Track (2)" References

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Skip Back – Previous Track (2)" references in Appendix A.  Each of the WinPlay3 and the "Skip Back – Previous Track (2)" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the teachings of any one or more of the "Skip Back – Previous Track (2)" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  A playback control button to skip back to a previous track was admittedly well known.[57]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Skip Back – Previous Track (2)" references to render obvious claims 6 and 14 of the '178 patent (and any dependent claims).

### 189.  WinPlay3 With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Voice Command" references in Appendix A.  WinPlay3 and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including

----

[57]     *See supra* n.22.

-145-

multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 190.    WinPlay3 With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A. WinPlay3 and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 191.    WinPlay3 With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of WinPlay3 with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  WinPlay3 and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of WinPlay3 to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in

operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of WinPlay3 with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 192.   JSInc With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of JSInc with the teachings from any one or more of the "Preferences" references in Appendix A.  Each of the JSInc and the "Preferences" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of JSInc to turn to the teachings of any one or more of the "Preferences" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was well known at the time to record data describing both a user's past requests and a user's preferences and to use said data to generate results for said user.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of JSInc with that of any one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent (and any dependent claims).

### 193.   JSInc With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of the JSInc with the teachings from any one or more of the "Display Playlist" references in Appendix A.  Each of the JSInc and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the JSInc to turn to the

teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known that prior art multimedia players would indicate all or part of the playlist being played.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the JSInc with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 194.  JSInc With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of JSInc with the teachings from any one or more of the "Image" references in Appendix A.  Each of JSInc and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of JSInc to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were well adapted to storing images and such images were widely used in association with multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of JSInc with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

### 195.  JSInc With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of JSInc with the teachings from any one or more of the "Voice Command" references in Appendix A.  JSInc and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of JSInc to turn to the teachings of any one

-148-

or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of JSInc with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 196.   JSInc With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of JSInc with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  JSInc and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of JSInc to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of JSInc with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 197.   JSInc With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of JSInc with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  JSInc and multiple

"Encryption / Decryption" references are directed to the field of media players, and it would

have been obvious to one skilled in the art presented with the disclosure of JSInc to turn to the

teachings of any one or more of the "Encryption / Decryption" references to result in operation

that would have been predictable in nature and would improve and/or personalize the use and/or

operation of the media player(s).  Computer systems were used to encrypt and decrypt data since

the 1970s, and encryption schemes were commonly used to protect multimedia data.

Accordingly, for at least these reasons, it would have been obvious to combine the teachings of

JSInc with that of any one or more of the "Encryption / Decryption" references to render obvious

at least claim 21 of the '178 patent.


### 198.   Kan With Any One or More of the "Preferences" References

It would have been obvious to combine the disclosure of Kan with the teachings from any

one or more of the "Preferences" references in Appendix A.  Each of the Kan and the

"Preferences" references are directed to the field of media players, and it would have been

obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of

any one or more of the "Preferences" references to result in operation that would have been

predictable in nature and would improve and/or personalize the use and/or operation of the media

player(s).  It was well known at the time to record data describing both a user's past requests and

a user's preferences and to use said data to generate results for said user.  Accordingly, for at

least these reasons, it would have been obvious to combine the teachings of Kan with that of any

one or more of the "Preferences" references to render obvious claims 9 and 13 of the '178 patent

(and any dependent claims).

### 199.   Kan With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Display Playlist" references in Appendix A.  Each of the Kan and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the JSInc to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known that prior art multimedia players would indicate all or part of the playlist being played.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 200.   Kan With Any One or More of the "Display Track" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Display Track" references in Appendix A.  Each of the Kan and the "Display Track" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Display Track" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known that prior art multimedia players would indicate the track being played. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Display Track" references to render obvious claims 2, 3, 14, and 15 of the '178 patent (and any dependent claims).

### 201.   Kan With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of Kan with the teachings from any

-151-

one or more of the "Playlist Repeat" references in Appendix A.  Each of the Kan and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Various prior art multimedia players admittedly allowed a user to repeat playback of a playlist.[58]  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Playlist Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent (and any dependent claims).

### 202.   Kan With Any One or More of the "Image" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Image" references in Appendix A.  Each of Kan and the "Image" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Image" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were well adapted to storing images and such images were widely used in association with multimedia data.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Image" references to render obvious claim 16 of the '178 patent (and any dependent claims).

### 203.   Kan With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of Kan with the teachings from any

---

[58]     *See supra* n.25.

one or more of the "Voice Command" references in Appendix A.  Kan and multiple "Voice Command" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Voice Command" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were commonly equipped with microphones, and voice commands were widely used to control computer applications, including multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Voice Command" references to render obvious claim 13 of the '076 patent.

### 204.   Kan With Any One or More of the "Subscription / Purchase Audio" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Subscription / Purchase Audio" references in Appendix A.  Kan and multiple "Subscription / Purchase Audio" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Subscription / Purchase Audio" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were routinely used for online purchases, and subscriptions to online resources, including multimedia libraries, were widely known.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Subscription / Purchase Audio" references to render obvious at least claims 12 and 20 of the '178 patent.

### 205.  Kan With Any One or More of the "Encryption / Decryption" References

It would have been obvious to combine the disclosure of Kan with the teachings from any one or more of the "Encryption / Decryption" references in Appendix A.  Kan and multiple "Encryption / Decryption" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of Kan to turn to the teachings of any one or more of the "Encryption / Decryption" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  Computer systems were used to encrypt and decrypt data since the 1970s, and encryption schemes were commonly used to protect multimedia data. Accordingly, for at least these reasons, it would have been obvious to combine the teachings of Kan with that of any one or more of the "Encryption / Decryption" references to render obvious at least claim 21 of the '178 patent.

### 206.  Cerberus With Any One or More of the "Playlist" References

It would have been obvious to combine the Cerberus System (described by the references listed in the Cerberus claim charts) with the teachings from any one or more of the "Playlist" references in Appendix A.  Each of the Cerberus System and the "Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Cerberus System to turn to the teachings of any one or more of the "Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  As illustrated by the references identified herein, it was well known to allow a user to create a playlist specifying the order of playing selected audio tracks.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Cerberus System with that of any one

or more of the "Playlist" references to render obvious claims 1 and 14 of the '076 patent and claims 1 and 14 of the '178 patent (and any dependent claims).

### 207.   Cerberus With Any One or More of the "Display Playlist" References

It would have been obvious to combine the disclosure of the Cerberus System (described by the references listed in the Cerberus claim charts) with the teachings from any one or more of the "Display Playlist" references in Appendix A.  Each of the Cerberus System and the "Display Playlist" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Cerberus System to turn to the teachings of any one or more of the "Display Playlist" references to result in operation that would have been predictable in nature and would improve and/or personalize the use and/or operation of the media player(s).  It was very well known that prior art multimedia players would indicate all or part of the playlist being played.  Accordingly, for at least these reasons, it would have been obvious to combine the teachings of the Cerberus System with that of any one or more of the "Display Playlist" references to render obvious claims 2 and 14 of the '178 patent (and any dependent claims).

### 208.   Cerberus With Any One or More of the "Playlist Repeat" References

It would have been obvious to combine the disclosure of the Cerberus System (described by the references listed in the Cerberus claim charts) with the teachings from any one or more of the "Playlist Repeat" references in Appendix A.  Each of the Cerberus System and the "Playlist Repeat" references are directed to the field of media players, and it would have been obvious to one skilled in the art presented with the disclosure of the Cerberus System to turn to the teachings of any one or more of the "Playlist Repeat" references to result in operation that would

have been predictable in nature and would improve and/or personalize the use and/or operation

of the media player(s).  Various prior art multimedia players admittedly allowed a user to repeat

playback of a playlist.[59]  Accordingly, for at least these reasons, it would have been obvious to

combine the teachings of the Cerberus System with that of any one or more of the "Playlist

Repeat" references to render obvious claim 4 of the '076 patent and claim 7 of the '178 patent

(and any dependent claims).

### 209.   Cerberus With Any One or More of the "Voice Command" References

It would have been obvious to combine the disclosure of the Cerberus System (described

by the references listed in the Cerberus claim charts) with the teachings from any one or more of

the "Voice Command" references in Appendix A.  The Cerberus System and multiple "Voice

Command" references are directed to the field of media players, and it would have been obvious

to one skilled in the art presented with the disclosure of the Cerberus System to turn to the

teachings of any one or more of the "Voice Command" references to result in operation that

would have been predictable in nature and would improve and/or personalize the use and/or

operation of the media player(s).  Computer systems were commonly equipped with

microphones, and voice commands were widely used to control computer applications, including

multimedia applications.  Accordingly, for at least these reasons, it would have been obvious to

combine the teachings of the Cerberus System with that of any one or more of the "Voice

Command" references to render obvious claim 13 of the '076 patent.

### 210.   Additional Combinations of References

To the extent not already addressed above, it would also have been obvious to combine

---

[59]     *See supra* n.25.

the disclosures of the following references for the reasons explained above.

- U.S. Patent No. 5,616,876 to Cluts in combination with either DAD References, WinPlay3, U.S. Patent No. 5,914,941 to Janky, Chase '914, Chase '164, Sound Blaster References, Sony HCD-241, Windows 95, U.S. Patent No. 5,751,672 to Yankowski, or Petrowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- U.S. Patent No. 5,721,951 to DorEl in combination with either DAD References, WinPlay3, Labrosse, Horner Thesis, Chase '914, Chase '164, Pascoe, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,751,672 to Yankowski, Petrowski, Sound Blaster References, or Nielsen Article (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- U.S. Patent No. 5,751,672 to Yankowski in combination with either DAD References, WinPlay3, Pascoe, Horner Thesis, Chase '914, Chase '164, Sone, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,914,941 to Janky, or U.S. Patent No. 5,481,509 to Knowles (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- U.S. Patent No. 5,914,941 to Janky in combination with either DAD References, WinPlay3, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, Horner Thesis, Windows 95, Sound Blaster References, Nielsen Article, Sony HCD-241, Sony Minidisc Recorder Manual, APA, Petrowski, or U.S. Patent No. 5,751,672 to Yankowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Chase '914 in combination with either Windows 95, Sony HCD-241, Sony Minidisc Recorder Manual, DAD References, Sound Blaster References, Petrowski, U.S. Patent No. 5,751,672 to Yankowski, Labrosse, or Horner Thesis (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Chase '164 in combination with either Windows 95, Sony HCD-241, DAD References, Sound Blaster References, Petrowski, U.S. Patent No. 5,751,672 to Yankowski, Labrosse, or Horner Thesis (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Lake in combination with either DAD References, Windows 95, WinPlay3, Sound Blaster References, Sony HCD-241, U.S. Patent No. 5,914,941 to Janky, or Chase '914, Chase '164 (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Sound Blaster References in combination with either DAD References, WinPlay3, Pascoe, Horner Thesis, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,914,941 to Janky, U.S. Patent No. 5,751,672 to Yankowski, or

-157-

Petrowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Beaton in combination with either DAD References, Sound Blaster References, Nielsen Article, Petrowski, Windows 95, WinPlay3, Sony HCD-241, Pascoe, Horner Thesis, Chase '914, Chase '164, or U.S. Patent No. 5,914,941 to Janky (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Person in combination with either DAD References, WinPlay3, Pascoe, Horner Thesis, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,914,941 to Janky, U.S. Patent No. 5,751,672 to Yankowski, or Petrowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Hindus Thesis in combination with either DAD References, Sound Blaster References, Windows 95, Petrowski, Nielsen Article, WinPlay3, Sony HCD-241, Roy NewsComm Thesis, SparcStation 2, Horner Thesis, or Stifelman Thesis (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Stifelman Thesis in combination with either DAD References, Windows 95, WinPlay3, Sound Blaster References, Sony HCD-241, U.S. Patent No. 5,751,672 to Yankowski, SparcStation 2, Petrowski, U.S. Patent No. 5,914,941 to Janky, Nielsen Article, Roy NewsComm Thesis, Horner Thesis, Hindus Thesis (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Horner Thesis in combination with either DAD References, Person, Petrowski, Sound Blaster References, Rathbone, SparcStation 2, Tuttle, Sony HCD-241, Sony MZ-1 Minidisc Recorder and Manual, WinPlay3, Roy NewsComm Thesis, Hindus Thesis, or Stifelman Thesis (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Roy NewsComm Thesis in combination with either the DAD References, Horner Thesis, Hindus Thesis, Stifelman Thesis, Petrowski, Sound Blaster References, SparcStation 2, Sony HCD-241, Sony MZ-1 Minidisc Recorder and Manual, Rathbone, Tuttle, U.S. Patent No. 5,751,672 to Yankowski, or Sone (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Petrowski in combination with either DAD References, Sone, Tuttle, Rathbone Horner Thesis, Roy NewsComm Thesis, Sony MZ-1 Minidisc Recorder and Manual, Sony HCD-241, Chase, or U.S. Patent No. 5,616,876 to Cluts, (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Aarseth in combination with either DAD References, Windows 95, Jankowski, Petrowski, Sound Blaster References, Horner Thesis, Sony HCD-241, Sony MZ-1 Minidisc Recorder and Manual, Tuttle, U.S. Patent No. 5,751,672 to Yankowski, U.S. Patent No. 5,721,951 to DorEl, or WinPlay3 (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Nielsen Article in combination with either DAD References, WinPlay3, Pascoe, Horner Thesis, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,914,941 to Janky, U.S. Patent No. 5,751,672 to Yankowski, or Petrowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- DAD References in combination with either the Roy NewsComm Thesis, Horner Thesis, Sound Blaster References, Sound Blaster User Guide, Petrowski, Sony HCD-241, Sony MZ-1 Minidisc Recorder and Manual, Rathbone, Sone, or WinPlay3 (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- WinPlay3 in combination with either Windows 95, Nielsen Article, Sony HCD-241, Horner Thesis, Roy NewsComm Thesis, Pascoe, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, Tuttle, U.S. Patent No. 5,751,672 to Yankowski, Petrowski, DAD References, or Labrosse (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Windows 95 in combination with either WinPlay3, U.S. Patent No. 5,914,941 to Janky, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, Pascoe, U.S. Patent No. 5,751,672 to Yankowski, DAD References, Petrowski, or Labrosse (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent)

- Wicked Sounds in combination with either Windows 95, Sone, Rathbone, Roy NewsComm Thesis, Horner Thesis, DAD References, or Tuttle (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Creative EnsembleAV in combination with either WinPlay3, Pascoe, Horner Thesis, Chase '914, Chase '164, U.S. Patent No. 5,616,876 to Cluts, U.S. Patent No. 5,914,941 to Janky, U.S. Patent No. 5,751,672 to Yankowski, DAD References, or Petrowski (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- U.S. Patent No. 5,687,160 to Aotake, et al. in combination with either DAD References, Sone, U.S. Patent No. 5,751,672 to Yankowski, Windows 95, Sony HCD-241, or Sony MZ-1 Minidisc Recorder and Manual (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

- Sony MZ-1 Minidisc Recorder and Manual in combination with either Sone or Tuttle (at least claims 1-4, 14-15 of the '076 patent and claims 1-8, 14-15, 28-29 of the '178 patent).

## II.      INVALIDITY UNDER 35 U.S.C. § 112

Pursuant to P.R. 3-3(d), Google identifies below the grounds upon which the asserted

claims of the patents-in-suit are invalid under 35 U.S.C. § 112.

### A.   Lack of Written Description Under U.S.C. § 112(1)

The claims of the '178 patent were originally filed in May of 2008, almost 12 years after the original filing date and include subject matter that is not described in the specification in a way that conveys the inventors "possessed" that subject matter as of the original filing date.

Claim 8 of the '178 patent is invalid for lack of written description.  The specification contains no support for "program description data" stored in the digital memory unit of the player comprising program description records describing the audio program files in the digital memory unit.  Further, the specification provides no support for "program description records," let alone program description records which specify the storage location of compressed audio files stored on the player.  The specification does describe a Programs Table 303 which contains various fields describing audio segments.  The Programs Table 303 resides on the host server, however, not on the player.  What the player downloads is the "schedule file (seen at 307 in FIG. 4) consisting of a sequence of program segment identification numbers which are used to compile a sequencing file."  *See* '076 patent at 12:3-15.  Claim 29 of the '178 patent is also invalid for lack of written description for the same reasons.

Claims 14-15 and 28-29 of the '178 patent are invalid for lack of written description. The specification contains no support for a memory unit of the player storing "(b) program description data including displayable text describing each of [the] audio program files" in the memory unit.  Rather, the specification describes displayable text descriptions for topics and subjects only.  *See* '076 patent at 19:21-39.  Moreover, these text descriptions are part of a catalog for downloading ***audio files that are not on the player***.  *See id.*

Claims 2-8 of the '178 patent are also invalid for lack of written description due to the limitation of claim 2 reciting "a display screen for displaying a scrollable listing describing *each* of said separate digital compressed audio program files in said collection."  The patents describe only topic descriptions being displayed in a scrollable listing.  *See* '076 patent at 12:43-57.  The patents do not describe a scrollable listing of descriptions for *each* segment in the sequencing file.  Claims 14-15, 28-29 of the '178 patent are also invalid for lack of written description due to the limitation of claim 14 requiring "a display screen for presenting a visual menu listing to said listener containing displayable text describing some or all of the audio program files in said collection specified by said sequencing file" for the same reasons.

Claim 9 of the '178 patent is invalid for lack of written description due to the "each audio program file in said collection specified by said sequencing file is selected in accordance with program preference data or program selections accepted from said listener" limitation because the claimed scope is broader than what could be supported by the description of the selection mechanism described in the patent specification of the '178 patent.

**B.      Indefiniteness Under 35 U.S.C. § 112(2)**

Claims 2-8 of the '178 patent are indefinite.  The only algorithm disclosed in the specification for responding to a program-selection command is the audio hyperlink-based algorithm.  *See* '076 patent at 33:11-16 and 35:54-36:8.  However, claims 2-8 require that the listener-selected audio program file is selected from a scrollable listing by means of manual controls.  The specification provides no disclosure of corresponding structure for responding to a program-selection command which is made by selecting a file displayed on a scrollable listing. Rather than disclosing structure as to how the user-selected Selection Record is determined in such a scenario, the specification merely states that "means may also be included to respond to

the users selection of a given program on the scrollable listing by means of a mouse or the like, and then automatically continue the play at the beginning of the program segment thus selected." *See* '076 patent at 12:53-57.  This is a purely functional description.  Claims 14-15 and 28-29 are invalid for indefiniteness based on the "processor for … (a) …" limitation for the same reasons as claims 2-8.

Claims 14-15, 28-29 of the '178 patent are invalid for indefiniteness based on the "audio playback unit" limitation of claim 14.  Given claim 14 includes a separate "processor" limitation, the meaning of "audio playback unit" in the claim is insolubly ambiguous.

Claims 2 and 3 of the '076 patent are invalid for indefiniteness based on the "means responsive to a single one of said second commands for discontinuing the reproduction of the currently playing program segment and instead continuing the reproduction at the beginning of said currently playing program" limitation.

Claim 3 of the '076 patent is invalid for indefiniteness based on the "means responsive to the detection of two consecutive ones of said second commands for discontinuing the reproduction of the currently playing program segment and instead continuing the reproduction at the beginning of a program segment which precedes the currently playing program segment" limitation.

Claims 5 and 6 of the '076 patent are invalid for indefiniteness based on the "editing means for modifying said data establishing said sequence" and "means for reordering the sequence established by said data" limitations.

Claims 14 and 15 of the '076 patent are invalid for indefiniteness based on the "processing means responsive to a second one of said control command for discontinuing the

translation of the currently playing program and instead continuing the translation at the beginning of said currently playing program" limitation.

Claim 15 of the '076 patent is invalid for indefiniteness based on the "means responsive to two consecutive ones of said second control commands for discontinuing the translation of the currently playing program and instead continuing the translation at the beginning of a program segment which precedes said currently playing program in said sequence" limitation.

Asserted claims of the patents-in-suit are invalid for indefiniteness because they are of mixed statutory categories, *e.g.*, apparatus claims that include limitations directed to user actions and server functions, not the capabilities of the claimed apparatus.

Further, to the extent Plaintiff alleges that one or more of the asserted claims of the patents-in-suit recite software limitations in means-plus function form, those claims are invalid as indefinite under 35 U.S.C. § 112 ¶ 1. The patents-in-suit do not sufficiently provide the algorithm for performing the recited function for these elements as required by the Federal Circuit and this Court. *See, e.g.*, *Robert Bosch, LLC v. Snap-On Inc.*, Case No. 14-1040 (Fed. Cir. 2014); *WMS Gaming, Inc. v. IGT*, 184 F. 3d 1339, 1348-49 (Fed. Cir. 2005); *Gobeli Research Ltd. v. Apple Computer, Inc.*, 384 F. Supp. 2d 1016, 1022-33 (E.D. Tex. 2005). Further, the apparatus claims in the patents-in-suit claim purely functional elements without any supported structure, contrary to the Federal Circuit law. All claims depending from such and/or any intervening claims are also invalid as indefinite for at least the same reasons.

Google reserves the right to amend and/or supplement these Invalidity Contentions based on 35 U.S.C. § 112 as discovery progresses and depending on the claim construction positions taken by Plaintiff and the Court's claim construction order.

-163-

Dated:  April 27, 2017                          By */s/ Jason Xu*

J. Thad Heartfield (State Bar No. 09346800)
The Heartfield Law Firm
2195 Dowlen Road
Beaumont, TX  77706
Telephone:  (409) 866-3318
Email:  thad@heartfieldlawfirm.com

Jeannine Sano (CA Bar No. 174190)
(admitted to the Eastern District of Texas)
Eric Krause (CA Bar No. 257925)
(admitted to the Eastern District of Texas)
White & Case LLP
3000 El Camino Real
Five Palo Alto Square, 9th Floor
Palo Alto, CA  94306
Telephone:  (650) 213-0356
Email:   WCGooglePersonalLLCTeam@whitecase.com

Jason Xu (DC Bar No. 980531)
(admitted to the Eastern District of Texas)
White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:  (202) 626-6496
Email:  jxu@whitecase.com

Leon Miniovich (NY Bar No. 4738852)
(admitted to the Eastern District of Texas)
White & Case LLP
1155 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 819-7923
Email:  lminiovich@whitecase.com

**Counsel for Google Inc.**

# APPENDIX A

## PRIOR ART GROUPS

**A. Store Audio**

1. DAD Manual v6.0A

2. DAD Brochure

3. DAD System

4. Macromedia Director User Manual

5. Listen Up Player Publication

6. Sony MDS-B1 User Manual

7. Microsoft Windows Sound System User Guide

8. Roy NewsComm Thesis

9. NewsComm Presentation

10. Opcode Audioshop Manual

11. Opcode Audioshop enabled system

12. Sony D-232 Discman User Manual

13. Sony D-240 Discman User Manual

14. Sony MZ-1 User Manual

15. Sony MZ-1 Service Manual

16. Sony MZ-1 Portable Minidisc Recorder

17. Sony MZ-B3 User Manual

18. Sony MZ-R2 User Manual

19. Sony MZ-R3 User Manual

20. Sound Blaster "Making WAVes" Book

21. Sound Blaster 16 User Guide

22. Sound Blaster 16 enabled system

23. NewsComm Journal Article

24. Windows Sound System Manual

25. VoiceNotes Article

26. Voyetra AudioStation User Manual

27. FR 2714760

28. U.S. Patent No. 5,168,481 to Culbertson, et al.

29. U.S. Patent No. 5,296,848 to Witheridge, et al.

-166-

30. U.S. Patent No. 5,341,350 to Frank, et al.

31. U.S. Patent No. 5,347,082 to Ojima

32. U.S. Patent No. 5,355,302 to Martin, et al.

33. U.S. Patent No. 5,371,316 to Eitaki, et al.

34. U.S. Patent No. 5,386,081 to Nakada, et al.

35. U.S. Patent No. 5,418,622 to Takeuchi

36. U.S. Patent No. 5,428,732 to Hancock, et al.

37. U.S. Patent No. 5,481,509 to Knowles

38. U.S. Patent No. 5,499,316 to Sudoh, et al.

39. U.S. Patent No. 5,524,051 to Ryan

40. U.S. Patent No. 5,541,638 to Story

41. U.S. Patent No. 5,555,098 to Parulski

42. U.S. Patent No. 5,557,541 to Schulhof, et al.

43. U.S. Patent No. 5,572,442 to Schulhof, et al.

44. U.S. Patent No. 5,583,560 to Florin, et al.

45. U.S. Patent No. 5,594,601 to Mimick, et al.

46. U.S. Patent No. 5,616,876 to Cluts

47. U.S. Patent No. 5,640,590 to Luther

48. U.S. Patent No. 5,661,787 to Pocock

49. U.S. Patent No. 5,668,788 to Allison

50. U.S. Patent No. 5,726,909 to Krikorian

51. U.S. Patent No. 5,740,134 to Peterson

52. U.S. Patent No. 5,751,672 to Yankowski

53. U.S. Patent No. 5,754,784 to Garland, et al.

54. U.S. Patent No. 5,781,889 to Martin, et al.

55. U.S. Patent No. 5,793,980 to Glaser, et al.

56. U.S. Patent No. 5,798,921 to Johnson, et al.

57. U.S. Patent No. 5,815,671 to Morrison

58. U.S. Patent No. 5,819,160 to Foladare, et al.

59. U.S. Patent No. 5,841,979 to Schulhof, et al.

60. U.S. Patent No. 5,864,868 to Contois

61. U.S. Patent No. 5,914,941 to Janky

62. U.S. Patent No. 5,966,440 to Hair

63. U.S. Patent No. 6,182,126 to Nathan, et al.

64. U.S. Patent No. 5,687,160 to Aotake, et al.

65. U.S. Patent No. 5,721,951 to DorEl

66. Chase '914

67. Chase '164

68. Labrosse

69. Sone

70. Tuttle

71. Person Book

72. Beaton

73. Lake

74. Stifelman Thesis

75. Hindus Thesis

76. Horner Thesis

77. Sony HCD-241

78. Nielsen Article

79. Petrowski

80. Aarseth

81. Rathbone

82. Sun Microsystems SparcStation 2

83. Gravis Windecks enabled system

84. RealAudio 2.0

85. U.S. Patent No. 6,453,281 to Walters, et al.

86. Macworld Music & Sound Bible

87. U.S. Patent No. 5,404,505 to Levinson, et al.

88. WinPlay3

89. Kan

90. JSInc

91. Windows95

-168-

**B. Playlist**

1. DAD Manual v6.0A
2. DAD Brochure
3. DAD system
4. Macromedia Director User Manual
5. Listen Up Player Publication
6. Sony MDS-B1 User Manual
7. Microsoft Windows Sound System User Guide
8. Roy NewsComm Thesis
9. NewsComm Presentation
10. Opcode Audioshop Manual
11. Opcode Audioshop enabled system
12. Sony D-232 Discman User Manual
13. Sony D-240 Discman User Manual
14. Sony MZ-1 User Manual
15. Sony MZ-1 Service Manual
16. Sony MZ-1 Portable Minidisc Recorder
17. Sony MZ-B3 User Manual
18. Sony MZ-R2 User Manual
19. Sony MZ-R3 User Manual
20. Sound Blaster "Making WAVes" Book
21. Sound Blaster 16 User Guide
22. Sound Blaster 16 enabled system
23. NewsComm Journal Article
24. Windows Sound System Manual
25. Voyetra AudioStation User Manual
26. U.S. Patent No. 5,168,481 to Culbertson, et al.
27. U.S. Patent No. 5,296,848 to Witheridge, et al.
28. U.S. Patent No. 5,341,350 to Frank, et al.
29. U.S. Patent No. 5,347,082 to Ojima
30. U.S. Patent No. 5,355,302 to Martin, et al.
31. U.S. Patent No. 5,386,081 to Nakada, et al.

-169-

32. U.S. Patent No. 5,418,622 to Takeuchi

33. U.S. Patent No. 5,428,732 to Hancock, et al.

34. U.S. Patent No. 5,481,509 to Knowles

35. U.S. Patent No. 5,499,316 to Sudoh, et al.

36. U.S. Patent No. 5,541,638 to Story

37. U.S. Patent No. 5,555,098 to Parulski

38. U.S. Patent No. 5,557,541 to Schulhof, et al.

39. U.S. Patent No. 5,572,442 to Schulhof, et al.

40. U.S. Patent No. 5,583,560 to Florin, et al.

41. U.S. Patent No. 5,594,601 to Mimick, et al.

42. U.S. Patent No. 5,616,876 to Cluts

43. U.S. Patent No. 5,640,590 to Luther

44. U.S. Patent No. 5,661,787 to Pocock

45. U.S. Patent No. 5,668,788 to Allison

46. U.S. Patent No. 5,726,909 to Krikorian

47. U.S. Patent No. 5,751,672 to Yankowski

48. U.S. Patent No. 5,754,784 to Garland, et al.

49. U.S. Patent No. 5,781,889 to Martin, et al.

50. U.S. Patent No. 5,793,980 to Glaser, et al.

51. U.S. Patent No. 5,798,921 to Johnson, et al.

52. U.S. Patent No. 5,815,671 to Morrison

53. U.S. Patent No. 5,819,160 to Foladare, et al.

54. U.S. Patent No. 5,841,979 to Schulhof, et al.

55. U.S. Patent No. 5,864,868 to Contois

56. U.S. Patent No. 5,914,941 to Janky

57. U.S. Patent No. 5,966,440 to Hair

58. U.S. Patent No. 6,182,126 to Nathan, et al.

59. U.S. Patent No. 5,687,160 to Aotake, et al.

60. U.S. Patent No. 5,721,951 to DorEl

61. Chase '914

62. Chase '164

63. Labrosse

-170-

64. Sone

65. Tuttle

66. Person Book

67. Beaton

68. Lake

69. Stifelman Thesis

70. Hindus Thesis

71. Horner Thesis

72. Sony HCD-241

73. Nielsen Article

74. Petrowski

75. Aarseth

76. Rathbone

77. Sun Microsystems SparcStation 2

78. Pascoe

79. Gravis Windecks enabled system

80. RealAudio 2.0

81. U.S. Patent No. 6,453,281 to Walters, et al.

82. Macworld Music & Sound Bible

83. WinPlay3

84. Kan

85. JSInc

86. Windows95

**C. Skip Forward**

1. DAD Manual v6.0A

2. Loeb Article

3. DAD system

4. Macromedia Director User Manual

5. Listen Up Player Publication

6. Sony MDS-B1 User Manual

7. Microsoft Windows Sound System User Guide

8. Roy NewsComm Thesis

9. Comparative Design Review Article

10. Opcode Audioshop Manual

11. Opcode Audioshop enabled system

12. Sony D-232 Discman User Manual

13. Sony D-240 Discman User Manual

14. Sony MZ-1 User Manual

15. Sony MZ-1 Service Manual

16. Sony MZ-1 Portable Minidisc Recorder

17. Sony MZ-B3 User Manual

18. Sony MZ-R2 User Manual

19. Sony MZ-R3 User Manual

20. Sound Blaster "Making WAVes" Book

21. Sound Blaster 16 User Guide

22. Sound Blaster 16 enabled system

23. NewsComm Journal Article

24. Windows Sound System Manual

25. VoiceNotes Article

26. Voyetra AudioStation User Manual

27. U.S. Patent No. 5,296,848 to Witheridge, et al.

28. U.S. Patent No. 5,386,081 to Nakada, et al.

29. U.S. Patent No. 5,499,316 to Sudoh, et al.

30. U.S. Patent No. 5,557,541 to Schulhof, et al.

31. U.S. Patent No. 5,572,442 to Schulhof, et al.

-172-

32. U.S. Patent No. 5,583,560 to Florin, et al.

33. U.S. Patent No. 5,640,590 to Luther

34. U.S. Patent No. 5,661,787 to Pocock

35. U.S. Patent No. 5,726,909 to Krikorian

36. U.S. Patent No. 5,740,134 to Peterson

37. U.S. Patent No. 5,751,672 to Yankowski

38. U.S. Patent No. 5,754,784 to Garland, et al.

39. U.S. Patent No. 5,793,980 to Glaser, et al.

40. U.S. Patent No. 5,798,921 to Johnson, et al.

41. U.S. Patent No. 5,819,160 to Foladare, et al.

42. U.S. Patent No. 5,841,979 to Schulhof, et al.

43. U.S. Patent No. 5,864,868 to Contois

44. U.S. Patent No. 5,914,941 to Janky

45. U.S. Patent No. 5,966,440 to Hair

46. U.S. Patent No. 6,182,126 to Nathan, et al.

47. U.S. Patent No. 5,616,876 to Cluts

48. U.S. Patent No. 5,687,160 to Aotake, et al.

49. U.S. Patent No. 5,721,951 to DorEl

50. Chase '914

51. Chase '164

52. Beaton

53. Tuttle

54. Person Book

55. Lake

56. Stifelman Thesis

57. Hindus Thesis

58. Horner Thesis

59. Sony HCD-241

60. Nielsen Article

61. Petrowski

62. Aarseth

63. Rathbone

-173-

64. Gravis Windecks enabled system

65. RealAudio 2.0

66. U.S. Patent No. 6,453,281 to Walters, et al.

67. Macworld Music & Sound Bible

68. WinPlay3

69. Kan

70. JSInc

71. Windows95

**D. Skip Back – Current Track (1)**

1. DAD Manual v6.0A

2. DAD system

3. Macromedia Director User Manual

4. Sony MDS-B1 User Manual

5. Opcode Audioshop Manual

6. Opcode Audioshop enabled system

7. Sony D-232 Discman User Manual

8. Sony D-240 Discman User Manual

9. Sony MZ-1 User Manual

10. Sony MZ-1 Service Manual

11. Sony MZ-1 Portable Minidisc Recorder

12. Sony MZ-B3 User Manual

13. Sony MZ-R2 User Manual

14. Sony MZ-R3 User Manual

15. Sound Blaster "Making WAVes" Book

16. Sound Blaster 16 User Guide

17. Sound Blaster 16 enabled system

18. Windows Sound System Manual

19. U.S. Patent No. 5,296,848 to Witheridge, et al.

20. U.S. Patent No. 5,499,316 to Sudoh, et al.

21. U.S. Patent No. 5,914,941 to Janky

22. U.S. Patent No. 5,616,876 to Cluts

-174-

23. U.S. Patent No. 5,751,672 to Yankowski

24. U.S. Patent No. 5,687,160 to Aotake, et al.

25. U.S. Patent No. 5,721,951 to DorEl

26. Chase '914

27. Chase '164

28. Beaton

29. Tuttle

30. Person Book

31. Lake

32. Stifelman Thesis

33. Hindus Thesis

34. Horner Thesis

35. Sony HCD-241

36. Nielsen Article

37. Petrowski

38. Aarseth

39. Rathbone

40. Gravis Windecks enabled system

41. U.S. Patent No. 6,453,281 to Walters, et al.

42. Macworld Music & Sound Bible

43. WinPlay3

44. Kan

45. JSInc

46. Windows95

**E. Skip Back – Previous Track (1)**

1. DAD Manual v6.0A
2. DAD system
3. Macromedia Director User Manual
4. Listen Up Player Publication
5. Sony MDS-B1 User Manual
6. Sony D-232 Discman User Manual
7. Sony D-240 Discman User Manual
8. Sony MZ-1 User Manual
9. Sony MZ-B3 User Manual
10. Sony MZ-R2 User Manual
11. Sony MZ-R3 User Manual
12. Sony MZ-1 Service Manual
13. Sony MZ-1 Portable Minidisc Recorder
14. Sound Blaster 16 User Guide
15. Sound Blaster 16 enabled system
16. Windows Sound System Manual
17. U.S. Patent No. 5,583,560 to Florin, et al.
18. U.S. Patent No. 5,841,979 to Schulhof, et al.
19. U.S. Patent No. 5,914,941 to Janky
20. U.S. Patent No. 5,616,876 to Cluts
21. U.S. Patent No. 5,751,672 to Yankowski
22. U.S. Patent No. 5,687,160 to Aotake, et al.
23. U.S. Patent No. 5,721,951 to DorEl
24. Chase '914
25. Chase '164
26. Beaton
27. Tuttle
28. Person Book
29. Lake
30. Stifelman Thesis
31. Hindus Thesis

-176-

32. Horner Thesis

33. Sony HCD-241

34. Nielsen Article

35. Petrowski

36. Gravis Windecks enabled system

37. U.S. Patent No. 6,453,281 to Walters, et al.

38. Macworld Music & Sound Bible

39. WinPlay3

40. Kan

41. JSInc

42. Windows95


**F. Playlist Repeat**

1. DAD Manual v6.0A

2. DAD Brochure

3. DAD system

4. Macromedia Director User Manual

5. Sony MDS-B1 User Manual

6. Microsoft Windows Sound System User Guide

7. Opcode Audioshop Manual

8. Opcode Audioshop enabled system

9. Sony D-232 Discman User Manual

10. Sony D-240 Discman User Manual

11. Sony MZ-1 User Manual

12. Sony MZ-1 Service Manual

13. Sony MZ-1 Portable Minidisc Recorder

14. Sony MZ-B3 User Manual

15. Sony MZ-R2 User Manual

16. Sony MZ-R3 User Manual

17. Sound Blaster "Making WAVes" Book

18. Sound Blaster 16 User Guide

-177-

19. Sound Blaster 16 enabled system

20. Windows Sound System Manual

21. Voyetra AudioStation User Manual

22. U.S. Patent No. 5,371,316 to Eitaki, et al.

23. U.S. Patent No. 5,428,732 to Hancock, et al.

24. U.S. Patent No. 5,726,909 to Krikorian

25. U.S. Patent No. 5,751,672 to Yankowski

26. U.S. Patent No. 5,864,868 to Contois

27. U.S. Patent No. 5,914,941 to Janky

28. U.S. Patent No. 5,966,440 to Hair

29. U.S. Patent No. 5,687,160 to Aotake, et al.

30. U.S. Patent No. 5,721,951 to DorEl

31. Beaton

32. Person Book

33. Lake

34. Stifelman Thesis

35. Hindus Thesis

36. Horner Thesis

37. Sony HCD-241

38. Nielsen Article

39. Petrowski

40. Rathbone

41. Gravis Windecks enabled system

42. Macworld Music & Sound Bible

43. WinPlay3

44. Kan

45. JSInc

46. Windows95

**G. Playlist Edit**

1. DAD Manual v6.0A
2. DAD Brochure
3. DAD system
4. Macromedia Director User Manual
5. Sony MDS-B1 User Manual
6. Microsoft Windows Sound System User Guide
7. Roy NewsComm Thesis
8. NewsComm Presentation
9. Comparative Design Review Article
10. Opcode Audioshop Manual
11. Opcode Audioshop enabled system
12. Sony D-232 Discman User Manual
13. Sony D-240 Discman User Manual User Manual
14. Sony MZ-1 User Manual
15. Sony MZ-1 Service Manual
16. Sony MZ-1 Portable Minidisc Recorder
17. Sony MZ-B3 User Manual
18. Sony MZ-R2 User Manual
19. Sony MZ-R3 User Manual
20. Sound Blaster "Making WAVes" Book
21. Sound Blaster 16 User Guide
22. Sound Blaster 16 enabled system
23. NewsComm Journal Article
24. Windows Sound System Manual
25. VoiceNotes Article
26. Voyetra AudioStation User Manual
27. U.S. Patent No. 5,168,481 to Culbertson, et al.
28. U.S. Patent No. 5,296,848 to Witheridge, et al.
29. U.S. Patent No. 5,347,082 to Ojima
30. U.S. Patent No. 5,386,081 to Nakada, et al.
31. U.S. Patent No. 5,418,622 to Takeuchi

32. U.S. Patent No. 5,428,732 to Hancock, et al.

33. U.S. Patent No. 5,481,509 to Knowles

34. U.S. Patent No. 5,499,316 to Sudoh, et al.

35. U.S. Patent No. 5,555,098 to Parulski

36. U.S. Patent No. 5,594,601 to Mimick, et al.

37. U.S. Patent No. 5,616,876 to Cluts

38. U.S. Patent No. 5,640,590 to Luther

39. U.S. Patent No. 5,668,788 to Allison

40. U.S. Patent No. 5,726,909 to Krikorian

41. U.S. Patent No. 5,751,672 to Yankowski

42. U.S. Patent No. 5,781,889 to Martin, et al.

43. U.S. Patent No. 5,798,921 to Johnson, et al.

44. U.S. Patent No. 5,819,160 to Foladare, et al.

45. U.S. Patent No. 5,864,868 to Contois

46. U.S. Patent No. 5,914,941 to Janky

47. U.S. Patent No. 5,966,440 to Hair

48. U.S. Patent No. 6,182,126 to Nathan, et al.

49. RealAudio 2.0

50. Gravis Windecks enabled system

51. Macworld Music & Sound Bible

52. WinPlay3

53. Kan

54. JSInc

55. Windows95


**H. Downloading Audio**

1. DAD Manual v6.0A

2. DAD Brochure

3. DAD system

4. Macromedia Director User Manual

5. Listen Up Player Publication

6. Sony MDS-B1 User Manual

-180-

7. Microsoft Windows 95 Resource Kit

8. Roy NewsComm Thesis

9. NewsComm Presentation

10. Opcode Audioshop Manual

11. Opcode Audioshop enabled system

12. Sound Blaster "Making WAVes" Book

13. Sound Blaster 16 User Guide

14. Sound Blaster 16 enabled system

15. NewsComm Journal Article

16. Windows Sound System Manual

17. VoiceNotes Article

18. FR 2714760

19. U.S. Patent No. 5,341,350 to Frank, et al.

20. U.S. Patent No. 5,355,302 to Martin, et al.

21. U.S. Patent No. 5,524,051 to Ryan

22. U.S. Patent No. 5,541,638 to Story

23. U.S. Patent No. 5,557,541 to Schulhof, et al.

24. U.S. Patent No. 5,572,442 to Schulhof, et al.

25. U.S. Patent No. 5,583,560 to Florin, et al.

26. U.S. Patent No. 5,594,601 to Mimick, et al.

27. U.S. Patent No. 5,616,876 to Cluts

28. U.S. Patent No. 5,640,590 to Luther

29. U.S. Patent No. 5,661,787 to Pocock

30. U.S. Patent No. 5,668,788 to Allison

31. U.S. Patent No. 5,726,909 to Krikorian

32. U.S. Patent No. 5,740,134 to Peterson

33. U.S. Patent No. 5,781,889 to Martin, et al.

34. U.S. Patent No. 5,793,980 to Glaser, et al.

35. U.S. Patent No. 5,815,671 to Morrison

36. U.S. Patent No. 5,819,160 to Foladare, et al.

37. U.S. Patent No. 5,841,979 to Schulhof, et al.

38. U.S. Patent No. 5,864,868 to Contois

-181-

39. U.S. Patent No. 5,914,941 to Janky

40. U.S. Patent No. 5,966,440 to Hair

41. U.S. Patent No. 6,182,126 to Nathan, et al.

42. U.S. Patent No. 5,721,951 to DorEl

43. Chase '914

44. Chase '164

45. Beaton

46. Person Book

47. Lake

48. Stifelman Thesis

49. Hindus Thesis

50. Horner Thesis

51. Nielsen Article

52. Petrowski

53. Aarseth

54. Rathbone

55. Sun Microsystems SparcStation 2

56. Sone

57. Labrosse

58. Pascoe

59. RealAudio 2.0

60. U.S. Patent No. 6,453,281 to Walters, et al.

61. WinPlay3

62. Kan

63. JSInc

64. Windows95

65. U.S. Patent No. 5,926,624 to Katz, et al.

66. Cerberus System


**I.   Downloading Playlist**

1.   U.S. Patent No. 5,541,638 to Story

2.   DAD Manual v6.0A

-182-

3. DAD Brochure

4. DAD system

5. Macromedia Director User Manual

6. Listen Up Player Publication

7. Sony MDS-B1 User Manual

8. Microsoft Windows 95 Resource Kit

9. Roy NewsComm Thesis

10. NewsComm Presentation

11. Opcode Audioshop Manual

12. Opcode Audioshop enabled system

13. Sound Blaster "Making WAVes" Book

14. Sound Blaster 16 User Guide

15. Sound Blaster 16 enabled system

16. NewsComm Journal Article

17. Windows Sound System Manual

18. U.S. Patent No. 5,296,848 to Witheridge, et al.

19. U.S. Patent No. 5,557,541 to Schulhof, et al.

20. U.S. Patent No. 5,572,442 to Schulhof, et al.

21. U.S. Patent No. 5,583,560 to Florin, et al.

22. U.S. Patent No. 5,616,876 to Cluts

23. U.S. Patent No. 5,640,590 to Luther

24. U.S. Patent No. 5,661,787 to Pocock

25. U.S. Patent No. 5,668,788 to Allison

26. U.S. Patent No. 5,740,134 to Peterson

27. U.S. Patent No. 5,793,980 to Glaser, et al.

28. U.S. Patent No. 5,815,671 to Morrison

29. U.S. Patent No. 5,819,160 to Foladare, et al.

30. U.S. Patent No. 5,841,979 to Schulhof, et al.

31. U.S. Patent No. 5,864,868 to Contois

32. U.S. Patent No. 5,914,941 to Janky

33. U.S. Patent No. 5,966,440 to Hair

34. U.S. Patent No. 5,721,951 to DorEl

-183-

35. Chase '914

36. Chase '164

37. Beaton

38. Person Book

39. Lake

40. Stifelman Thesis

41. Hindus Thesis

42. Horner Thesis

43. Comparative Design Article

44. Petrowski

45. Aarseth

46. Rathbone

47. Sun Microsystems SparcStation 2

48. Sone

49. Labrosse

50. Pascoe

51. RealAudio 2.0

52. Macworld Music & Sound Bible

53. WinPlay3

54. Kan

55. JSInc

56. Windows95


**J.  Display Track**

1.  DAD Manual v6.0A

2.  DAD Brochure

3.  DAD system

4.  Loeb Article

5.  Macromedia Director User Manual

6.  Listen Up Player Publication

7.  Sony MDS-B1 User Manual

8.  Microsoft Windows Sound System User Guide

-184-

9.  Roy NewsComm Thesis

10. NewsComm Presentation

11. Comparative Design Review Article

12. Opcode Audioshop Manual

13. Opcode Audioshop enabled system

14. Sony D-232 Discman User Manual

15. Sony D-240 Discman User Manual

16. Sony MZ-1 User Manual

17. Sony MZ-1 Service Manual

18. Sony MZ-1 Portable Minidisc Recorder

19. Sony MZ-B3 User Manual

20. Sony MZ-R2 User Manual

21. Sony MZ-R3 User Manual

22. Sound Blaster "Making WAVes" Book

23. Sound Blaster 16 User Guide

24. Sound Blaster 16 enabled system

25. NewsComm Journal Article

26. Windows Sound System Manual

27. Voyetra AudioStation User Manual

28. FR 2714760

29. U.S. Patent No. 5,168,481 to Culbertson, et al.

30. U.S. Patent No. 5,296,848 to Witheridge, et al.

31. U.S. Patent No. 5,347,082 to Ojima

32. U.S. Patent No. 5,355,302 to Martin, et al.

33. U.S. Patent No. 5,418,622 to Takeuchi

34. U.S. Patent No. 5,481,509 to Knowles

35. U.S. Patent No. 5,499,316 to Sudoh, et al.

36. U.S. Patent No. 5,524,051 to Ryan

37. U.S. Patent No. 5,541,638 to Story

38. U.S. Patent No. 5,555,098 to Parulski

39. U.S. Patent No. 5,557,541 to Schulhof, et al.

40. U.S. Patent No. 5,572,442 to Schulhof, et al.

-185-

41. U.S. Patent No. 5,583,560 to Florin, et al.

42. U.S. Patent No. 5,594,601 to Mimick, et al.

43. U.S. Patent No. 5,616,876 to Cluts

44. U.S. Patent No. 5,640,590 to Luther

45. U.S. Patent No. 5,726,909 to Krikorian

46. U.S. Patent No. 5,740,134 to Peterson

47. U.S. Patent No. 5,751,672 to Yankowski

48. U.S. Patent No. 5,754,784 to Garland, et al.

49. U.S. Patent No. 5,793,980 to Glaser, et al.

50. U.S. Patent No. 5,798,921 to Johnson, et al.

51. U.S. Patent No. 5,815,671 to Morrison

52. U.S. Patent No. 5,841,979 to Schulhof, et al.

53. U.S. Patent No. 5,864,868 to Contois

54. U.S. Patent No. 5,914,941 to Janky

55. U.S. Patent No. 5,966,440 to Hair

56. U.S. Patent No. 6,182,126 to Nathan, et al.

57. U.S. Patent No. 5,687,160 to Aotake, et al.

58. U.S. Patent No. 5,721,951 to DorEl

59. Chase '914

60. Chase '164

61. Beaton

62. Tuttle

63. Person Book

64. Lake

65. Hindus Thesis

66. Horner Thesis

67. Sony HCD-241

68. Nielsen Article

69. Petrowski

70. Aarseth

71. Rathbone

72. Sone

-186-

73. RealAudio 2.0

74. Gravis Windecks enabled system

75. U.S. Patent No. 6,453,281 to Walters, et al.

76. Kan

77. JSInc

78. Windows95

**K. Display Playlist**

1. DAD Manual v6.0A

2. DAD Brochure

3. DAD system

4. Loeb Article

5. Macromedia Director User Manual

6. Listen Up Player Publication

7. Sony MDS-B1 User Manual

8. Roy NewsComm Thesis

9. NewsComm Presentation

10. Comparative Design Review Article

11. Opcode Audioshop Manual

12. Opcode Audioshop enabled system

13. Sony D-232 Discman User Manual

14. Sony D-240 Discman User Manual User Manual

15. Sony MZ-1 User Manual

16. Sony MZ-1 Service Manual

17. Sony MZ-1 Portable Minidisc Recorder

18. Sony MZ-B3 User Manual

19. Sony MZ-R2 User Manual

20. Sony MZ-R3 User Manual

21. Sound Blaster "Making WAVes" Book

22. Sound Blaster 16 User Guide

23. Sound Blaster 16 enabled system

24. NewsComm Journal Article

-187-

25. Windows Sound System Manual

26. Voyetra AudioStation User Manual

27. U.S. Patent No. 5,168,481 to Culbertson, et al.

28. U.S. Patent No. 5,296,848 to Witheridge, et al.

29. U.S. Patent No. 5,347,082 to Ojima

30. U.S. Patent No. 5,355,302 to Martin, et al.

31. U.S. Patent No. 5,418,622 to Takeuchi

32. U.S. Patent No. 5,481,509 to Knowles

33. U.S. Patent No. 5,524,051 to Ryan

34. U.S. Patent No. 5,541,638 to Story

35. U.S. Patent No. 5,555,098 to Parulski

36. U.S. Patent No. 5,557,541 to Schulhof, et al.

37. U.S. Patent No. 5,572,442 to Schulhof, et al.

38. U.S. Patent No. 5,583,560 to Florin, et al.

39. U.S. Patent No. 5,594,601 to Mimick, et al.

40. U.S. Patent No. 5,616,876 to Cluts

41. U.S. Patent No. 5,640,590 to Luther

42. U.S. Patent No. 5,726,909 to Krikorian

43. U.S. Patent No. 5,740,134 to Peterson

44. U.S. Patent No. 5,751,672 to Yankowski

45. U.S. Patent No. 5,781,889 to Martin, et al.

46. U.S. Patent No. 5,793,980 to Glaser, et al.

47. U.S. Patent No. 5,798,921 to Johnson, et al.

48. U.S. Patent No. 5,815,671 to Morrison

49. U.S. Patent No. 5,841,979 to Schulhof, et al.

50. U.S. Patent No. 5,864,868 to Contois

51. U.S. Patent No. 5,914,941 to Janky

52. U.S. Patent No. 5,966,440 to Hair

53. U.S. Patent No. 6,182,126 to Nathan, et al.

54. U.S. Patent No. 5,687,160 to Aotake, et al.

55. U.S. Patent No. 5,721,951 to DorEl

56. Chase '914

57. Chase '164

58. Beaton

59. Tuttle

60. Person Book

61. Lake

62. Labrosse

63. Hindus Thesis

64. Horner Thesis

65. Sony HCD-241

66. Nielsen Article

67. Petrowski

68. Aarseth

69. Rathbone

70. Gravis Windecks enabled system

71. U.S. Patent No. 6,453,281 to Walters, et al.

72. Macworld Music & Sound Bible


**L.  Image**

1.  Loeb Article

2.  Macromedia Director User Manual

3.  Listen Up Player Publication

4.  Comparative Design Review Article

5.  Windows Sound System Manual

6.  FR 2714760

7.  U.S. Patent No. 5,355,302 to Martin, et al.

8.  U.S. Patent No. 5,481,509 to Knowles

9.  U.S. Patent No. 5,555,098 to Parulski

10. U.S. Patent No. 5,557,541 to Schulhof, et al.

11. U.S. Patent No. 5,572,442 to Schulhof, et al.

12. U.S. Patent No. 5,583,560 to Florin, et al.

13. U.S. Patent No. 5,616,876 to Cluts

14. U.S. Patent No. 5,640,590 to Luther

-189-

15. U.S. Patent No. 5,751,672 to Yankowski

16. U.S. Patent No. 5,754,784 to Garland, et al.

17. U.S. Patent No. 5,781,889 to Martin, et al.

18. U.S. Patent No. 5,793,980 to Glaser, et al.

19. U.S. Patent No. 5,841,979 to Schulhof, et al.

20. U.S. Patent No. 5,864,868 to Contois

21. U.S. Patent No. 5,966,440 to Hair

22. U.S. Patent No. 6,182,126 to Nathan, et al.

23. RealAudio 2.0

24. U.S. Patent No. 6,453,281 to Walters, et al.

25. U.S. Patent No. 5,949,951 to Sklar, et al.

26. U.S. Patent No. 5,712,949 to Kato, et al.

27. Pascoe

28. WO 98/29835 to Kunkel


**M. Skip Back – Current Track (2)**

1. DAD Manual v6.0A

2. DAD system

3. Macromedia Director User Manual

4. Sony MDS-B1 User Manual

5. Opcode Audioshop Manual

6. Opcode Audioshop enabled system

7. Sony D-232 Discman User Manual

8. Sony D-240 Discman User Manual

9. Sony MZ-1 User Manual

10. Sony MZ-B3 User Manual

11. Sony MZ-R2 User Manual

12. Sony MZ-R3 User Manual

13. Sony MZ-1 Service Manual

14. Sony MZ-1 Portable Minidisc Recorder

15. Sound Blaster "Making WAVes" Book

16. Sound Blaster 16 User Guide

-190-

17. Sound Blaster 16 enabled system

18. Windows Sound System Manual

19. U.S. Patent No. 5,819,160 to Foladare, et al.

20. U.S. Patent No. 5,841,979 to Schulhof, et al.

21. U.S. Patent No. 5,864,868 to Contois

22. U.S. Patent No. 5,914,941 to Janky

23. U.S. Patent No. 5,966,440 to Hair

24. U.S. Patent No. 5,616,876 to Cluts

25. U.S. Patent No. 5,751,672 to Yankowski

26. U.S. Patent No. 5,687,160 to Aotake, et al.

27. U.S. Patent No. 5,721,951 to DorEl

28. Chase '914

29. Chase '164

30. Beaton

31. Person Book

32. Lake

33. Stifelman Thesis

34. Hindus Thesis

35. Horner Thesis

36. Sony HCD-241

37. Nielsen Article

38. Rathbone

39. Gravis Windecks enabled system

40. U.S. Patent No. 6,453,281 to Walters, et al.

41. Macworld Music & Sound Bible

42. Kan

43. JSInc

44. Windows95


**N. Skip Back – Previous Track (2)**

1.  DAD Manual v6.0A

2.  DAD Brochure

3.   DAD system

4.   Macromedia Director User Manual

5.   Sony MDS-B1 User Manual

6.   Opcode Audioshop Manual

7.   Opcode Audioshop enabled system

8.   Sony D-232 Discman User Manual

9.   Sony D-240 Discman User Manual

10. Sony MZ-1 User Manual

11. Sony MZ-B3 User Manual

12. Sony MZ-R2 User Manual

13. Sony MZ-R3 User Manual

14. Sony MZ-1 Service Manual

15. Sony MZ-1 Portable Minidisc Recorder

16. Sound Blaster "Making WAVes" Book

17. Sound Blaster 16 User Guide

18. Sound Blaster 16 enabled system

19. Windows Sound System Manual

20. U.S. Patent No. 5,914,941 to Janky

21. U.S. Patent No. 5,616,876 to Cluts

22. U.S. Patent No. 5,751,672 to Yankowski

23. U.S. Patent No. 5,687,160 to Aotake, et al.

24. U.S. Patent No. 5,721,951 to DorEl

25. Chase '914

26. Chase '164

27. Beaton

28. Tuttle

29. Person Book

30. Lake

31. Stifelman Thesis

32. Hindus Thesis

33. Horner Thesis

34. Sony HCD-241

-192-

35. Comparative Design Article

36. Petrowski

37. Gravis Windecks enabled system

38. U.S. Patent No. 6,453,281 to Walters, et al.

39. Macworld Music & Sound Bible

40. WinPlay 3

41. Kan

42. JSInc

43. Windows95

**O. Track ID**

1. DAD Manual v6.0A

2. DAD Brochure

3. DAD system

4. Loeb Article

5. Macromedia Director User Manual

6. Listen Up Player Publication

7. Sony MDS-B1 User Manual

8. Opcode Audioshop Manual

9. Opcode Audioshop enabled system

10. Sony MZ-1 User Manual

11. Sony MZ-1 Service Manual

12. Sony MZ-1 Portable Minidisc Recorder

13. Sony MZ-B3 User Manual

14. Sony MZ-R2 User Manual

15. Sony MZ-R3 User Manual

16. Sound Blaster "Making WAVes" Book

17. Sound Blaster 16 User Guide

18. Sound Blaster 16 enabled system

19. Windows Sound System Manual

20. U.S. Patent No. 5,355,302 to Martin, et al.

21. U.S. Patent No. 5,386,081 to Nakada, et al.

22. U.S. Patent No. 5,404,505 to Levinson

23. U.S. Patent No. 5,418,622 to Takeuchi

24. U.S. Patent No. 5,428,732 to Hancock, et al.

25. U.S. Patent No. 5,481,509 to Knowles

26. U.S. Patent No. 5,499,316 to Sudoh, et al.

27. U.S. Patent No. 5,541,638 to Story

28. U.S. Patent No. 5,555,098 to Parulski

29. U.S. Patent No. 5,583,560 to Florin, et al.

30. U.S. Patent No. 5,594,601 to Mimick, et al.

31. U.S. Patent No. 5,616,876 to Cluts

32. U.S. Patent No. 5,661,787 to Pocock

33. U.S. Patent No. 5,668,788 to Allison

34. U.S. Patent No. 5,751,672 to Yankowski

35. U.S. Patent No. 5,781,889 to Martin, et al.

36. U.S. Patent No. 5,815,671 to Morrison

37. U.S. Patent No. 5,864,868 to Contois

38. U.S. Patent No. 5,914,941 to Janky

39. U.S. Patent No. 5,966,440 to Hair

40. U.S. Patent No. 6,182,126 to Nathan, et al.

41. U.S. Patent No. 5,687,160 to Aotake, et al.

42. U.S. Patent No. 5,721,951 to DorEl

43. U.S. Patent No. 8,769,297 to Rhoads

44. Chase '914

45. Chase '164

46. Beaton

47. Tuttle

48. Person Book

49. Lake

50. Stifelman Thesis

51. Hindus Thesis

52. Horner Thesis

53. Sony HCD-241

-194-

54. Nielsen Article

55. Petrowski

56. Aarseth

57. Rathbone

58. Sone

59. Labrosse

60. Gravis Windecks enabled system

61. Macworld Music & Sound Bible

62. WinPlay3

63. Kan

64. JSInc

65. Windows95

66. Cerberus System

**P. Description**

1. DAD Manual v6.0A

2. DAD system

3. Loeb Article

4. Macromedia Director User Manual

5. Listen Up Player Publication

6. Sony MDS-B1 User Manual

7. Microsoft Windows Sound System User Guide

8. Roy NewsComm Thesis

9. NewsComm Presentation

10. Comparative Design Review Article

11. Opcode Audioshop Manual

12. Opcode Audioshop enabled system

13. Sony MZ-1 User Manual

14. Sony MZ-1 Service Manual

15. Sony MZ-1 Portable Minidisc Recorder

16. Sony MZ-B3 User Manual

17. Sony MZ-R2 User Manual

-195-

18. Sony MZ-R3 User Manual

19. Sound Blaster "Making WAVes" Book

20. Sound Blaster 16 enabled system

21. Sound Blaster 16 User Guide

22. Sound Blaster 16 enabled system

23. NewsComm Journal Article

24. Windows Sound System Manual

25. Voyetra AudioStation User Manual

26. FR 2714760

27. U.S. Patent No. 5,168,481 to Culbertson, et al.

28. U.S. Patent No. 5,341,350 to Frank, et al.

29. U.S. Patent No. 5,347,082 to Ojima

30. U.S. Patent No. 5,355,302 to Martin, et al.

31. U.S. Patent No. 5,386,081 to Nakada, et al.

32. U.S. Patent No. 5,418,622 to Takeuchi

33. U.S. Patent No. 5,481,509 to Knowles

34. U.S. Patent No. 5,499,316 to Sudoh, et al.

35. U.S. Patent No. 5,541,638 to Story

36. U.S. Patent No. 5,555,098 to Parulski

37. U.S. Patent No. 5,583,560 to Florin, et al.

38. U.S. Patent No. 5,594,601 to Mimick, et al.

39. U.S. Patent No. 5,616,876 to Cluts

40. U.S. Patent No. 5,661,787 to Pocock

41. U.S. Patent No. 5,668,788 to Allison

42. U.S. Patent No. 5,726,909 to Krikorian

43. U.S. Patent No. 5,751,672 to Yankowski

44. U.S. Patent No. 5,781,889 to Martin, et al.

45. U.S. Patent No. 5,793,980 to Glaser, et al.

46. U.S. Patent No. 5,798,921 to Johnson, et al.

47. U.S. Patent No. 5,864,868 to Contois

48. U.S. Patent No. 5,914,941 to Janky

49. U.S. Patent No. 5,966,440 to Hair

-196-

50. U.S. Patent No. 6,182,126 to Nathan, et al.

51. U.S. Patent No. 5,687,160 to Aotake, et al.

52. U.S. Patent No. 5,721,951 to DorEl

53. Chase '914

54. Chase '164

55. Beaton

56. Tuttle

57. Person Book

58. Lake

59. Hindus Thesis

60. Horner Thesis

61. Comparative Design Article

62. Petrowski

63. Aarseth

64. Rathbone

65. Sone

66. Labrosse

67. Gravis Windecks enabled system

68. RealAudio 2.0

69. U.S. Patent No. 6,453,281 to Walters, et al.

70. Macworld Music & Sound Bible


**Q. Preferences**

1. DAD Manual v6.0A

2. Loeb Article

3. DAD Brochure

4. DAD system

5. Listen Up Player Publication

6. Roy NewsComm Thesis

7. NewsComm Presentation

8. Comparative Design Review Article

9. NewsComm Journal Article

10. U.S. Patent No. 5,355,302 to Martin, et al.

11. U.S. Patent No. 5,404,505 to Levinson

12. U.S. Patent No. 5,524,051 to Ryan

13. U.S. Patent No. 5,541,638 to Story

14. U.S. Patent No. 5,557,541 to Schulhof, et al.

15. U.S. Patent No. 5,572,442 to Schulhof, et al.

16. U.S. Patent No. 5,583,560 to Florin, et al.

17. U.S. Patent No. 5,616,876 to Cluts

18. U.S. Patent No. 5,726,909 to Krikorian

19. U.S. Patent No. 5,740,134 to Peterson

20. U.S. Patent No. 5,819,160 to Foladare, et al.

21. U.S. Patent No. 5,841,979 to Schulhof, et al.

22. U.S. Patent No. 5,864,868 to Contois

23. U.S. Patent No. 5,914,941 to Janky

24. U.S. Patent No. 5,966,440 to Hair


**R. Remaining Time**

1. DAD Manual v6.0A

2. DAD Brochure

3. DAD system

4. Macromedia Director User Manual

5. Sony MDS-B1 User Manual

6. Microsoft Windows Sound System User Guide

7. Opcode Audioshop Manual

8. Opcode Audioshop enabled system

9. Sony D-232 Discman User Manual

10. Sony D-240 Discman User Manual

11. Sony MZ-1 User Manual

12. Sony MZ-1 Service Manual

13. Sony MZ-1 Portable Minidisc Recorder

14. Sony MZ-B3 User Manual

15. Sony MZ-R2 User Manual

16. Sony MZ-R3 User Manual

17. Sound Blaster "Making WAVes" Book

18. Sound Blaster 16 User Guide

19. Sound Blaster 16 enabled system

20. Windows Sound System Manual

21. U.S. Patent No. 5,499,316 to Sudoh, et al.

22. U.S. Patent No. 5,583,560 to Florin, et al.

23. U.S. Patent No. 5,616,876 to Cluts

24. U.S. Patent No. 5,751,672 to Yankowski

25. U.S. Patent No. 5,793,980 to Glaser, et al.

26. U.S. Patent No. 5,841,979 to Schulhof, et al.

27. U.S. Patent No. 5,914,941 to Janky

28. U.S. Patent No. 5,966,440 to Hair

29. U.S. Patent No. 6,182,126 to Nathan, et al.

30. Gravis Windecks enabled system

31. RealAudio 2.0

32. U.S. Patent No. 6,453,281 to Walters, et al.

33. Macworld Music & Sound Bible

34. WinPlay3

35. Kan

36. JSInc

37. Windows95


**S.  Skip To Track**

1.  DAD Manual v6.0A

2.  Loeb Article

3.  DAD system

4.  Macromedia Director User Manual

5.  Listen Up Player Publication

6.  Sony MDS-B1 User Manual

7.  Microsoft Windows Sound System User Guide

8.  Roy NewsComm Thesis

-199-

9.  NewsComm Presentation

10. Comparative Design Review Article

11. Opcode Audioshop Manual

12. Opcode Audioshop enabled system

13. Sony D-232 Discman User Manual

14. Sony D-240 Discman User Manual

15. Sony MZ-1 User Manual

16. Sony MZ-B3 User Manual

17. Sony MZ-R2 User Manual

18. Sony MZ-R3 User Manual

19. Sony MZ-1 Service Manual

20. Sony MZ-1 Portable Minidisc Recorder

21. Sound Blaster "Making WAVes" Book

22. Sound Blaster 16 User Guide

23. Sound Blaster 16 enabled system

24. NewsComm Journal Article

25. Windows Sound System Manual

26. Voyetra AudioStation User Manual

27. U.S. Patent No. 5,296,848 to Witheridge, et al.

28. U.S. Patent No. 5,481,509 to Knowles

29. U.S. Patent No. 5,541,638 to Story

30. U.S. Patent No. 5,583,560 to Florin, et al.

31. U.S. Patent No. 5,594,601 to Mimick, et al.

32. U.S. Patent No. 5,616,876 to Cluts

33. U.S. Patent No. 5,668,788 to Allison

34. U.S. Patent No. 5,726,909 to Krikorian

35. U.S. Patent No. 5,751,672 to Yankowski

36. U.S. Patent No. 5,781,889 to Martin, et al.

37. U.S. Patent No. 5,793,980 to Glaser, et al.

38. U.S. Patent No. 5,798,921 to Johnson, et al.

39. U.S. Patent No. 5,841,979 to Schulhof, et al.

40. U.S. Patent No. 5,864,868 to Contois

-200-

41. U.S. Patent No. 5,914,941 to Janky

42. U.S. Patent No. 6,182,126 to Nathan, et al.

43. U.S. Patent No. 5,687,160 to Aotake, et al.

44. U.S. Patent No. 5,721,951 to DorEl

45. Chase '914

46. Chase '164

47. Beaton

48. Tuttle

49. Person Book

50. Lake

51. Hindus Thesis

52. Horner Thesis

53. Sony HCD-241

54. Nielsen Article

55. Petrowski

56. Aarseth

57. Rathbone

58. Labrosse

59. Gravis Windecks enabled system

60. U.S. Patent No. 6,453,281 to Walters, et al.

61. Macworld Music & Sound Bible


**T. Voice Command**

1.  U.S. Patent No. 5,774,859 to Houser, et al.

2.  U.S. Patent No. 6,392,633 to Leiper

3.  VoiceNotes Article

4.  Stifelman Thesis

5.  U.S. Patent No. 5,524,051 to Ryan

6.  WO 95-28,701 to Labrosse, et al.

7.  U.S. Patent No. 5,754,784 to Garland, et al.

8.  Windows Sound System References, including Using Windows Sound System 2

9.  Macworld Music & Sound Bible

-201-

10. U.S. Patent No. 6,453,281 to Walters, et al.

11. U.S. Patent No. 8,769,297 to Rhoads

**U.  Subscription / Purchase Audio**

1. U.S. Patent No. 5,132,992 to Yurt, et al.

2. Listen Up Player Publication

3. Loeb Article

4. U.S. Patent No. 5,661,787 to Pocock

5. U.S. Patent No. 6,182,126 to Nathan

6. U.S. Patent No. 5,541,638 to Story

7. U.S. Patent No. 5,819,160 to Foladare et al.

8. U.S. Patent No. 5,914,941 to Janky

9. U.S. Patent No. 5,721,815 to Ottesen, et al.

10. U.S. Patent No. 8,769,297 to Rhoads

11. U.S. Patent No. 5,524,051 to Ryan

12. U.S. Patent No. 5,557,541 to Schulhof, et al.

13. U.S. Patent No. 5,572,442 to Schulhof, et al.

14. U.S. Patent No. 5,841,979 to Schulhof, et al.

15. U.S. Patent No. 5,815,671 to Morrison

16. U.S. Patent No. 5,966,440 to Hair

17. U.S. Patent No. 5,404,505 to Levinson

18. U.S. Patent No. 5,926,624 to Katz, et al.

19. U.S. Patent No. 7,047,241 to Erickson

20. U.S. Patent No. 5,638,443 to Stefik, et al.

21. U.S. Patent No. 5,953,005 to Liu

22. Cerberus System

**V.  Audio Encryption / Decryption**

1. Chase '914

2. Chase '164

3. U.S. Patent No. 5,132,992 to Yurt

4. Loeb Article

5.  U.S. Patent No. 5,864,868 to Contois

6.  U.S. Patent No. 5,661,787 to Pocock

7.  U.S. Patent No. 5,726,909 to Krikorian

8.  U.S. Patent No. 5,793,980 to Glaser

9.  U.S. Patent No. 6,182,126 to Nathan

10. U.S. Patent No. 5,616,876 to Cluts

11. U.S. Patent No. 5,541,638 to Story

12. U.S. Patent No. 5,819,160 to Foladare et al.

13. U.S. Patent No. 5,914,941 to Janky

14. U.S. Patent No. 8,769,297 to Rhoads

15. U.S. Patent No. 5,524,051 to Ryan

16. U.S. Patent No. 5,404,505 to Levinson

17. U.S. Patent No. 5,926,624 to Katz, et al.

18. U.S. Patent No. 7,047,241 to Erickson

19. U.S. Patent No. 5,953,005 to Liu

20. Cerberus System

# APPENDIX B

| | ADDITIONAL ART[60] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 1. | Sound Blaster Series, Hardware Programming Guide [APP-PA00006379-APP-PA00006519] | 1993-1996 |
| 2. | U.S. Patent No. 5,699,336 [APP-PA00005915-APP-PA00005933] | Dec. 16, 1997  (filed Jan. 18, 1996) (claims priority to JP P7-027729 filed Jan. 25, 1995) |
| 3. | U.S. Patent No. 5,508,984 [APP-PA00007467-APP-PA00007474] | Apr. 16, 1996 (filed Oct. 28, 1993) (claims priority to JP 4-316444 filed Oct. 30, 1992 and JP 4-316445 filed Oct. 30, 1992) |
| 4. | CA 2224712 [APP-PA00005236-APP-PA00005286] | Oct. 30, 1997 (filed Mar. 18, 1997) (Canada) |
| 5. | DE 3829032[61] [APP-PA00003774-APP-PA00003779] | July 5, 1990 (filed Aug. 26, 1988) (Germany) |
| 6. | "A Continuous Media Player" [APP-PA00006078-APP-PA00006088] | Nov. 1992 |
| 7. | "A Distributed Real-Time MPEG Video Audio Player," by Cen, S., et al., Department of Computer Science and Engineering Oregon Graduate Institute of Science and Technology [APP-PA00003902-APP-PA00003913] | 1995 |
| 8. | Akai Electric Co.: DR16 Hard Disk Recorder Operator's Manual, Japan [APP-PA00006202-APP-PA00006371] | Nov. 1995 |
| 9. | "Audio Support In HP Mpower" (Computer Network Communications Software) [APP-PA00007494-APP-PA00007499] | Apr. 1994 |
| 10. | "Automatic Content-Based Retrieval Of Broadcast News" [APP-PA00005326-APP-PA00005334] | Nov. 1995 |

---

[60]     To the extent that these additional references describe particular products and/or software programs that may have been publicly known or in public use prior to the filing dates of the patents-in-suit, Google reserves the right to amend and/or supplement these Invalidity Contentions based on information learned of in connection with subpoenas and/or other requests for information pertaining to such products and/or software programs.

[61]     Certified translation available at APP-PA00030553-APP-PA30559.

| | ADDITIONAL ART[60] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 11. | "Capturing, Structuring, and Representing Ubiquitous Audio" [APP-PA00002462-APP-PA00002486] | Oct. 1993 |
| 12. | "Decision '97: The New Digital Desktop Studios" [APP-PA00006372-APP-PA00006378] | July 1, 1997 |
| 13. | "Integration Of Value-Added Audio Playback Capacity Into A Computer Network" [APP-PA00006114-APP-PA00006118] | June 1995 |
| 14. | "Net.Speech: Desktop Audio Comes To The Net" [APP-PA00006071-APP-PA00006077] | Oct. 1995 |
| 15. | Roland Corporation: DM-800 Multi Track Disc Recorder Owner's Manual, 1995 [APP-PA00006887-APP-PA00007061] | 1995 |
| 16. | EP 0461127 [APP-PA00007346-APP-PA00007406] | Sept. 27, 1995 (filed Jan. 26, 1990) (claims priority to US 305,223 filed Feb. 2, 1989) |
| 17. | WO 1990/09020 [APP-PA00007754- APP-PA00007859] | Aug. 9, 1990 (Filed Jan. 26, 1990) (claims priority to US 305,223 filed Feb. 2, 1989) |
| 18. | GB 2262826 [APP-PA00005287- APP-PA00005296] | June 30, 1993 (filed Dec. 9, 1991) |
| 19. | GB 2299200 [APP-PA00005840- APP-PA00005862] | Sept. 25, 1996 (filed Mar. 11, 1996) |
| 20. | GB 2304489 [APP-PA00006587- APP-PA00006603] | Mar. 19, 1997 (Aug. 15, 1995) |
| 21. | U.S. Patent No. 3,947,882 [APP-PA00002916- APP-PA00002932] | Mar. 30, 1976 (filed Nov. 29, 1972) |
| 22. | U.S. Patent No. 4,210,940 [APP-PA00003822- APP-PA00003839] | July 1, 1980 (filed Sept. 29, 1978) |
| 23. | U.S. Patent No. 4,375,083 [APP-PA00006843- APP-PA00006866] | Feb. 22, 1983 (filed Jan. 31, 1980) |
| 24. | U.S. Patent No. 4,614,144 [APP-PA00002822-2832] | Sept. 30, 1986 (filed Sept. 21, 1984) |

| | ADDITIONAL ART[60] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 25. | U.S. Patent No. 4,667,088 [APP-PA00002933- APP-PA00002939] | May 19, 1987 (filed Nov. 1, 1982) (claims priority to GB82/00311 filed May 11, 1983) |
| 26. | U.S. Patent No. 4,766,581 [APP-PA00004228- APP-PA00004262] | Aug. 23, 1988 (filed Aug. 7, 1984) |
| 27. | U.S. Patent No. 4,817,127 [APP-PA00005162- APP-PA00005186] | Mar. 28, 1989 (filed Aug. 8, 1986) |
| 28. | U.S. Patent No. 4,905,289 [APP-PA00003689- APP-PA00003693] | Feb. 27, 1990 (filed Feb. 27, 1989) (claims priority to EP 86106577.9 filed May 15, 1986) |
| 29. | U.S. Patent No. 5,106,097 [APP-PA00007864- APP-PA00007878] | Apr. 21, 1992 (filed Feb. 28, 1991) |
| 30. | U.S. Patent No. 5,153,579 [APP-PA00007738- APP-PA00007753] | Oct. 6, 1992 (filed Feb. 21, 1991) |
| 31. | U.S. Patent No. 5,179,627 [APP-PA00006614- APP-PA00006842] | Jan. 12, 1993 (filed June 23, 1992) |
| 32. | U.S. Patent No. 5,341,350 [APP-PA00007650- APP-PA00007655] | Aug. 23, 1994 (filed July 4, 1991) |
| 33. | U.S. Patent No. 5,359,698 [APP-PA00007174- APP-PA00007191] | Oct. 25, 1994 (filed Dec. 20, 1991) |
| 34. | U.S. Patent No. 5,388,181 [APP-PA00007705- APP-PA00007724] | Feb. 7, 1995 (filed Sept. 29, 1993) |
| 35. | U.S. Patent No. 5,406,626 [APP-PA00002875- APP-PA00002879] | Apr. 11, 1995 (filed Mar. 15, 1993) |
| 36. | U.S. Patent No. 5,408,449 [APP-PA00006061- APP-PA00006070] | Apr. 18, 1995 (filed Nov. 30, 1993) |
| 37. | U.S. Patent No. 5,428,732 [APP-PA00002864- APP-PA00002874] | June 27, 1995 (filed Sept. 9, 1994) |

| | ADDITIONAL ART[60] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 38. | U.S. Patent No. 5,454,723 [APP-PA00007082- APP-PA00007097] | Oct. 3, 1995 (filed Dec. 22, 1993) |
| 39. | U.S. Patent No. 5,463,599 [APP-PA00002940- APP-PA00002947] | Oct. 31, 1995 (filed Aug. 23, 1994) |
| 40. | U.S. Patent No. 5,467,288 [APP-PA00006012- APP-PA00006032] | Nov. 14, 1995 (filed Apr. 9, 1993) |
| 41. | U.S. Patent No. 5,475,835 [APP-PA00006128- APP-PA00006156] | Dec. 12, 1995 (filed Mar. 2, 1993) |
| 42. | U.S. Patent No. 5,486,645 [APP-PA00006576- APP-PA00006586] | Jan. 23, 1996 (filed June 30, 1994) (claims priority to KR 93-12407 filed June 30, 1993) |
| 43. | U.S. Patent No. 5,500,919 [APP-PA00004600- APP-PA00004614] | Mar. 19, 1996 (filed Nov. 18, 1992) |
| 44. | U.S. Patent No. 5,510,573 [APP-PA00002880- APP-PA00002890] | Apr. 23, 1996 (filed June 30, 1994) (claims priority to KR 93-12406 filed June 30, 1993) |
| 45. | U.S. Patent No. 5,587,546 [APP-PA00004263- APP-PA00004268] | Dec. 24, 1996 (filed Nov. 15, 1994) (claims priority to JP 5-309768 filed Nov. 16, 1993) |
| 46. | U.S. Patent No. 5,590,195 [APP-PA00003049- APP-PA00003062] | Dec. 31, 1996 (filed Jan. 12, 1994) |
| 47. | U.S. Patent No. 5,610,774 [APP-PA00007551- APP-PA00007567] | Mar. 11, 1997 (filed Mar. 4, 1994) (claims priority on JP 3-263654 filed Oct. 11, 1991) |
| 48. | U.S. Patent No. 5,619,425 [APP-PA00007656- APP-PA00007679] | Apr. 8, 1997 (filed Mar. 17, 1995) (claims priority on JP 6-505506 filed Mar. 22, 1994) |
| 49. | U.S. Patent No. 5,625,608 [APP-PA00004085- APP-PA00004093] | Apr. 29, 1997 (filed May 22, 1995) |

| | ADDITIONAL ART[60] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 50. | U.S. Patent No. 5,640,458 [APP-PA00005125- APP-PA00005134] | June 17, 1997 (filed Oct. 22, 1990 (claims priority on JP 1-278209 filed Oct. 25, 1989) |
| 51. | U.S. Patent No. 5,668,788 [APP-PA00005700- APP-PA00005704] | Sept. 16, 1997 (filed June 10, 1996) |
| 52. | U.S. Patent No. 5,670,730 [APP-PA00005953- APP-PA00005958] | Sept. 23, 1997 (filed May 22, 1995) |
| 53. | U.S. Patent No. 5,691,494 [APP-PA00004615- APP-PA00004630] | Nov. 25, 1997 (filed Sept. 29, 1995) (claims priority on JP 6-249454 filed Oct. 14, 1994) |
| 54. | U.S. Patent No. 5,696,928 [APP-PA00006119- APP-PA00006127] | Dec. 9, 1997 (filed May 22, 1995) |
| 55. | U.S. Patent No. 5,708,845 [APP-PA00002435- APP-PA00002449] | Jan. 13, 1998 (filed Sept. 29, 1995) |
| 56. | U.S. Patent No. 5,728,960 [APP-PA00002833- APP-PA00002863] | Mar. 17, 1998 (filed July 10, 1996) |
| 57. | U.S. Patent No. 5,751,806 [APP-PA00004591- APP-PA00004599] | May 12, 1998 (filed Dec. 18, 1996) |
| 58. | U.S. Patent No. 5,790,423 [APP-PA00003675- APP-PA00003688] | Aug. 4, 1998 (filed June 14, 1995) |
| 59. | U.S. Patent No. 5,799,063 [APP-PA00007731- APP-PA00007737] | Aug. 25, 1998 (filed Aug. 15, 1996) |
| 60. | U.S. Patent No. 5,810,600 [APP-PA00003721- APP-PA00003740] | Sept. 22, 1998 (filed Apr. 20, 1993) (claims priority on JP 4-102840 filed Apr. 22, 1992; JP 4-106884 filed Apr. 24, 1992; JP 40131771 filed Apr. 25, 1992; JP 4-137845 filed Apr. 30, 1992) |
| 61. | U.S. Patent No. 5,845,104 [APP-PA00003840- APP-PA00003854] | Dec. 1, 1998 (filed Nov. 13, 1995) |

-209-

| | ADDITIONAL ART[60] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 62. | U.S. Patent No. 5,848,427 [APP-PA00003760-3773] | Dec. 8, 1998 (filed July 26, 1998) (claims priority on JP 7-237084 filed Sept. 14, 1995) |
| 63. | U.S. Patent No. 5,915,288 [APP-PA00004094- APP-PA00004112] | June 22, 1999 (filed Feb. 19, 1998) |
| 64. | U.S. Patent No. 5,918,213 [APP-PA00003998- APP-PA00004077] | June 29, 1999 (filed Dec. 22, 1995) |
| 65. | U.S. Patent No. 5,926,624 [APP-PA00004130- APP-PA00004152] | July 20, 1999 (filed Sept. 12, 1996) |
| 66. | U.S. Patent No. 5,946,278 [APP-PA00005335- APP-PA00005351] | Aug. 31, 1999 (filed Sept. 8, 1997) |
| 67. | U.S. Patent No. 5,963,916 [APP-PA00002948- APP-PA00003042] | Oct. 5, 1999 (filed Oct. 31, 1996) |
| 68. | U.S. Patent No. 5,964,830 [APP-PA00004577- APP-PA00004590] | Oct. 12, 1999 (filed Aug. 20, 1996) |
| 69. | U.S. Patent No. 5,966,440 [APP-PA00003694- APP-PA00003705] | Oct. 12, 1999 (filed June 6, 1995) |
| 70. | U.S. Patent No. 6,064,379 [APP-PA00005829- APP-PA00005839] | May 16, 2000 (filed June 24, 1996) |
| 71. | U.S. Patent No. 6,118,790 [APP-PA00005221- APP-PA00005235] | Sept. 12, 2000 (filed June 19, 1996) |
| 72. | U.S. Patent No. 6,212,359 [APP-PA00002450- APP-PA00002461] | Apr. 3, 2001 (filed July 2, 1997) |
| 73. | U.S. Patent No. 6,300,880 [APP-PA00005102- APP-PA00005120] | Oct. 9, 2001 (filed Jan. 16, 1996) |
| 74. | U.S. Patent No. 6,301,513 [APP-PA00006157- APP-PA00006201] | Oct. 9, 2001 (filed May 22, 1996) (claims priority on IL 113843 filed May 25, 1995; IL 115805 filed Oct. 29, 1995; IL 118230 filed May 12, 1996) |

| | ADDITIONAL ART[60] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 75. | U.S. Patent No. 6,332,147 [APP-PA00007305-APP-PA00007345] | Dec. 18, 2001 (filed Nov. 3, 1995) |
| 76. | U.S. Patent No. 6,427,064 [APP-PA00003855-APP-PA00003891] | July 30, 2002 (filed Jan. 5, 1994) |
| 77. | U.S. Patent No. 6,453,281 [APP-PA00002525-APP-PA00002573] | Sept. 17, 2001 (filed July 30, 1996) |
| 78. | WO 1993/019536 [APP-PA00007440-APP-PA00007455] | Sept. 30, 1993 (filed Feb. 25, 1993) (claims priority on DE P4209382.1 filed Mar. 23, 1992) |
| 79. | WO 1994/020951 [APP-PA00007112-APP-PA00007173] | Sept. 15, 1994 (filed May 5, 1993) (claims priority on US 08/031094 filed Mar. 8, 1993) |
| 80. | WO 1997/020297 [APP-PA00007204-APP-PA00007264] | June 5, 1997 (filed Nov. 27, 1996) (claims priority on US 08/564009 filed Nov. 29, 1995) |
| 81. | WO 1997/040611 [APP-PA00005959-APP-PA00006011] | Oct. 30, 1997 (filed Mar. 18, 1997 (claims priority on US 08/635801 filed Apr. 22, 1996) |
| 82. | Listing of Sony Service Manuals [APP-PA00007079-APP-PA00007081] | 8/3/09 |
| 83. | Sony MZ-B3 Service Manual [APP-PA00007879-APP-PA00007937] | 1997 |
| 84. | Sony MZ-R2 Portable Minidisc Recorder Service Manual [APP-PA00008018- APP-PA00008095] | 1993 |
| 85. | Sony MZ-R3 Portable Minidisc Recorder Service Manual [APP-PA00008431- APP-PA00008497] | 2001 |
| 86. | Saehan MPMan F20 Digital Stereo Player (device available for inspection); photographs available at [APP-PA00008378-APP-PA00008382] | |

| | ADDITIONAL ART[60] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 87. | Avid Videoshop User Guide [APP-PA00009268-APP-PA00009733] | 1993 |
| 88. | Avid Media Composer User Guide, Oct. 1996 [APP-PA00034086- APP-PA00034623] | Oct. 1996 |
| 89. | The Audible Macintosh, by D. Rubin [APP-PA00009764- APP-PA00010230] | 1992 |
| 90. | U.S. Patent No. 5,239,124 [APP-PA00005209- APP-PA00005220] | Aug. 24, 1998 (filed Mar. 28, 1991) (claims priority on JP 2-84971 filed Apr. 2, 1990) |
| 91. | U.S. Patent No. 6,101,324 to Connell, et al. [APP-PA00034038- APP-PA00034085] | Aug. 8, 2000 (filed Feb. 6, 1990) |
| 92. | "The All-Digital Radio Station," by Aarseth, B., Audio Engineering Society [APP-PA00005135- APP-PA00005161] | May 11-14, 1996 |
| 93. | "Computer-Aided Radio and Television Automation of On-the-Air Studios in Broadcast Facilities," by Weiss, A., Audio Engineering Society 13th International Conference [APP-PA00004118- APP-PA00004129] | Dec. 1-4, 1994 |
| 94. | "Applications 3 – Radio Station Automation," by Jackson, P., Audio Engineering Society 4th UK Conference [APP-PA00006536- APP-PA00006540] | May 1990 |
| 95. | "Multi-Channel Recording on Winchester Disks: Improving the Channel/Minute Ratio," by Kulick, J., et al., Audio Engineering Society 7th International Conference [APP-PA00007680- APP-PA00007683] | May 14-17, 1989 |
| 96. | "Networking of Personal Computers for Audio in a Broadcasting Environment," by Eliot, R., Audio Engineering Society UK Digital Audio Interchange Conference [APP-PA00004269- APP-PA00004277] | May 1993 |

-212-

| | ADDITIONAL ART[60] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 97. | "The New Facilities for the Department for Light and Sound Design of the Theatre Academy of Finland," by Moller, H., Audio Engineering Society [APP-PA00005705- APP-PA00005716] | Oct. 7-10, 1993 |
| 98. | "Audio for Multimedia in Russia," by Gorodnikov, A., Audio Engineering Society [APP-PA00006608- APP-PA00006613] | Oct. 7-10, 1993 |
| 99. | "Country-wide Digital Audio Networking by the South African Broadcasting Corporation for on-line Playout of Programme Material in Distributed Radio Services," by Evans, T., Audio Engineering Society [APP-PA00007098- APP-PA00007111] | Mar. 16-19, 1993 |
| 100. | U.S. Patent No. 5,724,567 to Rose, et al. [APP-PA00033623 - APP-PA00033635] | Mar. 3, 1998 (filed Apr. 25, 1994) |
| 101. | U.S. Patent No. 5,410,344 to Graves, et al. [APP-PA00033499- APP-PA00033512] | Apr. 25, 1995 (filed Sept. 22, 1993) |
| 102. | U.S. Patent No. 5,724,482 to Grewe, et al. [APP-PA00033612- APP-PA00033622] | Mar. 3, 1998 (filed May 22, 1995) |
| 103. | "Wegener Announces MPEG-2 Based Systems for Broadcasters Using Micropolis Video Servers," M2 Presswire, [APP-PA00006059- APP-PA00006060] | Mar. 27, 1995 |
| 104. | "The Digital Audio Processing Station," by Moorer, J.A., et al., J.J. Audio Eng. Soc. Vol. 34, No. 6, pp 454-463, Audio Eng. Soc. U.S. [APP-PA00005819- APP-PA00005828] | June 1996 |
| 105. | Sony MDS-B1 MD Recorder Operation Manual, Revision 2, Sony Corporation Audio Group[62] [APP-PA00005717- APP-PA00005784] | |

---

[62]     Because this reference is a revision prior to the revision of the Sony MDS-B1 User Manual, which has a publication date of June 13, 1993, the revision 2 version was published at least before that date.

| | ADDITIONAL ART[60] | ISSUE/PUBLICATION DATE |
|---|---|---|
| 106. | "Lessons from *LyricTime*: A Prototype Multimedia System," by Loeb, S., et al., Bell Communications Research [APP-PA00030601- APP-PA00030608] | April 1-4, 1992 |
| 107. | U.S. Patent No. 5,721,827 [APP-PA00033579- APP-PA00033611] | Feb. 24, 1998 (filed Oct. 2, 1996) |
| 108. | JP 8084381[63] [APP-PA00003706- APP-PA00003720] | Mar. 26, 1996 |
| 109. | QuickTime: The Official Guide for Macintosh Users, by Stern, J., et al. [APP-PA00033127- APP-PA00033495] | 1994 |
| 110. | Mastering the World of QuickTime, by Borrell, J. [APP-PA00032818- APP-PA00033050] | 1993 |
| 111. | Mastering Macromedia Director 5, by Henderson, C. [APP-PA00032064- APP-PA00032817] | 1997 |
| 112. | U.S. Patent No. 5,848,398 [APP-PA00005942- APP-PA00005952] | Dec. 8, 1998 (filed Apr. 25, 1996) |
| 113. | WO 1996/017451 [APP-PA00034860- APP-PA00034917] | June 6, 1996 (filed Nov. 14, 1995) (claims priority on US 08/347582 filed Nov. 30, 1994) |
| 114. | Learning Director, published by Macromedia, version 4 [APP-PA00034624- APP-PA00034859] | 1994 |
| 115. | "Architectures for Personalized Multimedia," by Ramanathan, S., et al., IEEE [APP-PA00034947- APP-PA00034956] | Spring 1994 |

---

[63]     Certified translation available at APP-PA00030586- APP-PA00030598.

## CERTIFICATE OF SERVICE

A true and correct copy of this document was served by email on the following counsel

on April 27, 2017:


William M. Parrish
Victor G. Hardy
Mingui Yang
Hardy Parrish Yang, LLP
Spicewood Business Center
4412 Spicewood Springs Rd., Suite 202
Austin, TX 78759
Email: bparrish@hpylegal.com
Email: vhardy@hpylegal.com
Email: myang@hpylegal.com

Douglas Q. Hahn
Stradling Yocca Carlson & Rauth, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
Email: dhahn@sycr.com

Charles W. Goehringer
Germer PLLC
550 Fannin, Suite 400
Beaumont, TX  77701
Email: cwgoehringer@germer.com


By:       */s/ Jason Xu*
          Jason Xu