**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PERSONAL AUDIO, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GOOGLE LLC, )<br>)<br>Defendant. ) | Civil Action No. 17-1751-CFC-CJB |

## MEMORANDUM ORDER

Pending before the Court is Defendant Google LLC's ("Google") motion to strike portions of the Reply Expert Report of Dr. Kevin C. Almeroth (the "reply report") regarding infringement of United States Patent Nos. 6,199,076 and 7,509,178 (the "Motion"). (D.I. 472) The Court[1] has considered the parties' letter briefs, (D.I. 473; D.I. 478; D.I. 486), and heard argument on the Motion during a teleconference on October 19, 2020, (hereinafter, "Tr."). For the reasons set out below, the Court hereby ORDERS that Google's Motion is DENIED.

The premise of Google's Motion is that portions of the reply report of Plaintiff Personal Audio, LLC's ("Personal Audio") expert Dr. Almeroth contain new, untimely infringement theories that were not previously disclosed, and that those theories should therefore be stricken pursuant to the factors set out in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977). However, for the reasons explained below, the Court concludes that the paragraphs of the reply report at issue are not late-disclosed infringement theories. Therefore, they should not be stricken.

---

[1] This case has been referred to the Court to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. (Docket Items, December 13, 2017 and September 10, 2018)

## I. DISCUSSION

Google has four bases for its Motion. The Court will address them in turn.

### A. The "file" Limitation

Google first seeks to strike Dr. Almeroth's opinions regarding the "file" limitation. According to Google, Dr. Almeroth opined in his opening report that LISTS and/or LISTITEMS data structures are the required "files," but then Dr. Almeroth set out a new infringement theory in his reply report, opining that *unstructured raw data extracted from* the LISTS and/or LISTITEMS data structures are the required "files." (D.I. 473 at 1; D.I. 486 at 1; Tr. at 11-12)

During oral argument, however, Personal Audio's counsel clarified that "to the extent [that Google is] characterizing [Personal Audio's] argument as pointing to unstructured data . . . *it's not our theory*." (Tr. at 28 (emphasis added); *see also id.* at 29, 33) Rather, Personal Audio's infringement theory appears to be that: (1) the accused playlist files are the LIST and LISTITEMS data structures; (2) these data structures can be stored "within other container objects" such as in database tables, in a JSON transport object, and in a working memory location; (3) but in each of these locations, the "accused playlist files are distinct from the container that they are being stored[ in;] [t]he same file is being transported and used but stored in different locations during this process." (D.I. 473, ex. A at ¶ 109 (*cited in* Tr. at 15); *see also* Tr. at 33 ("What we're pointing to is the file stored within the container.")) This infringement theory was expressed in Dr. Almeroth's opening report. (D.I. 478, ex. 1 at ¶ 243 ("[T]he LISTS data structure is a individually identifiable 'file of integers' that may be individually stored within the LISTITEMS database table on the player's permanent storage (or within 'queue' working memory storage locations) or be placed within a JSON object for transport (i.e. an envelope for electronic transfer)."); *see also id*. at ¶¶ 239, 246, 252) And the theory was also

2

expressed in Dr. Almeroth's reply report (including in the paragraph that Google identified as the one that "best articulates" how Personal Audio was instead asserting a new infringement theory). (D.I. 473, ex. A at ¶ 109 (*cited in* Tr. at 15-16); D.I. 473 at 1)  Thus, as far as the Court can tell, there does not appear to be a great difference between Dr. Almeroth's opening and reply report with respect to Personal Audio's infringement theory regarding the "file" limitation. (D.I. 478 at 2; Tr. at 28-29)

Therefore, Google's request to strike Dr. Almeroth's opinions regarding the "file" limitation is DENIED.

### B. The "using a sequencing file" Limitation

Next, Google seeks to strike Dr. Almeroth's opinions in his reply report regarding the "using a sequencing file" limitation. According to Google, Dr. Almeroth opined in his opening report that this limitation is satisfied when the *received file* is referenced by the player and is loaded into working memory to control playback. (D.I. 473 at 2; D.I. 486 at 2; Tr. at 42)  Then in the reply report, Google asserts that Dr. Almeroth set out a new infringement theory:  that *using information copied from the received file* to control playback satisfies this limitation (as that amounts to "use" of the original file). (D.I. 473 at 2; D.I. 486 at 2; Tr. at 42)

Turning to the content of Dr. Almeroth's reports, he opines in his opening report that "[w]hen a user pulls up a 'playlist' for playback, the received LISTS file is referenced by the player *and loaded into a working memory to provide the sequence used during playback*[.]" (D.I. 474, ex. C at ¶ 257 (emphasis added); *see also id.* at ¶ 249 ("These [sequencing] files are received by the player, stored in the database, [and] used to control playback[.]"); *id.* at ¶ 251 ("The LIST '33' file is retrieved from permanent storage and loaded into a working memory location . . . . [t]he LIST 33 file is referenced during playback and in response to control

commands for determining the order [] that audio files are played.")) In Dr. Almeroth's reply report—indeed, in the key paragraphs that Google highlights in its Motion—he again opined that "one skilled in the art would understand that the loading of a stored file into other data structures during execution of the control algorithm is direct evidence that the file is in fact being used to control playback. . . . [t]he way that a computer processor 'uses' a persistently stored file is, among other things, *by loading its data into other structures including working memory so that [] it can be processed by the processor*[.]" (D.I. 473, ex. A at ¶¶ 153-54 (emphasis added) (*cited in* D.I. 473 at 2); Tr. at 43-44) In light of this, the Court does not understand how the infringement theory at issue in the reply report is materially different than that expressed in the opening report. (*See, e.g.*, Tr. at 49 ("We think you use the file for playback when you reference the database. We also think when you load the referenced playlist file or list ID table or list into working memory, you're also using the same file."); *id.* at 50-54) Thus, in the Court's view, the paragraphs at issue in Dr. Almeroth's reply report do not amount to an untimely disclosure.[2]

Therefore, Google's request to strike Dr. Almeroth's opinions in his reply report regarding the "using a sequencing file" limitation is DENIED.

### C.  The "downloading" Limitation

Google next requests that the Court strike Dr. Almeroth's opinions in his reply report regarding the "downloading" limitation. In Dr. Almeroth's opening report, he asserted with respect to this limitation that "the player issues an electronic request that identifies all LISTS and LISTITEMS files for particular account id to be downloaded" using the getPlaylists method and

---

[2] To the extent that Google asserts that this infringement theory is "directly contrary to this Court's finding that the received file and that file 'only' be used to control playback[,]" (D.I. 473 at 2 (emphasis omitted)), that seems more like an issue to be raised at the summary judgment stage.

"the player issues an electronic request that identifies all audio files for all LISTS and LISTITEMS for particular account id to be downloaded" using the getPlaylistEntries method. (D.I. 474, ex. C at ¶ 714) The rebuttal report of Google's expert, Dr. Ketan Mayer-Patel, responded that the player requests "all relevant tracks or playlists at the same name, [but] leaves it to the server to identify the relevant tracks or playlists to be downloaded." (*Id.*, ex. D at ¶ 211 (emphasis omitted); *id.* at ¶ 212 (opining that the player "does not provide any identifiers to the server")) In Dr. Almeroth's reply report, he opined that "the computer's request does not need to specify the filenames in order to identify files to be downloaded within the meaning of the claims" and that the player's request "identifies or selects all playlist of a particular user to be downloaded." (D.I. 473, ex. A at ¶¶ 302, 304; *see also id.* at ¶ 304 ("[T]he function 'getPlaylists' 'get[s] playlists for a user[]'. . . . the player issues a request that identifies the accused playlist files as required by the Court's claim construction.") (emphasis omitted))

In explaining what is the asserted difference between Dr. Almeroth's opening and reply reports, Google's counsel argued that the infringement theory in the opening report was that "the player identifies the file for the account ID to be downloaded[,]" while in the reply report, the theory is that "the player doesn't identify those files[.]" (Tr. at 59-60, 63; *see also* D.I. 473 at 2; D.I. 486 at 2 ("[Personal Audio's opening report] affirmatively states that . . . *the player identifies the files* for an account ID. It is not until the [reply report] that [Personal Audio] says that the player identifies *only the user ID, not the files*.") (certain emphasis in original, certain emphasis added)) Here again, though, it is not clear to the Court that Personal Audio changed its theory. For one thing, the reply report does not state that the player does not identify *files to be downloaded*; rather, it says that the player does not need to specify *specific filenames*. (D.I. 473, ex. A at ¶ 302) Moreover, as Personal Audio points out, there is content in the opening report

5

that seems to mirror what is said about the "downloading" term in the reply report. For example, in his opening report, Dr. Almeroth explains that a LISTITEMS data structure (file) is associated with a user account and is used to "'Get playlists for a user[]'" and that "[t]he player initiates a request for all LISTS with a particular user id." (D.I. 478, ex. 1 at ¶¶ 246, 250; *see also id.* at ¶ 252)

Therefore, this request to strike Dr. Almeroth's opinions in the reply report regarding the "downloading" limitation is DENIED.

### D.     New Doctrine of Equivalents Arguments

Google's final argument is that Dr. Almeroth's reply report "presents numerous new doctrine of equivalents ['DOE'] arguments." (D.I. 473 at 2-3) According to Google, some of these purportedly new arguments "further reflect PA's new positions" relating to "file," "using a sequencing file" and "downloading." (*Id.*) Google further argues that Dr. Almeroth's reply report presents new DOE arguments that assert for the first time that: (1) using a four-byte integer is equivalent to using a single-byte character and (2) newly identified source code is equivalent to the "if-then-else" test required by the Court's construction of "means for detecting a first command." (*Id.* at 3)

Personal Audio, for its part, first responds by stating that all of the paragraphs that Google seeks to strike here "are relevant to structural equivalents of a means plus function claim and therefore are literal infringement arguments[,]" and that Dr. Almeroth asserted arguments regarding this issue for all identified limitations in his opening report. (D.I. 478 at 3) To determine whether a means plus function claim limitation is met literally, the court must compare the accused structure with the disclosed structure and must find *equivalent structure* as well as identity of claimed function for that structure. *Chiuminatta Concrete Concepts, Inc. v.*

*Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998). An accused structure is "equivalent" to a disclosed structure if the differences between the two are insubstantial. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1346 (Fed. Cir. 2016). Thus, the tests for equivalents in the DOE and means-plus-function analyses are "closely related." *Chiuminatta*, 145 F.3d at 1310.[3] Google's reply letter brief does not appear to directly respond to this particular argument (i.e., that the paragraphs Google seeks to strike as raising new DOE arguments are arguing *literal infringement*). This is one reason why the Court declines to strike these paragraphs from Dr. Almeroth's reply report.

Next, to the extent that Google argues that certain of these DOE-related paragraphs should be stricken because they reflect PA's "new" positions relating to "file," "using a sequencing file" and "downloading," the Court cannot agree. In light of the Court's conclusions above regarding these limitations (i.e., that such arguments are not "new"), this would not be a basis to strike these paragraphs.

Additionally, with respect to Google's "four-byte integer" argument, the content at issue in the reply report appears to be proper rebuttal. (D.I. 478 at 3-4) Dr. Almeroth's opening report asserted that the accused products' reading of the relevant "order" and "music_id" integer identifiers (which can be single byte) to determine the next "playable" audio file "is insubstantially different from reading the single byte LocType character identifiers of the preferred embodiment of the patents which indicate the next playable audio segment." (D.I. 478,

---

[3] Infringement under the DOE requires that "'the accused product . . . contain[s] elements identical or equivalent to each claimed element of the patented invention.'" *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1338 (Fed. Cir. 2011) (quoting *Warner-Jenkins Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). The infringement inquiry is guided by the function-way-result test, "which asks whether an element of an accused product performs substantially the same function in substantially the same way to obtain the same result." *Id.* (internal quotation marks and citation omitted).

ex. 1 at ¶ 271)  While Google's non-infringement contentions had stated generally that "[t]he alleged identifiers . . . that Personal Audio accuses of meeting this claim language are neither LocTypes nor single byte characters[,]" (D.I. 486, ex. 3 at 38 (*cited in* D.I. 486 at 2 n.4)), it did not further elaborate or explain that Google utilizes four-byte identifiers, (D.I. 478 at 3).  Then, in Dr. Mayer-Patel's rebuttal report, he opines that "integers in Java . . . are four bytes, not a single byte."  (D.I. 478, ex. 4 at ¶ 183)  And in the paragraphs of Dr. Almeroth's reply report at issue, Dr. Almeroth responds that the difference between utilizing a four-byte integer and a single-byte integer is insubstantial.  (D.I. 473, ex. A at ¶¶ 289-91)  It is proper for a reply expert report to "contradict or rebut evidence on the same subject matter identified by the opposing party's expert report"; in doing so, it may cite to new evidence and data, so long as this is "offered to directly contradict or rebut the opposing party's expert."  *Withrow v. Spears*, 967 F. Supp. 2d 982, 1001-02 (D. Del. 2013) (internal quotation marks and citations omitted).

      Lastly, the Court turns to Google's "if-then-else" argument.  Here, Personal Audio responded that all of the source code referenced in the relevant paragraphs of Dr. Almeroth's reply report "falls within [the] ranges of previously identified code and structural equivalence was previously asserted" and that "[t]hese paragraphs rebut very detailed source code characterizations of functions raised" by Google's expert's rebuttal report, which were not included in Google's contentions.  (D.I. 478 at 3)  Google did not specifically respond to Personal Audio's position in this regard.  Therefore, the Court cannot find that the relevant paragraphs amount to untimely disclosure.

      For all of the above reasons, Google's Motion is DENIED as to the purportedly new DOE arguments.

**II.    CONCLUSION**

For the reasons set out above, the Court hereby ORDERS that Google's Motion is DENIED.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **February 24, 2021** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: February 19, 2021

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE