IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERSONAL AUDIO, LLC,   )<br>          )<br>     Plaintiff,    )<br>          )<br>     v.       )     Civil Action No. 17-1751-CFC-CJB<br>          )<br>GOOGLE LLC,      )<br>          )<br>     Defendant.     ) | |

## MEMORANDUM ORDER

Presently pending in this patent infringement case is Defendant Google LLC's ("Defendant" or "Google") *Daubert* motion seeking to exclude the expert opinion and testimony of Robert Heiblim, filed pursuant to Federal Rule of Evidence 702 (the "Motion"). (D.I. 569) Plaintiff Personal Audio, LLC ("Plaintiff" or "Personal Audio") opposes the motion. For the reasons that follow, the Court hereby ORDERS that Defendant's Motion is DENIED.

## I.    BACKGROUND

Plaintiff filed the instant case on September 15, 2015, (D.I. 1), and it was transferred to this Court in December 2017, (D.I. 103 at 25).[1] In the case, Plaintiff alleges infringement of United States Patent Nos. 6,199,076 and 7,509,178 ("the asserted patents"). (D.I. 38 at 1) The asserted patents are related and share a common specification. (*See* D.I. 147, ex. A (hereinafter, the "'076 patent"); *id.*, ex. B; D.I. 38 at ¶ 30) These patents are directed to an audio program player that automatically plays a predetermined schedule of audio program segments (e.g., songs) from a program library. (D.I. 38 at ¶¶ 31, 33; '076 patent, col. 2:6-8) The claimed player

---

[1]     This case is now assigned to Chief United States District Judge Colm F. Connolly and Chief Judge Connolly has referred the case to the Court to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. (Docket Items, December 13, 2017 and September 10, 2018)

further allows a listener to dynamically alter the sequence and content of the audio program segments presented.  (D.I. 38 at ¶¶ 31, 33; '076 patent, cols. 1:7-9, 1:64-2:3, 2:44-47, 2:55-58)

Defendant filed the Motion on June 29, 2021, (D.I. 569), and briefing was completed on August 31, 2021, (D.I. 634).

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of qualified expert testimony, providing that a witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles or methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  Rule 702's requirements were examined in detail in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and have been said to embody "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *see also B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010).[2]  As to this Motion, at issue are the reliability and "fit" of the proposed expert testimony.

With regard to the requirement of reliability, Rule 702 mandates that the relevant expert testimony "must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590; *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  Such testimony should amount to "more than subjective belief or unsupported speculation[]" and a court's focus in examining this factor must be on "principles

---

[2]   In applying Rule 702 to a patent action, the Court will look to the law of the regional circuit. *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1371 (Fed. Cir. 2015).

and methodology" rather than on the expert's conclusions. *Daubert*, 509 U.S. at 590, 595; *see also Daddio v. Nemours Found.*, 399 F. App'x 711, 713 (3d Cir. 2010). The grounds for the expert's opinion "merely have to be good, they do not have to be perfect"; thus, the standard for reliability is "not that high." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d. 717, 744-45 (3d Cir. 1994).

As to the "fit" requirement, it "goes primarily to relevance" as the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" and have "a valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92 (internal quotation marks and citations omitted); *see also Schneider*, 320 F.3d at 404. The standard for fit, however, is also "not high; it is met when there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009).

Overall, "Rule 702 embodies a 'liberal policy of admissibility.'" *B. Braun Melsungen AG*, 749 F. Supp. 2d at 222 (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008)). Nonetheless, the burden is placed on the party offering expert testimony to show that it meets each of the standards for admissibility. *Id.* (citing *Daubert*, 509 U.S. at 592 n.10).

### III.   DISCUSSION

With its Motion, Defendant moves to exclude the opinions of Plaintiff's market and demand expert, Mr. Heiblim. Plaintiff offers Mr. Heiblim's testimony to "provide expert testimony on the market response to particular consumer audio feature sets." (D.I. 604 at 1; *see also* D.I. 605, ex. J at ¶ 9) Defendant attacks Mr. Heiblim's testimony in two different ways, which the Court will address in turn.

3

Defendant's first attack focuses primarily on paragraphs 26-37 and 41-63 in Mr. Heiblim's opening expert report. (D.I. 570 at 2)[3] Defendant notes that in those paragraphs, Mr. Heiblim offers opinions about the importance of "playlists," "music players," and "music[,]" (*see* D.I. 605, ex. J at ¶¶ 26-37, 41-63), and that these opinions are then used by Plaintiff's damages expert to justify an increase in her proposed reasonable royalty rate, pursuant to three separate *Georgia-Pacific* factors, (*see* D.I. 571, ex. J at ¶¶ 168-73). (D.I. 570 at 2) Defendant then asserts that these opinions of Mr. Heiblim should be stricken because they do not "fit" the facts of the case—in that they "are not tied to the patented technology or to the accused features of the accused products." (*Id.* at 1; *see also id*. at 2-4)

It is true that the asserted claims do not simply or generically claim "playlists" or "music players" or "music"; instead, they purport to claim particular audio program players that utilize a file of sequencing information to control playback of songs and respond to control commands. (*See* '076 patent, cols. 2:6-58, 12:3-15; D.I. 447 at 2-5; *see also* D.I. 570 at 3) And it is also true that in the above-referenced challenged paragraphs of Mr. Heiblim's opening expert report, Mr. Heiblim does not directly reference the language of the asserted claims. (*See* D.I. 571, ex. N at 11-12)[4] But does that necessarily mean that these paragraphs have no valid connection to the issues at play in this case?

---

[3] Although Defendant focuses on paragraphs 26-37 and 41-63 of Mr. Heiblim's opening report in order to show how Mr. Heiblim has violated Rule 702, Defendant's reply brief makes it clear that due to these purported violations, Defendant is seeking to strike not only those paragraphs, but the entirety of paragraphs 9-73 of Mr. Heiblim's opening report. (D.I. 634 at 1)

[4] It appears that there are only three paragraphs of Mr. Heiblim's opening expert report that specifically speak to the claimed technology: paragraphs 74-76 of the report, which discuss the "functionality of the BACK or REVERSE button." (D.I. 605, ex. J at ¶¶ 74-76) Though Plaintiff's briefing does not explain this, (D.I. 604 at 3), it appears that these paragraphs are offered to rebut the acceptability of certain non-infringing alternatives put forward by Defendant, (D.I. 570 at 1 (citing D.I. 571, ex. R at 64-66)).

Plaintiff's brief could have done a better job of helping the Court to figure out the answer to that question. This is because that brief: (1) nowhere mentions paragraphs 26-37 and 41-63 of Mr. Heiblim's opening expert report; and (2) does not attempt to explain why those particular challenged paragraphs are in the report, how they contribute to the aim of the report, or how Plaintiff intends to use the paragraphs in this case. (*See* D.I. 604 at 2-4) That said, Plaintiff's brief at least cites to other portions of Mr. Heiblim's opening report, as well as to portions of his reply report, to show how in those paragraphs, Mr. Heiblim: (1) does discuss specific features of the claimed invention; (2) provides background and context supporting how and why certain claimed features are important to consumers; and (3) assesses how the marketplace would respond to Defendant's proposed non-infringing alternatives. (*Id.* at 3-4 (citing D.I. 605, ex. J at ¶¶ 64-72, 74-76; *id.*, ex. K at ¶¶ 11-26, 40-50))

The Court cannot conclude on this record that Mr. Heiblim's challenged opinions are irrelevant to any issue in the case. (D.I. 570 at 4)[5] In paragraphs 26-37 and 41-63 of his opening report, Mr. Heiblim seems to be describing the music player market in order to provide background and context regarding the progression of smartphones and the importance of having a music player with playlist features in the Android platform. (D.I. 605, ex. J at ¶¶ 26-37, 41-63) And Mr. Heiblim's reply report sheds further light on the relevance of this discussion to the case. His reply report: (1) provides opinions regarding the scope of the asserted patents; (2) opines that Defendant's expert's contentions regarding the scope of the asserted patents is too narrow;

---

[5] Defendant's main argument seems to be that Mr. Heiblim's opinions are not tied to the claimed invention and therefore are irrelevant to valuing the patented invention. (D.I. 570 at 4; D.I. 634 at 1) However, Mr. Heiblim's report does not attempt to calculate damages. Defendant separately presses this argument in seeking to strike Plaintiff's damages expert's opinion for, *inter alia*, relying on Mr. Heiblim's opinions. (D.I. 568 at 15) The Court will address that motion in due course.

(3) explains why the claimed features in the patents are important to market acceptance; and (4) contends that Defendant's proffered non-infringing alternatives would not meet market demands. (*Id.*, ex. K) In making these case-related and asserted claim-related arguments, Mr. Heiblim extensively refers back to and relies for support on many of the challenged paragraphs of his opening report. (*See, e.g., id.*, ex. K at ¶ 22 & n.17; *id.* at ¶ 23 & nn.20-21; *id.* at ¶ 24 & n.24; *id.* at ¶ 25; *id.* at ¶¶ 31-37 & nn.52-55; *id.* at ¶ 42 & n.65) Defendant did not challenge Mr. Heiblim's reply report, and therefore the Court cannot conclude that this supporting context set out in Mr. Heiblim's opening report is "irrelevant to . . . any other issue in this case[.]" (D.I. 570 at 4)

Defendant's second challenge to Mr. Heiblim's opinions goes to both his methodology and to the issue of "fit." Here Defendant argues that Mr. Heiblim's report as a whole is unreliable because his opinions "are not based on facts, data, *or* a reliable methodology: they are simply [Mr.] Heiblim's subjective views and speculation, offered without appropriate validation or support." (*Id.* at 1 (emphasis in original); *see also id*. at 5-7) More specifically, Defendant points out that in Mr. Heiblim's opening report, Mr. Heiblim states that he "considered the historical demands and behaviors of the key stakeholders, specifically (i) music consumers, (ii) retail and wholesale distributors, (iii) manufacturers, and (iv) content providers" in order to determine "[w]hat these stakeholders desired" regarding music players and playlists. (D.I. 605, ex. J at ¶ 12 (*cited in* D.I. 570 at 5)) Defendant then argues that Mr. Heiblim failed to conduct a survey of these stakeholders, or conduct a systematic review of literature about their tastes, or collect particular categories of facts or data about their behaviors. (D.I. 570 at 5) Defendant thus asserts that when Mr. Heiblim later makes "broad, sweeping conclusions" in his opening report about how the market for music players operates (such as in paragraphs 65-68 and 75-76)—and

fails to cite to any sources in support—he has simply employed "sweeping speculation[,]" which is prohibited.  (*Id*. at 1, 5-7 (citing D.I. 605, ex. J at ¶¶ 65-68, 75-76); D.I. 634 at 2 (citing D.I. 605, ex. J at ¶¶ 75-76))

The Court disagrees that this is a fair assessment of Mr. Heiblim's opening report.  It does so for a few reasons.

The Court first takes up Defendant's criticism about the lack of use of a survey.  Defendant is surely correct that Mr. Heiblim did not rely on a survey in order to generate his conclusions in paragraphs 65-68 and 75-76 of the opening report.  But there is no requirement that an expert employ a survey in order to opine on these issues.  *See, e.g.*, *Wonderland Nursery Goods Co. v. Thorley Indus., LLC*, Civil Action No. 12-196, 2013 WL 6328772, at *4 (W.D. Pa. Dec. 5, 2013) ("Despite Thorley's position that Dr. Hampton had a duty to obtain better data, such as a survey or poll of consumers about their purchasing decisions, [], *Daubert* does not actually require outside research as long as Dr. Hampton has relied on data of the type reasonably relied on by experts . . . in his field."); *cf. Schwartz v. Avis Rent a Car Sys., LLC*, Civil Action No. 11-4052 (JLL), 2014 WL 4272018, at *6 (D.N.J. Aug. 28, 2014).

Next, Defendant is correct that in paragraphs 65-68 and 75-76 of Mr. Heiblim's opening report, Mr. Heiblim does not provide any citations to supporting facts or data.  But earlier in that same report, when explaining why music playlists had become essential in the consumer electronics market and why certain playlist features were critical to consumers, the expert *did* cite to various publications in support.  (D.I. 605, ex. J at ¶¶ 30-32, 35-36, 38, 48-50, 56-57, 61-62)  So it is not like the report at issue is entirely devoid of citation to relevant supporting evidence.  (D.I. 604 at 2)

Additionally, beyond simply citing to publications in the field, Mr. Heiblim explained in his opening report how he has many decades of prior experience in the consumer electronics industry. This includes having: (1) served in executive roles in consumer electronics companies; (2) worked with various groups to establish industry standards; (3) published numerous articles in the field; (4) led research teams focusing on investigating consumer use patterns; and (5) devised consumer marketing strategies for new product offerings. (D.I. 605, ex. J at ¶¶ 1-8) Mr. Heiblim can surely rely upon this type of personal experience in order to draw reliable conclusions about the music player market. *See Schneider,* 320 F.3d at 407 (noting that "the degree to which the expert testifying is qualified also implicates the reliability of the testimony") (internal quotation marks and citation omitted); *Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc.*, CIVIL ACTION NO. 13-5195, 2018 WL 1960826, at *9 (E.D. Pa. Apr. 26, 2018) ("That Hughes based his conclusions in part on his own experience in the appraisal industry is not a basis upon which to exclude his testimony."); *Integra Lifescis. Corp. v. HyperBranch Med. Tech., Inc.*, Civil Action No. 15-819-LPS-CJB, 2018 WL 1785033, at *6 (D. Del. Apr. 4, 2018) (rejecting plaintiff's argument that an expert's opinion should be excluded because it was based on his own experience, where the expert "provided some explanation in his expert report as to why he came to this conclusion based on his personal experience"); *VS Techs., LLC v. Twitter, Inc.*, Civil Action No. 2:11cv43, 2011 WL 4744572, at *6-8 (E.D. Va. Oct. 5, 2011) (concluding that the expert's testimony rested upon a sufficient factual basis to support his conclusion where he "bases his opinion upon his experience as applied to the facts of the case").

In the end, Defendant's quibbles with Mr. Heiblim's relative lack of supplementary support for his conclusions is the kind of thing that can be addressed at trial via cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Golden Bridge Tech., Inc. v. Apple Inc.*, Civ. No. 10-428-SLR, 2013 WL 1431652, at *3 (D. Del. Apr. 9, 2013) ("To the extent [Plaintiff] does not find [Defendant's expert's] citations convincing, such an issue is more properly reserved for cross examination.").

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby ORDERS that the Motion be DENIED.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order.  Any such redacted version shall be submitted no later than **October 28, 2021** for review by the Court.  It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted).  The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: October 25, 2021

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE