IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PERSONAL AUDIO, LLC,

                                Plaintiff,

                v.

GOOGLE LLC,

                           Defendant.

Civil Action No. 17-1751-CFC

## MEMORANDUM ORDER

Plaintiff Personal Audio, LLC has sued Defendant Google LLC for patent infringement.  A jury trial is scheduled to begin on June 12, 2023.  Personal Audio had planned to call Mr. Robert Heiblim to testify as an expert "on market response, consumer acceptance, and demand for audio products in the consumer electronics industry."  D.I. 796 at 2.  Mr. Heiblim, however, passed away on January 7, 2022.  Pending before me is Personal Audio's motion for leave to substitute David Kaplan for Mr. Heiblim (D.I. 795).

## I.     BACKGROUND

According to a declaration that Personal Audio submitted in support of its motion, Personal Audio's attorneys "last communicated directly with Mr. Heiblim in August [  ] 2021, in relation to his declaration in support of [Personal Audio's] opposition to Google's unsuccessful attempt to strike his opinions under *Daubert*."

D.I. 797 ¶ 3.  Personal Audio says that after filing Mr. Heiblim's declaration with the Court, it "had limited communications with Mr. Heiblim given that the case had not been scheduled for trial," and that these "limited communications" were made "through the Gerson Lehrman Group ('GLG'), [an] expert search firm through which [Personal Audio] retained and paid Mr. Heiblim."  In Personal Audio's words: "Until trial, Mr. Heiblim was not needed for substantive work, so communicating with GLG appeared sufficient."  D.I. 797 ¶ 3.

Personal Audio says that in March 2022—two months after Mr. Heiblim passed away—a GLG representative reached out to Personal Audio's counsel and asked if Mr. Heiblim's services were still needed.  Counsel says that he told GLG "that Mr. Heiblim was still needed for trial and that counsel would provide an update as soon as the Court set a trial date."  D.I. 797 ¶ 4.

On June 10, 2022, I held a status conference.  During the conference, I said, "[L]et's pick a week [for trial] that works for folks," and I asked Personal Audio to give me "some sense of when you would like to do this [trial]."  D.I. 810-1 at 71:25–72:2.  Personal Audio's lawyer asked for a date in September, but when I told him my calendar would not allow that, he responded that "January of [2023] is what makes the most sense."  D.I. 810-1 at 72:3–14.  Based on that statement, I set trial for January 9, 2023.  At no point during the conference did Personal Audio indicate that any witness might be unavailable for a January 2023 trial.

2

Although Personal Audio's counsel says that he told GLG that he would "provide [it] an update as soon as the Court set a trial date," D.I. 797 ¶ 4, he waited more than three months—until September 27, 2022—to "sen[d] Mr. Heiblim and GLG an email informing them that trial had been set for January 9, 2023," D.I. 797 ¶ 6. Two days later, Personal Audio informed me by letter that "one of [its] expert witnesses is unavailable January 6 through 11, 2023," that it had "informed Google of this conflict," and that it "intend[ed] to request that the Court reschedule" the January 2023 trial date. D.I. 775. The expert referred to by Personal Audio, however, was not Mr. Heiblim. Even though Personal Audio's counsel had not received a response to his September 27 emails to Mr. Heiblim and GLG, Personal Audio says it "believed" at this time that Mr. Heiblim was still "available" for the January trial date because Mr. Heiblim had previously "indicated that as a principal in his own consulting firm he had considerable flexibility and control of his schedule." D.I. 797 ¶ 6.

The next day—September 30, 2022—I convened another status conference by telephone. I said during the call that the case had "been around a while" and "we need to get it tried." I suggested that "we pick a [new trial] date, and I don't double-book you, and that will be your date and then we won't book anything else [on that date] to make sure that we try this case." D.I. 776 at 4:8–14. I then looked at my calendar and said: "I've got the week of June 12, and that will be just your

week.  I will not schedule any other events, and we will make it yours.  Does that work?"  D.I. 776 at 6:2–4.  Personal Audio's attorney responded: "That works for us and our experts."  D.I. 776 at 6:10.

According to Personal Audio, its counsel next reached out to Mr. Heiblim in late November 2022—about two months after the September 30 conference—when counsel left "a voicemail to inform [Mr. Heiblim] of the June 12, 2023 trial date."  D.I. 797 ¶ 8.  Personal Audio says it also emailed Mr. Heiblim and left a second voicemail on or around December 21, 2022 and then sent another email to Mr. Heiblim on January 20, 2023.  D.I. 797 ¶ 8.

At some unspecified point after the January 20 email went unanswered, counsel, in his words, "began to get suspicious."  He then "visited [Mr. Heiblim's] company's website," saw that Mr. Heiblim was no longer listed on the website, and, through subsequent internet searches, learned on February 3, 2023 that Mr. Heiblim had died more than a year earlier.  D.I. 797 ¶¶ 2, 9.

Six days later, on February 9, 2023, Personal Audio informed Google of Mr. Heiblim's passing.  D.I. 797 ¶ 12.  The parties met and conferred on February 16, 2023.  Personal Audio informed Google that it intended to substitute Mr. Heiblim with another expert, and it would tell Google who the expert was once Personal Audio identified a suitable replacement.  D.I. 797 ¶ 13.  Google said in response

4

that "it would consider any reasonable proposal by [Personal Audio] regarding substitution."  D.I. 810 ¶ 6.

Personal Audio spent the next two months searching for a replacement for Mr. Heiblim.  On April 14, 2023, it decided to retain Mr. Kaplan as a substitute expert.  D.I. 797 ¶ 17.  The parties met and conferred on April 21.  D.I. 797 ¶ 19. Google stated that it was willing to accommodate a new expert if Personal Audio agreed to postpone the trial.  D.I. 787 at 1; D.I. 810 ¶ 8.  Personal Audio refused to agree to a postponement.  D.I. 787 at 1; D.I. 810 ¶ 8.

On April 24, 2023, Personal Audio asked for a status conference to resolve the parties' dispute over Personal Audio's desire to have Mr. Kaplan testify as a substitute expert at trial.  D.I. 787 at 1.  I held a telephonic status conference on April 26, 2023.  I told the parties I was not willing to move the trial date because the case was very old (it was filed in 2015), I had intentionally not double-booked the trial to guarantee that it could move forward on June 12, and my caseload and schedule would not allow for a postponement.  I also expressed strong doubts that Personal Audio had exercised the necessary diligence to allow for the substitution of an expert.  I nonetheless told Personal Audio it could file a motion for substitution.  D.I. 808 at 21:16–17.

## II.    LEGAL STANDARDS

In the Third Circuit, a motion to substitute an expert witness is construed as a Rule 16(b) motion to modify the scheduling order. *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007). Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The rule "gives the district courts wide latitude to manage discovery and other pretrial matters, and to set deadlines for amending pleadings, filing motions, and completing discovery." *Eichorn*, 484 F.3d at 650. For that reason, the Third Circuit has "frequently upheld a trial court's exercise of discretion to deny a party's motion to add experts or other fact witnesses after the close of discovery or after a deadline in a scheduling order." *Id.* at 650–51 (citations omitted).

"'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order." *Synygy, Inc. v. ZS Assocs., Inc.*, 2015 WL 4578807, at *2 (E.D. Pa. July 30, 2015) (citation omitted). "Although the existence of prejudice to the party opposing modification may also be considered, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (citation omitted).

6

## III.   DISCUSSION

Personal Audio argues that I should grant its motion because it "acted with reasonable diligence upon discovering that Mr. Heiblim was deceased," and it "promptly notified Google of his passing and further notified Google that it would be designating a substitute expert."  D.I. 796 at 17.  But Personal Audio's utter failure to exercise diligence in confirming in 2022 that Mr. Heiblim would be available for the June 2023 trial ends the good cause inquiry here.  Because of that failure and Personal Audio's representation to the Court during the September 30 conference that the June trial date "works for us and our experts," I will deny its motion.

Personal Audio does not really dispute that the failure to communicate with Mr. Heiblim and his firm in 2022 to determine his availability for trial in 2023 was grossly negligent.  Rather, it tries to distance itself from that failure by blaming it on GLG.  It says it is "appalled that GLG never contacted [it] about Mr. Heiblim's passing."  D.I. 796 at 5.  And its counsel similarly claims to be "outraged" with GLG and "shocked to learn that [Mr. Heiblim] had passed away almost a year before [counsel] discovered it" through his internet searches in February 2023.  D.I. 797 ¶ 10.  But GLG is the agent of Personal Audio and its attorneys; and, therefore, GLG's failures are Personal Audio's failures.  Neither Personal Audio nor its counsel can escape responsibility here because they chose to communicate

7

with their expert through an intermediary.  The expressions of shock, outrage, and dismay by Personal Audio and its counsel are apt, and they demonstrate emphatically how gross the failure to confirm in timely fashion Mr. Heiblim's availability for trial was.

Because I find that Personal Audio was not diligent, I need not and will not analyze how much prejudice Google would suffer if Mr. Kaplan were allowed to testify as a substitute expert or how much prejudice Personal Audio would suffer without the testimony of a "marketing expert."  *See Synygy*, 2015 WL 4578807, at *2 ("Although the existence of prejudice to the party opposing modification may also be considered, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end.") (citation omitted).  I note, however, that Google has outlined legitimate concerns that it would be unduly prejudiced if Mr. Kaplan testified as a substitute expert, including concerns that Mr. Kaplan's replacement report "offers opinions that were not offered by Heiblim" and that if I allowed substitution on the eve of trial, Google would need to divert at least some of its trial preparation resources to assessing and potentially challenging Mr. Kaplan's report.  D.I. 809 at 15–17.  There would have been plenty of time to address these concerns and still allow substitution had Personal Audio been diligent.

I note, too, that Personal Audio overstates its concerns that it will suffer prejudice if Mr. Kaplan is not allowed to testify as a "marketing expert." Personal Audio posits that Mr. Heiblim would have offered "opinions [that] would help the trier of fact understand the nexus between the claimed features of the invention and the commercial success of smartphones including such features." D.I. 796 at 2. But Personal Audio has designated at least one other expert witness who can testify about the nexus between the claimed invention's features and the commercial success of smartphones with such features. *See, e.g.*, D.I. 810-1, Ex. F.

\* \* \* \*

NOW THEREFORE, at Wilmington on this Twenty-second day of May in 2023, **IT IS HEREBY ORDERED** that Plaintiff Personal Audio, LLC's Motion for Leave to Substitute Expert David Kaplan for Expert Robert Heiblim, Deceased (D.I. 795) is **DENIED**.

_____
CHIEF JUDGE